IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

Richard Katz

Plaintiff,

v.

Civil Action No.

National Board of Medical Examiners/
United States Medical Licensing Exam
(USMLE) Organization

15-cv-1187

FILED
SCRANTON
JUN 17 2015
PER _____
DEPUTY CLERK

## I. COMPLAINT

COMES NOW the plaintiff, Richard Katz appearing Pro Se for a complaint against the defendants above named, states, alleges, and avers as follows:

## II. JURISDICTION & VENUE

1. This Court has subject matter jurisdiction under 28 U.S.C. sections 1331 and 1343.

2. This action is commenced pursuant to 2201 and 2202 and 42 U.S.C., section 1983.

3. Plaintiff seeks declaratory relief pursuant to 28 U.S.C. Section 2201 and 2202. Plaintiff claims for injunctive relief are authorized by 28 U.S.C. Section 2283 and Rule 65 of the Federal Rules of Civil Procedure.

## III. GENERAL ALLEGATIONS

4. The plaintiff, Richard Katz is a citizen of the State of Pennsylvania, United States of America.

5. Defendants, National Board of Medical Examiners (NBME), and at all times pertinent to the complaint develops and manages the United States Medical Licensing Exam (USMLE), place of business :

3750 Market Street
Philadelphia PA, 19104-3102
Phone: 215.590.9500

6. The USMLE is a national standardized test administered by the National Board of Medical Examiners (NBME) and the Education Commission for Foreign Medical Graduates (ECFMG). The test is given under strict time limitations. There are three parts, given separately, commonly referred to as Steps 1, Step 2 [Clinical Knowledge (CK) and Clinical Skills (CS)], and Step 3. In order to obtain medical licensure, a prospective doctor is required to pass all three steps. The examinee registers for the USMLE exam using the NBME or ECFMG website based on whether they are an American Medical Student/Graduate or a Foreign Medical Student/Graduate.

7. In 2011 USMLE Organization announced that they will place an exam limit to the number of times examinees can take to pass a USMLE Step Component. *The previous policy allowed the examinee to take the exam as many times as they needed until passing.* Defendant posted the following announcement on their website June 12, 2012:

"the following Examinees who have made six or more attempts to pass a Step or Step component, including incomplete attempts, should be aware that all applications to register for additional attempts will not be processed unless they are submitted on or before December 31, 2012. This limit was first announced in August of 2011."
http://www.usmle.org/announcements/?ContentId=99

8. The Announcement refers the reader to the USMLE Bulletin (USMLE Bulletin includes information on all aspects of USMLE, such as eligibility requirements, scheduling test dates, testing, and score reporting) for more information about the Six Attempt Limit Policy and states the following:

"The USMLE program limits to six the total number of times an examinee can take the same Step or Step Component. An examinee is ineligible to take a Step or Step Component if the examinee has made six or more prior attempts to pass that Step or Step Component, including incomplete attempts. All attempts at a Step or Step Component are counted toward the limit, regardless of when the examinations were taken."
http://www.usmle.org/bulletin/eligibility/#TimeLimit

9. If the six attempts have been exceeded and the examinee attempts to register for the Step component the NBME / ECFMG website will inform the examinee that the exam limit has been exhausted and they are no longer eligible to register locking the examinee out from registering for that given Step. **The Bulletin does not discuss exceptions to this rule or matters involving ADA, Americans with Disability Act Amendment (ADAAA) and Rehabilitation Acts policies.**

10. Plaintiff is an individual with a disability that causes impairment. Plaintiff has a long history of executive functioning and processing speed disorders that substantially impaired various major life activities including reading, thinking, and concentrating.

11. Plaintiff has experienced difficulties throughout his education and particularly on timed standardized tests. Plaintiff has exceeded his attempt limit on the USMLE Step 1

exam based on the *Six Attempt Limit Rule* and is no longer eligible or able to register on the ECFMG website for the exam. Albeit he is still able to register for USMLE Step 2 Clinical Knowledge (CK), Clinical Skills (CS) and USMLE Step 3 as he has not exhausted his attempts on these component steps. *Plaintiff was never given fair opportunity to sit for any of the USMLE Steps with exam accommodations due to his disability despite his requests to defendants to do so.*

12. In 2005, plaintiff applied for accommodations and provided the defendants with considerable documentation including various psychological and psychoeducational evaluations supporting the need for accommodations. Despite this documentation, the defendants rejected plaintiffs' request for accommodations primarily because he was not diagnosed with an impairment until he was an adult. *It must be noted that the plaintiff was treated for a seizure disorder and had neurological problems during childhood.*

13. The defendants determination and denial of accommodations was discriminatory then and in light of the 2008 ADAAA, defendant would not continue its denial. ADAAA purpose is to restore the intent and protections of the Americans with Disabilities Act of 1990. Pursuant to the ADAAA, plaintiff would be entitled to the accommodations of extended time on the USMLE Step 1 Exam.

