**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

---

**Richard Katz**

Plaintiff

Case No.: **3:15-cv-01187**

v.

**NATIONAL BOARD OF MEDICAL EXAMINERS (NBME)**
3750 Market Street
Philadelphia, PA 19104

and

**FEDERATION OF STATE MEDICAL BOARDS (FSMB)**
400 Fuller Wiser Road, Suite 300
Euless, Texas 76039-3855


Defendants

---

# TRAVERSE

Comes now the plaintiff Richard Katz, appearing pro se pursuant to the Federal Rules of Civil Procedure to file this Traverse in *opposition* to the defendants Answer And Affirmative Defenses and as grounds therefore will show:

1. That the defendants have filed an answer pursuant to Federal Rules of Civil Procedure Rule 8(c) Affirmative Defenses under General Rules of Pleading. Rule 8(c) adds that, "[i]n responding to a pleading, a party must affirmatively state any avoidance or affirmative defense[.]" (1)

While motions to strike under Rule 12(f) are generally disfavored by courts, a very good argument can be made that any answer that contains affirmative defenses that are insufficient, or contain immaterial allegations should be stricken to avoid having to litigate spurious issues. (2)

The plausibility standard is the remedy to the rampant pleading of meritless affirmative defenses in federal courts. Set forth in Bell Atlantic Corp v. Twombly (3), and later

clarified in Ashcroft v. Iqbal, (4) the plausibility standard requires pleadings to contain sufficient factual allegations that give rise to a plausible claim for relief.(5) In both Twombly and Iqbal, the Supreme Court used the plausibility approach to dismiss factually-deficient complaints.(6)  Applying the plausibility test to insufficient affirmative defenses produces the same result.(7)

The U.S. Supreme Court in Twiqbal announced that federal claimants may not plead in a cursory, conclusory fashion, but must instead supply enough facts in their pleadings to "'nudge[] [their] claims' . . . 'across the line from conceivable to plausible.'" (8)


2. Plaintiff is filing this traverse in order to specifically *deny* any critical material facts alleged in Defendants Affirmative Defense, or asserting additional material facts that establish a prima facie case.

3. The plaintiff's traverse, when viewed as a whole, must present the required prima facie case as required to avoid dismissal of information, plaintiff is not required to duplicate and rewrite every paragraph of defendant's Affirmative Defenses that are disagreed with, where the plaintiff identifies statement he takes issue with, he then articulates in his argument specific facts that dispute many of the facts listed by the defendants.

___

(1) of limitations; and waiver." FED.R.CIV.P. 8(c)(1).
(2) See Article Striking Affirmative Defenses under (12f) in the United District Court by Author Stan Burman. http://legaldocspro.net/blog/striking-affirmative-defenses-under-rule-12f/
(3) 550 U.S. 544 (2007).
(4) 556 U.S. 662 (2009).
(5) 550 U.S. at 559.
(6) Jones v. Taber, 648 F.2d 1201, 1203 (9th Cir. 1981)
(7) Martin v. Weaver, 666 F.2d 1013, 1019 (6th Cir. 1981).
(8) Iqbal, 556 U.S. at 680 (quoting Twombly, 550 U.S. at 570).

# RESPONSE TO NUMBERED DEFENSE ALLEGATIONS – PLAINTIFF TRAVERSE

**1-3** Deny.  Citing:

**Subject Matter Jurisdiction:**   Plaintiff may file suit in federal court. These cases are limited to:

1. claims arising from the U.S. Constitution or federal statutes (federal question jurisdiction)
2. claims brought by or against the federal government, and
3. claims in which all opposing parties live in different states and the amount in controversy exceeds $75,000 (diversity jurisdiction). A federal court obtains subject matter jurisdiction over a case if the case meets:

C**laims arising from the U.S. Constitution or federal statutes**.

Federal question jurisdiction is covered in 28 U.S.C.A. § 1331.

### 28 U.S. Code § 1343 - Civil rights and elective franchise

(a) The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

1. To recover damages for injury to his person or property, or because of the deprivation of any right or privilege of a citizen of the United States, by any act done in furtherance of any conspiracy mentioned in section 1985 of Title 42;

2. To recover damages from any person who fails to prevent or to aid in preventing any wrongs mentioned in section 1985 of Title 42 which he had knowledge were about to occur and power to prevent;

3. To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;

4. To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote.

---

(June 25, 1948, ch. 646, 62 Stat. 932; Sept. 3, 1954, ch. 1263, § 42, 68 Stat. 1241; Pub. L. 85–315, part III, § 121,Sept. 9, 1957, 71 Stat. 637; Pub. L. 96–170, § 2, Dec. 29, 1979, 93 Stat. 1284.)

**Federal: Declaratory Judgment Act, 28 U.S.C. §§2201-2202**

**§2201**. **Creation of remedy**

In a case of actual controversy within its jurisdiction, except with respect to Federal taxes . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

**§2202. Further relief**

Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment.

