```
         IN THE UNITED STATES DISTRICT COURT
       FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
```

| | | |
|---|---|---|
| RICHARD KATZ           :  |  | |
|     Plaintiff       : | CIVIL ACTION | |
|                                  : | | |
|     v.                      : | | |
|                                    : | | |
| NATIONAL BOARD OF MEDICAL  : | NO. 3:15-cv-1187 | |
| EXAMINERS               : | | |
|                                  : | | |
|    and                     : | | |
|                                  : | | |
| FEDERATION OF STATE MEDICAL BOARDS : | | |
|     Defendants     : | | |

**JOINT CASE MANAGEMENT PLAN**

Having complied with the meet and confer requirements set forth in the LOCAL RULES, or with any orders specifically modifying their application in the above-captioned matter, the parties hereby submit the following Joint Case Management Plan.

1. **Principal Issues**

   1.1 **PLAINTIFF'S SUMMARY OF THE CASE:**

   *This is a disability access and discrimination case, filed in June 2015, alleging that there is an administrative barrier and discriminatory policies in place at the National Board of Medical Examiners (NBME) and the Federation of State Medical Boards (FSMB) together constituting the USMLE Organization. Plaintiff is an individual with a disability. This barrier denies full and equal access to in violation of title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181.*

   ***Barrier:*** *In 2011 the USMLE Organization (NBME/FSMB) announced that they will place an exam limit to the number of times examinees can take to pass a USMLE*

*Step Exam. The previous policy allowed examinees to take the exam as many times as they needed until passing. In creating this so-called "Six Attempt Limit" rule the NBME/FSMB made NO concessions in their policy development for people with documented disabilities under the ADA program. This is an access violation that does not comply with accessibility regulations under Title III of the ADA. This is in violation to the specifications promulgated by the Department of Justice (the "DOJ Standards") who have been investigating plaintiff's claims since November 28, 2014. NBME and FSMB are subject to the requirements of Section 309 of the ADA of 1990, 42 U.S.C. § 12189, and the implementing regulations, 28 C.F.R. § 36.309. Private entities that administer examinations related to professional licensing must offer the examination in a place and manner accessible to persons with disabilities. Plaintiff sent an appeal to NBME Disability Services on April 1st 2014, requesting that they modify their "Six Attempt Limit " policy as a reasonable accommodation under the ADA (Doe v. Samuel Merritt University, 921 F. Supp. 2d. 958 (N.D. Cal. 2013) (Preliminary Injunction granted allowing student with a disability to take a podiatric licensing examination unlimited times as an accommodation to University's policy providing for a three exam limit.). Defendant's denied this request.*

*Moreover, a second dispute exists in this case, involving plaintiff's discrimination by NBME Disability Services in 2005 through 2006. Plaintiff had applied for exam accommodations for USMLE Exams during this period. NBME Disability Services found that the supporting documentation submitted by plaintiff did not demonstrate that he is currently substantially limited in a major life activity as compared to most people, so as to be disabled within the meaning of the ADA. Plaintiff had submitted sufficient documentation to demonstrate that he is a person with a disability (Processing Speed Disorder) within the meaning of the ADA, and that he was entitled to reasonable testing accommodations to take*

*his USMLE Exams in 2005-2006. Catherine Farmer. PsyD a reviewer for the NBME in 2006 (now the NBME Compliance Officer for Disability Services) was the sole evaluator of plaintiff's file of psychoeducational reports, evaluations, and assessments from psychiatrists and clinical psychologists that personally examined plaintiff on numerous occasions. The Compliance Officer at the time J. Abram Doane stated in plaintiff's denial letter dated March 13, 2006:*

*"We consulted experts in the field of Learning Disability and Mental Disorders to assist us in reviewing the documentation."*

*In actuality, there were no "reviewers" just one individual PsyD by the name of Catherine Farmer.*

