UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

**Richard Katz**
Plaintiff

Case No.: **3:15-cv-01187**

v.

**NATIONAL BOARD OF MEDICAL EXAMINERS (NBME)**

3750 Market Street

Philadelphia, PA 19104

and

**FILED**
**SCRANTON**

NOV 17 2015

PER_____ ~~Amy~~
DEPUTY CLERK

**FEDERATION OF STATE MEDICAL BOARDS (FSMB)**

400 Fuller Wiser Road, Suite 300

Euless, Texas 76039-3855

Defendants

---

## MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT AND BRIEF IN SUPPORT THEREOF

COME NOW the Plaintiff, Richard Katz appearing pro se, respectfully states his Motion for Leave to File a Second Amended Complaint against Defendants National Board of Medical Examiners and Federation of State Medical Boards.

### PRELIMINARY STATEMENT

Plaintiff (herein Katz) seeks leave to file a Second Amended Complaint. Amending the complaint to address issues would not add any new parties to the case. It would introduce new theories based on recent information obtained from Exhibit 4 that accompanied defendants answer to the amended complaint.

1

## STATEMENT OF FACTS

Katz filed his initial complaint in this Court on June 17, 2015 Dkt. 1. He amended his complaint on August 12, 2015 Dkt. 23, adding the Federation of State Medical Boards (herein FSMB or defendants) to this suit. The defendants, National Board of Medical Examiners (herein NBME or defendants) and FSMB own and sponsor the United States Medical Licensing Examination® ("USMLE"), a standardized examination that is used in evaluating applicants for medical licensure in the United States and its territories.

Katz alleges that NBME/FSMB violated him by denying full and equal access to the USMLE Step I Exam based on Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 and § 504 OF THE REHABILITATION ACT OF 1973, [AS AMENDED, 29 U.S.C. § 794]. Section 504 of the Rehabilitation Act specifically prohibits discrimination against individuals with disabilities in programs receiving federal funds. *NBME and FSMB are both recipients of federal funds.* This violates the specifications promulgated by the Department of Justice (the "DOJ Standards").

In 2011 the USMLE Organization announced that they will place an attempt limit on the number of times an examinee can take to pass a USMLE Step Exam. *The previous policy allowed examinees to take the exam as many times as they needed until passing.* In creating this so-called "Six Attempt Limit Rule" the NBME/FSMB made NO concession in their policy development for people with documented *d*isabilities.

Katz also alleges that he was discriminated by defendants in 2005 through 2006 when he requested exam accommodations and extended exam time for his USMLE exams. NBME Disability Services found that the supporting documentation submitted by Katz during this period did not demonstrate that he was substantially limited in a major life activity as compared to most people, so as to be disabled within the meaning of the ADA. Katz had submitted sufficient documentation to demonstrate that he is a person with a disability within the meaning of the ADA, and that he was entitled to reasonable testing accommodations to take his USMLE Exams in 2005-2006. Katz received Exhibit 4 only recently from defendants dated August 28, 2015. He requested his 2005-2006 file (Exhibit 4) from defendants in a notarized request on January 27, 2014. Katz was denied access to his file on February 4, 2014 by defendants. Obtaining this new information prompted this Second Amended Complaint.

Katz seeks declaratory relief, as well as injunctive relief and Prayer for Relief for general and special damages according to proof; for attorneys' fees and costs incurred; for an adequate and sufficient sum to indemnify him from any and all losses or liabilities, attorneys' fees, experts' fees, or any other damages arising from defendants' actions; Katz also seeks "[a]ny other relief as the Court deems just and appropriate."

## ARGUMENTS

NBME/FSMB violated the ADA by denying Katz's request for accommodations in 2006 and by denying his request to overturn the six attempt limit rule in 2014. Overturning the six attempt limit is an appropriate accommodation under the ADA **(see Doe v. Samuel Merritt University, 921 F. Supp. 2d. 958 (N.D. Cal. 2013)).**

The defendants attempt to exploit Katz's failed attempts on his prior USMLE exams as a strategy to relinquish their own failure and inadequacy to accommodate him. The defendants neglected to provide Katz with the accommodations that he sorely needed for success. Hence a slew of failures ensued taking their toll on Katz's health both mentally and physically.

