# UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF PENNSYLVANIA

**Richard Katz**

Plaintiff

Case No.: **3:15-cv-01187**

v.

**NATIONAL BOARD OF MEDICAL EXAMINERS (NBME)**
3750 Market Street
Philadelphia, PA 19104

and

**FEDERATION OF STATE MEDICAL BOARDS (FSMB)**
400 Fuller Wiser Road, Suite 300
Euless, Texas 76039-3855

Defendants

---

# Addendum to Plaintiff's Objection to Defendant's Proposed Subpoena for Production of Medical Records

On January 25[h], 2016 at 11:00 AM. pro se plaintiff Richard Katz (hereinafter Katz) conferred with Michael Sacks Attorney for the defendants National Board of Medical Examiners (hereinafter NBME) and Federation of State Medical Boards (hereinafter FSMB).  The

discussion lasted 26 Minutes and focused on the following **three issues** involving pretrial discovery:


1). **Issue one**.  Defendants request *Carte Blanche* to Katz's medical records.  Katz objects to this on the grounds that some of his medical records will need to be interpreted by the medical provider(s) responsible for executing them and as such, some of these records may not stand on their own.  Katz expressed to Mr. Sacks that the nature and content of some of his medical records are extremely sensitive and confidential in nature and may be a source of *embarrassment* to him if revealed.  Katz also voiced to Mr. Sacks his concern that 'the defendants are in the business of medical licensure' and inquired how he can be assured that the defendants will not utilize such sensitive information to preclude him from medical licensure in the future?

Katz in good faith attempted to compromise with Mr. Sacks in keeping with the Middle District of Pennsylvania Local Rule 26.3 requiring that the parties confer and make a good faith effort to resolve differences regarding discovery.  Katz offered to allow Mr. Sacks to conduct an interview for those medical professionals that he felt would be better contained under "Good Cause".

*Upon a showing of good cause, the court has discretion to issue a protective order that forbids a party from disclosing to other persons specific information acquired in discovery (see Pansy v. Borough of Stroudsburg, 23 F.3d 772, 785–86 (3d Cir. 1994) (describing the discretion as inherent power).*

Needless-to-say Mr. Sacks was NOT amenable to Katz's suggestion or compromise.


2). **Issue two**.  The defendant's use of Katz's personal identifiers like his Social Security Number and his Date of Birth printed on each of the defendants proposed fourteen subpoenas to Katz's health providers from 2005 to 2006 and from 2013 to present.  Katz voiced to Mr. Sacks that it is inappropriate for the defendants to take such liberty in revealing his personal information to caregivers as a decade or greater has elapsed in some instances.  In a world plagued by identity theft Katz has reservations about such personal information being revealed. Katz stated to Mr. Sacks that most people in society would have reservations concerning such a precarious situation and would err on the side of safety.  "An ounce of prevention is worth a pound of cure."

Medical-related identity theft accounted for 43 percent of all identity thefts reported in the United States in 2013 (see http://khn.org/news/rise-of-indentity-theft/). That is a far greater chunk than identity thefts involving banking and finance, the government and the military, or education.

As a compromise Katz offered to provide Mr. Sacks with Medical Record numbers where appropriate and agreed to allow Mr. Sacks to use his Social Security Number and/or Date of Birth ONLY for educational institutions.  The rationale is that educational institutions routinely

use the students social security number as the primary method for identifying educational records.  Because of this, more safeguards to protect identity likely exist in educational settings.

3). **Issue three**.  Katz's request for the personnel records from defendants for the five NBME (past/present) employees stated below for pretrial discovery.

- **Gregory Baker** (Unknown if still employed by NBME)
- **Maria L. Fuentes** (No longer employed by NBME)
- **Catherine Farmer** (Currently employed by NBME)
- **J. Abram Doane**  (No longer employed by NBME)
- **Gerard F. Dillon** (Currently employed by NBME)

Katz narrowed his request to seven components of the personnel files for the five NBME employees listed above.  The seven components Katz requested from defendants are as follows:

1. Job description for position(s) held by each of the five NBME employees that have some involvement in case.
2. Job application and resume for each of the five NBME employees that have some involvement in case.
3. Performance evaluations contained in personnel files for each of the five NBME employees that have some involvement in case.
4. Complaints and reprimand/warnings in personnel files for each of the five NBME employees that have some involvement in case.
5. Awards and citations of excellence contained in personnel files for each of the five NBME employees that have some involvement in case.
6. Attendance and completion of training programs for each of the five NBME employees that have some involvement in case.
7. Records pertaining to employee departure from the NBME Organization for the five NBME employees that have some involvement in case.

