# UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF PENNSYLVANIA

**Richard Katz**
3364 Parker Lane
East Stroudsburg, PA 18301

Plaintiff

Case No.: **3:15-cv-01187**

v.

**NATIONAL BOARD OF MEDICAL EXAMINERS (NBME)**
3750 Market Street
Philadelphia, PA 19104

and

**FEDERATION OF STATE MEDICAL BOARDS (FSMB)**
400 Fuller Wiser Road, Suite 300
Euless, Texas 76039-3855

Defendant
_____

# PLAINTIFFS MOTION FOR PROTECTIVE ORDER

Pro se Plaintiff Richard Katz files this Motion for Protective Order under Rule 26(c) of the Federal Rules of Civil Procedure and states as follows:

## I.     A PROTECTIVE ORDER IS NEEDED IN THIS CASE

Plaintiff files this motion to:

1. Bar Defendants from conducting irrelevant and overly broad discovery relating to Plaintiffs' medical records.

## II.    FACTUAL HISTORY

Richard Katz resides in East Stroudsburg, PA he graduated Medical School in 2004 and holds a Medical Degree. This is a disability access and discrimination case alleging that there are administrative barriers and discriminatory policies in place at the National Board of Medical Examiners (hereinafter NBME) and the Federation of State Medical Boards (hereinafter FSMB) together constituting the USMLE Organization. Plaintiff is an individual with a disability. This barrier denies full and equal access to in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181.

In 2011 the USMLE Organization (NBME/FSMB) announced that they will place an exam limit to the number of times examinees can take to pass a USMLE Step Exam. The previous policy allowed examinees to take the exam as many times as they needed until passing. In creating this so-called "Six Attempt Limit Rule" the NBME/FSMB made NO concessions in their policy development for people with documented disabilities under the ADA. This is in violation to the specifications promulgated by the Department of Justice (the "DOJ Standards") who have been investigating Katz's claim since November 28, 2014.

A second dispute exists in this case, Katz alleges he was discriminated by NBME Disability Services in 2005 through 2006. Katz requested exam accommodations of extended exam time for his USMLE Exams during this period. NBME Disability Services found that the supporting documentation submitted by Katz did not demonstrate that he is currently substantially limited in a major life activity as compared to most people, so as to be disabled within the meaning of the ADA. Katz had submitted sufficient documentation to demonstrate that he is a person with a disability within the meaning of the ADA, and that he was entitled to reasonable testing accommodations to take his USMLE Exams in 2005-2006.

Katz has been subjected to intense mental anguish as a result of defendant's failure to provide reasonable accommodations in 2005-2006 and in 2014.  This has resulted in repeated studying, multiple attempts at the USMLE under regular exam conditions and subsequent failures over the course of ten years.  This took a toll on his mental resources and ultimately his overall health. The '*Make or Break*' nature of the 'Six Attempt Limit Rule' was "*the straw that broke the camel's back.*"  Katz ran out of mental resources and had a nervous breakdown in March of 2013 requiring a week-long hospitalization.

The question that currently arises in this case, is whether 'good cause' exists to issue a protective order preventing discovery of plaintiff's medical records. The following Legal Argument presented will explain Katz's position.

### III. LEGAL ARGUMENT

Federal Rule of Civil Procedure 26(c) provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."

FED. R. CIV. P. 26(c). The "good cause" required for such an order "is established when it is specifically demonstrated that disclosure will cause a clearly defined and serious injury. Broad allegations of harm, unsubstantiated by specific examples . . . will not suffice." Glenmede Trust Co. v. Thompson, 56 F.3d 476, 483 (3d Cir. 1995). Courts are to employ a balancing test to determine whether a protective order is appropriate. Pansy v. Borough of Stroudsburg, 23 Fed. 3d 772, 787 (3d Cir. 1994). A "party seeking protection has the burden of showing that there is good cause for it." Shingara v. Skiles, 420 F.3d 301, 306 (3d Cir. 2005).

The Third Circuit Court of Appeals has identified a number of factors to consider in determining whether a protective order should issue:

(1) the interest in **privacy** of the party seeking protection;
(2) whether the information is being sought for a legitimate purpose or an improper purpose;
(3) the prevention of embarrassment, and whether the embarrassment would be particularly serious;
(4) whether the information sought is important to public health and safety;
(5) whether sharing the information among litigations would promote fairness and efficiency;
(6) whether the party benefitting from the order of confidentiality is a public entity or official; and
(7) whether the case involves issues important to the public.

Arnold v. Pennsylvania, 477 F.3d 105, 108 (3d Cir. 2007)

Plaintiffs' are often confronted with overbroad subpoenas for their medical records, this risks serious infringement of their privacy rights. Many Courts prohibit a defendant from delving into more of a plaintiff s medical history than has been put at issue, attorneys for the plaintiff will usually succeed on a motion to quash and narrow the scope of such subpoenas. **But is simply**

**narrowing the scope of a subpoena for medical records enough to protect an individual's privacy interests?[1]**

"…..all people are by nature free and independent and have inalienable rights, among which is pursuing and obtaining privacy." (*Davis v. Superior Court* (1992) 7 Cal.App.4th 1008, 1013.)[2]

The mere filing of a personal injury lawsuit does not automatically strip a plaintiff of the right to privacy with respect to their medical records. Although by bringing suit there may be an implicit partial waiver of the right to privacy, "**the scope of such waiver must be narrowly, rather than expansively construed, so that plaintiffs will not be unduly deterred from instituting lawsuits by fear of exposure of private activities.**" (*Davis, supra*, **7 Cal.App.4th at 1014.**)[3]

