# UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF PENNSYLVANIA

**Richard Katz**
3364 Parker Lane
East Stroudsburg, PA 18301

Plaintiff

                                                        Case No.: **3:15-cv-01187**

v.

**NATIONAL BOARD OF MEDICAL EXAMINERS (NBME)**
3750 Market Street
Philadelphia, PA 19104

and

**FEDERATION OF STATE MEDICAL BOARDS (FSMB)**
400 Fuller Wiser Road, Suite 300
Euless, Texas 76039-3855

Defendants

_____

### PLAINTIFF'S BRIEF IN OPPOSITION OF:

**DEFENDANTS MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO OVERRULE PLAINTIFF'S OBJECTIONS TO DEFENDANTS' PROPOSED SUBPOENAS, TO REQUIRE PLAINTIFF TO SIGN AUTHORIZATIONS, AND FOR A PROTECTIVE ORDER REGARDING PLAINTIFF'S REQUEST FOR PERSONNEL FILES OF DEFENDANT NBME'S EMPLOYEES**

Comes now the 2004 medical school graduate who has a **documented disability,** who has taken and failed Step 1 of the United States Medical Licensing Exam on nine occasions, **due to his disability not being accommodated for**, who is suing the National Board of Medical Examiners (NBME) and the Federation of State Medical Boards (FSMB) **for failure to provide reasonable**

**accommodations** under the Americans with Disability Act (ADA) that he requested in 2005, but denied to him in 2006, again requested in 2014 and again denied to him in 2014, Richard Katz (hereinafter Katz) appearing pro se states as follows:

In this opposition brief, Katz responds in **bold** to the defendant's motion entitled:

"MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION
TO OVERRULE PLAINTIFF'S OBJECTIONS TO DEFENDANTS' PROPOSED
SUBPOENAS, TO REQUIRE PLAINTIFF TO SIGN AUTHORIZATIONS,
AND FOR A PROTECTIVE ORDER REGARDING PLAINTIFF'S REQUEST
FOR PERSONNEL FILES OF DEFENDANT NBME'S EMPLOYEES"

**The defendant's state their opinions that the Court should:**

"overrule plaintiff's objections to defendants' proposed subpoenas seeking complete records concerning plaintiff's psychiatric and academic history. Defendants contend that such records are discoverable as bearing on, among other things, plaintiff's claim for damages, his claim that defendants negligently or intentionally caused him emotional distress, and his claim that defendants have impaired his economic opportunities by causing his medical career to be in a state of "perpetual limbo." Defendants also request that the Court order plaintiff to sign the authorizations provided to him so that the mental health providers and academic institutions to which the subpoenas are directed will comply without further need to return to the Court."

**As stated in his 'Objection to Defendants' Proposed Subpoenas and Addendum' and 'Motion for Protective Order', the defendant's requests are outside the parameters of the issues of this case. The law safeguards and prohibits a defendant from engaging in a fishing expedition with respect to a plaintiffs' medical history.[1]**

**On January 19th, 2016 Katz received an email from Counsel for defendants informing him that the defendants intend to serve subpoenas on January 25, 2016 to the following fourteen individuals and entities:**

- **Holtz Psychological**

- **Dr. David Kreditor**

- **Samuel Lupardo**

- **SUNY Old Westbury**

- **New School (Parsons)**

---

[1] *Jessica Curiale, "Protecting your client's privacy Why narrowing the scope of a subpoena for medical records may not be enough", www.plaintiffmagazine.com Copyright © 2012 by the author. 1-2*

- **Pocono Medical Center**
- **The ReDCo Group**
- **The Aaron Center**
- **St. John's University**
- **St. John's University (Counseling)**
- **St. Joseph's College**
- **St. Joseph's College (Counseling)**
- **The Center for Emotional Care**
- **Dr. Ubaldo Leli**

**Although Katz never attended St. John's University, the defendants request some *phantom academic records* pertaining to him, a school he never even matriculated at.  Katz did utilize St. John's Psychological Center for Student Services, paid for the service of having psychoeducational testing performed to address his disabilities in 2003 and in 2005.**

**Many of the caregivers listed above have no bearing on this case, no longer have patient files pertaining to Katz, as ten years or greater have elapsed.  This should be evidence to this Court that the defendants are on a 'fishing expedition' and presently lack focus on the issues of this case.**

**The defendants state that they:**

"object to producing, and seek a protective order related to, plaintiff's request for the confidential personnel files of five current and former NBME employees. Unlike plaintiff, who has opened himself up to scrutiny by filing this lawsuit and seeking damages, those employees have not done anything that should subject them to such an invasion. While their work pertaining to plaintiff's request for accommodations is open to review and scrutiny, their private employment files are not."

