# The Influence of the Federation of State Medical Boards (FSMB) on State Medical Boards

Paul Martin Kempen, M.D., Ph.D.

## History of the Federation of State Medical Boards (FSMB)

Despite the implications of its name, the Federation of State Medical Boards, Inc. (FSMB), like the American Board of Medical Specialties (ABMS) and its 24 affiliates, is not a governmental authority. None of these entities have official legislative or regulatory power afforded by any federal or state government.[1] FSMB, however, uses its contacts and influence with state medical boards (SMBs) to advance its corporate products. This may be called "crony capitalism."

When founded decades ago with the support of the American Medical Association, when licensing and medical regulation were in their infancy, these organizations collaborated closely, serving a purpose in creating standards for students and trainees entering the profession. However, FSMB has now become part of a lucrative industry that imposes significant expense without value onto patients and practicing physicians, expanding their markets by making demands upon their "return customers": licensed physicians. FSMB is tax exempt under section 501(c)(6) of the Internal Revenue Code, although it is in the business of selling to physicians "products and services" that become "needed" only after it lobbies government agencies, such as SMBs, to require them through legislation, organizational demand, and administrative policy. This is known as regulatory capture of a market.[1-3] These methods have caused FSMB to become a corporate juggernaut with gross receipts of $50 million per year. It is now a premier "physician adverse" organization.[4]

Legacy products of FSMB include the Educational Commission for Foreign Medical Graduates, (ECFMG), the Federation Licensing Examination (FLEX), and the United States Medical Licensing Examination (USMLE), traditionally sold to medical students and residents at significant base cost and additional surcharges (Table 1). The USMLE tests include a CK (Clinical Knowledge) and a CS (Clinical Skills) portion.

## Methods of Furthering FSMB's Agenda

Previously, FSMB effectively mitigated opposition from practicing physicians by not making them financial targets. In recent years, however, FSMB has branched out to increasingly force sales of its products onto practicing physicians using licensure, creating significant opposition through state medical societies when it tried to impose its program of Maintenance of Licensure (MOL) upon our profession.[3] FSMB continues to work on MOL and several new proprietary products, including the Special Licensing Examination (SPEX), the Federation Credential Verification System (FCVS), and the Universal Application form (UA), using medical board collaborators to promote its products through regulatory capture mechanisms.

FSMB achieves introduction of favorable legislation or simple SMB "policy mandates" through legislators or employed personnel. It has become part of the extensively used and effective "fourth branch of government." Jonathan Turley, a professor of public interest law at George Washington University, writes:

> The vast majority of laws governing the U.S. are not traditional laws, as they are now created outside the constitutional mechanisms of elected legislators. Rather, they are now issued as regulations, crafted largely by thousands of unnamed, unreachable, and often mid-level bureaucrats and government employees, typically skirting any public or professional notice or scrutiny. One study found that in 2007, Congress enacted 138 public laws, while federal agencies finalized 2,926 rules, including 61 major regulations. This rule-making comes with little accountability.[5]

## The Interstate Medical Licensure Compact (IMLC)

While the FSMB's attempt to mandate MOL has at this time been defeated, the Interstate Medical Licensure Compact (IMLC) has become the new FSMB back-door attempt to introduce MOL

**Table 1:** USMLE Fees for 2016

|  | 2016 Fees | Effective Dates for 2016 Fees |
|---|---|---|
| **Step 1** | $600* | Three month eligibility periods beginning Nov. 1, 2015 – Jan. 31, 2016, and ending Oct. 1, 2016 – Dec. 31, 2016 |
| **Step 2 CK** | $600* | |
| **Step 1 and 2 CK** | $70 | Eligibility Period Extension (requests received starting Jan. 1, 2016) |
| **Step 2 CS** | $1,275 | For completed applications received starting Jan. 1, 2016. |

