# EXHIBIT 1

UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

**Richard Katz**
3364 Parker Lane
East Stroudsburg, PA 18301

Plaintiff

Case No.: 3:15-cv-01187

v.

**NATIONAL BOARD OF MEDICAL EXAMINERS (NBME)**
3750 Market Street
Philadelphia, PA 19104

and

**FEDERATION OF STATE MEDICAL BOARDS (FSMB)**
400 Fuller Wiser Road, Suite 300
Euless, Texas 76039-3855

Defendants

___

**PLAINTIFF'S INTERROGATORY REQUEST FOR SUPPLEMENTAL ANSWERS FROM DEFENDANTS**

COMES NOW, the pro se Plaintiff, Richard Katz and propounds these Supplemental Interrogatories upon the Defendants, NBME et al., to fully, under oath, and in accordance with the Federal Rules of Civil Procedure, Rule 33 subject to the instructions set forth below respond to the following Interrogatories.  You are required to respond no later than fifteen (15) calendar days after receipt of these Supplemental Interrogatories.

Rule 37 of the Federal Rules of Civil Procedure states that if a party fails to adequately respond to an interrogatory under Rule 33, "the discovering party may move for an order compelling [a supplemental] answer." Fed. R. Civ. P. 37(a)(2). "[A]n evasive or incomplete disclosure, answer, or response is to be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(3).

The Rules requires that "each interrogatory shall be answered separately and fully." Fed. R. Civ. P. 33(b)(1).

**INSTRUCTIONS**

A. Each Interrogatory is to be answered fully on the basis of information which is in your possession.

B. In each of your answers to these Interrogatories, you are requested to provide not only such information as is in your possession, but also information as is reasonably available. In the event that you are able to provide only part of the information called for by any particular Interrogatory, please provide all the information you are able to provide and state the reason for your inability to provide the remainder.

C. If you object to or otherwise decline to answer any portion of an Interrogatory, please provide all information called for by that portion of the Interrogatory to which you do not object or to which you do not decline to answer. For those portions of an Interrogatory to which you object or to which you do not decline to answer, state the reason for such objection or declination.

D. Every Interrogatory herein shall be deemed a continuing interrogatory and information in addition to or in any way inconsistent with your initial answer to such Interrogatory.

**DEFINITIONS**

A. "Plaintiff" means Richard Katz.

B. "Defendants" means NBME and FSMB

C. "you," "your," or "yourself," means the defendants NBME and FSMB and any and all of its current and previous agents, representatives, employees, servants, consultants, contractors, subcontractors, investigators, attorneys, and any other persons or entities acting or purporting to act on their behalf.

D. "Person", "persons," "people", and "individual" means any natural person, firms, companies, corporations, partnerships, proprietorships, joint ventures, organizations, groups of natural persons or other associations or entities separately identifiable whether or not such associations or entities have a separate legal existence in their own right.

E. "Document," "documents," and "writing" means all records, papers, and books, transcriptions, pictures, drawings or diagrams or every nature, whether transcribed by hand or by some mechanical, electronic, photographic or other means, as well as sound reproductions of oral statements or conversations by whatever means made, whether in your actual or constructive possession or under your control or not, relating to or pertaining to or in any way to the subject matters in connection which it is used and includes originals, all file copies, all other copies, no matter how prepared and all drafts prepared in connection with such writing, whether used or not, including by way of illustration and not by way of limitation, the following; books; records; reports; contracts; agreements; expense accounts; canceled checks; catalogues; price lists; video, audio and other electronic recordings; memoranda (including written memoranda of telephone conversations, other conversations, discussions, agreements, acts and activities); minutes; diaries; calendars; desk pads; scrapbooks; notes; notebooks; correspondence; drafts; bulletins; electronic mail; facsimiles; circulars; forms; pamphlets; notice; statements; journals; postcards; letters; telegrams; publications; inter- and intra- office communications; photostats; photographs; microfilm; maps; drawings; diagrams; sketches; analyses; electromagnetic records;

transcripts; and any other documents within defendant's possession, custody or control from which information can be obtained or translated, if necessary, by detection devices into reasonably usable form, i.e. typed in English prose.

F. "Communication" or "communications" means any and all inquiries, discussions, conferences, conversations, negotiations, agreements, meetings, interviews, telephone conversations, letters correspondence, notes telegrams, facsimiles, electronic mail, memoranda, or other forms of communications, including but not limited to both oral and written communications.

