# EXHIBIT 1

# IN THE UNITED STATES DISTRICT COURT

# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RICHARD KATZ

                                                                   CIVIL ACTION NO.     3:15-cv-01187

      v.

NATIONAL BOARD OF MEDICAL EXAMINERS (NBME) et al.

---

## PLAINTIFF'S SECOND INTERROGATORY REQUEST FOR SUPPLEMENTAL

## ANSWERS FROM DEFENDANTS

COMES NOW, the pro se Plaintiff, Richard Katz and propounds these Supplemental Interrogatories upon the Defendants, NBME et al., to fully, under oath, and in accordance with the Federal Rules of Civil Procedure, Rule 33 subject to the instructions set forth below respond to the following Interrogatories. You are required to respond no later than fifteen (30) calendar days after receipt of these Supplemental Interrogatories.

The Rules requires that "each interrogatory shall be answered separately and fully." Fed. R. Civ. P. 33(b)(1).

INSTRUCTIONS

A. Each Interrogatory is to be answered fully on the basis of information which is in your possession.

B. In each of your answers to these Interrogatories, you are requested to provide not only such information as is in your possession, but also information as is reasonably available. In the event that you are able to provide only part of the information called for by any particular Interrogatory, please provide all the information you are able to provide and state the reason for your inability to provide the remainder.

C. If you object to or otherwise decline to answer any portion of an Interrogatory, please provide all information called for by that portion of the Interrogatory to which you do not object or to which you do not decline to answer. For those portions of an Interrogatory to which you object or to which you do not decline to answer, state the reason for such objection or declination.

D. Every Interrogatory herein shall be deemed a continuing interrogatory and information in addition to or in any way inconsistent with your initial answer to such Interrogatory.

DEFINITIONS A. "Plaintiff" means Richard Katz. B. "Defendants" means NBME and FSMB  C. "you," "your," or "yourself," means the defendants NBME and FSMB and any and all of its current and previous agents, representatives, employees, servants, consultants, contractors, subcontractors, investigators, attorneys, and any other persons or entities acting or purporting to act on their behalf.  D. "Person", "persons," "people", and "individual" means any natural person,  firms, companies, corporations, partnerships, proprietorships, joint ventures, organizations, groups of natural persons or other associations or entities separately identifiable whether or not such associations or entities have a separate legal existence in their own right.  E. "Document," "documents," and "writing" means all records, papers, and books, transcriptions, pictures, drawings or diagrams or every nature, whether transcribed by hand or by some mechanical, electronic, photographic or other means, as well as sound reproductions of oral statements or conversations by whatever means made, whether in your actual or constructive possession or under your control or not, relating to or pertaining to or in any way to the subject matters in connection which it is used and includes originals, all file copies, all other copies, no matter how prepared and all drafts prepared in connection with such writing, whether used or not, including by way of illustration and not by way of limitation, the following; books; records; reports; contracts; agreements; expense accounts; canceled checks; catalogues; price lists; video, audio and other electronic recordings; memoranda (including written memoranda of telephone conversations, other conversations, discussions, agreements, acts and activities); minutes; diaries; calendars; desk pads; scrapbooks; notes; notebooks; correspondence; drafts; bulletins; electronic mail; facsimiles; circulars; forms; pamphlets; notice; statements; journals; postcards; letters; telegrams; publications; inter- and intra- office communications; photostats; photographs; microfilm; maps; drawings; diagrams; sketches; analyses; electromagnetic records;

