# EXHIBIT 2

```
                  IN THE UNITED STATES DISTRICT COURT
                FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
```

| | |
|---|---|
| RICHARD KATZ                              : | |
| : | CIVIL ACTION |
| v.                                        : | |
| : | |
| NATIONAL BOARD OF MEDICAL                 : | NO. 3:15-cv-1187 |
| EXAMINERS/United States Medical           : | |
| Licensing Exam (USMLE) Organization:      : | |

**DEFENDANTS' ANSWERS TO PLAINTIFF'S
SECOND SET OF SUPPLEMENTAL INTERROGATORIES**

6a. In November 2011 the United States Government Accountability Office (GAO) issued a Report to Congressional Requesters entitled: "HIGHER EDUCATION AND DISABILITY Improved Federal Enforcement Needed to Better Protect Students' Rights to Testing Accommodations" (attached as PDF), NBME was one of the participant organizations in this study  Identify all documents in the defendants possession relating to this GAO review which contains information that substantiates the allegation that testing accommodation review is lacking at NBME Disability Services.

>    **ANSWER:**  Objection.  Defendants object to supplemental interrogatory ("SI") 6a as vague, ambiguous and confusing, because it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, and because responding to SI 6a would be unduly burdensome.  Defendants further object to plaintiff's characterization of the referenced GAO report as containing information "that substantiates the allegation that testing accommodation review is lacking at NBME Disability Services," which is untrue.

6b. GAO stated "Since we found testing companies believe their practices are already in compliance with the new regulatory requirements, it is unclear whether these changes will better protect the rights of students with disabilities" please explain NBME's position with regard to this statement.

>    **ANSWER:**  Objection.  Defendants object to SI 6b as vague, ambiguous and confusing, and because it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

6c. GAO stated: "In order to ensure individuals with disabilities have equal opportunity to pursue their education and career goals, it is imperative for Justice (Department Of Justice) to establish a credible enforcement presence to detect, correct, and prevent violations" please explain in detail if DOJ has initiated GAO's recommendation on NBME Disability Services outside of the NBME SETTLEMENT AGREEMENT DJ # 202-16-181.

**ANSWER:** Objection. Defendants object to SI 6c as vague, ambiguous and confusing, and because it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Defendants further object in so far as SI 6c implies, incorrectly, that the GAO made one or more recommendations regarding the NBME, since the GAO neither made any specific findings nor any specific recommendations regarding the NBME, but rather addressed testing companies in general. Defendants also object to plaintiff's characterization of the referenced settlement agreement as involving "enforcement" by the U.S.D.O.J. Subject to and without waiving such objections, defendants interpret SI 6c as asking whether the U.S.D.O.J. has pursued any enforcement proceedings against the NBME since the issuance of the GAO report. The answer is no.

7a. Do YOU contend that Catherine Farmer, Psy.D is the EXPERT that J. Abram Doane refers to in his March 13, 2006 denial letter to Plaintiff?

**ANSWER:** The reference to "experts" in the March 13, 2006, letter pertains to Catherine Farmer, Psy.D., who was an "outside" expert, and to Greg Baker, Psy.D., an "in-house" expert, in addition to Mr. Doane himself. Resumés containing the qualifications of each of the listed individuals have been provided.

8a. Do you contend that NBME's determination of accommodations based on applicants' submission of a paper file provides adequate clinical information for the decision making process?

**ANSWER:** Objection. Defendants object to the phrase "clinical information" in SI 8a as vague, ambiguous and confusing. Subject to and without waiving those objections, and interpreting the question as asking whether the NBME

2

contends that its practice of reviewing a "paper file" (rather than a personal interview or examination) is adequate to decide whether a USMLE registrant should receive accommodations, the answer is yes.

8b. Does NBME Disability Services have or ever had any policy requiring a clinician of NBME's choosing to conduct an independent evaluation of an applicant, at applicants' expense, when further clarification is needed about that applicants functional limitations?

> **ANSWER:** No.

9a. Discuss the "established procedures" as mentioned above in further detail, identify the individual(s) in the NBME Organization responsible for developing these established procedures?

> **ANSWER:** Objection. Defendants incorporate their objection to interrogatory 9, and object to SI 9a in so far as it seeks information on the identity of the individual(s) who developed the procedures used in evaluating requests for accommodations because such information is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.
>
> The "established procedures" that the NBME followed with regard to the review of plaintiff's request for accommodations on Step 2 CK and CS in 2005-2006 were consistent with the summary of procedures described in the defendants' answer to interrogatory 4, and defendants incorporate that answer.