14. In amending the ADA in 2008, Congress mandated that the Equal Employment Opportunity Commission (EEOC) issue regulations restoring the broad scope of the ADA as Congress originally intended. 42 U.S.C. §12010(b)(6). The promulgated EEOC regulations provide in pertinent part:

"the primary purpose of the ADAAA is to make it easier for people with disabilities to obtain protection under the ADA. Consistent with the Amendments Act's purpose of reinstating a broad scope of protection under the ADA, the definition of disability" in this part shall be construed broadly in favor of expansive coverage to the maximum extent permitted…" 29 C.F.R §1630.1(c)(4).

15. Prior to the ADAAA, the NBME and other similar testing entities had a penchant for denying accommodations for students in higher education on the basis that they were not diagnosed at an earlier age or that they performed well academically. In passing the ADAAA, Congress targeted these testing entities noting in the Congressional Record: 2 Cong.Rec. 8296 (Sept. 17, 2008).

16. Pursuant to the ADAAA and it regulatory guidance, the defendants are mandated to give considerable deference to plaintiffs' evaluators and their recommendation to provide accommodations. The guidelines to the regulations promulgated under the ADA, provide that testing entities should accept without further inquiry, "documentation provided by a qualified professional who has made an individualized assessment of an applicant that supports the need for the modifications, accommodation, or aid requested." See 28 C.F.R. pt. 36, app. A, at 795. The guidance further explains that, "reports from experts who have personal familiarity with the candidates **should take precedence over those from, for**

example, reviewers for testing agencies, who have never personally met the candidate or conducted the requisite assessments for diagnosis and treatment." 28 C.F.R. pt. 36, app. A, at 796.  Accordingly, defendants are precluded from second-guessing and rejecting plaintiffs' evaluators' recommendations

**17. Plaintiffs' request to modify six attempt policy, is a reasonable accommodation and does not substantially modify the the USMLE's standards.** *See e.g. Doe v. Samuel Merritt University,* **921 F.Supp. 2d. 958 (N.D. Cal. 2013) (Preliminary Injunction granted allowing student with a disability to take a podiatric licensing examination unlimited times as an accommodation to University's policy providing for a three exam limit).**


18. The NBME accommodation process should of become simplified as the result of a settlement announced by the U.S. Department Of Justice (DOJ) on February 22, 2011.[1] The case arose under Title III of the ADA and involved the extensive documentation required by the NBME from applicants seeking testing accommodations. Under the terms of the settlement, a Yale Medical School student with dyslexia will receive the accommodations of **double testing time** and a separate testing area to take the USMLE. (*Please note that* b*eginning November 28th 2014, plaintiffs' case against defendants has been under investigation by DOJ Disability Rights Section based on the above precedent.)*
The defendant is currently required to:

a. Only request documentation about (a) the existence of a physical or mental impairment; (b) whether the applicant's impairment substantially limits one or more major life activities within the meaning of the ADA; and (c) whether and how the impairment limits the applicant's ability to take the USMLE under standard conditions

b. Carefully consider the recommendations of qualified professionals who have personally observed the applicant in a clinical setting and recommended accommodations; an

c. Carefully consider all evidence indicating whether an individual's ability to read is substantially limited within the meaning of the ADA.


19. On July 26, 1990, Congress enacted the Americans with Disabilities Act, 42 U.S.C. section 12101, et seq., establishing the most important civil rights law for persons with disabilities in our country's history.  The Congressional statutory findings include:

a. "some 43,000,000 Americans have one of more physical or mental disabilities . . .;

---

[1] The settlement can be found at: <http://www.ada.gov/nbme.htm>.

     b. "historically, society has tended to isolate and segregate individuals with disabilities and despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

     c. "One "purpose of the ADA is to guarantee that those with disabilities are not disadvantaged and to 'place those with disabilities on an equal footing' with others."[2] That purpose often is overlooked in the context of accommodating persons with disabilities in higher education and professional licensing.

     d. "individuals with disabilities continually encounter various forms of discrimination, including the discriminatory effects The Americans with Disabilities Act ("ADA") provides far-reaching protections for people with disabilities. Colleges and universities, as well as professional licensing entities like NBME, covered by Titles II and III of the ADA. . Individuals who are applying for Exam Accommodations to or enrolled in post-secondary educational institutions (schools attended after high school) may encounter ADA issues involving reasonable accommodations, required disclosure of medical information on applications, and suspension or expulsion due to the effects of a disability.