**28 U.S. Code § 2283 - Stay of State court proceedings**

A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments. (June 25, 1948, ch. 646, 62 Stat. 968.)

**Rule 65 FRCP:  Preliminary injunction.**

(1) **Notice.** No preliminary injunction shall be issued without reasonable notice to the adverse party. The application for preliminary injunction may be included in the complaint or may be made by motion.

(2) **Consolidation of hearing with trial on merits.** Before or after the commencement of the hearing of an application for a preliminary injunction, the court may order the trial of the action on the merits to be advanced and consolidated with the hearing of the application. Even when this consolidation is not ordered, any evidence received upon an application for a preliminary injunction which would be admissible upon the trial on the merits becomes part of the record on the trial and need not be repeated upon the trial. This subdivision (B)(2) shall be so construed and applied as to save to the parties any rights they may have to trial by jury.

_____


Personal jurisdiction either is "specific jurisdiction," arising out of a defendant's contacts with the forum state, or "general jurisdiction," **where the activities of the defendant anywhere give the forum state jurisdiction**. "General jurisdiction over a corporation is appropriate only when the corporation's contacts with the forum state **"are so constant and pervasive as to render it essentially at home' in the state."** Id. (quoting Daimler AG v. Bauman, 134 S. Ct. 746, 751 (2014) (quoting Goodyear Dunlop Tires Operations , S.A. v. Brown, 131 S. Ct. 2846, 2851 (2011))).

**4.** Deny.  Plaintiff will submit photo identification under seal as proof of his permanent residence in the State of Pennsylvania, United States of America if the Court so requests.

**5.** Admit in part and deny in part.  Admit to all of defendant's averments up to statement: "deny remaining of paragraph 5…".  Plaintiff marks with an asterisk * in his amended complaint a case whereby NBME/FSMB (together plaintiff's) sued Optima University (defendants) for copyright infringement.  This is to demonstrate to the Court that the two entities (NBME/FSMB) own and sponsor the United States Medical Licensing Exam and have appeared on a prior court docket together for matters involving the USMLE.

**6.** Admit

**7.** Deny. This is a matter of public record.

**8.** Admit

**9.** Deny.  Defendants make omissions of information presented in Exhibit 18.  Dr. Watt's presentation speaks for itself.  FSMB participates in <u>governance of composite committee and step committees, as well as maintaining  transcript annotations such as indeterminate behavior, and</u> <u>special testing accommodations for the USMLE.</u>  This is in addition to what defendants have chosen to acknowledge in their Answers and Affirmative Defenses.

**10.** Admit.

**11.** Admit in part and deny in part.  Admit that the Court respectfully should refer to the USMLE Bulletin that defendants included as Exhibit 3 as a corroborating reference.  Deny defendants averment.  Information presented by plaintiff with regard to Six Attempt Limit Policy was taken from the NBME Website and the electronic version of the USMLE Bulletin is accurately stated, respectively.

*The plaintiff respectfully emphasizes to the Court, that **NO** exception policy or provisions under "The Six Attempt Limit Rule" currently exists for individuals with documented disabilities under ADA/ADAAA in the USMLE Bulletin, and for that matter, (as admitted in defendant's answer) in any other location in NBME/FSMB's policy protocols.*

**12.** Deny.  Paragraph 12 is the same reiteration of the USMLE Bulletin description of the 'Six Attempt Limit Rule'.  Court may want to corroborate paragraph in plaintiff's amended complaint to what is stated in defendants Exhibit 3 for consistency.

**13.** Admit.

**14.** Admit.

**15.** Deny.  Plaintiff respectfully refers the Court to Document 1-6 Filed 06/17/15 Page 7 of 7, this documentation speaks for itself.

**16-17.** Admit.

**18.** Deny.  Plaintiff respectfully refers the Court to Document 1-6 Filed 06/17/15 Page 4 – 7, this documentation speaks for itself.

**Plaintiff denies that he took USMLE Step I <u>nine times</u>.  Plaintiff admits to have taken Step I <u>eight times</u> with a ninth attempt being an investigative field trial that did not count as an actual exam administration.  The fact that plaintiff was subjected to taking USMLE Step I eight times without exam accommodations is testimony to the fact that a disability exists within the meaning of the ADA/ADAAA.**

**19.** Deny.  Plaintiff denies defendants averment as *immaterial and impertinent.*

Plaintiff respectfully refers the Court to Document 1-2 Filed 06/17/15 Page 17-18 of 29 dated March 13, 2006.

The Compliance Officer for NBME in 2005-2006 was J. Abram Doane, MD, JD.  This individual is no longer employed by NBME/FSMB.

*The following <u>**inconsistencies**</u> exist in Mr. Doane's denial letter to plaintiff dated March 13, 2006:*

1. In first paragraph - Mr. Doane states: " We have carefully reviewed your request for test accommodations for the United States Medical Licensing Exam (USMLE) **Step 2 Clinicak Knowledge (CK)**, and Clinical Skills (CS) ……..''  (no such exam entity "<u>Clinicak</u> Knowledge" exists).