*Ms. Farmer denied plaintiff's application for accommodations in 2006 despite ever meeting or evaluating plaintiff. Furthermore, plaintiff provided additional documentation to NBME Disability Services on April 1st 2014 in support of his request for accommodations on the USMLE Step I exam documenting accommodations he received in undergraduate school, graduate school and medical school.*

*Furthermore, with respect to plaintiff's disability claim and application submitted to NBME in 2005-2006 the doctrine of Equitable Tolling is applicable.*

*The federal equitable tolling doctrine holds tolling of the statute of limitations.*

*<u>Equitable Rules of Accrual or Tolling:</u>*

*1. The equitable tolling exception extends the statute of limitations when a plaintiff pursues one of many possible remedies in good faith.*

*2. The fraudulent concealment exception extends the clock when a defendant's deceptive conduct causes the time on a claim to expire.*

*3. The <u>continuing violation exception</u> aggregates a series of wrongs and applies a single limitations period beginning after the commission of the last wrong suffered.*
*(Previous 2005-2006 application to NBME/FSMB under ADA plus "Six Attempt Limit Rule" violation of ADA/ADAAA)*

*4. The delayed discovery exception postpones accrual of the limitations period until the plaintiff discovers, or has reason to discover, the cause of action*

*Prior to the ADAAA the NBME and other similar testing entities had a penchant for denying accommodations for students in higher education on the basis that they were not diagnosed at an earlier age or that they performed well academically. In passing the ADAAA, Congress targeted these testing entities noting in the Congressional Record: 2 Cong Rec 8296 (Sept 17, 2008)*

*Can mental illness ever excuse the failure to timely file a notice of appeal?*
*Mental illness can constitute an "extraordinary circumstance" warranting equitable tolling. The court consequently sets out a two-part test:*

*(1) First, a petitioner must show his mental impairment was an "extraordinary circumstance" beyond his control, see Holland, 130 S. Ct. at 2562, by demonstrating the impairment was so severe that either:*

*(a) petitioner was unable rationally or factually to personally understand the need to timely file, or*
*(b) petitioner's mental state rendered him unable personally to prepare a habeas petition and effectuate its filing.*

*(2) Second, the petitioner must show diligence in pursuing the claims to the extent he could understand them, but that the mental impairment made it impossible to meet the filing deadline under the totality of the circumstances, including reasonably available access to assistance.*

*The First Circuit has established that mental incapacity is a suitable basis upon which to equitably toll a statute of limitations. Mental Illness has also warranted Equitable Tolling outside of the two-part test.*

*Citing:*

*See Meléndez-Arroyo v. Cutler-Hammer de P.R., Co., 273 F.3d 30, 39 (1st Cir.2001) (remanding for factual inquiry into whether plaintiff's mental state warranted equitable tolling); Nunnally, 996 F.2d at 5 (holding that 5 U.S.C. § 7703(b)(2) can be tolled due to mental incapacity); Oropallo v. United States, 994 F.2d 25, 28 n. 2 (1st Cir.1993) (holding that 26 U.S.C. § 6511 may not be equitably tolled, but that mental incapacity is a grounds for tolling when available). The Second, Sixth, Seventh, Ninth and D.C. Circuits have held the same in a variety of circumstances. See Zerilli-Edelglass v. New York City Transit Auth., 333 F.3d 74, 80 (2d Cir.2003) ("Equitable tolling is generally considered appropriate where . a plaintiff's medical condition or mental impairment prevented her from proceeding in a timely fashion.") (citations omitted); Chapman v. ChoiceCare Long Island Term Disability Plan, 288 F.3d 506, 514 (2d Cir.2002) (recognizing mental incapacity as a basis for equitable tolling under ERISA); Brown v. Parkchester S. Condos., 287 F.3d 58, 60 (2d Cir.2002) (Title VII case finding that plaintiff proffered sufficient evidence to warrant a hearing on whether her mental incapacity required tolling); Boos v. Runyon, 201 F.3d 178, 184 (2d Cir.2000) (holding that 29 C.F.R. § 1614.105(a)(1) is subject to equitable tolling based on mental illness); Canales v. Sullivan, 936 F.2d 755, 756 (2d Cir.1991) (holding that 42 U.S.C. § 405(g) may be equitably tolled based on a plaintiff's mental impairment); Cantrell v. Knoxville Cmty. Dev. Corp., 60 F.3d 1177, 1180 (6th Cir.1995) (holding that attorney's mental illness may justify equitable tolling); Miller v. Runyon, 77 F.3d 189, 191 (7th Cir.1996) (finding that 29 U.S.C. § 791 may be tolled "if the plaintiff because of disability, irremediable lack of information, or other circumstances beyond his control just cannot reasonably be expected to sue in time"); Stoll v. Runyon, 165 F.3d 1238, 1242 (9th Cir.1999) (holding that mental incapacity is an extraordinary circumstance that may warrant*