*"Since his initial attempt to pass the United States Medical Licensing Examination (USMLE) Step 1 in 2001, Plaintiff Richard Katz has taken USMLE Step 1 nine times, Step 2 CS (Clinical Skills) three times, and Step 2 CK (Clinical Knowledge) three times, and he failed on each attempt."*

The defendants attempt to invalidate Katz's previous disability claim by employing phrases like "purported disability - ADHD." Neither the defendants nor their representing counsel are justified in making such determinations as they never personally met or evaluated Katz clinically, nor are they qualified to do so. In reality the defendants make determinations on disability applicants that are mere *"paper people"* with no query into the real lives that they affect so adversely. The claims made in this suit have a similar parallel to the point Dr. Linda Peeno makes in the book; *Making a Killing HMOs and the Threat to Your Health* by Jamie Court and Francis Smith.

"*The patient was a piece of computer paper*, less than half full. The 'clinical goal' was to figure out a way to avoid payment. The 'diagnosis' was to 'DENY.' Once I stamped 'DENY' across his authorization form, his life's end was as certain as if I had pulled the plug on a ventilator." [1]

"In the spring of 1987, as a physician, I caused the death of a man," testified Dr. Linda Peeno, to Congress. "Although this was known to many people," she continued, "I have not been taken before any court of law or called to account for this in any professional or public forum. In fact, just the opposite occurred: I was 'rewarded' for this. It bought me an improved reputation in my job, and contributed to my advancement afterwards. Not only did I demonstrate I could indeed do what was expected of me, I exemplified the 'good' company doctor: I saved a half million dollars." [1]

1. Linda Peeno, Testimony to California Assembly Committee on Health, April 15, 1997.

The only difference between the defendants and Dr. Peeno and the events of 1987 is that the defendants are responsible for causing the demise of career goals to individuals with documented

disabilities and not directly to human life. Although indirectly their poor decision making as represented in this case is responsible for causing injury and harm.  The defendants made no in-person evaluation, did not recommend that Katz be evaluated by an objective clinician of their choosing.  The defendants never even made a phone call to Katz's caregivers for additional information about his functional limitations.

**"As you know, I have not met or examined Mr. Katz.  My recommendation is based upon my review of the request and supporting documentation submitted by and behalf of Mr. Katz."**

(Please see defendant's Exhibit 4 Catherine Farmer to J. Abram Doane page 0071)

In Dr. Peeno's case she was motivated to deny services in order to save her company money.  *What is the motivation of the defendants in denying legitimate disability claims?  Is it solely based on discrimination?  Does it come back to money?  Or is it a combination of the two?  Making it prudent for the testing organization to err on the side of denying the disability applicant otherwise;*

*"....this would skew nationwide standardized test results, call into question the fairness and validity of the tests, and impose new costs on testing organizations."* [2]

In the November 2011 United States Government Accountability Office (GAO) Report to Congressional Requesters entitled: HIGHER EDUCATION AND DISABILITY Improved Federal Enforcement Needed to Better Protect Students' Rights to Testing Accommodations.  The GAO states:

"Since we found testing companies believe their practices are already in compliance with the new regulatory requirements, it is unclear whether these changes will better protect the rights of students with disabilities. **In order to ensure individuals with disabilities have equal opportunity to pursue their education and career goals, it is imperative for Justice (DOJ) to establish a credible enforcement presence to detect, correct, and prevent violations."** [3]

This report goes on to say:

"Given the critical role that standardized tests play in making decisions on higher education admissions, licensure, and job placement, federal laws require that individuals with disabilities are able to access these tests in a manner that allows them to accurately demonstrate their skill level.

**Test takers and disability advocates continue to raise questions about whether testing companies are complying with the law in making their determinations." [4]**

--------------------------------

2 United States Government Accountability Office (GAO) Report to Congressional Requesters entitled: HIGHER EDUCATION AND DISABILITY Improved Federal Enforcement Needed to Better Protect Students' Rights to Testing Accommodations,. Nov 2011.

[3] Ibid.

[4] Ibid

The defendants claim:

*"In 2005, Plaintiff requested accommodations on USMLE Step 2 CK and Step 2 CS based upon a purported disability, Attention Deficit Hyperactivity Disorder (ADHD). The Defendant National Board of Medical Examiners (NBME) denied the request for accommodations after a thorough review."*

The diagnosis of ADHD was clinically determined by Katz's psychiatrists and psychologists in 2005-2006. He was also diagnosed with comorbid depression, and anxiety disorder during this period, yet the defendants fail to acknowledge this in their current arguments even though this fact is documented in their Exhibit 4.