Katz initially proposed requesting the complete personnel files for the five past/present NBME employees listed above from defendants.  In order to narrow the focus to the issues of this case, and to offer a compromise, Katz reasoned that the above seven components of the employee personnel file would be the most efficient method of evaluating each of the five employees that have some involvement in this case.  Mr. Sacks did not agree.  Mr. Sacks offered to provide Katz with a copy of each of the five employee resumes, and to provide Katz with a job description that stated the role of each of the five employees in question.  Katz did not feel that this would provide adequate information to the issues of the case.  Mr. Sacks does not feel that the seven components are relevant to the issues of the case.  Katz disagrees.

**ARGUMENTS:**

**Issue One:**

**DEFENDANTS WANT CARTE BLANCHE TO ALL OF PLAINTIFF'S MEDICAL RECORDS**

**Good Cause:**

Upon a showing of good cause, the court has discretion to issue a protective order that forbids a party from disclosing to other persons specific information acquired in discovery.  The burden of showing good cause falls at all times on the party seeking protection.  For civil cases, this discretion is articulated in Federal Rule of Civil Procedure 26(c)(1)(A): "The court may, for good cause, issue an order to protect a party or person from annoyance, **embarrassment**, oppression, or undue burden or expense, . . . forbidding the disclosure of discovery . . . .". **The rule permits the court to issue a protective order only if the parties cannot accomplish the goals of the order by private agreement: "The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." "'Good cause' is established when it is specifically demonstrated that disclosure will cause a clearly defined and serious injury. Broad allegations of harm, unsubstantiated by specific examples, however, will not suffice."**

**"Annoyance, embarrassment, oppression, or undue burden or expense" is not shown lightly. [B]ecause release of information not intended by the writer to be for public consumption will almost always have some tendency to embarrass, an applicant for a protective order whose chief concern is embarrassment must demonstrate that the embarrassment will be particularly serious.**

(See Confidential Discovery: A Pocket Guide on Protective Orders Robert Timothy Reagan Federal Judicial 2012)

http://www.fjc.gov/public/pdf.nsf/lookup/confidentialdisc.pdf/$file/confidentialdisc.pdf

<u>**Issue Two.**</u>

**PERSONAL DATA IDENTIFIERS**

The E-Government Act of 2002 and Middle District of Pennsylvania Local Rule 5.2, parties are to refrain from including in filed documents, <u>*or shall partially redact where inclusion is necessary*</u>, personal data identifiers including Social Security numbers and date of birth.


A HIPAA-covered health care provider or health plan may share protected health information if it has a court order. This includes the order of an administrative tribunal. **However, the provider or plan may only disclose the information specifically described in the order.**

<u>**Subpoena**</u>

A subpoena issued by someone other than a judge, such as a court clerk or an <u>attorney in a case,</u> is different from a court order.

A HIPAA-covered provider or plan may disclose information to a party issuing a subpoena only if the notification requirements of the Privacy Rule are met. **Before responding to the subpoena, the provider or plan should receive evidence that there were reasonable efforts to:**

- **Notify the person who is the subject of the information about the request, so the person has a chance to object to the disclosure, or**

- **Seek a qualified protective order for the information from the court (See 45 C.F.R. § 164.512(e).**


<u>**Issue Three.**</u>

**PLAINTIFF'S JUSTIFICATION FOR REQUEST OF FIVE NBME EMPLOYEE PERSONNEL FILES (CONTAINING SEVEN COMPONENTS).**


1. On December 21st  2005 at 9:10 AM an individual by the name Gregory Baker from NBME Disability Services had a ten minute telephone conversation with Katz's psychiatrist Dr. David Kreditor (see entry below).  No credentials for Mr. Baker are documented in the log entry for this date.  Mr. Baker's purpose of the phone call is to make Dr. Kreditor aware of the methodology of documenting or charting a mental disability.  Dr. Kreditor informs Mr. Baker that Katz's diagnosis is clinically based on the DSM Criteria.  Dr. Kreditor concludes to Mr. Baker that he will be happy to accept a list of questions that Mr. Baker has about Katz's disability and he will submit to NBME upon his completion.  Subsequently Mr. Baker completes his conversation with Dr. Kreditor