**Furthermore, "[e]ven when discovery of private information is found directly relevant to the issues of ongoing litigation, it will not be automatically allowed; there must then be a careful balancing of the compelling public need for discovery against the fundamental right of privacy." (Davis, supra, 7 Cal.App.4th at 1014.**)[4]

**"The scope of discovery must be narrowly circumscribed, drawn with narrow specificity, and must proceed by the least intrusive manner." (Ibid. (emphasis added).) The party seeking the constitutionally protected information has the burden of establishing that the information sought is directly relevant to the claims." (Tylo, supra, 55 Cal.App.4th at 1387.)**[5]

**"….defense attorneys often serve overbroad subpoenas for a plaintiffs' medical records, hoping to drag up embarrassing or damaging details from a plaintiffs' unrelated medical history."** [6]

The law safeguards and prohibits a defendant from engaging in a fishing expedition with respect to a plaintiffs' medical history. Yet even a properly tailored subpoena for medical records presents a threat to a plaintiffs' privacy, as the reality is that no one at any hospital or doctor's office is going to carefully cull through the records to ensure that only relevant records are produced; more likely than not, the provider will simply produce all records in its possession relating to the particular individual. These records may contain sensitive and highly personal information.[7]
,

---

[1] Jessica Curiale, "Protecting your client's privacy Why narrowing the scope of a subpoena for medical records may not be enough", www.plaintiffmagazine.com Copyright © 2012 by the author. 1-2
[2] Ibid.
[3] Ibid.
[4] Ibid.
[5] Ibid.
[6] Ibid.
[7] David A. Robinson, *DISCOVERY OF THE PLAINTIFF'S MENTAL HEALTH HISTORY IN AN EMPLOYMENT DISCRIMINATION CASE*, 16 W. New Eng. L. Rev. 55 (1994), http://digitalcommons.law.wne.edu/lawreview/vol16/iss1/4

The issue of the discovery of mental health records has become widely disputed in employment discrimination cases since the enactment of the Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071, 42 U.S.C. § 102 (codified as amended at 42 U.S.C. § 1981a), providing compensatory damages including "future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses." §42 U.S.C. 1981a(b)(3).[8]

Title VII formerly provided only back pay and reinstatement, not emotional distress damages. By making emotional distress damages recoverable under Title VII, and by omitting any requirement that the plaintiff allege or prove that the distress caused physical pain, **Congress plainly declared that emotional distress should be inferred in a discrimination claim. For these reasons, it is not accurate to say that a plaintiff in an employment discrimination case has "introduced" her mental "condition" into the litigation by alleging emotional distress.** **It is more accurate to say that the defendant introduced it by discriminating against the plaintiff.** [9]

**Example:**

A well-adjusted black man of normal sensitivity will suffer emotional distress if he is subjected to racial slurs at work, as will a well-adjusted woman whose co-workers constantly leer at her. Should these victims be expected to seek psychotherapy? And if they are in therapy, should they be expected to dwell on this problem with the therapist? What would a psychotherapist tell these victims? They are suffering the way any normal person in their circumstances would. They are like the tenant whose apartment is full of rats-rats in the bathtub, rats in the kitchen, rats in her child's bed.  If the tenant sues her landlord and alleges that the infestation is causing her emotional distress, should the landlord be able to inspect the tenant's therapy records? [10]

That is why discrimination-related emotional distress is actionable even in the absence of psychological or psychiatric consultation, expert testimony, or physical symptoms.  Physical symptoms are unnecessary because a discrimination victim can suffer considerable distress without necessarily feeling stomach pain, head pain, insomnia, or other indicia of distress.[11]

---

[8] Ibid.
[9] Ibid.
[10] Ibid.
[11] Ibid.

Michael Sacks Attorney for defendant's states in his letter to Katz dated January 22nd 2016:

**"There are several reasons that the records sought by the defendants are potentially relevant. One reason is that you filed this lawsuit seeking damages from the defendants, and any information that bears on your claims for damages is relevant."**

**Many courts have addressed objections by plaintiffs who request damages, including damages for emotional distress, but object to allowing the defendant to "discover" records that may impact a judge or jury's assessment of what caused or contributed to the plaintiff's emotional distress or other damages claimed."**

**"Leaving aside your claim for damages, you have asserted claims for Negligent or Intentional Infliction of Emotional Distress. That claim justifies discovery by defendants about other issues in your life that may have caused or contributed to your emotional distress, and the records of your mental health care providers and schools may shed light on that issue."**

(Letter from Attorney for defendants Michael Sacks to plaintiff Richard Katz dated January 22, 2016)

For the points stated above in the Legal Arguments, Katz feels that his claims are actionable and his suffering should therefore be inferred in this discrimination case. Katz has provided a plethora of medical documentation to the Court thus far (some under seal accompanying his second amended complaint), that he believes more than substantiates his claims of discrimination against defendants to this Court.

Although much of the case law documenting emotional distress has been in the employment discrimination sector under Title VII, Katz believes that '*discrimination is discrimination*' however it is sliced or diced, that the effects and the outcomes are the same to its victims, therefore the same precedent should be applied here in this discrimination case.

## IV. CONCLUSION

For the foregoing reasons, plaintiff respectfully requests that this Honorable Court grant his Motion for Protective Order.

Respectfully submitted,

Richard Katz
3364 Parker Lane
East Stroudsburg, PA
18301

/s/ Richard Katz_____
Richard Katz
pro se
Dated: January 28th, 2016

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing has been served upon:

**Michael Sacks**
Hamburg & Golden, P.C.
1601 Market Street Suite 3310
Philadelphia PA 19103-1443

Date: January 28th, 2016

/s/ Richard Katz_____
    Richard Katz