**Katz replies:**

**"it is not accurate to say that a plaintiff in a discrimination case has "introduced" his mental "condition" into the litigation by alleging emotional distress. It is more accurate to say that the defendants introduced it by discriminating against the plaintiff.[2]"**

---

[2] David A. Robinson, *DISCOVERY OF THE PLAINTIFF'S MENTAL HEALTH HISTORY IN AN EMPLOYMENT DISCRIMINATION CASE*, 16 W. New Eng. L. Rev. 55 (1994), http://digitalcommons.law.wne.edu/lawreview/vol16/iss1/4

**The five NBME employee personnel files in question are relevant to this case for the following reasons, in 2005 they spoke with Katz's caregivers by telephone, they made decisions related to Katz's disability application, formulated and developed policy that did not consider and/or made no concession for USMLE candidates with documented disabilities.  They made false statements about Katz's disability application being "reviewed by experts in the fields of learning disability and mental disorders"**

**Katz therefore poses the following question and respectfully asks this Court:**

**Why shouldn't these personnel files be discoverable to him?**


**The defendants claim:**

Under section III. Statement of Facts Pertaining to this Discovery Motion:

"On January 7, 2016, defendants sent a request for documents to plaintiff, together with authorizations for the release of his medical/psychiatric records, educational records, and work records, and requested that plaintiff sign the authorizations and return them to defendants so defendants could send for relevant and discoverable records pertaining to him. (Exhibit 1.1) Plaintiff did not respond to the request for the authorizations."

**Mr. Sacks Counsel for the defendants never included a deadline or a response date that Katz was to reply by in his January 7th, 2016 request.  This was his responsibility, and thus his administrative failure.**


**The defendants claim:**

"On January 19, 2016, in accordance with Fed. R. Civ. P. 45(a)(4), defendants sent to plaintiff 14 proposed subpoenas directed to plaintiff's medical/psychiatric providers and schools of which defendants were aware.2 The subpoenas seek records that are reasonably likely to contain or lead to the discovery of admissible evidence bearing on plaintiff's request for damages and on certain of his legal claims. Exhibit 2."

**The defendants request was overbroad as they went off on their "fishing expedition."**

**"The scope of discovery must be narrowly circumscribed, drawn with narrow specificity, and must proceed by the least intrusive manner." (Ibid. (emphasis added).) The party seeking the constitutionally protected information has the burden of establishing that the information sought is directly relevant to the claims." (Tylo, supra, 55 Cal.App.4th at 1387.)[3]**

---

[3] *Jessica Curiale, "Protecting your client's privacy Why narrowing the scope of a subpoena for medical records may not be enough", www.plaintiffmagazine.com Copyright © 2012 by the author. 1-2*

**The defendant's state:**

"As if in response to defendants' proposed subpoenas, plaintiff sent three proposed subpoenas to defendants the same day, seeking the "confidential personnel files" of three current or former NBME employees. Plaintiff later sent two additional proposed subpoenas. Exhibit 3.3."

**Katz only recently received the documents numbered NBME/Katz 0001-0217 from defendants (January 11, 2016) and was already preparing to request three of the NBME employees personnel files prior to the defendants January 19th email introducing their 14 proposed subpoenas.   The defendant's statement; "As if in response to defendants' proposed subpoenas, plaintiff sent three proposed subpoenas to defendants…."**

**This is a gross assumption on the part of the defendant's.  Much like they assumed that Katz attended St. John's University because he utilized St. John's Psychological Services.  The defendants employ many unwarrantable claims.**

**The defendant's state:**

"Also on January 19, 2016, plaintiff filed an objection with the Court to defendants' proposed subpoenas for his medical/psychiatric and educational records. Document 74 on the Court Docket."

**Katz filed an Objection with this Court to defendants proposed subpoenas, because the defendants made overly broad requests for Katz's medical documents as if to suggest that they have no focus as to where to direct their attention in building a defense to the accusations put forth against them.  Since they appear to have no *nidus* to build their case, the defendants requested everything from Katz "but the kitchen sink."**

**The defendant's state in their foot note number 3 page 4:**

"Plaintiff used the format of subpoenas to seek the personnel files of defendant NBME employees, rather than a request for documents. In the parties pre-motion conference, defendant explained that subpoenas were not necessary, and stated that defendants would treat the subpoenas as document requests".