*Step 1 and Step 2 CK: international or regional surcharges may apply
Source: National Board of Medical Examiners, http://www.nbme.org/Students/examfees.html

and MOC, and to increase FSMB capture of physician revenue, without any proof or likelihood of medical benefit to anyone. FSMB is strongly marketing IMLC as a means to meet contemporary needs to expedite licensing for telemedicine practice. In fact, it is yet another corporate ploy to control medical care. IMLC continues to force expensive licensing purchases in every state where practice is planned, to maintain state revenues and power, which would amount to more than $5,000 per licensed physician per cycle for licensure in all states.[6]

The telemedicine industry and the federal government are seeking an alternate means to expedite telemedicine: a licensing reciprocity mechanism, much like a driver's license, under which any state license would allow practice in every state. For example, SB 1778, the TELE-MED Act of 2015, would specifically mandate the ability of any licensed physician to treat Medicare patients in any state.[7] This would simplify licensing and practice, and obviate the high costs of licensure in every state. State and patient rights remain effectively enforceable under state laws, as is typical for any driver's actions.

FSMB has yet to provide any information concerning the cost of IMLC, but it has already received more than $700,000 in Department of Health and Human Services grant #H1NRH17207 to get IMLC online. It is clear that this will be a very expensive and completely new, nongovernmental organization, mandating all FSMB products under FSMB leadership at the national level and scope. Physicians will be paying for this FSMB program.[8]

There has been an interstate nurse licensure compact in existence for more than 25 years, now in 25 states, which allows licensees in one state to practice by reciprocity in all 25 member states. The costs of such compacts is exemplified by the National Council of State Boards of Nursing, which documented on its 2013 IRS Form 990 more than $128 million in gross receipts and net assets of $208 million, after a mere 25 years of existence.[9] Profits for the nursing compact are overwhelmingly from testing services (National Council Licensing Examination-NCLEX), similar to those at FSMB.

Many SMBs maintain very inefficient methods of medical licensing, creating the apparent need for expedited licensing. However, information from Ohio experience, accessed using FOIA, shows that the state board has already provided an internal mechanism of state-expedited licensing at $1,000, three times the "regular" fee of $335, which demonstrated a very significant improvement in both regular and expedited turn-around times in the one year since introduction, with only 14 days' reduction in the turnaround time achieved by paying the higher fee (Table 2). It may actually be detrimental to turn over expedited licensing to the IMLC because it hampers attempts to improve state boards' performance in all licensing. FSMB itself may be the least desirable administrator, as it scores extremely low for service to customers (physicians) as indicated on the YELP ratings for the FCVS.[10]

Of significant concern are FSMB's UA and FCVS, for which FSMB strongly lobbies in all states and which will be mandated under IMLC, as ABMS certification already is. In West Virginia, the medical board is required by law to provide the application document to those who paid the state's fee. Yet since 2013, it demands use of the FSMB-UA and payment of $50 just to use that form. Since 1996, Ohio has required FCVS for licensure, whereas no primary verification of documents was previously mandated or performed internally. It is completely unwarranted for a graduate of an Ohio medical school and residency to be required to pay $350 or more to the FCVS in Texas to verify his degree before he can be licensed in Ohio! The FSMB-UA and FCVS are monopoly business products with purchase mandated by SMBs.

These medical boards openly advocate for FSMB and provide hot links to its products on their state websites. See, for example, West Virginia's site, https://wvbom.wv.gov/. Using FOIA, I have clearly documented FSMB's trail of using friendly medical board members to push its programs into law. FSMB provides "stipends" for SMB members to insure their attendance at FSMB meetings. This advances the corporate agenda and sales of products and services.[11] A 2010 HHS grant (# H1NRH17207) created a position on the North Carolina board ensuring direct FSMB influence there.

SMB nonphysician executive directors are now awarded "commissioner status" on the new IMLC for their efforts. According to documents released in response to a FOIA request, as of Oct 29, 2015, only seven of 22 board commissioners are physicians. Inclusion of commissioners who are nurses, lawyers, physician assistants, or business consultants diminishes physician oversight and facilitates further nominations of FSMB allies. This insures minimal influence by practicing physicians. SMBs, in contrast, require physician board membership to ensure professional oversight and some protection for practicing physicians.