G. "Produce" and "provide" mean to provide either a legible true copy of the original or any document and/or communication.

H. "Relate to," "relating to," "concerning," "pertain," and "pertaining to," mean consisting of, referring to, reflecting or arising out of, evidencing or in any way legally, logically, or factually connected with the matter discussed, directly or indirectly.

I. "Identify," "identifying," and "identification" when referring to a person mean to provide an identification sufficient notice a deposition of such person and to serve such person with process to require his or her attendance at a place of examination and shall include, without limitation, his or her full name, present or last known address, present or last known business affiliation, home and business telephone number, title or occupation, each of his or her positions during the applicable period of time covered by any answer referring to such person and relationship, if any, to the defendants.

J. "Identify," "identifying," and "identification" when used in reference to a writing or document mean to give a sufficient characterization of such writing or document to properly identify it in a request to produce and shall include, without limitation, the following information with respect to teach such document:

1. The date appearing on such document, and if it has no date, the answer shall so state and shall give the date or approximate date such document was prepared;

2. The identity or descriptive code number, file number, title or label of such document;

3. The general nature and description of such document, and if it was not signed, the answer shall so state and shall give the name of the person or persons who prepared it;

4. The names of the person(s) to whom such document was addressed and the name of each person other than such addressee to whom such document or copies of it, were given or sent;

5. The name(s) of the person(s) having present possession, custody, or control of such document(s); and

6. Whether or not any draft, copy or reproduction of such document contains any postscripts, notations, changes or addendum not appearing on the document itself, and if so, the answer shall give the description of each such draft, copy or reproduction.

K. In answering these interrogatories, the defendants are requested to furnish not only such information as is available to them but also such information as is known to any of the agents, representatives, employees, servants, consultants, contractors, subcontractors, investigators, attorneys, and any other person or entity past or present acting or purporting to act on behalf of the defendants. In any matter responsive to any of the interrogatories the defendants shall set forth completely the grounds for the asserted privilege, along with copies of the Privacy Act provisions or other written materials upon which such assertion is made. The defendants shall identify as to each privileged communication or document:

1. its date;

2. its author(s);

3. the business title or position of its author(s);

4. its recipient(s);

5. the business title or position of its recipient(s);

6. its number of pages;

7. its stated subject matter;

8. the legal basis upon which the agency claims privilege;

9. the specific portion of the interrogatory or document to which the communication or document is responsive.


Documents are to be labeled to indicate the interrogatory to which they respond. In order to simplify the issues and resolve as many matters of fact as possible before hearing, if, following a reasonable and thorough investigation using due diligence, you are unable to answer any interrogatory, or any part thereof, in full, because sufficient information is not available to you, answer the interrogatory to the maximum extent possible, including any knowledge or belief you have concerning the unanswered portion thereof and the facts upon which such knowledge or belief is based. In addition, state what you did to locate the missing information and why that information is not available to you. When an exact answer to an interrogatory is not known, state the best estimate available, state that it is an estimate, and state the basis for such estimate. If documents once in your possession or under your control are requested or are the subject of an interrogatory, and such documents are no longer in your possession or under your control, state when such documents were most recently in your possession or under your control, and what disposition was made of them, including identification of the person now in possession of or exercising control over such documents. If the documents were destroyed, state when and where they were destroyed, and identify the person or persons who directed their destruction. All of the following interrogatories shall be continuing in nature until the date of the hearing, and you must supplement your answers as additional information becomes known or available to you.


**PLAINTIFF'S INITIAL QUESTION:**

3.   Identify all individuals who had input into the decision to deny plaintiff exam accommodations for his disability for USMLE Step 1, Step 2 CK and Stet 2 CS in 2005 through 2006 and in 2014.

**DEFENDANT'S ANSWER:**

Objection. Defendants object to Interrogatory 3 in so far as it refers to the denial of exam accommodations in 2014. As explained to plaintiff in an email from the NBME's Disability Services office dated April 8, 2014 (NBME/Katz 0093), the NBME did not take any action in 2014 with regard to accommodations for plaintiff. Rather, the MIME only decides whether to grant or deny accommodations following a complete review of a candidate's formal request for accommodations submitted in connection with a valid registration for a step of the USMLE. The information plaintiff submitted to the NBME in 2014 remains in a pending status, and will be processed, together with supplemental material, if any, if and when plaintiff submits a valid registration for a step of the USMLE.