transcripts; and any other documents within defendant's possession, custody or control from which information can be obtained or translated, if necessary, by detection devices into reasonably usable form, i.e. typed in English prose.  F. "Communication" or "communications" means any and all inquiries, discussions, conferences, conversations, negotiations, agreements, meetings, interviews, telephone conversations, letters correspondence, notes telegrams, facsimiles, electronic mail, memoranda, or other forms of communications, including but not limited to both oral and written communications.  G. "Produce" and "provide" mean to provide either a legible true copy of the original or any document and/or communication. H. "Relate to," "relating to," "concerning," "pertain," and "pertaining to," mean consisting of, referring to, reflecting or arising out of, evidencing or in any way legally, logically, or factually connected with the matter discussed, directly or indirectly. I. "Identify," "identifying," and "identification" when referring to a person mean to provide an identification sufficient notice a deposition of such person and to serve such person with process to require his or her attendance at a place of examination and shall include, without limitation, his or her full name, present or last known address, present or last known business affiliation, home and business telephone number, title or occupation, each of his or her positions during the applicable period of time covered by any answer

referring to such person and relationship, if any, to the defendants. J. "Identify," "identifying," and "identification" when used in reference to a writing or document mean to give a sufficient characterization of such writing or document to properly identify it in a request to produce and shall include, without limitation, the following information with respect to teach such document:

1. The date appearing on such document, and if it has no date, the answer shall so state and shall give the date or approximate date such document was prepared;

2. The identity or descriptive code number, file number, title or label of such document;

3. The general nature and description of such document, and if it was not signed, the answer shall so state and shall give the name of the person or persons who prepared it;

4. The names of the person(s) to whom such document was addressed and the name of each person other than such addressee to whom such document or copies of it, were given or sent;

5. The name(s) of the person(s) having present possession, custody, or control of such document(s); and

6. Whether or not any draft, copy or reproduction of such document contains any postscripts, notations, changes or addendum not appearing on the document itself, and if so, the answer shall give the description of each such draft, copy or reproduction.

K. In answering these interrogatories, the defendants are requested to furnish not only such information as is available to them but also such information as is known to any of the agents, representatives, employees, servants, consultants, contractors, subcontractors, investigators, attorneys, and any other person or entity past or present acting or purporting to act on behalf of the defendants. In any matter responsive to any of the interrogatories the defendants shall set forth completely the grounds for the asserted privilege, along with copies of the Privacy Act provisions or other written materials upon which such assertion is made. The defendants shall identify as to each privileged communication or document:

1. its date;

2. its author(s);

3. the business title or position of its author(s);

4. its recipient(s);

5. the business title or position of its recipient(s);

6. its number of pages;

7. its stated subject matter;

8. the legal basis upon which the agency claims privilege;

9. the specific portion of the interrogatory or document to which the communication or document is responsive.

Documents are to be labeled to indicate the interrogatory to which they respond. In order to simplify the issues and resolve as many matters of fact as possible before hearing, if, following a reasonable and thorough investigation using due diligence, you are unable to answer any interrogatory, or any part

thereof, in full, because sufficient information is not available to you, answer the interrogatory to the maximum extent possible, including any knowledge or belief you have concerning the unanswered portion thereof and the facts upon which such knowledge or belief is based. In addition, state what you did to locate the missing information and why that information is not available to you. When an exact answer to an interrogatory is not known, state the best estimate available, state that it is an estimate, and state the basis for such estimate. If documents once in your possession or under your control are requested or are the subject of an interrogatory, and such documents are no longer in your possession or under your control, state when such documents were most recently in your possession or under your control, and what disposition was made of them, including identification of the person now in possession of or exercising control over such documents. If the documents were destroyed, state when and where they were destroyed, and identify the person or persons who directed their destruction. All of the following interrogatories shall be continuing in nature until the date of the hearing, and you must supplement your answers as additional information becomes known or available to you.

**PLAINTIFF'S SECOND INTERROGATORY REQUEST FOR SUPPLEMENTAL ANSWERS FROM DEFENDANTS**

**PLAINTIFF'S INITIAL QUESTION:**

6. Explain fully the safeguards used, if any, employed by defendants in the selection process of disability applicants receiving exam accommodations for the USMLE and how this is/was communicated to supervisors/managers involved in order to protect against possible or potential bias or discriminatory actions prohibited by law.