9b. Plaintiff's caregivers made specific recommendations (including but not limited to additional exam time) to NBME Disability Services in 2005 to 2006 and in 2014, why weren't these recommendations implemented by NBME Disability Services?

> **ANSWER:** Objection. Defendants object to SI 9b in so far as it refers to 2014 for the reasons set forth in their objection to interrogatory 3, which stated, in part:
>
> "Objection. Defendants object to Interrogatory 3 in so far as it refers to the denial of exam accommodations in 2014. As explained to plaintiff in an email from the

3

NBME's Disability Services office dated April 8, 2014 (NBME/Katz 0093), the NBME did not take any action in 2014 with regard to accommodations for plaintiff. Rather, the NBME only decides whether to grant or deny accommodations following a complete review of a candidate's formal request for accommodations submitted in connection with a valid registration for a step of the USMLE. The information plaintiff submitted to the NBME in 2014 remains in a pending status, and will be processed, together with supplemental material, if any, if and when plaintiff submits a valid registration for a step of the USMLE."

With regard to 2005-2006, notwithstanding the recommendations of plaintiff's caregivers at the time, for the reasons set forth in the letter from J. Abram Doane to plaintiff dated March 13, 2006 (NBME/Katz 0138-0139), and in the more detailed report prepared by Dr. Catherine Farmer for Mr. Doane, dated February 2, 2006 (NBME/Katz 0142-0145), the NBME concluded that plaintiff did not establish a significant impairment of one or more major life activities.

10a. Please describe in detail why plaintiffs' disability request in 2005 to 2006 did not justify an accommodation and explain why NBME Disability Services went against the recommendation of plaintiff's caregivers in 2005 to 2006.

**ANSWER:** See answer to SI 9b.

11a. Please elaborate further on the last sentence in the defendant's answer above, why were no policies implemented to make concessions for individuals with documented disabilities?

**ANSWER:** Objection. Defendants object to SI 11a on the grounds that it is vague, ambiguous and confusing. Defendants further object to plaintiff's characterization of the defendants' policy or policies as making no concessions for individuals with documented disabilities, since that is not an accurate or true premise. To the contrary, the NBME's policy and procedure for evaluating requests for accommodations and granting accommodations to individuals with disabilities is a "polic[y] implemented to make concessions for individuals with documented disabilities."

4

>      In a broad sense, the intent of the ADA is to "level the playing field" so that individuals with disabilities have the same opportunities to succeed as individuals without disabilities, but the ADA is not intended to give individuals with disabilities greater opportunities than their non-disabled peers.  With regard to the six attempt limit, an individual with a documented disability who requests accommodations and provides sufficient documentation to the NBME to establish his or her need for accommodations would have the same opportunity to take a step of the USMLE up to six times, if necessary, to pass such step, and he or she would have the benefit of the accommodations, as determined by the NBME disability office to be appropriate, during each attempt.

     12a. Do you contend that plaintiff did not submit supplemental material with his April 1, 2014 Appeal to NBME Disability Services that included a letter from plaintiff's psychiatrist Dr. Samuel Garloff dated February 28, 2014 informing NBME Disability Services of a change in plaintiff's diagnosis stating: "Due to the changes in his diagnosis and treatment over the last year, I feel he is due reasonable consideration for his request."

>    **ANSWER:**   As set forth in defendants' answer to SI 3b:
>
>> " ... defendants acknowledge that they received plaintiff's April 1, 2014, letter, which speaks for itself, together with the documents submitted with such letter, and acknowledge that plaintiff requested that the six attempt limit be "removed" so he would be able to register for USMLE Step 1."

     12b. Please elaborate on the reason defendants are refusing to acknowledge plaintiff's submission of an "Appeal" to defendants on April 1st 2014 and why defendants describe it as "plaintiff's April 1st, 2014 letter"?

"By a letter to his USMLE Registration Entity dated April 1, 2014, Plaintiff requested that the six attempt limit be overturned for him and exam accommodations granted on Step 1 and all future USMLE Steps thereafter."

>    **ANSWER:**   In general, an "appeal" suggests a timely challenge to a specific ruling or decision.  In regard to plaintiff's April 1, 2014, letter, he claims to "appeal" a

5

policy of general application adopted approximately two and one-half years earlier, so the term "appeal" does not seem applicable. With that said, defendants acknowledge receiving the letter that plaintiff refers to as an appeal.