20. One "purpose of the ADA is to guarantee that those with disabilities are not disadvantaged and to 'place those with disabilities on an equal footing' with others."[3] That purpose often is overlooked in the context of accommodating persons with disabilities in higher education and professional licensing. Many private and public colleges, universities, and graduate schools are included in this mandate, as are private professional licensing entities.[4]

21. Nonetheless, these entities do not always grant reasonable modification or accommodation requests, and the implications may be that people with disabilities are denied equal opportunities to pursue degrees in higher education and professionally licensed careers.
     a. "the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity . . . to pursue those opportunities for which our free society is justifiably famous . . ."42 U.S.C. section 12101(a).

     b. Private entities, in the context of higher education and when providing licensing, must comply with the general prohibition against discrimination in the "full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations" under Section 12182 of Title III.[5]

---

[2] *Rothberg v. Law Sch. Admission Council, Inc.*, 300 F.Supp. 2d 1093, 1105 (D. Colo. 2004).
[3] *Rothberg v. Law Sch. Admission Council, Inc.*, 300 F.Supp. 2d 1093, 1105 (D. Colo. 2004).
[4] *Id.*
[5] 42 U.S.C. § 12182(b)(2)(A)(ii); 28 C.F.R. 35.130(b)(7).

22. Congress went on to state explicitly the purpose of the Americans with Disabilities Act to be:

    a. "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

    b. "to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

    c. "to invoke the sweep of Congressional authority . . . to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities." 42 U.S.C. section 12101(b).

## IV. EXHAUSTION OF LEGAL REMEDIES

Plaintiff filed an appeal with defendant on April 1st 2014. In the appeal plaintiff presented the facts related to this complaint. On April 17th 2014 plaintiff was given a response by the defendants stating that the appeal had been denied. On April 20th plaintiff contacted defendants to appeal this denial and to address a *Catch 22* situation, the fact that defendant was requesting a *"formal request"* for exam accommodations on April 8th 2014. It was explained to defendant that a formal request would not be possible to submit as long as plaintiff was locked out from registering for USMLE Step I because of The Six Attempt Limit Rule that was imposed by the defendant. *The notion plaintiff was addressing was you can not submit a formal complaint for an exam that you can not register for, hence a Catch 22 situation.* A form of psychological manipulation and bureaucratic entanglement. **Defendants never responded to plaintiffs' second appeal.**

## V. LEGAL CLAIMS

Plaintiff reallege and incorporated by reference paragraphs 1- 22.
There is clear violation of discrimination based on the ADA, ADAA and Rehabilitation Acts. The plaintiff has no plain. adequate or complete remedy at law to redress the wrongs described herein. Plaintiff has been and will continue to be irreparably injured by the conduct of the defendants unless this courts grants the declaratory and injunctive relief which plaintiff seeks.

## VI. PRAYER FOR RELIEF

    WHEREFORE, the plaintiff respectively prays that this court enter judgment granting

plaintiff:

A declaration that the acts and omissions described herein violated plaintiffs' right under the Constitution and laws of the United States of America.

A preliminary and permanent injunction ordering defendants to overturn Six Attempt Limit Rule and allow plaintiff to register for USMLE Step 1, Step 2 (CK and CS). and Step 3 with accommodations (double exam time) on all USMLE exams under the ADA ADAAA and Rehabilitation Act programs.

Plaintiff requests that all of his previous attempts on USMLE Step 1, Step 2 CS and CK be wiped clean from the ECFMG record. These attempts occurred without any form of exam accommodations, during regular exam conditions, and as a result the playing field was not leveled based on plaintiffs' disability.

Compensatory damages in the amount of $70,000 against defendant, jointly and severely

Punitive damages in the amount of $230,000 against Defendants.
$230,000 which, when added to the compensatory damages of $70,000, is the maximum of $300,000 permitted by the ADA.

A jury Trial on all issues triable by Jury

Plaintiff's Costs for registering for all USMLE Steps without the proper exam accommodations required for his disability since February 1st 2006 totaling $8,660,00.

Any additional relief this court deems, just, proper, and equitable.

Plaintiff prays that the Court issue an injunction enjoining the defendant from continuing its discrimination and that the Court award plaintiffs such additional or alternative relief as may be just, proper, and equitable, including costs.

Respectfully submitted,

Richard Katz
3364 Parker Lane
East Stroudsburg, PA
18301

PRO SE

Dated: 06/15/15

*MLY TO SEAL




```
U.S. POSTAGE
    PAID
BARTONSVILLE,PA
    18321
JUN 15, '15
AMOUNT
  $8.90
00062367-04
```

1005    18501

**From:**
Richard Katz
3364 Parker Lane
East Stroudsburg, PA
18301

**To:**
Middle District Court
Middle District of Pennsylvania
PO Box 1148
235 N. Washington Avenue
Scranton, PA 18501- 1148

**ISIT US AT USPS.COM®**
RDER FREE SUPPLIES ONLINE



This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® shipments. Misuse may be a violation of federal law. This packaging is not for resale. EP14L © U.S. Postal Service February 2014. All rights reserved.