2.  In second paragraph - Mr. Doane states that plaintiff is NOT covered by the Americans with Disability Act (ADA).  A recent telephone conversation with Nabina Sinha Trial Attorney for the Department of Justice on July 23rd 2015 at 10:30 AM stated the contrary based on the Department's review of plaintiff's paperwork from 2005-2006.  Ms. Sinha stated that plaintiff  "is covered under the ADA."

The Defendants determination and denial of accommodations was discriminatory then and in light of the 2008  ADAAA  defendants can not continue their denial.  Pursuant to the ADAAA, plaintiff would be entitled to the accommodations of extended exam time on the USMLE.

3. Mr. Doane's letter makes no reference to William Lupardo's letter to NBME ( please refer to document 1-2 Filed 06/17/15 Page 22 of 29, see also defendant's exhibit 4 pg 49)

nor do they acknowledge that plaintiff had received exam accommodations in the past. Mr. Lupardo was the Director of Disability services for SUNY College at Old Westbury from 1995 through 2005. Mr. Lupardo submitted a letter on plaintiff's behalf in 2005 to NBME Disability Services stating that plaintiff had received accommodations during his pre-med coursework while at the college between 1994 and 1997 because of a documented disability.

4. Fifth paragraph – Mr. Doane states:

"Performance on standardized tests and attending medical school are not defined by the law or accompanying regulations as major life activities….."

In response to this argument plaintiff cites:

1997 <u>District Court opinion in Bartlett v. NY State Board of Bar Examiners</u> found that Test Taking is within the ambit of a "major life activity"

Whether Test-Taking is itself a major life activity or a crucial component of the major life activity of learning, the court concludes that a plaintiff with an impairment that substantially limits his ability to perform on tests has an actionable ADA claim.

5. Plaintiff has impairment of a major life activity substantially limiting him, he has difficulty thinking, concentrating, and reading. Plaintiff had the same difficulties back in 2005-2006 when he applied for exam accommodation to NBME Disability Services. Plaintiff suffers from Bipolar Disorder. Bipolar disorder often appears in the late teens or early adult years. At least half of all cases start before age 25. Some people have their first symptoms during childhood, while others may develop symptoms late in life. (9)

_____

(9)Kessler RC, Berglund P, Demler O, Jin R, Merikangas KR, Walters EE. Lifetime prevalence and age-of-onset distributions of DSM-IV disorders in the National Comorbidity Survey Replication. *Arch Gen Psychiatry.* 2005 Jun;62(6):593–602

Pursuant to the ADAAA and its regulatory guidance, the defendants are mandated to give considerable deference to plaintiff's evaluators and their recommendations to provide accommodations. The guidelines to the regulations promulgated by the ADA, provide that testing entities should accept without further inquiry, "documentation provided by a qualified professional who has made an individualized assessment of an applicant, that supports the need for modifications, accommodations or aid requested." See 28 C.F.R. pt. 36, App A, at 795. The guidance further explains that "reports from experts who have

personal familiarity with candidates **should take precedence over those from, for example reviewers from testing agencies, who have never personally met the candidate or conducted the requisite assessments for diagnosis and treatment."**

**J. Abram Doane Compliance Officer for Testing Programs never personally met Richard Katz and the "experts" that he consults in his March 2006 letter never met or evaluated Richard Katz. Moreover, Mr. Doane states in his March 13, 2006 letter first paragraph:**

**"We consulted <u>experts</u> in the fields of Learning Disability and Mental Disorders to assist us in reviewing the documentation."**

However, based on the defendant's Exhibit 4 pg 71 there were no **expert<u>s</u> (plural)** only **<u>ONE</u>** individual PsyD by the name of Catherine Farmer who performed the review of plaintiff's file in 2006. This is evident because no other evaluation by "additional experts" exists in defendant's Exhibit 4.

**<u>Catherine Farmer's review letter of Richard Katz addressed to J. Abram Doane Compliance Officer for Testing Programs dated February 2, 2006 (please see defense exhibit 4 pg 71).</u>**

*Catherine Farmer replaced J. Abram Doane as Compliance Officer for NBME Disability Services. Ms. Farmer's internal affiliation to NBME in 2006 warrants further investigation. Furthermore, Ms. Farmer (as Compliance Officer not as Disability Reviewer) never responded to Mr. Katz's second appeal that was addressed to disability services, regarding the 'Six Attempt Limit Rule' dated Sunday April 20th 2014 at 8:21 PM via email (please see document 1-4 filed 06/17/15 pgs. 2 to 5 and defendant's exhibit 4 pg 89). This also warrants further investigation.*

*1. Catherine Farmer admits in her first paragraph:*

*"As you know, <u>I have not met or examined Mr. Katz</u>. My recommendation is based upon my review of the request and supporting documentation submitted by and on behalf of Mr. Katz."*