*equitable tolling); Smith-Haynie v. Dist. of Columbia, 155 F.3d 575, 579 (D.C.Cir.1998) (holding that the doctrine of equitable tolling "can fairly be read to encompass cases where a plaintiff has been unable to [timely file] because of disability").*

*In conclusion:*

*1. Plaintiff has been misled and was lulled into inaction by defendants denial in 2006, this prevented plaintiff from asserting his rights until discovery of his diagnosis of Bipolar Disorder in March of 2013 (plaintiff's disability clam in 2005-2006 was never presented to experts " in the fields of Learning Disability and Mental Disorders" as stated in the March 13, 2006 denial letter. Plaintiff's file was only reviewed by one sole reviewer by the name of Catherine Farmer. Prior to 2008 testing organizations like NBME/FSMB had a penchant for denying claims citing Congressional Record: 2 Cong Rec 8296 (Sept 17, 2008).*

*2. The pattern remained obscure in the face of plaintiff's diligence in seeking to identify it "despite all due diligence, he was unable to obtain vital information bearing on the existence of his claim." In other words, the question for equitable tolling is "whether a reasonable person in the plaintiff's position would have been aware" that his rights had been violated. In this case plaintiff has been contending and battling mental illness.*

*3. The continuing violation exception aggregates a series of wrongs and applies a single limitations period beginning after the commission of the last wrong suffered ("Six Attempt Limit"). This sets the statute based on the USMLE Secretariat's denial letter dated April 17, 2014 (document 1-4 Filed 06/17/15 Page 1 of 5) to April 17, 2016.*

*4. The delayed discovery exception postpones accrual of the limitations period until the plaintiff discovers, or has reason to discover, the cause of action. By defendants submission of Exhibit 4*

*plaintiff is better able to assess what took place administratively behind closed doors in the NBME/FSMB Organization in 2005-2006. Plaintiff requested a copy of these records on January 27, 2014 (please see court docket document 1-5 Filed 06/17/15 Pgs, 1 to 2 ) but was denied a copy of his file by Catherine Farmer.*

*5. In Scherr v. Marriott International, Inc, Title III authorized plaintiffs to seek injunctive relief for actual or threatened violations of the statute, the court concluded that the existence of unlawful barriers to access is a continuing violation of the statute that continues to impose a fresh injury. Because NO policy under the ADA/ADAAA currently exists by defendants for the "Six Attempt Limit " policy plaintiff cites this precedent.*

*6. To obtain the benefit of equitable tolling, a plaintiff must show that the failure to file was the direct result of a mental illness that rendered him incapable of "rational thought or deliberate decision making," Meléndez-Arroyo, 273 F.3d at 37, or "incapable of handling [his] own affairs or unable to function [in] society," Smith-Haynie, 155 F.3d at 580.*

*Plaintiff was not properly treated for his bipolar disorder until March of 2013. This is because plaintiff was first diagnosed with bipolar at this time. Prior to this time, plaintiff was lacking in insight and judgment because he was not receiving proper medications to address his inherent disorder.*