Katz alleges that there was no "thorough review" as only a few hours expended by one reviewer contracted by defendants to review his disability file. This hardly constitutes a thorough review. Katz also suspects based on Exhibit 4 that he was *misled* by defendants as the Compliance Officer for the defendants Mr. J Abram Doane stated in his denial letter to Katz in 2006 that his file *was "reviewed by experts in the field of learning disorder and mental disabilities."* In reality there was just one reviewer with a level of expertise that was never determined because Katz was not aware of who she was until August 28th 2015 when he received the defendants' Exhibit 4. *How could due process procedures be implemented when such a material fact was withheld?*

*"Defendants contend that the decision to deny Plaintiff's request for accommodations was correct when made in 2006, and that a challenge to the NBME's 2006 accommodations decision is barred by the statute of limitations and/or laches. Defendants further contend that overturning the six*

*attempt limit is not an appropriate accommodation under Title III of the ADA, and a court should not impose such a requirement on the defendants in this case."*

The doctrine of Equitable Tolling applies to Katz's disability application submitted to defendants in 2005 to 2006. Katz's claim qualifies by multiple criteria under law (see Katz's Traverse to defendants Answer to Amended Complaint). The federal equitable tolling doctrine holds tolling of the statute of limitations. Especially in light of the fact that Katz only received vital information in Exhibits 4 in August of 2015. The Six Attempt Limit Rule and applicable law is discussed in the following Second Amended Complaint.

Rule 15(a) requires a trial court to grant leave to amend "freely," and the language of this rule evinces a bias in favor of granting leave to amend. A district court must possess a substantial reason to deny a request for leave to amend, but leave to amend is by no means automatic.

## PLAINTIFF HAS MET THE STANDARD FOR OBTAINING LEAVE TO FILE AN AMENDED COMPLAINT UNDER FEDERAL RULE OF CIVIL PROCEDURE 15.

Pursuant to Federal Rule of Civil Procedure 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." The decision whether to grant leave to amend a pleading is within the sound discretion of the district court. Therefore, a justifying reason must be apparent for denial of a motion to amend. "Unless a substantial reason exists to deny leave to amend, the discretion of the district court is not broad enough to permit denial." In light of the significant factual and procedural developments since Katz filed suit in June of 2015, good cause for amending the Complaint is immediately apparent.

Consistent with the liberal standard that applies to motions to amend under Rule 15(a)(2), the Court should therefore grant Plaintiff's motion.

---

Knox v. Service Employees, 567 U.S. ___, ___ (2012) (slip op. at 7) and FTC v. Whole Foods Market, Inc., 548 F.3d 1028, 1033-34 (D.C. Cir. 2008) (Brown, J.)).

6

## CONCLUSION

Wherefore, Plaintiff respectfully request that he be granted leave to file his Second Amended Complaint, and that the Second Amended Complaint presented here be deemed filed.

Dated:

November 13, 2015

Respectfully submitted

/s/ Richard Katz

Richard Katz

pro se

## CERTIFICATE OF CONFERENCE

On September 16, 2015, counsel for the defendant's and pro se plaintiff Katz met and conferred
via telephone with The Honorable Joseph Saporito, Jr.  Plaintiffs' motion for leave to file second
amended complaint was discussed. Counsel for Defendants, Michael E. Sacks made no objection
to amending.  Moreover plaintiff's intention to amend was included in the Joint Case
Management Plan presented to the Court prior to the Conference.

## CERTIFICATE OF SERVICE

On November 13, 2015 I electronically submitted the foregoing document with the clerk of court for the U.S. Middle District Court of Pennsylvania, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2) or the local rules.

/s/ Richard Katz

Richard Katz

pro se

9

PRESS FIRMLY TO SEAL




1005          18501

U.S. PAID
EAST STROUDSBURG, PA
18301
NOV 13 15
AMOUNT
**$5.75**
R2304N116528-02

Richard Katz
3364 Parker Lane
East Stroudsburg, PA
18301

ECEIVED
CRANTON

NOV 17 2015

DEPUTY CLERK

TO:

The Middle District of Pennsylvania
William J. Nealon Federal Bldg. & US
Courthouse

 **ATT: CLERK OF COURT**
US DISTRICT COURT
PO Box 1148

235 N. Washington Avenue
Scranton, PA 18501-1148



# VISIT US AT USPS.COM®
## ORDER FREE SUPPLIES ONLINE



This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® ship