and informs his NBME supervisor of Dr. Kreditor's suggestion.  This suggestion is regarded as an atypical practice for NBME Disability Services.  NBME Disability Services is obviously put off kilter by a rather novel solution to a problem.  In other words; "you called me with questions about Katz's Disability and functional limitations, formulate your questions and send to me, in return I will answer and send back to you!"  How can this possibly be an unreasonable or atypical request?  Dr. Kreditor never had the opportunity to respond to such questions involving Katz's disability because a list of questions were never generated or submitted by NBME Disability Services for Dr. Kreditor to answer.

[ Outgoing Phone Contact - Gregory Baker - December  21, 2005 ]
0910, ~10 min conversation. Called Dr. Kreditor regarding additional information. He stated that he will not provide additional information, as he had seen the patient 3-4 times, and his letter addressed the diagnoses he made on the history presented to him. I asked if the examinee had shared our 15 Jul 05 letter with him, Dr. Kreditor stated he was not sure, but believed he may have.

I asked him if he had reviewed the guidance on our web site, he stated he had not.  I informed him that these documents provide guidance on the types of documentation that are helpful in determinations of nonstandard administrations.  I informed him that more information about the criteria used to make the diagnoses, as well as facts about day-to-day functional impairment would be helpful in determining appropriateness of accommodations.

Dr. Kreditor again stated that he does not have further information to share. He added that his diagnoses are based on his patient's report of history, and DSM criteria were met. I informed him that details about how the examinee's behavior or symptoms met each criteria is often helpful, e.g., like how criterion A for ADHD was met.

Dr. Kreditor reiterated that he would not be providing further information based on this phone contact. He stated that he had made the diagnoses using the DSM. He added that he did not conduct testing, and that his diagnosis is a clinical one, thus he did not have facts to share, and reccomended we consult with a psychologist if that was the data that we required. He concluded by suggesting that if we wanted more information we could fax him a list of questions (e.g., "how long can he sit still for?," and he would be happy to address such specific questions. I thanked him for his time.

I informed the DS manager of the reccommendation that we fax a list of questions. This was deemed atypical and not a standard processing procedure.

(The above entry was obtained from defendants NBMEKatz-0092 PDF file page **0119**)

Katz therefore feels that Mr. Baker's credentials and prior casework experience are of the utmost importance to pretrial discovery.  Mr. Baker's job description is also very relevant.  For instance does Mr. Baker's primary NBME job function consist of calling the disability applicant caregiver, giving the same spiel that he gave Dr. Kreditor in order to defensively document the record for potential litigation purposes?  Is Mr. Baker still employed by NBME?  If not, why did

he leave?  How was his performance while employed by NBME (if no longer employed)?  Was Mr. Baker recognized with any special accolades by the NBME?  Did he receive any specialized training by NBME for this job?  Who was Mr. Baker's previous employer?  Was Mr. Baker ever reprimanded by NBME?  If so, why?  Etc.

**Katz will not burden the court by conducting an analysis of the other four NBME employees in question, he only uses Mr. Baker as an example here in order to illustrate to the Court why obtaining the seven components to the personnel files are of the utmost relevance to this case, and offers reasons why they should be discoverable.**

The answers to the questions posed above are relevant to this case because they will help delineate the mechanics of NBME Disability Services as they relate to Katz's disability accommodation request in 2005 through 2006.   Katz will also get a better understanding of the players that had involvement in the denial of Katz's accommodations for his disability in 2005 through 2006.

Additionally, information obtained by this inquiry may shed light on the more recent 2014 issues that Katz experienced, namely involving the six attempt limit rule and the lack of policy on the part of NBME Disability Services in accommodating disability applicants under the Americans with Disability Act (ADA).

Respectfully submitted,

Richard Katz
3364 Parker Lane
East Stroudsburg, PA
18301

pro se

/s/ Richard Katz_____

Richard Katz

Dated: January 26th, 2016

# CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing has been served upon:


Michael Sacks
Hamburg & Golden, P.C.
1601 Market Street Suite 3310
Philadelphia PA 19103-1443


Date: January 26th, 2016


/s/ Richard Katz_____
     Richard Katz