**During the pre-motion conference:**

**Katz asked Counsel for defendants Michael Sacks to clarify the point that he makes in the above footnote.  In a rather smug reply Mr. Sacks stated "you can ask for the files but it doesn't mean we are going to give them to you" the point Mr. Sacks attempts to make here, is insignificant and of no consequence.  They are just words to procedurally placate this Court.**

**The defendant's state:**

"While plaintiff's prayer for relief does not use the words "emotional distress," his request for "general damages" and "compensatory damages," coupled with his cause of action for negligent or intentional infliction of emotional distress, leaves no doubt that he seeks damages for emotional distress."

**Katz exhausted all administrative remedies prior to filing this lawsuit, he clearly asked defendants to accommodate his disabilities in his April 1st 2014 Appeal.**

**(see Documents 1-2 Pages 1-29)**

**Katz needed extra time during his medical licensing exams because his disability prevented him from processing all of the exam questions in the time permitted under regular exam conditions. This request was denied on April 17, 2014 by the office of the USMLE Secretariat**

**(see Document 1-4 Page 1).**

**Katz responded with a second Appeal on April 20, 2014 to NBME Disability Services regarding the injustice of 'The Six Attempt Limit Rule' for people with documented disabilities. NBME never responded to Katz's second Appeal.**

**(see Documents 1-4 Pages 2-4).**

**Katz made further attempts to resolve this matter with NBME/FSMB prior to filing this lawsuit. By pursuing an exception to 'the six attempt limit rule' as outlined in Amy Bueno's letter dated April 17, 2014: (Office of the USMLE Secretariat):**

**"According to the *USMLE Bulletin of Information*, the only exception to this policy identified by the USMLE Composite Committee (the governing body of the USMLE program) involves state medical boards. The policy includes a provision to allow examinees who have six or more attempts at a Step or component to have an additional attempt if so requested by a state medical board that is fully informed of the individual's prior examination history."**

**(see Document 1-4 Filed 06/17/15 Page 1 of 5)**

**With the help of Representative David Parker's Office of District 115 Katz inquired about the above provision on March of 2015 and the matter was placed on the May 2015 Agenda of the Pennsylvania State Board of Medicine. The conclusion is stated in the Counsel for the State of PA Board of Medicine's letter dated June 4, 2015:**

**"The Board determined that the request to waive the six-attempt limit is premature. If you are successful in your appeal, the Board anticipates that the NBME will grant reasonable accommodations and authorize your client (Katz) to re-test. If for some reason the NBME**

**will provide accommodations but will not allow re-testing without authorization from the Board to waive the six-attempt limit, please correspond with us again and the matter will be presented to the Board for action."**

**(see Document 1-7 Filed 06/17/15 Page 4 of 5)**

**The defendants claim:**

"It is well settled that when a plaintiff seeks damages for emotional distress, he has placed his mental health at issue and the defendants have the right to obtain his medical and psychological records to explore other potential sources of the emotional distress. Hall v. Berdanier, 2013 WL 818603, *2 (M.D.Pa. 2013), Exhibit 5; Furey v. Wolfe, 2012 WL 877115, *2 (E.D.Pa. 2012), Exhibit 6; McKinney v. Delaware County Memorial Hospital, 2009 WL750181, *3 (E.D.Pa. 2009), Exhibit 7; Topol v. Trustees of the Univ. of Pennsylvania, 160F.R.D. 476, 477 (E.D. Pa. 1995)"

**Katz disagrees with defendant's citing:**

"…..all people are by nature free and independent and have inalienable rights, among which is pursuing and obtaining privacy." (*Davis v. Superior Court* (1992) 7 Cal.App.4th 1008, 1013.)[4]

**The mere filing of a personal injury lawsuit does not automatically strip a plaintiff of the right to privacy with respect to their medical records. Although by bringing suit there may be an implicit partial waiver of the right to privacy,** "the scope of such waiver must be narrowly, rather than expansively construed, so that plaintiffs will not be unduly deterred from instituting lawsuits by fear of exposure of private activities." (*Davis, supra*, 7 Cal.App.4th at 1014.)[5]

**Furthermore, "[e]ven when discovery of private information is found directly relevant to the issues of ongoing litigation, it will not be automatically allowed; there must then be a careful balancing of the compelling public need for discovery against the fundamental right of privacy." (Davis, supra, 7 Cal.App.4th at 1014.)[6]**

**In their footnote number 5 page 6 the defendants claim:**

"5 Defendants note that while plaintiff's "Motion to Waive Costs for Depositions and Expert Witnesses" is not at issue here, the Berdanier decision addresses the precise issue raised by

---

[4] Ibid.
[5] Ibid.
[6]

plaintiff in that motion: "There is no authority to appoint and pay an expert to assist an indigent litigant in the preparation for a civil suit for damages. …" 2013 WL 818603 at *3-4".