**Opposition to IMLC**

The many reasons for states' declining to join the FSMB IMLC are explained in analyses from Ohio[12] and Missouri.[13] They include loss of revenue, diminished authority, and increased legal liability in enforcement of the corporate IMLC.

An additional concern is the use of the FSMB-UA to accrue physician data for resale using two commercial FSMB subsidiaries: www.DocInfo.org and www.mydatacommons.org. This personal and professional data, including Social Security information, is transmitted, without consent, to a "third, Texas-based and corporate party."

National physician specialty organizations generally monitor

**Table 2:** Regular vs. Expedited Medical Licensure in Ohio

| New Licenses | | Month to Month Comparison | | | Year to Date Comparison | | |
|---|---|---|---|---|---|---|---|
| | | October, 2015 | October, 2014 | % Change | 2015 YTD | 2014 YTD | % Change |
| MD / DO New Licenses Issued | | 135 | 164 | 18% | 2,143 | 2,236 | 4% |
| | Average Days to Issue | 57 | 81 | 30% | 56 | 82 | 32% |
| Expedited New Licenses Issued | | 9 | | | 126 | | |
| | Average Days to Issue | 21 | | | 42 | | |

Source: response to FOIA request by State Medical Board of Ohio

federal programs closely, but pay inadequate attention to state-level oversight. Thus physicians must personally watch their state legislatures and SMB. Stealth passage of practice-adverse measures ultimately culminates in imposition of adverse SMB regulations. AMA endorsed IMLC at the federal level, and this facilitated advancement at state levels, leading to missed opportunities for state discussion and opposition. As FSMB is well-funded, well-versed in the political process, and adept in execution, multiple states have now accepted this albatross, to the detriment of patients and physicians.

With IMLC now passed in enough states to take effect, physicians at the state level must expose the complicity of the FSMB within SMBs. An important tool is the federal FOIA and state "open records" or "sunshine" laws. For example, the West Virginia law reads as follows:

> **WEST VIRGINIA CODE CHAPTER 29B. FREEDOM OF INFORMATION.**
> **ARTICLE 1. PUBLIC RECORDS.**
> **§29B-1-1. Declaration of policy.**
> Pursuant to the fundamental philosophy of the American constitutional form of representative government which holds to the principle that government is the servant of the people, and not the master of them, it is hereby declared to be the public policy of the state of West Virginia that all persons are, unless otherwise expressly provided by law, **entitled to full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and employees.** The people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know. The people insist on remaining informed so that they may retain control over the instruments of government they have created. To that end, the provisions of this article **shall be liberally construed** with the view of carrying out the above declaration of public policy [emphasis added].[14]

These laws afford significant opportunity to discover evidence of FSMB's corporate influence over SMB members, serving the FSMB instead of the state's citizens. My recent FOIA request has identified more than 200 pages of communications between the West Virginia Board of Medicine executive director and FSMB in the period leading to IMLC passage, while both legislators who sponsored the bill for passage provided no documents in the same search. This identifies a clear FSMB pathway of crony capitalism. This executive director, besides actively limiting access to public records, has now become an FSMB spokesperson and been named to the IMLC as commissioner. Was this a quid pro quo for his service to the FSMB in passing the IMLC?

Such individual FOIA investigations and resultant political activities/exposure were central in exposing FSMB MOL and seeing FSMB advocates removed from state power in Ohio.[15] Participation of state medical societies in SMB oversight increases the effectiveness of our professional voice.

Continuing investigation in West Virginia is demonstrating that FSMB advocates are manipulating decisions and obfuscating the issues in a manner that may violate state law, in both spirit and letter. Public servants are so named because they are meant to serve the public; they should not be enriching themselves personally or professionally at our expense. SMBs should not be facilitating any particular corporate program, and certainly not without competitive bidding, which is required in West Virginia for exclusive products.

Physicians need to track SMB activity monthly, and review their states' public information or "sunshine" laws for optimal use. Opportunities to investigate and take legal action include interaction with state legislators, an ethics commission, and the attorney general when ethical or criminal actions are identified. FOIA and state open records requests should always be made as electronic data/e-mail attachments to minimize personal expense and facilitate an expedient response. Questions must be clearly stated as "requests for documents demonstrating [XYZ]." List each topic individually, numerically or as bulleted points, for emphasis and clarity.