Defendants further object to Interrogatory 3 in so far as it refers to the denial of exam accommodations on Step 1 of the USMLE in 2005-2006, because plaintiff did not request accommodations on Step 1 at that time, but rather only requested accommodations for step 2 CK and Step 2 CS.

Without waiving and subject to the foregoing objections, the individuals who had input into the decision to deny plaintiff's request for exam accommodations in 2005-2006 on Step 2 CK and Step 2 CS were J. Abram Doane, then the Manager of Disability Services at the NBME, Greg Baker, Psy.D., then a Psychoeducational Assessment Associate at the NBME, and Catherine Farmer, Psy.D., who served as a consultant to the NBME.

**PLAINTIFF'S SUPPLEMENTAL QUESTIONS:**

3a. Do **YOU** contend that Plaintiff did **NOT** document the problems he was experiencing in a writing dated July 7th, 2005 to NBME Disability Services regarding the testing conditions of the **USMLE Step 1** and his subsequent failures due to his functional limitations, specifically that he was running out of time on the exam?

3b. Do **YOU** contend that Plaintiff did **NOT** submit a notarized Appeal and supplemental support documentation that challenged the Six Attempt Limit Rule providing proof (Dr. Garloff's letter dated February 28, 2014) that he was recently diagnosed with Bipolar Disorder, and requested that the Six Attempt Limit Rule be overturned and accommodations be granted for USMLE Step 1, Step 2 CK and Step 2 CS as well as Step 3 to NBME Disability Services on April 1st, 2014?

3c. Do **YOU** contend that that the Appeal was **NOT** forwarded by NBME Disability Services to Amy Bueno of the USMLE Secretariat's Office and that Ms. Bueno issued a denial letter to this Appeal to Plaintiff on April 17th, 2014 via email and regular mail never acknowledging Plaintiff's disability of Bipolar Disorder?

3d. Do **YOU** contend that Plaintiff did **NOT** respond to NBME Disability Services' April 8th 2014 email on April 20th, 2014 explaining that a formal request for Disability Services would **NOT** be possible for the USMLE Step 1 as long as he was locked out from registering for the USMLE Step 1 Exam?

3e. Do **YOU** contend that on December 18th, 2013 Plaintiff did **NOT** speak to Susan Conroy from NBME Disability Services about the fact that he was locked out from reregistering for USMLE Step 1 and Susan Conroy directed Plaintiff to ECFMG to discuss this matter, even though the Six Attempt Limit Rule was a policy formed by the USMLE Organization (NBME and FSMB) and **NOT** ECFMG?

3f. Do **YOU** contend that when Plaintiff registered for the USMLE Step I exam on November 18th, 2011 that he was aware that he suffered from Bipolar Disorder?

3g. Do **YOU** contend that when Plaintiff registered for the USMLE Step I exam on March 26th, 2012 that he was aware that he suffered from Bipolar Disorder?

3h Do **YOU** contend that when Plaintiff registered for the USMLE Step I exam on December 7th, 2012 that he was aware that he suffered from Bipolar Disorder?

**PLAINTIFF'S INITIAL QUESTION:**

4.  Describe the selection process in step by step detail as to how disability applicants were evaluated in 2005 through 2006 and in 2014 through 2015 for exam accommodations by NBME Disability Services.

**DEFENDANT'S ANSWER:**

Objection. Defendants object on relevance grounds to Interrogatory 4 in so far as it refers to consideration of requests for exam accommodations in 2014-15, since the NBME conducted no evaluation of a request for accommodations for plaintiff during that time.

With regard to the 2005-2006 time frame, the following summarizes the NBME's process for determining whether or not to grant accommodations in response to a request submitted in connection with a registration for Step 1, Step 2 CK or STEP 2 CS of the USMLE:

> a)   The NBME published information and Guidelines to request testing accommodations in the USMLE Bulletin of Information (BOI) and at the USMLE website www.usmle.org.

b)      A candidate who believed he or she had a disability that required accommodation on the USMLE would review the published information and submit a Request for Accommodation together with supporting documentation in connection with his or her Step exam registration.

c)      NBME Disability Services office would conduct a preliminary audit of the request and supporting documentation submitted by the candidate and advise the candidate of any missing information; the candidate would have the opportunity to supplement the documentation supporting his or her request for accommodation.

d)      NBME might send the request and supporting documentation to one or more outside consultants for review.

e)      the Manager of the NBME's Disability Services office would review the outside consultants' written review and recommendations, if applicable, and determine whether to grant an accommodation.

f)      NBME Disability Services would notify the candidate of the decision in writing. If accommodations were approved, NBME Disability Services would notify the test vendor of the approved accommodations to be provided for the Step examination.