**DEFENDANT'S ANSWER:**
Objection.

Defendants object to Interrogatory 6 on the grounds that it is vague, ambiguous and confusing. Without waiving and subject to such objection, defendants Interpret Interrogatory 6 as asking what safeguards defendants employed in 2005-2006 to assure that supervisors, managers and Other personnel involved in the disability accommodation process did not discriminate against candidates seeking accommodations. The answer is that the mission and focus of the NBME's Disability Services department at all relevant times has been to ensure that applicants with documented disabilities have access to USMLE. During the 2005 2006 time period as well as subsequently, the NBME's Disability Services department held Annual meetings with its outside consultants to review processes and assure consistency in the review of documentation submitted by registrants. At all relevant times, the focus of documentation reviews internally and provided by the examinee supports the claim of a current impairment in a major life activity. This is just a summary of the safeguards to assure non-discrimination in the disability accommodation review process and does not purport to be exhaustive.

**PLAINTIFF'S SUPPLEMENTAL QUESTIONS:**

6a. In November 2011 the United States Government Accountability Office (GAO) issued a Report to Congressional Requesters entitled: "HIGHER EDUCATION AND DISABILITY Improved Federal Enforcement Needed to Better Protect Students' Rights to Testing Accommodations" (attached as PDF), NBME was one of the participant organizations in this study Identify all documents in the defendants possession relating to this GAO review which contains information that substantiates the allegation that testing accommodation review is lacking at NBME Disability Services.

6b. GAO stated "Since we found testing companies believe their practices are already in compliance with the new regulatory requirements, it is unclear whether these changes will better protect the rights of students with disabilities" please explain NBME's position with regard to this statement.

6c. GAO stated: "In order to ensure individuals with disabilities have equal opportunity to pursue their education and career goals, it is imperative for Justice (Department Of Justice) to establish a credible enforcement presence to detect, correct, and prevent violations" please explain in detail if DOJ has initiated GAO's recommendations on NBME Disability Services outside of the NBME SETTLEMENT AGREEMENT DJ # 202-16-181.


**PLAINTIFF'S INITIAL QUESTION:**

7.  Explain any changes that have occurred in the last ten years to the Role of Compliance Officer/Director of NBME Office of Disability Services may have affected process. (J. Abram Doane to Catherine Farmer) that may have affected the disability accommodation selection process.

**DEFENDANT'S ANSWER:**

None.

**PLAINTIFF'S SUPPLEMENTAL QUESTION:**

7a. Do YOU contend that Catherine Farmer, Psy.D is the EXPERT that J. Abram Doane refers to in his March 13, 2006 denial letter to Plaintiff?

**PLAINTIFF'S INITIAL QUESTION:**

8. Please state each reason that you denied plaintiff exam accommodations for the USMLE Step 1, Step 2CK and Step 2CS Exams in 2005 through 2006 and in 2014.

**DEFENDANT'S ANSWER:**

Objection.

Defendants object to Interrogatory 8 Insofar as it refers to the denial of exam accommodations in 2014, and further object insofar as it refers to denial of accommodations on Step 1, and incorporate their objections set for that number 3 above. Subject to and without waiving the foregoing objections, the reasons for the NBME's denial of plaintiff's request for accommodations in 2006 are set for that length in the letter from J. Abram Doane to plaintiff dated March 13, 2006   (NBME/Katz 0138-8 0139), and in the more detailed report prepared by Dr. Catherine Farmer for Mr. Doane, dated February 2,   2006 (NBME/Katz 0142-0145).

**PLAINTIFF'S SUPPLEMENTAL QUESTIONS:**

**8a. Do you contend that NBME's determination of accommodations based on an applicants' submission of a paper file provides adequate clinical information for the decision making process?**

**8b. Does NBME Disability Services have or ever had any policy requiring a clinician of NBME's choosing to conduct an independent evaluation of an applicant, at applicants' expense, when further clarification is needed about that applicants functional limitations?**

**PLAINTIFF'S INITIAL QUESTION:**

9. Do you contend that denying plaintiff exam accommodations for his disability for the USMLE Step 1, Step 2CK and Step 2CS Exams in 2005 through 2006 and in 2014 did not impact plaintiff in a disparate manner?