13a. Do you contend that NBME Disability Services does not need to take responsibility and exercise better oversight over disability applicants who may have required accommodations but were denied by NBME Disability services in the past?

**ANSWER:** Objection. Defendants object to SI 13a on the grounds that it is vague, ambiguous and confusing. Subject to and without waiving such objections, and interpreting the interrogatory as asking whether defendants contend that it is *not* their responsibility to "exercise better oversight over" (in some unspecified way) individuals who requested but were denied accommodations following review by the NBME according to its established procedures, the answer is yes.

13b. Do you contend that since 2005 the NBME Disability Services has conducted a flawless system of operation regarding the evaluation of disability applicants for accommodations for the USMLE exams never committing human error, bias, or discrimination?

**ANSWER:** Objection. Defendants object to SI 13b on the grounds that it is vague, ambiguous and confusing, as well as unduly argumentative. Subject to and without waiving such objections, defendants state that while human error is always a possibility in systems implemented by human beings, they do their best to avoid errors, and did not err in this case. Defendants deny that the NBME's Disability Services program has conducted its reviews with bias or discrimination.

14a. Do you contend that NBME Disability Services does not need to take responsibility and exercise better oversight over disability applicants who may have genuinely required accommodations but were denied by NBME Disability services in the past?

**ANSWER:** Objection. Defendants object to SI 14a on the grounds that it is vague, ambiguous and confusing. Subject to and without waiving such objections, and

6

interpreting the interrogatory as asking whether defendants contend that it is *not* their responsibility to "exercise better oversight over" (in some unspecified way) individuals who requested but were denied accommodations following review by the NBME according to its established procedures, the answer is yes.

15a. Regarding Interrogatory 15, plaintiff did not ask about other issues affecting his reputation, plaintiff specifically asked about the effects of denying him exam accommodations in 2005 to 2006 and in 2014, does taking responsibility for damaging plaintiff's reputation open the defendants to further accusations of negligence.

> **ANSWER:** Objection. Defendants object to SI 15a on the grounds that it is vague, ambiguous and confusing. Subject to and without waiving such objections, defendants stand by their answer to interrogatory 15.

16a. Do you contend that the documentation provided by plaintiff to NBME Disability Services in 2005 to 2006 and resubmitted in 2014 was inadequate in justifying his functional limitations?

> **ANSWER:** Objection. Defendants object to SI 16a to the extent it asks about the adequacy of documentation submitted in 2014 since, as explained, the NBME Disability Services did not evaluate documentation submitted by plaintiff in 2014. Subject to and without waiving such objection, and with respect to 2005-2006, the answer is yes, such documentation was inadequate to establish a significant impairment of a major life activity.

16b. If defendants answer to 16a is yes, why didn't the defendants ask for further substantiating documentation from plaintiff to document his functional limitations?

> **ANSWER:** NBME Disability Services conducted a preliminary review of the information provided by plaintiff in support of his request for accommodations, and on July 15, 2005, provided guidance to plaintiff to aid him in supplementing his submission. Plaintiff subsequently provided additional information that the NBME reviewed and took into account. The NBME also had phone contacts with plaintiff and some of his caregivers thereafter. When the

7

information in plaintiff's file was complete, the NBME conducted its review. Plaintiff was free to re-apply for accommodations in connection with any subsequent registration for the USMLE and could have submitted additional information if there were any to present.

16c. Why wouldn't the defendants have asked plaintiff to be evaluated by an independent caregiver of their choosing at plaintiff's expense, to help them make an informed decision?

**ANSWER:** In 2006, when plaintiff finished submitting information in support of his request for accommodations, the NBME had sufficient information to evaluate plaintiff's request for accommodations under its established procedures. The NBME reviews documentation provided by the examinee to determine whether there is sufficient evidence in the file to support the claimed diagnosis. The NBME does not attempt to diagnose per se, and does not refer examinees to independent caregivers.

23a. Plaintiff has read the two ongoing cases named by defendants above:

1. Petrie v. Prometric and NBME
2. Densmore v. NBME

The commonality that the two above ongoing cases have with plaintiff's claims is violation of Title III of the ADA (46. U.S.C. §12189) which prohibits discrimination against persons with disabilities in professional examinations like the USMLE, do the defendant's contend that a reevaluation of their current Title III policies does not warrant further scrutiny at this current time?