If no in-person evaluation occurred by Catherine Farmer in reviewing Mr. Katz's disability claim, then coining a *gambling* idiom, **"all bets are off"** with regard to Catherine Farmer's review of Mr. Katz in 2006 and should be considered null and void. *This is because two psychiatrists and two clinical psychologists personally evaluated Mr. Katz, on numerous occasions and based on their professional opinions, Mr. Katz was disabled under the meaning of the ADA. As a result, each expert independently recommended that additional testing time was warranted for Mr. Katz.* Mr. Katz's caregivers should have been given proper deference by NBME/FSMB. **NBME Disability Services decision should <u>NOT</u> have been based solely on Catherine Farmer's opinion in 2006. Mr. Katz's documentation already qualified for**

**accommodations based on the opinion of two clinical psychologists and two psychiatrists. Catherine Farmer, PsyD did not have the right to discount or override the clinical judgement of Mr. Katz's evaluating Clinicians.**

In conclusion, and employing another *gambling* idiom, two clinical psychologists plus two psychiatrists authority after personally examining Mr. Katz **_trumps_** ONE PsyD who never met or evaluated Mr. Katz.

In *Rush v. NBME*, a second-year medical student with reading and visual processing skills impairments requested and was denied extended time on USMLE Step 1 (10). The court found that the student was substantially limited in his ability to read and process information compared to most people. The court also ruled that the student would suffer an irreparable injury if the requested injunction for additional time was denied. Plaintiff was a medical student with a learning disability who requested and was denied double time in which to take the U.S. Medical Licensing Exam. The court found that Rush was an individual with a disability because he was substantially limited in the major life activities of reading and learning compared to most people. **THE COURT, <u>CRITICAL OF THE BOARD'S EXPERTS,</u> granted an injunction requiring the NBME to provide Rush with the accommodations of double time for the exam, stating that without such accommodations the exam would test his disability and not his mastery of the subject matter.**

**https://www.ahead.org/node/238**

In another NBME case involving licensing testing accommodations, *Jenkins v. National Board of Medical Examiners,* (11) the court applied the ADA Amendments Act ("ADAAA") **retroactively** to reverse the district court's finding that the student did not have a disability. The plaintiff had a reading disorder and sought an accommodation of additional time on a medical licensing examination. Relying on Supreme Court precedent that took a narrow view of the definition of disability, the trial court found that the plaintiff did not have an ADA disability. On an appeal taken after the ADAAA was enacted, the Sixth Circuit Court of Appeals reversed and held that the ADAAA should be applied **retroactively** where the only remedy sought is prospective injunctive relief, *i.e.*, a request for future accommodations rather than money damages for past acts. Jenkins was diagnosed with a reading disability at a young age, had received accommodations at each stage of his education, and had received extra time to take the ACT and MCAT examinations. NBME denied his request for accommodations. The Sixth Circuit advised the district court that if, on remand, the district court found that Jenkins had an ADA disability:

The court must still determine specifically what NBME must do to comply with the requirement that a professional licensing board offer its examination "in a place and

manner accessible to persons with disabilities. 42 U.S.C. § 12189. This nuanced determination is not governed by previous, voluntarily provided accommodations that Jenkins has received, nor necessarily by what accommodations were required under the narrower previous definition of disability.

_____

(10) *Rush*, 268 F.Supp.2d 673, 678 (N.D. TX 2003).

(11) *Jenkins v. Nat'l Bd. of Med. Exam'rs*, No. 08-5731, 2009 WL 331638 (6th Cir. Feb. 11, 2009).



Plaintiff respectfully refers the Court to document 1-2 Filed 06/17/15 Page 19 of 29 EEG report from New York Hospital dated April 22nd, 1981 stating explicitly that plaintiff suffered from left sided focal seizures during childhood.

**20.** Deny.  Plaintiff provided psychoeducational reports, psychiatric and psychological evaluations from caregivers who specified the existence of multiple psychiatric disorders.  Documentation justified the need for extended exam time and exam accommodations under the ADA. Plaintiff respectfully refers the court to document 1-2 Filed 06/17/15 Pages 6-16 of 29.

Because of defendant's negligence, plaintiff who, through no fault of his own, was never given the chance to get the modifications that he required for success.  Instead, plaintiff has been in a state of perpetual limbo for the last ten years and has suffered psychological effects due to defendant's negligence.

**21.** Admit in part and deny in part.

Admit that plaintiff did submit a letter and documents to NBME, as well as to the Educational Commission for Foreign Medical Graduates (ECFMG) on April 1st, 2014 stating that the new *"Six Attempt Limit Rule" makes no provisions for individuals with a documented disability under the ADA/ADAAA.*  These materials were forwarded to the office of the USMLE Secretariat for review and subsequently denied by an individual named Amy Bueno.  As already established (admitted in defendants Answer), the USMLE program is owned and operated by the two defendants named on this traverse.