**DEFENDANTS' SUMMARY OF THE CASE:**

*Since his initial attempt to pass the United States Medical Licensing Examination (USMLE) Step 1 in 2001, Plaintiff Richard Katz has taken USMLE Step 1 nine times, Step 2 CS (Clinical Skills) three times, and Step 2 CK (Clinical Knowledge) three times, and he failed on each attempt. The USMLE, owned and jointly sponsored by the Defendants, is a standardized examination used in evaluating applicants for medical*

-8-

licensure in the United States. In 2005, Plaintiff requested accommodations on USMLE Step 2 CK and Step 2 CS based upon a purported disability, Attention Deficit Hyperactivity Disorder (ADHD). The Defendant National Board of Medical Examiners (NBME) denied the request for accommodations after a thorough review. Plaintiff did not request accommodations on USMLE Step 1.

In 2011, the USMLE program adopted a new policy, which took effect on January 1, 2012, limiting to six the number of times an individual can attempt to pass any Step of the USMLE. Individuals like Plaintiff, who had already attempted to pass a Step of the USMLE, received an extra year (i.e, until January 1, 2013), to register for the USMLE before the six attempt limit took effect. Plaintiff registered for Step 1 again in December 2012. Plaintiff was diagnosed with bipolar disorder in March 2013. He did not request accommodations. He took Step 1 thereafter, and failed again.

In this lawsuit, Plaintiff asserts that the defendants incorrectly denied his request for accommodations in 2006 and thereby violated the Americans with Disabilities Act (ADA). He also claims that the six attempt limit should be overturned by the Court as it pertains to him.

Defendants contend that the decision to deny Plaintiff's request for accommodations was correct when made in 2006, and that a challenge to the NBME's 2006 accommodations decision is barred by the statute of limitations and/or laches. Defendants further contend that overturning the six attempt limit is not an appropriate accommodation under Title III of the ADA, and a court should not impose such a requirement on the defendants in this case.

**1.2  The facts that the parties <u>dispute</u> are as follows:**

*Whether the NBME thoroughly reviewed Plaintiff's request for accommodations in 2005-2006 before denying the request.  Defendants say yes; Plaintiff says no.*

*Whether Plaintiff actually received an extra year and an additional attempt before the six attempt limit became effective for him.  Defendants say yes, since Plaintiff used the opportunity to make an additional attempt to pass Step 1, which he failed; Plaintiff says no, because the the six attempt limit "Does not address problem of Mental Disability under ADA.  Plaintiff could have been given an infinite amount of time and chances and would still be pointless if the proper accommodations are not in place."*

**The facts that the parties <u>agree</u> upon are as follows:**

*Plaintiff first took the USMLE Step 1 in 2001; Plaintiff has taken USMLE Step 1 either eight or nine times.  (The NBME's records show that Plaintiff took Step 1 nine times.  Plaintiff claims that one of the attempts was an "experimental field trial" that did not count.) Plaintiff failed USMLE Step 1 on each attempt.*

*Under the USMLE "six attempt" policy, Plaintiff is now barred from registering to take USMLE Step 1, but he can still register for USMLE Step 2 CK, Step 2 CS and USMLE Step 3.*

> *Plaintiff requested accommodations on the USMLE Step 2 CK and Step 2 CS in 2005, which request the NBME denied after review in March 2006.*
>
> *Plaintiff did not request accommodations on USMLE Step 1 in 2005-2006; he requested accommodations on Step 2 CK and Step 2 CS on the basis of a diagnosis of ADHD.*
>
> *By a letter, which plaintiff characterized as an "appeal [of} the six attempt rule," dated April 1, 2014, Plaintiff requested that the six attempt limit be overturned for him and exam accommodations granted on Step 1 and all future USMLE Steps thereafter.*

    **1.3   The legal issues that the parties <u>dispute</u> are as follows:**

> *Whether the defendant(s) violated the ADA by denying Plaintiff's request for accommodations in 2006 and by denying Plaintiff's request to overturn the six attempt limit in 2014.*
>
> *Whether "overturning" the six attempt limit is an appropriate accommodation under the ADA.*
>
> *Whether Plaintiff waived the right to ask the Court to "overturn" the six attempt limit.*
>
> *Whether any action by the Defendants violated Plaintiff's rights under the ADA.*