**The defendants cite the opinion of only one Court, this is not what the law states under Rule 706 of the Federal Rules of Evidence.**

**"*See* Weinstein's Federal Evidence § 706.02[3] (2d Ed.2007) (stating that a court has discretion to appoint an expert of its choosing "in exceptional cases that present unwieldy, complex, or technical issues" or when "there is a need for an impartial, independent assessment of a disputed issue")[7].**

**The defendant's state:**

"In this case, plaintiff not only asserts a claim for negligent or intentional emotional distress and seeks damages for emotional distress that he claims defendants caused, which by itself makes his mental health and academic records relevant under the standards of Rule 26(b)(1)6, he also asserts that defendants' actions have impaired his economic opportunities by causing his medical career to remain in "limbo." Plaintiff's proposed second amended complaint, Document 63, Fifth Cause of Action, page 11. Defendants, therefore, are entitled to discover information in plaintiff's psychiatric and academic records that may shed light on what other factors have caused plaintiff's medical career to be in a state of limbo, including academic and psychiatric factors."

"In his "objection" to defendants' proposed subpoenas, plaintiff argues that the information sought is not relevant, that it is overbroad, that it would "invade Katz's privacy and safety," and that defendants should not be permitted to "sniff[] through or attempt[] to defile Katz's medical and/or educational records." Document 74, page 2. Those objections are clearly put to rest by the case law discussed above because the discovery is relevant to the issues in the case. Further, in his "addendum" to his objection, Document 77, plaintiff asserts that matters contained in his psychiatric records "are extremely sensitive and confidential in nature and may be a source of *embarrassment* to him if revealed." (Italics in the original.) Potential embarrassment, however, is not a basis for objection where the plaintiff has opened himself up to the discovery as discussed above."

---

[7] See also Baker Industries v. Cerberus, Ltd., 570 F. Supp. 1237. 1248 (D.N.J. 1983) (assessment of 85 percent of costs against defendant and 15 percent against plaintiff who prevailed on almost all issues was approved).

**Katz replies:**

**"it is not accurate to say that a plaintiff in a discrimination case has "introduced" his mental "condition" into the litigation by alleging emotional distress. It is more accurate to say that the defendants introduced it by discriminating against the plaintiff.[8]"**

**Federal Rule of Civil Procedure 26(c) provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, <u>embarrassment,</u> oppression, or undue burden or expense." FED. R. CIV. P. 26(c). The "good cause" required for such an order "is established when it is specifically demonstrated that disclosure will cause a clearly defined and serious injury. Broad allegations of harm, unsubstantiated by specific examples . . . will not suffice." Glenmede Trust Co. v. Thompson, 56 F.3d 476, 483 (3d Cir. 1995). Courts are to employ a balancing test to determine whether a protective order is appropriate. Pansy v. Borough of Stroudsburg, 23 Fed. 3d 772, 787 (3d Cir. 1994). A "party seeking protection has the burden of showing that there is good cause for it." Shingara v. Skiles, 420 F.3d 301, 306 (3d Cir. 2005).**

**The Third Circuit Court of Appeals has identified a number of factors to consider in determining whether a protective order should issue:**

**(1) the interest in privacy of the party seeking protection;
(2) whether the information is being sought for a legitimate purpose or an improper purpose;
(3) the prevention of embarrassment, and whether the embarrassment would be particularly**

**serious;
(4) whether the information sought is important to public health and safety;
(5) whether sharing the information among litigations would promote fairness and efficiency;
(6) whether the party benefitting from the order of confidentiality is a public entity or official;
and
(7) whether the case involves issues important to the public.
Arnold v. Pennsylvania, 477 F.3d 105, 108 (3d Cir. 2007)**


**The defendant's state:**

"Plaintiff further argues in his "addendum" that he offered to compromise by allowing defendants' counsel to "interview" the medical providers. Document 77, page 2. That offer,

---

[8] David A. Robinson, *DISCOVERY OF THE PLAINTIFF'S MENTAL HEALTH HISTORY IN AN EMPLOYMENT DISCRIMINATION CASE*, 16 W. New Eng. L. Rev. 55 (1994),
http://digitalcommons.law.wne.edu/lawreview/vol16/iss1/4

however, is both unorthodox and impractical. Defendants are not seeking to depose the health care providers, yet the providers would likely see such an "interview" as akin to a deposition, leading to questions about payment for their preparation and interview time, whether they should be represented by attorneys, and the scope of the questioning, just to name a few issues that would arise. Moreover, without seeing the records, defendants might never discover pertinent information about which they don't know to ask."