## Conclusion

While nonphysicians are being given the authority to practice medicine and prescribe without the physician oversight requirements of SMBs, physicians are being subjected to more expensive and onerous requirements, which bring in revenue for FSMB and other tax-exempt corporations, which lobby extensively and have achieved a high degree of regulatory capture.

Physicians need to be vigilant and to take immediate action to stop and roll back the expansion of FSMB and other profiteering corporations. FOIA and comparable state disclosure laws are important weapons in exposing their activities.

**Paul Martin Kempen, M.D., Ph.D.,** practices anesthesiology in West Virginia and is a director of AAPS. Contact: kmpnpm@yahoo.com.

**REFERENCES**

1. Kempen PM. Maintenance of Certification (MOC), and now Maintenance of Licensure (MOL): wrong methodologies to improve medical care. *J Am Phys Surg* 2012;17:12-14.
2. Kempen PM. Maintenance of Certification (MOC), Maintenance of Licensure (MOL), and continuing medical education (CME): regulatory capture of medicine. *J Am Phys Surg* 2012;17:72-75.
3. Kempen PM. Successful opposition to Maintenance of Licensure: the Ohio experience as an educational template. *J Am Phys Surg* 2012;17:103-106.
4. Kempen PM. Maintenance of Certification and Licensure: regulatory capture of medicine. *Anesth Analg* 2014;118(6):1378-1386.
5. Turley J. The rise of the fourth branch of government. *Washington Post*, May 24, 2013. Available at: https://www.washingtonpost.com/opinions/the-rise-of-the-fourth-branch-of-government/2013/05/24/c7faaad0-c2ed-11e2-9fe2-6ee52d0eb7c1_story.html. Accessed Dec 3, 2015.
6. Snavely J. The Interstate Medical Licensure Compact: claims vs. reality. *J Am Phys Surg* 2015;20:20.
7. TELEmedicine for MEDicare Act of 2015. Available at: https://www.congress.gov/bill/114th-congress/senate-bill/1778. Accessed Dec 3, 2015.
8. FSMB. Federal grant awarded to support state medical boards in developing infrastructure for interstate medical licensure compact. Available at: https://www.fsmb.org/M.
9. NCSBN: Interstate nurse licensure compact. Available at: https://www.ncsbn.org/nurse-licensure-compact.htm. Accessed Dec 2, 2015.
10. YELP. Federation Credentials Verification System. Available at: http://www.yelp.com/biz/federation-credentials-verification-service-dallas. Accessed Dec 2, 2015.
11. State Medical Board of Ohio. Meeting Minutes; Mar 13, 2014: 21925-21926. Available at: http://med.ohio.gov/DNN/PDF-FOLDERS/For-The-Public/Board-Meetings-Minutes/2014-Minutes/03-14minutes.pdf. Accessed Dec 2, 2015.
12. State Medical Board of Ohio. Letter to physicians. Available at: http://med.ohio.gov/Portals/0/DNN/PDF-FOLDERS/Center-Panel/News-Folder/Interstate-Compact-Licensure-Letter-to-Physicians.pdf. Accessed Dec 2, 2015.
13. Schappe S. Memorandum from General Counsel, State of Missouri, to Members of the Board of Registration for the Healing Arts. Available at: http://aapsonline.org/MissouriBOHACompact.pdf. Accessed Dec 2, 2015.
14. West Virginia Code Chapter 29b. Freedom of Information. Article 1. Public Records. Available at: http://www.legis.state.wv.us/WVCODE/ChapterEntire.cfm?chap=29B. Accessed Dec 2, 2015.
15. Meyer RJ. Inspector General: Report of Investigation. State Medical Board of Ohio. File ID NO. 2012-CA00106; May 21, 2014. Available at http://watchdog.ohio.gov/Portals/0/pdf/investigations/2012-CA00106.pdf. Accessed Dec 2, 2015.