The foregoing is just a summary of the usual procedures followed in regard to a request for accommodations, and does not purport to be exhaustive.

**PLAINTIFF'S SUPPLEMENTAL QUESTION:**

4a. Do **YOU** contend that Plaintiff did **NOT** submit a notarized Appeal and supplemental support documentation challenging the Six Attempt Limit Rule and provided proof (Dr. Garloff's letter dated February 28, 2014) that he was recently diagnosed with Bipolar Disorder, and requested that the Six Attempt Limit Rule be overturned and accommodations be granted for USMLE Step 1, Step 2 CK, Step 2 CS and Step 3 to NBME Disability Services on April 1st, 2014?

**PLAINTIFF'S INITIAL QUESTION:**

5. Please state the percentage of disability applicants that were granted accommodations for USMLE Step 1, Step 2 CK and Step 2 CS that were represented by an Attorney vs. those disability applicants that were granted accommodations who were not represented by an Attorney in 2005 through 2006 and in 2014 through 2015.

**DEFENDANT'S ANSWER:**

Objection. Defendants object on relevance grounds to Interrogatory 5 in so far as it refers to consideration of requests for exam accommodations in 2014-15, since the NBME conducted no evaluation of a request for accommodations for plaintiff during that time. Defendants further object to Interrogatory 5 in so far as it seeks information concerning exam accommodations on Step 1 of the USMLE in 2005-2006, because

plaintiff did not request accommodations on Step 1 at that time, but rather only requested accommodations for Step 2 CK and Step 2 CS.

With regard to requests for test accommodations on Step 2 CK and Step 2 CS reviewed during the period of July 1, 2005 through June 30, 2006, seventy-nine percent of requests for test accommodations from applicants who were not represented by an Attorney were approved. None of the requests from applicants that were represented by an Attorney were granted for Step 2 CK and Step 2 CS during that period.

**PLAINTIFF'S SUPPLEMENTAL QUESTIONS:**

5a. Do **YOU** contend that Plaintiff did **NOT** document the problems he was experiencing in a writing dated July 7th, 2005 to NBME Disability Services regarding the testing conditions of the USMLE Step 1 and his subsequent failures due to his functional limitations, specifically that he was running out of time on the exam?

5b. Do **YOU** contend that Plaintiff did **NOT** submit a notarized Appeal and supplemental support documentation that challenged the Six Attempt Limit Rule providing proof (Dr. Garloff's letter dated February 28, 2014) that he was recently diagnosed with Bipolar Disorder, and requested that the Six Attempt Limit Rule be overturned and accommodations be granted for USMLE Step 1, Step 2 CK, Step 2 CS and Step 3 to NBME Disability Services on April 1st, 2014?

5c. Please respond to the portion of question 5 that you have chosen to omit, that asked about the percentage of disability applicants that were granted accommodations for USMLE Step 1, Step 2 CK and Step 2 CS that were represented by an Attorney vs. those disability applicants that were granted accommodations who were **NOT** represented by an Attorney from 2014 to 2015.

5d. Please respond to the portions of question 5 that you have chosen to omit, regarding the percentage of disability applicants that were granted accommodations for USMLE Step 1 from 2005 to 2006 and from 2014 to 2015, for USMLE Step 2 CK and Step 2 CS from 2014 to 2015 that were represented by an Attorney vs. those disability applicants that were granted accommodations who were **NOT** represented by an Attorney.

5e. Please respond to the fate of the 21 percent of disability applicants that were denied exam accommodations from July 1, 2005 to June 30, 2006, for USMLE Step 2 CK and Step 2 CS, and describe whether or not they challenged NBME Disability Services with an Appeal, an Attorney or if they registered under regular exam conditions, also state the pass/fail rate of these applicants?

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing has been served upon:

**Michael Sacks**

Hamburg & Golden, P.C.

1601 Market Street Suite 3310

Philadelphia PA 19103-1443

Date: February 15th, 2016

/s/ Richard Katz_____

    Richard Katz