**DEFENDANT'S ANSWER:**

Objection. Defendants object to Interrogatory 9 on the grounds that it is vague, ambiguous and confusing. Defendants further object to Interrogatory 9 insofar as it refers to the denial of exam

accommodations in 2014, and insofar as it refers to denial of accommodations on Step1, and incorporate their objection set forth at number 3above. Without waiving and subject to such objections, defendants contend that the plaintiff's request for accommodations in 2005 was processed in accordance with **established procedures**.  The NBME stands by its preliminary review of plaintiff's documentation as set forth in the letter from J. Abram Doane to plaintiff dated July 15, 2005 ( NBME/Katz 0163-0164), and in the evaluation and ultimate denial of plaintiff's request for accommodations in 2005-2006 for the reasons discussed in the letter from J. Abram Doane to plaintiff dated March 13, 2006 (NBME/Katz 0138-0139), and in the more detailed report prepared by Dr. Catherine Farmer for Mr. Doane, dated February 2, 2006 (NBME/Katz 0142-0145)

**PLAINTIFF'S SUPPLEMENTAL QUESTIONS:**

**9a. Discuss the "established procedures" as mentioned above in further detail, identify the individual(s) in the NBME Organization responsible for developing these established procedures?**

**9b. Plaintiff's caregivers made specific recommendations (including but not limited to additional exam time) to NBME Disability Services in 2005 to 2006 and in 2014, why weren't these recommendations implemented by NBME Disability Services?**

**PLAINTIFF'S INITIAL QUESTION:**

10. Do you contend that any reason able accommodation otherwise available to eliminate the necessity for denying plaintiff exam accommodations for the USMLE Step 1, Step 2CK and Step 2CS Exams in2005 through 2006 and in 2014 could not be accomplished without undue hardship?

**DEFENDANT'S ANSWER:**

Objection. Defendants object to Interrogatory 10 on the grounds that it is vague, ambiguous and confusing.  Defendants further object to Interrogatory 10 in so far as it implicitly refers to the denial of exam accommodations in 2014, and insofar as it implicitly refers to the denial of exam accommodations on Step 1oftheUSMLEin 2005-2006, and incorporate their objections set forth at number 3 above.  Without waiving and subject to such objections, defendants interpret Interrogatory, as asking whether defendants contend that granting an accommodation to plaintiff in 2005-2006 would have caused undue hardship. The answer is no, if plaintiff's request for accommodation and related documentation submitted in 2005-2006 justified an accommodation such as extended time on the USMLE, granting an accommodation to plaintiff would not have caused an undue burden or hardship to the defendants.

**PLAINTIFF'S SUPPLEMENTAL QUESTION:**

**10a. Please describe in detail why plaintiffs' disability request in 2005 to 2006 did not justify an accommodation and explain why NBME Disability Services went against the recommendation of plaintiff's caregivers in 2005 to 2006.**

**PLAINTIFF'S INITIAL QUESTION:**

11. Please state whether you barred plaintiff from taking USMLE Step 1 after his last attempt in November of 2013 based upon plaintiff's reported disability to defendants?