**ANSWER:** Objection. Defendants object to SI 23a on the grounds that it is vague, ambiguous and confusing. Subject to and without waiving such objections, and interpreting the interrogatory as asking whether defendants contend that their current disability policies require scrutiny or reevaluation at this time, the answer is no.

24a. With the help of Representative David Parker's Office of District 115 Plaintiff inquired about the above exception to the six attempt rule on March of 2015 and the matter was placed on the May 2015 Agenda of the Pennsylvania State Board of

Medicine, the conclusion is stated below in the Counsel for the State of PA Board of Medicine's letter date June 4, 2015:

"The Board determined that the request to waive the six-attempt limit is premature. If you are successful in your appeal, the Board anticipates that the NBME will grant reasonable accommodations and authorize your client (Katz) to re-test. If for some reason the NBME will provide accommodations but will not allow re-testing without authorization from the Board to waive the six-attempt limit, please correspond with us again and the matter will be presented to the Board for action."

Based on the above response do you not contend that the exception policy that NBME provided the state medical boards does nothing more than just "pass the buck" back to NBME?

>    **ANSWER:**  Objection.  Defendants object to SI 24a on the grounds that it is vague, ambiguous and confusing. Subject to and without waiving such objections, and interpreting the interrogatory as asking whether defendants agree with the contention that the exception under which a state medical board may request that the NBME permit an individual to re-test notwithstanding the six-attempt limit amounts to "passing the buck" back to NBME, the answer is no.  If a state medical board affirmatively requests that the NBME permit an individual to re-test, the NBME allows the individual to re-test.

   24b. Has any employee from the Counsel for the State of PA Board of Medicine communicated with the defendants about plaintiff's request to waive the six-attempt limit rule from 2015 to present day?

>    **ANSWER:**  Subsequent to the June 4, 2015, letter from Theresa Lazo, Esquire, Counsel for the State Board of Medicine, to Charles Weiner, and plaintiff's follow up letter addressed to Wesley Rish, Esquire at the Office of Chief Counsel, both of which are attached to the original complaint filed by plaintiff in this case, Patricia Weaver, a paralegal at the NBME, called Mr. Rish to request a copy of the Board's minutes from the meeting at which they discussed Mr. Katz's request, and to ask whether the Board would be responding to plaintiff's letter.  Mr. Rish indicated that no further response to plaintiff would be forthcoming as of that time, and provided the minutes in question, copies of the relevant pages of which are attached, numbered NBME/Katz 0274-0280.

9

    24c. If your answer to interrogatory 24b is yes, please identify all parties from the State of PA Board of Medicine who have communicated with defendants.

    **ANSWER:** See answer to 24b.

    25a. In Mr. Doane's March 13th, 2006 denial letter to Plaintiff he stated that NBME Disability Services "consulted experts in the fields of Learning Disability and Mental Disorders to assist us in reviewing the documentation" do you believe this to be a TRUE statement?

    **ANSWER:** Yes. The reference to "experts" in the March 13, 2006, letter pertains to Catherine Farmer, Psy.D., who was an "outside" expert, and to Greg Baker, Psy.D., an "in-house" expert, as well as to Mr. Doane himself. Resumés containing the qualifications of each of the listed individuals have been provided.

*Michael E. Sacks*
Neil J. Hamburg
Michael E. Sacks
HAMBURG & GOLDEN, P.C.
Pa. I.D. Nos. 32175, 39774
1601 Market Street, Suite 3310
Philadelphia, PA  19103-1443
(215) 255-8590
hamburgnj@hamburg-golden.com
sacksme@hamburg-golden.com

Attorneys for Defendants,
The National Board of Medical Examiners and the Federation of State Medical Boards of the United States

10

**CERTIFICATE OF SERVICE**

I certify that the foregoing "Answer to Plaintiff's Second Set of Supplemental Interrogatories" is being served by electronic mail and regular mail upon:

>Richard Katz
>3364 Parker Lane
>East Stroudsburg, PA  18301
>cat2400@msn.com
>
>*Pro se*

March 30, 2016

*Michael E. Sacks*
Neil J. Hamburg
Michael E. Sacks
HAMBURG & GOLDEN, P.C.
1601 Market Street, Suite 3310
Philadelphia, PA  19103-1443
(215) 255-8590

Attorneys for Defendants,
The National Board of Medical Examiners and the Federation of State Medical Boards of the United States