Deny.  The legitimacy of the documentation cited above in the court docket takes precedence over the NBME Compliance Officer J. Abram Doane, and the one individual "expert" PsyD Catherine Farmer he consulted in 2005-2006. The term "Additional Documentation" designated by plaintiff was and still is justified under the meaning of the ADA/ADAAA for which plaintiff qualified and still qualifies present day.

**22.** Deny.  Based on the ADAAA of 2008 defendants denial of accommodation in 2005-2006 was discriminatory, and in light of recent psychiatric evaluations from caregivers

continue to be discriminatory. Defendants made no acknowledgment of plaintiff's psychiatric diagnosis that required further evaluation and consideration under their lack of current policy. This displays defendant's arrogance considering they entered into an established agreement with the US Department of Justice in 2011 (please see document 7 filed 06/242015 pgs 1-11) for making excessive documentation requests and for having a proclivity for denying legitimate disability claims for exam accommodations on USMLE exams in the past.

Private entities, in the context of higher education and when providing licensing, must comply with the general prohibition against discrimination in the "full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations" under Section 12182 of Title III (11) Failing to make reasonable modifications in policies, practices, or procedures to accommodate a person's disability-related accommodation request is discrimination, unless the entity can show that making the changes would cause undue hardship or "fundamentally alter the nature of [its] services." (12)

The most contested provision of Title III in higher education and licensing accommodation litigation is Section 12189: "Any person that offers examinations or courses related to applications, licensing, certification, or credentialing for secondary or post-secondary education, professional, or trade purposes shall offer such examinations or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals." The Department of Justice's ("DOJ") Title III regulations further direct private entities to offer examinations and courses in a manner that "accurately reflects the individual's aptitude or achievement level or whatever other factor the examination purports to measure, rather than reflecting the individual's [impairment]." Additionally, the regulations specifically apply the ADA anti-discrimination requirements to: (1) administrative methods; (2) eligibility requirements; (3) modifications to policies, practices and procedures, and (4) auxiliary aids and services.

_____

(11) 42 U.S.C. § 12189.

(12) *Id.*


**23.** Admit

**24.** Deny. Plaintiff respectfully directs the court to Document 7 Filed 06/24/15 Page 1 of 11. United States of America v. NBME. DJ # 202-16-181 and Exhibit 11 Filed 07/13/15 Page 1 of 3.

**25-27.** Lack knowledge and information sufficient to form a belief as to the truth of answer 25-27.

### Traverse to Exhaustion of Legal Remedies:

**Deny.**   Plaintiff stands by every single averment stated under *Exhaustion of Legal Remedies* in his Amended Complaint.  Plaintiff respectfully directs the Court to Document 1-4 Filed 06/17/15 Page 2 to 5 which speaks for itself.

### Traverse to Legal Clams

**Deny.**   Plaintiff stands by every single averment stated under *Legal Claims* in his Amended Complaint.  Plaintiff respectfully directs the Court to:

- Document 1-1 Filed 06/17/15 Page 1 to 2
- Document 1-2 Filed 06/17/15 Page 1 of 29

of court docket, which speaks for itself.

### Traverse to Answers to Prayer For Relief

Deny.  Plaintiff denies each an every averment stated by defendants in Answer **To Prayer For Relief.**

### Traverse to Defendents Affirmative Defenses

**FIRST AFFIRMATIVE DEFENSE**

Deny.  Plaintiff clearly states in his amended complaint a claim for which relief can be granted.

**SECOND AFFIRMATIVE DEFENSE**

Lack knowledge and information sufficient to form a belief as to the truth of the Second Affirmative Defense.  This is a conclusion that needs to be determined by this Court and not the defendants.

**THIRD AFFIRMATIVE DEFENSE**

Deny.

CIVIL MONETARY PENALTIES UNDER TITLE III

On March 28, 2014, the Department of Justice issued a final Rule that adjusts for inflation the civil monetary penalties assessed or enforced by the Civil Rights Division, including civil penalties available under title III of the Americans with Disabilities Act of 1990 (ADA). For the ADA, this adjustment increases the maximum civil penalty for a first violation under title III from $55,000 to $75,000; for a subsequent violation the new maximum is $150,000. The new maximums apply only to violations occurring on or after April 28, 2014.

This Final Rule is a non-discretionary agency action made pursuant to Section 4 of the Federal Civil Penalties Adjustment Act of 1990, as amended (Adjustment Act), which mandates the Attorney General to adjust for inflation the civil penalties assessed or enforced by the Department of Justice. The amounts of the adjustment were determined according to a specific mathematical formula set forth in Section 5 of the Adjustment Act. The previous adjustment under the ADA occurred in 1999.

http://www.ada.gov/civil_penalties_2014.htm

**FOURTH AFFIRMATIVE DEFENSE**

**Deny. As stated in his Amended Complaint** plaintiff has been and will continue to be irreparably injured by the conduct of the defendants. Plaintiff seeks declaratory and injunctive relief so he may continue on his path of medicine as he has been hindered since 2006 by defendants. NBME/FSMB was negligent in their actions and caused psychological injury resulting in a psychotic break and a psychiatric in-patient admission in 2013 due to the duress of the 'Six Attempt Limit Rule'. By not having a provision in place under the ADA/ADAAA for the 'Six Attempt Limit Rule' policy they precipitated injury in an already psychologically vulnerable individual. Moreover, by subjecting plaintiff to unnecessary stress by not granting the accommodations that he qualified under the ADA in 2006, based solely on one NBME reviewer, plaintiff was damaged psychologically by the repeated multiple failures on the USMLE exams.