    **The legal issues that the parties <u>agree</u> upon are as follows:**

> *Unknown at this time.*

**1.4  Identify any unresolved issues as to service of process, personal jurisdiction, subject matter jurisdiction, or venue:**

*None.*

**1.5  Identify any named parties that have not yet been served:**

*None.*

**1.6  Identify any additional parties that:**

Plaintiff intends to join:

*None known at this time.*

Defendants intend to join:

*None known at this time.*

**1.7  Identify any additional claims that:**

Plaintiff intends to add:

*None known at this time.*

Defendants intend to add:

*None known at this time.*

**2.0  Disclosures**

The undersigned counsel [and pro se plaintiff] certify that they have made the initial disclosures required by the

Federal Rule of Civil Procedure 26(a)(1) or that they will do so within the time provided by that rule.

> *The parties will make the required initial disclosures within the time provided by Fed. R. Civ. P. 26(a)(1).*

**3.0  Early Motions**

Identify any motion(s) whose early resolution would likely have a significant effect either on the scope of discovery or other aspects of the litigation:

| **Nature of Motion** | **Moving Party** | **Anticipated Filing Date** |
|---|---|---|
| *Motion for Judgment on the Pleadings* | *Defendants* | *October 15, 2015* |
| *Plaintiff's Reply Brief In Support Of Reconsideration Of Motion To Seal* | *Plaintiff* | *September 30, 2015* |
| *Motion for Leave to File Second Amended Complaint* | *Plaintiff* | *October 1, 2015* |

**4.0  Discovery**

**4.1  Briefly describe any discovery that has been completed or is in progress:**
  *Not applicable*

**4.2  Describe any <u>discovery</u> that all <u>parties agree</u> should be conducted, indicating for each discovery undertaking its purpose or what kinds of information will be developed through it:**

-13-

> *Defendants seek to discover the facts on which Plaintiff's complaint is based.*
>
> *Plaintiff seeks to employ the tools of discovery to analyze and distinguish legal and factual theories and interrelationship of law that is relevant to this case.*

**4.3 Describe any discovery that one or more parties want(s) to conduct but to which another party objects, indicating for each such discovery undertaking its purpose or what kinds of information would be developed through it:**

> *Not applicable.*

**4.4 Identify any subject area limitations on discovery that one or more parties would like imposed, at the first stage of or throughout the litigation:**

> *Plaintiff seeks to seal the record because of the sensitive nature of the issues involved in the case; Defendants do not object to sealing documents containing sensitive health information.*

**4.5 For each of the following discovery tools, recommend the per-party or per-side limitation (specify a number) that should be fixed, subject to later modification by stipulation or court order on an appropriate showing (where the parties cannot agree, set forth separately the limits recommended by plaintiff(s) and by defendant(s):**

    **4.5.1    depositions (excluding experts) to be taken by:**

> *plaintiff: 5; defendants: 5*

-14-

  **4.5.2**  **interrogatories to be served by:**

    *plaintiff: 2 sets; defendants: 2 sets*

  **4.5.3**  **document production requests to be served by:**

    *plaintiff: 2 sets; defendants: 2 sets*

  **4.5.4**  **requests for admission to be served by:**

    *plaintiff: 2 sets; defendants: 2 sets*

**5.0 Protective Order**

 **5.1 If entry of a protective order is sought, attach to this statement a copy of the proposed order. Include a statement justifying the propriety of such protective order under existing Third Circuit precedent.**

 **5.2 If there is a dispute about whether a protective order should be entered, or about certain terms of the proposed order, briefly summarize each party's position below:**