**Katz did offer to allow the defendants to conduct an ex parte interview of only a few of his healthcare providers.**

**This was prior to Katz researching this modality in the courts and learning that such practices are not accepted by HIPPA.  Before HIPPA courts were divided on this issue (see Herchenroader vs. Johns Hopkins University Applied Physics Lab 171, F.R.D. 179, 181-182 (D. Md. 1997) and Sanchez v. Zabihi, <u>166 F.R.D. 500</u> (D.N.M. 1996).**


**The defendants state in section:**

B. The Court Should Grant Defendants' Motion for Protective Order Regarding Plaintiff's Requests for NBME Employee Personnel Files.

"Simply put, the proposed subpoenas for the NBME employees' personnel files seek information that is not relevant to any issue in the case."

"Unlike a plaintiff who seeks damages for emotional distress or the loss of a career opportunity, none of the individuals whose personnel files plaintiff seeks brought a lawsuit or seeks damages, and therefore they have not opened themselves up to the same kind of scrutiny that plaintiff has. While the decisions made by NBME are at issue, the private facts contained in the employees' personnel files are not."

**Katz again states:**

**"it is not accurate to say that a plaintiff in a discrimination case has "introduced" his mental "condition" into the litigation by alleging emotional distress. It is more accurate to say that the defendants introduced it by discriminating against the plaintiff.[9]"**

**Katz has already addressed in this brief his reasons for requesting the five NBME personnel files that the defendants are opposed to producing.**

---

[9] Ibid.

**The defendant's state:**

"Contrary to plaintiff's argument, the personnel files of the individual employees are not likely to lead to relevant information bearing on the questions plaintiff raises above. Leaving aside curricula vitae and job descriptions contained in such files, which defendants have agreed to produce, information in the files is not likely to lead to admissible evidence on "the mechanics of NBME Disability Services as they relate to Katz's disability accommodation request in 2005-2006," or on "the more recent 2014 issues that Katz experienced, namely involving the six attempt limit rule," nor does he need "a better understanding of the players that had involvement11 in the denial of Katz's accommodations for his disability in 2005 through 2006." Simply put, the personnel files are not relevant to any issues in the case."

"Plaintiff has served interrogatories and document requests, which are more appropriate vehicles for discovering information on the questions he raises in his "Addendum," quoted above. Defendants are gathering the information to provide timely answers to plaintiff's interrogatories and document requests. However, in the absence of any convincing argument as to the relevance of the NBME employees' personnel files, the NBME objects to producing those files and requests that the Court issue an appropriate protective order."

**Katz respectfully suggests that Counsel for defendants direct and advise their own clients (NBME/FSMB) and refrain from offering any recommendation as to what would be the "more appropriate vehicles for discovering information on the questions raised" by the plaintiff (Katz).**

**Conclusion:**

**Based on the reasons outlined in this opposition brief to the defendants:**

"MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION
TO OVERRULE PLAINTIFF'S OBJECTIONS TO DEFENDANTS' PROPOSED
SUBPOENAS, TO REQUIRE PLAINTIFF TO SIGN AUTHORIZATIONS,
AND FOR A PROTECTIVE ORDER REGARDING PLAINTIFF'S REQUEST
FOR PERSONNEL FILES OF DEFENDANT NBME'S EMPLOYEES."

**The plaintiff Richard Katz , respectfully requests that the Court <u>deny</u> defendants overruling of plaintiff's objections to defendants' proposed subpoenas; <u>deny</u> requiring plaintiff to sign and return the authorizations defendants provided to him; and <u>deny</u> defendants' motion for protective order concerning plaintiff's request for the personnel files of five current or former NBME employees.**

Respectfully submitted,

**Richard Katz**
3364 Parker Lane
East Stroudsburg, PA
18301

/s/ Richard Katz_____
Richard Katz
Pro se

Date: January 30th, 2016

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing has been served upon:

**Michael Sacks**
Hamburg & Golden, P.C.
1601 Market Street Suite 3310
Philadelphia PA 19103-1443

Date: January 30th, 2016

/s/ Richard Katz_____
    Richard Katz