**DEFENDANT'S ANSWER:**

Objection. Defendants object to Interrogatory 11 on the grounds that it is vague, ambiguous and confusing. Without waiving and subject to such objection, defendants interpret Interrogatory 11 as asking whether defendants barred plaintiff from taking USMLE Step 1 after his last attempt in November 2013 because of his claimed disability. The answer is no. As set forth in plaintiff's own letter to the ECFMG dated April 1, 2014 (NBME/Katz 0079), plaintiff was automatically prevented from registering for Step 1 because he exceeded his attempt limit for that Step. **The attempt limit applies regardless of an examinee's disability status.**

**PLAINTIFF'S SUPPLEMENTAL QUESTION:**

**11a. Please elaborate further on the last sentence in the defendant's answer above, why were no policies implemented to make concessions for individuals with documented disabilities?**

**PLAINTIFF'S INITIAL QUESTION:**

12. Do you contend that plaintiff's mental impairment of Bipolar Disorder, Anxiety Disorder and Specific Phobia did not/ does not substantially limit a major life activity?

**DEFENDANT'S ANSWER:**

Defendants have not evaluated any documentation concerning plaintiff's claimed mental impairment(s) of Bipolar Disorder, Anxiety Disorder and Specific Phobia, and therefore have no opinion as to whether he suffers from such impairment(s) and/or whether such impairment(s), if any, substantially limit a major life activity.

**PLAINTIFF'S SUPPLEMENTAL QUESTIONS:**

**12a.** Do you contend that plaintiff did not submit supplemental material with his April 1, 2014 Appeal to NBME Disability Services that included a letter from plaintiff's psychiatrist Dr. Samuel Garloff dated February 28, 2014 informing NBME Disability Services of a change in plaintiff's diagnosis stating; "Due to the changes in his diagnosis and treatment over the last year, I feel he is due reasonable consideration for his request."

**12b.** Please elaborate on the reasons defendants are refusing to acknowledge plaintiff's submission of an "Appeal" to defendants on April 1st 2014 and why defendants describe it as "plaintiff's April 1st, 2014 letter"?

"By a letter to his USMLE Registration Entity dated April 1, 2014, Plaintiff requested that the six attempt limit be overturned for him and exam accommodations granted on Step 1 and all future USMLE Steps thereafter."

**PLAINTIFF'S INITIAL QUESTION**:

13. Do you contend that plaintiff did not suffer emotional distress as a result of being denied exam accommodations for his USMLE Exams by the defendants in 2005 to 2006 and in 2014?

**DEFENDANT'S ANSWER:**

Objection. Defendants object to Interrogatory 13 insofar as it refers to the denial of exam accommodations in 2014, and incorporate their objection set forth at number 3 above. Subject to and without waiving such objection, defendants have no idea whether plaintiff suffered emotional distress as a result of being denied exam accommodations in 2005-2006.

**PLAINTIFF'S SUPPLEMENTAL QUESTIONS:**

**13a.** Do you contend that NBME Disability Services does not need to take responsibility and exercise better oversight over disability applicants who may have required accommodations but were denied by NBME Disability services in the past?

**13b. Do you contend that since 2005 the NBME Disability Services has conducted a flawless system of operation regarding the evaluation of disability applicants for accommodations for the USMLE exams never committing human error, bias, or discrimination?**

**PLAINTIFF'S INITIAL QUESTION:**

14. Do you contend that any treatment plaintiff received for emotional distress was unnecessary?

**DEFENDANT'S ANSWER:**

Objection.  Defendants object to Interrogatory 14 insofar as it implicitly refers to the denial of exam accommodations in 2014, and in corporate their objection set forth at number
3 above.  Subject to and without waiving such objection, defendants have no idea whether any treatment that plaintiff allegedly received for claimed emotional distress was necessary.

**PLAINTIFF'S SUPPLEMENTAL QUESTION:**

**14a. Do you contend that NBME Disability Services does not need to take responsibility and exercise better oversight over disability applicants who may have genuinely required accommodations but were denied by NBME Disability services in the past?**

**PLAINTIFF'S INITIAL QUESTION:**

15.  Do you contend that plaintiff did not suffer damage to plaintiff's reputation as a result of being denied Exam accommodations for the USMLE Exams by the defendants in 2005 to 2006 and in 2014?

**DEFENDANT'S ANSWER:**

Objection.