Plaintiff will be submitting additional documentation under seal to this Court when it becomes available.  This additional documentation will support plaintiff's claim of the damages he suffered as a result of defendants negligence.


## FIFTH AFFIRMATIVE DEFENSE

Lack knowledge and information to form a belief as to the legitimacy and truth of the Fifth Affirmative Defense.


## SIXTH AFFIRMATIVE DEFENSE

Lack knowledge and information to form a belief as to the legitimacy and truth of the Sixth Affirmative Defense.


## SEVENTH AFFIRMATIVE DEFENSE

Deny.

**Defendants have asserted mere legal conclusions as plead, that do not contain sufficient factual support based on the intricacies and complexities of this case.** Plaintiff has only acted in good faith and has fought for his Civil Rights.  The defendants have the burden of proof to show otherwise.


## EIGHTH AFFIRMATIVE DEFENSE

Deny.

Plaintiff is well within his two year statute of limitation to file a claim for "The Six Attempt Limit Rule" imposed by defendant's.  Moreover, based on the fact that provisions currently DO NOT exist for the Six Attempt Limit Rule, as defendant's admit in their Answer and Affirmative Defenses, this may be an opportunity for policy development that aligns with the ADA/ADAAA program that will benefit future USMLE candidates with disabilities.  Future candidates with disabilities should not have to endure the inappropriate treatment and harm that plaintiff was subjected to.

**As stated in his Amended Complaint:**

**Plaintiff's request to modify the Six Attempt Limit Policy, is a reasonable accommodation and does not substantially modify the USMLE's standards.  See e.g. Doe v. Samuel Merritt University, 921 F. Supp. 2D, 958 (N.D. Cal. 2013) ( Preliminary Injunction granted allowing student with a disability to take a**

**Podiatric licensing examination unlimted times as an accommodation to University's policy providing for a three exam limit.)**

**With respect to plaintiff's disability claim and application submitted to NBME in 2005-2006 the doctrine of Equitable Tolling is applicable.**

**The federal equitable tolling doctrine holds tolling of the statute of limitations.**

**<u>Equitable Rules of Accrual or Tolling:</u>**

**1. The equitable tolling exception extends the statute of limitations when a plaintiff pursues one of many possible remedies in good faith.**

**2. The fraudulent concealment exception extends the clock when a defendant's deceptive conduct causes the time on a claim to expire.**

**3. The <u>continuing violation exception</u> aggregates a series of wrongs and applies a single limitations period beginning after the commission of the last wrong suffered. (Previous 2005-2006 application to NBME/FSMB under ADA plus "Six Attempt Limit Rule" violation of ADA/ADAAA)**

**4. The delayed discovery exception postpones accrual of the limitations period until the plaintiff discovers, or has reason to discover, the cause of action**

Prior to the ADAAA the NBME and other similar testing entities had a penchant for denying accommodations for students in higher education on the basis that they were not diagnosed at an earlier age or that they performed well academically.  In passing the ADAAA, Congress targeted these testing entities noting in the Congressional Record: 2 Cong Rec 8296 (Sept 17, 2008).

"Equitable tolling functions to stop the statute of limitations from running where the claim's accrual date has already passed." Oshiver v. Levin, 38 F.3d 1380, 1387 (3d Cir. 1994). Equitable tolling is appropriate "only when the 'principles of equity would make the rigid application of a limitation period unfair.'" Jones v. Morton, 195 F.3d 153, 159 (3d Cir.1999). "Although the Pennsylvania statute of limitation is applied to the federal claims, federal tolling doctrine may be applicable to determine whether . . . federal claims are timely." Lake v. Arnold, 232 F.3d 360, 366 (3d Cir. 2000).

"In addition, 'equitable tolling requires the plaintiff to demonstrate that he or she could not, by the exercise of reasonable diligence, have discovered essential information bearing on his or her claim.'" Ruehl, 500 F.3d at 384 (quoting In re Mushroom Transp. Co., 382 F.3d 325, 339 (3d Cir. 2004)).

A variety of situations can give rise to equitable tolling, including "extraordinary circumstances beyond the [claimant's] control [that] made it impossible to file the claims on time."*Harris*, 209 F.3d at 330; *accord United States v. Sosa*,364 F.3d 507, 512 (4th Cir. 2004) (quoting *Rouse v. Lee*,339 F.3d 238, 246 (4th Cir. 2003) (en banc)).