  *Not applicable.*

**6.0 Scheduling**

 **6.1 Final date for joining additional parties:**

  *Plaintiff: October 15, 2015*

  *Defendants: October 15, 2015*

**6.2   Final date for amending pleadings:**

*Plaintiff: October 15, 2015*

*Defendants: October 15, 2015*

**6.3   All fact discovery commenced in time to be completed by:**

*Note: Defendants request that the case be placed on the standard track, and the dates Defendants suggest are intended to conform to that track.  Plaintiff wants the case on the fast track.*

*Defendants suggest: February 15, 2016*

**6.4   All potentially dispositive motions should be filed by:**

*Defendants suggest: April 1, 2016*

**6.5   Reports from retained experts due:**

*Defendants suggest:*
*Plaintiff's expert report by January 15, 2016*
*Defendants' expert report by February 15, 2016*

**6.6   Supplementations due:**

*Defendants suggest: March 1, 2016*

**6.7   All expert discovery commenced in time to be completed by:**

*Defendants suggest: March 15, 2016*

Case 3:15-cv-01187-RDM   Document 41   Filed 09/11/15   Page 16 of 18

-16-

**6.8 This case may be appropriate for trial in approximately:**

*Plaintiff requests: 240 Days from the filing of the action in this court*

*Defendants request: 365 Days from the filing of the action in this court*

**6.9 Suggested Date for the final Pretrial Conference:**

*Defendants suggest: May, 2016 (month/year)*

**6.10 Trial**

**6.10.1    Suggested Date for Trial**

*Defendants suggest: June, 2016 (month/year)*

**7.0 Certification of Settlement Authority (All parties shall complete the Certification)**

*Shelley Z. Green*
*General Counsel, National Board of Medical Examiners*
*National Board of Medical Examiners*
*3750 Market Street*
*Philadelphia, PA 19104*
*215-590-9205   Daytime Telephone*

*Eric M. Fish, Esquire*
*Senior Vice President, Legal Services, Federation of State Medical Boards*
*1300 Connecticut Ave NW, Ste 500*
*Washington, DC 20036*

*202-463-4005   Daytime Telephone*

Case 3:15-cv-01187-RDM   Document 41   Filed 09/11/15   Page 17 of 18

-17-

*Mr. Richard Katz*
*3364 Parker Lane*
*East Stroudsburg, PA  18301*
*570-517-9314   Daytime Telephone*

**8.0  Alternative Dispute Resolution ("ADR")**

**8.1  Identify any ADR procedure to which this case already has been assigned or which the parties have agreed to use.**

> *None.*

8.2  If the parties have been unable to agree on an ADR procedure, but one or more parties believes that the case is appropriate for such a procedure, identify the party or parties that recommend ADR and the specific ADR process recommended:

> *None.*

**8.3  If all parties share the view that no ADR procedure should be used in this case, set forth the basis for that view:**

> *The parties will discuss ADR, if appropriate, at a future time.*

**9.0  Consent to Jurisdiction by a Magistrate Judge**

> Indicate whether all parties agree, pursuant to 28 U.S.C. § 636(c)(1), to have a magistrate judge preside as the judge of the case with appeal lying to the United States Court of Appeals for the Third Circuit:

*The parties will decide whether they all consent by January 15, 2016.*

**10.0    Other Matters**

Make any other suggestions for the case development process, settlement, or trial that may be useful or necessary to the efficient and just resolution of the dispute.

*None.*

**11.0    Identification of Counsel**

*Neil J. Hamburg*
*Michael E. Sacks*
*Hamburg & Golden, P.C.*

*Attorneys For Defendants*
*National Board Of Medical Examiners And*
*Federation Of State Medical Boards*

*Richard Katz, pro se*

Dated:   September 11, 2015      **/s/ Michael E. Sacks**
Neil J. Hamburg, Esquire
Michael E. Sacks, Esquire
Id Nos. 32175, 39774
1601 Market Street, Suite 3310
Philadelphia, Pa  19103-1443
(215) 255-8590

Attorneys For Defendants
National Board Of Medical
Examiners And Federation Of
State Medical Boards


**/s/ Richard Katz**
Richard Katz, pro se