Defendants object to Interrogatory 15 in so far as it refers to the denial of exam accommodations in 2014, and incorporate their objection set forth at number 3 above. Subject to and without waiving such objection, Defendants do not have information regarding plaintiff's reputation before and after being denied exam accommodations for the USMLE in 2005-2006, nor do defendants have information about other issues that may have impacted plaintiff's reputation.

**15a. Regarding Interrogatory 15, plaintiff did not ask about <u>other</u> issues affecting his reputation, plaintiff specifically asked about the effects of denying him exam accommodations in 2005 to 2006 and in 2014, does taking responsibility for damaging plaintiff's reputation open the defendants to further accusations of negligence.**

**PLAINTIFF'S INITIAL QUESTION:**

16. Please state whether you considered the risk of denying plaintiff exam accommodations for the USMLE Step1, Step 2CK and Step 2CS Exams in 2005 through 2006 and in 2014, that plaintiff could suffer mental health problems and require hospitalization for the excessive stress that he was exposed to under regular exam conditions, repeated studying and repeated subsequent failures due to his disability needs not being met by defendants?

**DEFENDANT'S ANSWER:**

Objection. Defendants object to Interrogatory 16 insofar as it refers to the denial of exam accommodations in 2014, and further object insofar as it refers to denial of accommodations on Step 1,  and incorporatetheir objection set forth at number above.  Subject to and without waiving such objections, request for accommodations under the ADA must be considered on the basis of the documentation provided, and not on the basis of the potential impact on the applicant if the request were denied for legitimate reasons.

**PLAINTIFF'S SUPPLEMENTAL QUESTIONS:**

**16a. Do you contend that the documentation provided by plaintiff to NBME Disability Services in 2005 to 2006 and resubmitted in 2014 was inadequate in justifying his functional limitations?**

**16b. If defendants answer to 16a is yes, why didn't the defendants ask for further substantiating documentation from plaintiff to document his functional limitations?**

**16c. Why wouldn't the defendants have asked plaintiff to be evaluated by an independent caregiver of their choosing at plaintiff's expense, to help them make an informed decision?**

| Initiated | Case | Claim | Resolution |
|---|---|---|---|
| 3/27/12 | Mahmood v. NBME | ADA | NBME's MOTION FOR SUMMARY JUDGMENT GRANTED |
| 10/3/12 | Kober v. AUCSM, DeVry, NBME | ADA | NBME's MOTION TO DISMISS GRANTED |
| 1/25/13 | LaBlanche v. NBME, FSMB, et. al | ADA | NBME's MOTION TO DISMISS GRANTED |
| 5/29/14 | Densmore v. NBME | ADA | NBME's MOTION TO DISMISS GRANTED |
| 12/23/14 | Moghtader v. NBME | ADA | Case Closed by PHRC |
| 2/3/15 | O'Brien v. NBME | ADA | Case Closed by DFEH |
| 3/19/15 | Densmore v. NBME | ADA | Ongoing |
| 5/22/15 | Petrie v. Prometric and NBME | ADA | Ongoing |
| 6/17/15 | Katz v. NBME | ADA | Ongoing |
| 6/18/15 | Moghtader v. NBME | ADA | NBME's MOTION TO DISMISS GRANTED |

23. If your answer to interrogatory number 22 was yes, please describe the disposition of each of the claim(s).

**DEFENDANT'S ANSWER:**
See answer to interrogatory 22.

**PLAINTIFF'S SUPPLEMENTAL QUESTIONS:**

**23a. Plaintiff has read the two ongoing cases named by defendants above:**

1. Petrie v.  Prometric and NBME
2. Densmore v. NBME


**The commonality that the two above ongoing cases have with plaintiff's claims is violation of Title III of the ADA (46. U.S.C. §12189) which prohibits discrimination against persons with disabilities in professional examinations like the USMLE, do the defendant's contend that a reevaluation of their current Title III policies does not warrant further scrutiny at this current time?**


24. If you believe that waiving "The Six Attempt Limit Rule" is not readily achievable did you consider any alternativeto administer the USMLE Exam to persons with  documented disabilities who have exceeded the attempt limit on any Step of theUSMLE  because they were improperly or mistakenly denied accommodations by defendants in the past?