*In Scherr v. Marriott International, Inc.*, ___ F.3d ___, 2013 WL 57857 (7th Cir., Jan. 7, 2013). The case was a rather straightforward hotel-accessibility case. In a renovation in 2004, the defendant had added a spring-hinged door closer to the bathroom doors in a number of its Courtyard by Marriott hotels. Scherr uses a walker for mobility. She visited one of defendant's renovated hotels, in Overland Park, Kansas, in 2006, and was injured when the spring-assisted door closed too quickly on her. In this lawsuit, filed in 2010, Scherr sought injunctive relief under Title III of the ADA to remove the spring-hinged door closers in all of defendants' hotels that have them. The district court concluded that Scherr had standing to challenge accessibility at the Overland Park hotel (as she has lots of family in the Overland Park area who live near the Courtyard hotel, and she often visits) but not at the other hotels (as she made no similar showing that she would ever visit them). The district court also concluded that Scherr's suit was not barred by the statute of limitations. But the district court held that the spring-hinged door closer, while not compliant with the Attorney General's 1991 ADA regulations, did comply with the Attorney General's 2010 ADA regulations. Accordingly, the court granted judgment to the defendant.

The Seventh Circuit affirmed in all respects. The most legally significant aspect of the Seventh Circuit's opinion is its discussion of the statute of limitations. The court concluded that Illinois's two-year personal-injury statute of limitations applied to Scherr's claim. But even though Scherr filed her suit more than two years after she encountered the barrier she challenged, the court nonetheless held that the statute of limitations did not bar the suit. Because Title III authorizes plaintiffs to seek injunctive relief for actual or threatened violations of the statute, the court concluded that the existence of unlawful barriers to access is a continuing violation of the statute that continues to impose a fresh injury.

**Whether an unlawful barrier is physical or an administrative policy under Title III of the ADA is immaterial if a violation is continuous and ongoing.  According to the Congressional Record: 2 Cong Rec 8296 (Sept 17, 2008) Prior to 2008 Testing entities like NBME/FSMB had a predilection for denying candidates with legitimate disability claims for accommodations on exams.  Even after the ADAAA in 2008 the NBME/FSMB continued to have a proclivity for denying disability claims for testing accommodations ( please refer to Document 7 Filed 06/24/15 Page 1 to 11 and Document 11 Filed 07/13/15 Page 1 to 3).**

**Can mental illness ever excuse the failure to timely file a notice of appeal?**
Mental illness can constitute an "extraordinary circumstance" warranting equitable

tolling. The court consequently sets out a two-part test:

(1) First, a petitioner must show his mental impairment was an "extraordinary circumstance" beyond his control, see Holland, 130 S. Ct. at 2562, by demonstrating the impairment was so severe that either:

(a) petitioner was unable rationally or factually to personally understand the need to timely file, or
(b) petitioner's mental state rendered him unable personally to prepare a habeas petition and effectuate its filing.

(2) Second, the petitioner must show diligence in pursuing the claims to the extent he could understand them, but that the mental impairment made it impossible to meet the filing deadline under the totality of the circumstances, including reasonably available access to assistance.

**The First Circuit has established that mental incapacity is a suitable basis upon which to equitably toll a statute of limitations. Mental Illness has also warranted Equitable Tolling outside of the two-part test.**

See Meléndez-Arroyo v. Cutler-Hammer de P.R., Co., 273 F.3d 30, 39 (1st Cir.2001) (remanding for factual inquiry into whether plaintiff's mental state warranted equitable tolling); Nunnally, 996 F.2d at 5 (holding that 5 U.S.C. § 7703(b)(2) can be tolled due to mental incapacity); Oropallo v. United States, 994 F.2d 25, 28 n. 2 (1st Cir.1993) (holding that 26 U.S.C. § 6511 may not be equitably tolled, but that mental incapacity is a grounds for tolling when available). The Second, Sixth, Seventh, Ninth and D.C. Circuits have held the same in a variety of circumstances. See Zerilli-Edelglass v. New York City Transit Auth., 333 F.3d 74, 80 (2d Cir.2003) ("Equitable tolling is generally considered appropriate where .a plaintiff's medical condition or mental impairment prevented her from proceeding in a timely fashion.") (citations omitted); Chapman v. ChoiceCare Long Island Term Disability Plan, 288 F.3d 506, 514 (2d Cir.2002) (recognizing mental incapacity as a basis for equitable tolling under ERISA); Brown v. Parkchester S. Condos., 287 F.3d 58, 60 (2d Cir.2002) (Title VII case finding that plaintiff proffered sufficient evidence to warrant a hearing on whether her mental incapacity required tolling); Boos v. Runyon, 201 F.3d 178, 184 (2d Cir.2000) (holding that 29 C.F.R. § 1614.105(a)(1) is subject to equitable tolling based on mental illness); Canales v. Sullivan, 936 F.2d 755, 756 (2d Cir.1991) (holding that 42 U.S.C. § 405(g) may be equitably tolled based on a plaintiff's mental impairment); Cantrell v. Knoxville Cmty. Dev. Corp., 60 F.3d 1177, 1180 (6th Cir.1995) (holding that attorney's mental illness may justify equitable tolling); Miller v. Runyon, 77 F.3d 189, 191 (7th Cir.1996) (finding that 29 U.S.C. § 791 may be tolled "if the plaintiff because of disability, irremediable lack of information, or other circumstances beyond his control just cannot reasonably be expected to sue in time"); Stoll v. Runyon, 165 F.3d 1238, 1242 (9th Cir.1999) (holding