**DEFENDANT'S ANSWER:**

Objection.

Defendants object to Interrogatory 24 on the grounds that it is vague, ambiguous and confusing. Without waiving and subject to such objection, defendants interpret.  Interrogatory 24 as asking whether defendants considered creating an exception to the six attempt limit, or other special procedure to account for the possibility that the NBME may have previously made a mistake in denying an examinee's request for accommodations.     The answer is no, defendants did not consider creating an exception to the six-attempt limit rule specifically to account for the possibility that the NBME may have previously made a mistake in denying an examinee's request for accommodations.  By way of further answer, the NBME provided the state medical licensing boards with a mechanism to grant an exception to the six-attempt limit rule for whatever reason such state medical board might deem  appropriate without limitation to persons with disabilities.

**PLAINTIFF'S SUPPLEMENTAL QUESTIONS:**

**24a With the help of Representative David Parker's Office of District 115 Plaintiff inquired about the above exception to the six attempt rule on March of 2015 and the matter was placed on the May 2015 Agenda of the Pennsylvania State Board of Medicine, the conclusion**

**is stated below in the Counsel for the State of PA Board of Medicine's letter dated June 4, 2015:**

**"The Board determined that the request to waive the six-attempt limit is premature. If you are successful in your appeal, the Board anticipates that the NBME will grant reasonable accommodations and authorize your client (Katz) to re-test. If for some reason the NBME will provide accommodations but will not allow re-testing without authorization from the Board to waive the six-attempt limit, please correspond with us again and the matter will be presented to the Board for action."**

**Based on the above response do you not contend that the exception policy that NBME provided the state medical boards does nothing more than just "pass the buck" back to NBME?**

**24b. Has any employee from the Counsel for the State of PA Board of Medicine communicated with the defendants about plaintiff's request to waive the six-attempt limit rule from 2015 to present day?**

**24c. If your answer to interrogatory 24b is yes, please identify all parties from the State of PA Board of Medicine who have communicated with defendants.**

**PLAINTIFF'S INITIAL QUESTION:**

25. Do you contend that the court in the instant action should not enter its order requiring removal/modification of "The Six Attempt Limit Rule" and appropriate accommodations under the guidelines of the ADA as promulgated by the Department of Justice considering the fact that the defendants NBME and FSMB are both recipients of federal funding?

**DEFENDANT'S ANSWER:**

Objection. Defendants object to Interrogatory 25 on the grounds that it is vague, ambiguous and confusing. Defendants further object on the grounds that the question does not make sense in that the ADA is not contingent upon federal funding. Without waiving and subject to such objection, defendants interpret Interrogatory 25 asking whether defendants contend that the Court should not enter an order requiring removal/modification of the "six attempt limit" rule as it affects plaintiff, and should not grant plaintiff accommodations under the ADA. The answer to that question is yes. The Court should not enter such orders. The defendants contend that they acted in accordance with the ADA.

**PLAINTIFF'S SUPPLEMENTAL QUESTIONS:**

**25a. In Mr. Doane's March 13th, 2006 denial letter to Plaintiff he stated that NBME Disability Services "consulted experts in the fields of Learning Disability and Mental Disorders to assist us in reviewing the documentation" do you believe this to be a TRUE statement?**

Respectfully submitted,

Richard Katz
3364 Parker Lane
East Stroudsburg, PA
18301
Pro se

/s/ Richard Katz_____
Richard Katz

CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing has been served upon:

**Michael Sacks**
Hamburg & Golden, P.C.
1601 Market Street Suite 3310
Philadelphia PA 19103-1443


Date: March 4th, 2016

/s/ Richard Katz_____
Richard Katz