that mental incapacity is an extraordinary circumstance that may warrant equitable tolling); Smith-Haynie v. Dist. of Columbia, 155 F.3d 575, 579 (D.C.Cir.1998) (holding that the doctrine of equitable tolling "can fairly be read to encompass cases where a plaintiff has been unable to [timely file] because of disability").

- See more at: http://caselaw.findlaw.com/us-federal-circuit/1053548.html#sthash.BLeQt2IG.dpuf

**In conclusion:**

1. Plaintiff has been misled and was lulled into inaction by defendants denial in 2006, this **prevented plaintiff from asserting his rights until discovery** of his diagnosis in March of 2013 (plaintiff's disability clam in 2005-2006 was never presented to experts " in the fields of Learning Disability and Mental Disorders" as stated in the March 13, 2006 denial letter.  Plaintiff's file was only reviewed by one sole reviewer by the name of Catherine Farmer.  Prior to 2008 testing organizations like NBME/FSMB had a penchant for denying claims citing Congressional Record: 2 Cong Rec 8296 (Sept 17, 2008).

2. **The pattern remained obscure in the face of plaintiff's diligence in seeking to identify it "despite all due diligence,** he was unable to obtain vital information bearing on the existence of his claim." In other words, the question for equitable tolling is "whether a reasonable person in the plaintiff's position would have been aware" that his rights had been violated. In this case plaintiff has been contending with mental illness.

3. The <u>continuing violation exception</u> aggregates a series of wrongs and applies a single limitations period beginning after the commission of the **last wrong suffered** (Six Attempt Limit").  This sets the statute based on the USMLE Secretariat's denial letter dated April 17, 2014 (document 1-4 Filed 06/17/15 Page 1 of 5) to April 17, 2016.

4. The **delayed discovery exception postpones accrual of the limitations period until** the plaintiff discovers, or has reason to discover, the cause of action. By defendants submission of Exhibit 4 plaintiff is better able to assess what took place administratively behind closed doors in the NBME/FSMB Organization in 2005-2006.  Plaintiff requested a copy of these records on January 27, 2014 (please see court docket document 1-5 Filed 06/17/15 Pgs, 1 to 2 ) but was denied a copy of his file by Catherine Farmer.

5. In *Scherr v. Marriott International, Inc,* Title III authorized plaintiffs to seek injunctive relief for actual or threatened violations of the statute, the court concluded that the **existence of unlawful barriers to access is a continuing violation of the statute that continues to impose a fresh injury**.  Because NO policy under the ADA/ADAAA currently exists by defendants for the "Six Attempt Limit Rule" plaintiff cites this precedent.

6. **To obtain the benefit of equitable tolling, a plaintiff must show that the failure to file was the direct result of a mental illness that rendered him incapable of "rational**

**thought or deliberate decision making,"** Meléndez-Arroyo, 273 F.3d at 37, or "incapable of handling [his] own affairs or unable to function [in] society," Smith-Haynie, 155 F.3d at 580.

Plaintiff was not properly treated for his bipolar disorder until March of 2013. This is because plaintiff was first diagnosed with bipolar at this time. Prior to this time, plaintiff was lacking in insight and judgment because he was not receiving proper medications to address his disorder.

### NINTH AFFIRMATVE DEFENSE:

Plaintiff respectfully defers to this Court and the U.S. Department of Justice to determine what is fair and equitable in this case citing the following:

Under Title III, only the United States Attorney General may seek damages against a covered entity. 42 U.S.C. § 12188(b)(2)(B); see Wander v. Kaus, 304 F.3d 856, 858 (9th Cir. 2002).

### TENTH AFFIRMATIVE DEFENSE:

Plaintiff respectfully defers to the U.S. Department of Justice policies in response to defendants Tenth Affirmative Defense.

### ELEVENTH AFFIRMATIVE DEFENSE:

Admit

### TWELFTH AFFIRMATIVE DEFENSE:

Lack knowledge and information to form a belief as to the legitimacy and truth of the Twelfth Affirmative Defense.

DATED this  8th   day of  September,   2015 .

Respectfully submitted,

/s/ Richard Katz
Richard Katz
*pro se*

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing Traverse has been served upon:

Michael Sacks
Hamburg & Golden, P.C.
1601 Market Street Suite 3310
Philadelphia PA 19103-1443

Date:  September 8, 2015

/s/ Richard Katz_____

Richard Katz