IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD KATZ | : | |
| | : | |
| Plaintiff | : | CIVIL ACTION |
| | : | NO. 3:15-cv-1187 |
| v. | : | |
| | : | |
| NATIONAL BOARD OF MEDICAL | : | (MARIANI, J.) |
| EXAMINERS, et al., | : | (SAPORITO, M.J.) |
| | : | |
| Defendants | : | |

**ORDER**

AND NOW, this __ day of ___, 2016, upon consideration of the motion for summary judgment of the defendants, The National Board of Medical Examiners and The Federation of State Medical Boards, and any response thereto, it is hereby ORDERED that the motion is GRANTED, and this case is dismissed with prejudice.

BY THE COURT:

_____
JOSEPH F. SAPORITO, JR.
United States Magistrate Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD KATZ | : | |
| | : | |
| Plaintiff | : | CIVIL ACTION |
| | : | NO. 3:15-cv-1187 |
| v. | : | |
| | : | |
| NATIONAL BOARD OF MEDICAL | : | (MARIANI, J.) |
| EXAMINERS, et al., | : | (SAPORITO, M.J.) |
| | : | |
| Defendants | : | |

**MOTION FOR SUMMARY JUDGMENT OF THE NATIONAL BOARD OF
MEDICAL EXAMINERS AND THE FEDERATION OF STATE MEDICAL BOARDS**

For the reasons set forth in the accompanying memorandum of law, the defendants, The

National Board of Medical Examiners (NBME) and the Federation of State Medical Boards

(FSMB), respectfully move for summary judgment and dismissal of this case with prejudice.

RESPECTFULLY SUBMITTED,

/s/ Michael E. Sacks
Neil J. Hamburg
Michael E. Sacks
HAMBURG & GOLDEN, P.C.
Pa. I.D. Nos. 32175, 39774
1601 Market Street, Suite 3310
Philadelphia, PA  19103-1443
(215) 255-8590
hamburgnj@hamburg-golden.com
sacksme@hamburg-golden.com

Attorneys for Defendants,
The National Board of Medical Examiners and the
Federation of State Medical Boards of the United
States

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD KATZ | : | |
| | : | |
| Plaintiff | : | CIVIL ACTION |
| | : | NO. 3:15-cv-1187 |
| v. | : | |
| | : | |
| NATIONAL BOARD OF MEDICAL | : | (MARIANI, J.) |
| EXAMINERS, et al., | : | (SAPORITO, M.J.) |
| | : | |
| Defendants | : | |

**THE NATIONAL BOARD OF MEDICAL EXAMINERS AND
THE FEDERATION OF STATE MEDICAL BOARDS' STATEMENT
OF UNDISPUTED FACTS IN SUPPORT OF SUMMARY JUDGMENT**

**I.     Undisputed Facts Concerning the USMLE, Plaintiff's USMLE Testing and His 2005-2006 Request for Accommodations.**

1.     The National Board of Medical Examiners ("NBME"), together with the Federation of State Medical Boards ("FSMB"), develops and administers the United States Medical Licensing Examination ("USMLE"), a multi-step standardized examination (Step 1, Step 2 Clinical Knowledge (CK), Step 2 Clinical Skills (CS) and Step 3) used to evaluate applicants' minimum competence for purposes of medical licensure in the United States and its territories.  Exhibit 22, Affidavit of Gerard F. Dillon, Ph.D.

2.     The USMLE is designed to assess a physician's ability to apply knowledge, concepts, and principles, and to demonstrate fundamental patient-centered skills, that constitute the basis of safe and effective patient care.  Id.

3.     The examination material for all three steps of the USMLE is prepared by examination committees broadly representing the medical profession.  The committees are comprised of recognized experts in their fields, including both academic and non-academic practitioners, as well as members of state medical licensing boards, which rely upon successful

completion of the three USMLE Steps as an important element in the process for licensing physicians.  Id.

4.      Step 1 of USMLE is a computer-based multiple choice examination that assesses understanding and application of basic science concepts important to the practice of medicine. Id.

5.      Step 2 CK is a computer-based multiple choice examination that assesses the application of medical knowledge, skills, and understanding of clinical science essential for the provision of patient care under supervision, and includes emphasis on health promotion and disease prevention.  Id.

6.      Step 2 CS is a clinical skills examination that utilizes trained actors as standardized patients and assesses whether examinees can gather information from patients, perform physical examinations, accurately document his or her findings, and communicate those findings to patients.  Id.

7.      Plaintiff, who graduated from medical school in 2004, first sat for USMLE Step 1 in March 2002.  Exhibit 17, USMLE Scoring Record, p. NBME-Katz 0213; Exhibit 23, R. Katz depo. p. 215.

8.      Between 2002 and June 2005, plaintiff took USMLE Step 1 five times, and failed each time.  Exhibit 17.

9.      In July 2005, plaintiff applied for test accommodations on Step 2 CK and Step 2 CS.  He did not request accommodations on Step 1.  Exhibit 1, NBME/Katz 0166-0169; Exhibit 2, NBME/Katz 0208-0212; Exhibit 23, R. Katz depo. p. 145-146.

10.     In his request for accommodations, plaintiff described the nature of his disability as Attention Deficit Hyperactivity Disorder ("ADHD"), Anxiety and Depression.   Exhibit 1, NBME/Katz 0167; Exhibit 2, NBME/Katz 0210.

11.     The supporting documentation that plaintiff provided to the NBME in connection with his 2005-2006 Request for Test Accommodations is contained in Exhibits 3 and 6. Correspondence from the NBME and memoranda of telephone contacts between the NBME and plaintiff during that time are contained in Exhibits 4, 5 and 7.  Exhibit 23, R. Katz depo. p. 165-167.

12.     Plaintiff attended the High School for Art and Design in New York City, followed by Parson's School of Design, where he received a Bachelor of Fine Arts degree.   Exhibit 3, personal statement submitted to NBME, p. NBME/Katz 0205-0207.

13.     Plaintiff stopped taking math and science courses after his sophomore year of high school, and the only science course he took in college was Wildlife of North America. Exhibit 23, R. Katz depo. p. 25, 41.

14.     Plaintiff submitted no documentation to the NBME in connection with his 2005 request for accommodations showing that he ever received accommodations for any disability at any time through his graduation from college.  Exhibits 3, 6.

15.     During college, plaintiff worked at a hospital and decided that he wanted to be a doctor.  After he completed his BFA, he started taking science and other background courses to prepare to apply for medical school, and for the first time he received academic accommodations while studying at the State University of New York, College at Old Westbury.   Exhibit 3, personal statement, NBME/Katz 0206.

16.     On the Request for Test Accommodation forms that plaintiff submitted to the NBME, he checked "yes" regarding accommodations in college, but he acknowledged at his deposition that he was referring to post-baccalaureate coursework at the College at Old Westbury.  Exhibits 1, 2; Exhibit 23, R. Katz depo. p. 143.

17.     Plaintiff submitted a memorandum from William Lupardo at the College at Old Westbury, dated June 24, 2005, indicating that plaintiff received accommodations from Fall 1994 through Spring 1997 based upon "documentation" of an anxiety disorder and Attention Deficit Disorder, but the memorandum from Old Westbury did not include or describe such documentation, nor did it describe the standards for granting accommodations, or what the accommodations were.  Exhibit 3, p. NBME/Katz 0204.

18.     In his personal statement submitted to the NBME, plaintiff said that Old Westbury granted accommodations because his family physician "felt" that his problem "was secondary to test anxiety and possibly an attention-deficit disorder ..."  Exhibit 3, p. NBME/Katz 0206.

19.     Plaintiff did not request or receive accommodations on the Medical College Admission Test ("MCAT").  Exhibit 23, R. Katz depo. p. 119-120; Exhibits 1 and 2.

20.     Other documentation that plaintiff submitted to the NBME did not reveal any psychological testing until 2003 and there is no diagnosis of ADD or ADHD that resulted from that testing.  Exhibit 3, p. NBME/Katz 0183-0189.

21.     Plaintiff first attended Ross University School of Medicine in Dominica, West Indies, but he got sick and depressed, failed the semester, and withdrew after one semester in 2000.  He re-started medical school at St. Matthew's University School of Medicine in Belize later that year. He later transferred to St. Christopher's, which is based in Senegal, because it

offered clinical rotations in the Northeast region of the U.S.  He graduated from St. Christopher's in 2004.  Exhibit 23, R. Katz depo. at 125-131, 155.

22.     Plaintiff's 2005 request for accommodations to the NBME contained no record of any disability accommodations in medical school.  Exhibits 1, 2.

23.     In July 2005, following plaintiff's initial submission of a request for accommodations on Step 2 CK and Step 2 CS of the USMLE, the NBME's Office of Disability Services performed a preliminary audit of the request and supporting documentation and advised plaintiff of missing information.   Exhibit 5.   Plaintiff supplied additional information over a period of months.  Exhibit 6; Exhibit 21, Affidavit of Catherine Farmer, Psy.D.

24.     When plaintiff had submitted all of the documentation he had available in connection with his 2005-2006 request for accommodations and stated that his file was complete, the NBME submitted his request for accommodations and supporting documentation to an external consultant, Catherine Farmer, Psy.D., who is now the NBME's Director of Disability Services.  Exhibit 21, Affidavit of Catherine Farmer, Psy.D.

25.     Dr. Farmer reviewed the request and accompanying documentation and concluded that plaintiff's documentation did not support a finding that plaintiff suffered from a significant impairment of a major life activity because of ADHD, depression or anxiety.  Id.

26.     Dr. Farmer prepared a review dated February 2, 2006, addressed to J. Abram Doane, M.S., the Manager of the NBME's Disability Services office at the time.   The review provided the detailed reasons for her conclusions and her recommendation to deny plaintiff's request for accommodations.   Exhibit 8, February 2, 2006, report; Exhibit 21, Affidavit of Catherine Farmer, Psy.D.

27.    Some of Dr. Farmer's findings based upon the documentation plaintiff supplied included:

a)    Plaintiff's documentation did not demonstrate any clinical impairment in childhood, and did not include any historical evidence of substantial difficulties that would rise to the level of a disability;

b)    The diagnosis of ADHD appeared to be based largely on self-report and symptom endorsement on ADHD rating scales, but the diagnosis was not supported with evidence of longstanding impairment that could be reliably or specifically tied to ADHD;

c)    Testing showed that performance on a range of cognitive and academic achievement tasks was well within average range and did not suggest impairment in reading or learning;

d)    Documentation regarding depression and anxiety was inconsistent at best, and no treating professional had assigned any DSM-IV diagnosis of a mood or anxiety disorder before plaintiff applied for accommodations on the USMLE.

Exhibit 21, Affidavit of Catherine Farmer, Psy.D.

28.    On March 13, 2006, Mr. Doane of the NBME sent a letter to plaintiff denying his request for accommodations and explaining the decision in detail.  Exhibit 9.

29.    Plaintiff neither supplemented his application for accommodations nor submitted any other formal request for accommodations to the NBME's Office of Disability Services after his 2005-2006 request.  Exhibit 21, Affidavit of Catherine Farmer, Psy.D.

30.     After the NBME denied his request for accommodations in March 2006, plaintiff continued taking USMLE step exams as shown on Exhibit 17.

**II.     Undisputed Facts Concerning the USMLE's Adoption of the Six Attempt Limit and Plaintiff's Subsequent Testing.**

31.     The USMLE Composite Committee establishes policy for the USMLE Program and is composed of representatives of the Federation of State Medical Boards (FSMB), the National Board of Medical Examiners (NBME), the Educational Commission for Foreign Medical Graduates (ECFMG), and the American public.   Exhibit 22, Affidavit of Gerard F. Dillon, Ph.D.

32.     Before January 1, 2011, the Composite Committee imposed no limit on the number of times an examinee could take any Step of the USMLE.   Rather, the USMLE left it to each state medical board to decide whether or not to impose attempt limits on the USMLE, and the majority state medical boards imposed such limits.   Id.

33.     In August 2011, the USMLE Composite Committee adopted a policy limiting examinees to six attempts to pass any Step or Step Component of the USMLE.   Exhibit 11; Exhibit 22, Affidavit of Gerard F. Dillon, Ph.D.

34.     The six-attempt limit policy became effective on January 1, 2012, for examinees who had not previously taken any Step of the USMLE.   For examinees like plaintiff, who had taken one or more Steps of the USMLE already, the six-attempt limit became effective as of January 1, 2013.   Exhibit 11.

35.     The six-attempt limit applies to all examinees, without regard to disability status. If an examinee applies for and receives accommodations in connection with his or her first registration for USMLE Step 1, for example, then he or she would be entitled to accommodations on up to six attempts at Step 1.   If an examinee does not apply for or is found

not to be entitled to accommodations, then each attempt is made without accommodations. Exhibit 22, Affidavit of Gerard F. Dillon, Ph.D.

36.     Plaintiff had already failed USMLE Step 1 six times when the USMLE Composite Committee adopted the six-attempt limit, but because of the extra year provided to examinees who had already taken one or more Steps of the USMLE, plaintiff had until December 31, 2012, to register again for Step 1.  Exhibits 11, 17.

37.     Plaintiff registered and took Step 1 three additional times after the USMLE adopted the six-attempt limit, and he failed each time.  Exhibit 17; Exhibit 23, R. Katz depo. p. 216-217.

38.     Plaintiff received a diagnosis of bipolar disorder for the first time in March 2013. Exhibit 13, p. NBME/Katz 0079.

39.     Plaintiff had registered for Step 1 on December 7, 2012, before he received the new diagnosis, with an examination eligibility period from June 1, 2013 to November 30, 2013. Exhibit 17.

40.     After he received the new diagnosis but before he took Step 1 again, when he had all of the information that he now claims should be considered, plaintiff could have submitted a new Request for Test Accommodations in conjunction with his then pending USMLE Step 1 registration.  Plaintiff did not submit a Request for Test Accommodations at that time, and has not submitted a formal request for accommodations in connection with a registration since 2005-2006. Exhibit 21, Affidavit of Catherine Farmer, Psy.D.

41.     Plaintiff took Step 1 on November 12, 2013, and failed.  Ex. 13, p. NBME/Katz 0079.

42.    On December 18, 2013, plaintiff contacted the NBME's Office of Disability Services by telephone and said that in 2005 he had requested and been denied accommodations based on a diagnosis of ADHD, but the diagnosis of ADHD was incorrect and he had recently been diagnosed with bipolar disorder.  Plaintiff said that he had exceeded the test limit on Step 1, and asked what the NBME could do retrospectively about the incorrect diagnosis.  Exhibit 12, p. NBME/Katz 0127.

43.    In the December 18, 2013, telephone conversation, the NBME Disability Services representative explained to plaintiff that the Disability Services office could process a request for accommodations based on a current diagnosis only if plaintiff were currently registered for a Step of the USMLE, and that the Disability Services office had nothing to do with attempt limits. The Disability Services representative suggested that plaintiff speak with his registration entity, the Education Commission for Foreign Medical Graduates ("ECFMG").  Id.

44.    On April 1, 2014, plaintiff wrote to the ECFMG, with a copy to the NBME, to "appeal" the six-attempt limit.  Plaintiff included selected medical information with his letter, including a letter dated April 14, 2014, from Samuel Garloff, D.O., referring to plaintiff's March 2013 hospitalization and diagnosis with bipolar disorder.  Dr. Garloff stated that "the previous diagnosis of ADHD was incorrect."  Exhibit 13, p. NBME/Katz 0079-0084.

45.    On April 8, 2014, the NBME Disability Services office acknowledged to plaintiff that it had received plaintiff's April 1, 2014, letter and related materials, on which it had been copied, and informed plaintiff that it would hold his paperwork in a pending status until he submitted a formal written request for test accommodations.  Exhibit 12, p. NBME/Katz 0128.

46.    On April 17, 2014, the USMLE Secretariat wrote to plaintiff and acknowledged that it had received his April 1, 2014, letter to the ECFMG and related materials, and told

plaintiff it could not grant his request for an additional attempt on Step 1 beyond the six-attempt limit and explained to plaintiff that the only exception to the six-attempt policy is "to allow examinees who have six or more attempts at a Step or component to have an additional attempt if so requested by a state medical board that is fully informed of the individual's prior examination history."  Exhibit 13, p. NBME/Katz 0088.

47.     On April 20, 2014, plaintiff wrote to the NBME Disability Services office and explained that he could not submit a formal request for accommodations on Step 1 because of the six-attempt limit.  Exhibit 14.

48.     Plaintiff requested that the Pennsylvania Medical Board intercede on his behalf to request an exception to the six-attempt limit, but on May 19, 2015, the Pennsylvania Medical Board denied his request.  Exhibit 15, 16; Exhibit 20, at p. NBME/Katz 0277.

49.     Plaintiff initiated this lawsuit on June 17, 2015.

**RESPECTFULLY SUBMITTED,**

/s/ Michael E. Sacks
Neil J. Hamburg
Michael E. Sacks
HAMBURG & GOLDEN, P.C.
Pa. I.D. Nos. 32175, 39774
1601 Market Street, Suite 3310
Philadelphia, PA  19103-1443
(215) 255-8590
hamburgnj@hamburg-golden.com
sacksme@hamburg-golden.com

Attorneys for Defendants,
The National Board of Medical Examiners and the Federation of State Medical Boards of the United States

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD KATZ | : | |
| | : | |
| Plaintiff | : | CIVIL ACTION |
| | : | NO. 3:15-cv-1187 |
| v. | : | |
| | : | |
| NATIONAL BOARD OF MEDICAL | : | (MARIANI, J.) |
| EXAMINERS, et al., | : | (SAPORITO, M.J.) |
| | : | |
| Defendants | : | |

**MEMORANDUM OF LAW OF THE NATIONAL BOARD OF MEDICAL
EXAMINERS AND THE FEDERATION OF STATE MEDICAL BOARDS
IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

PAGE

I.    INTRODUCTION    1

II.   PROCEDURAL HISTORY OF THE CASE    1

III.  STATEMENT OF FACTS    3

      A.    Summary of Undisputed Facts and Additional Facts About the NBME    3
            and FSMB.

      B.    Summary of Undisputed Facts and Additional Facts Concerning    5
            Plaintiff's Background, His 2005-2006 Request for Accommodations,
            and His USMLE Testing.

      C.    Summary of the Statement of Undisputed Facts and Additional Facts    11
            Concerning the USMLE's Adoption of the Six-attempt Limit.

IV.   STATEMENT OF THE QUESTIONS INVOLVED    13

V.    ARGUMENT    14

      A.    Legal Standard for Summary Judgment.    14

      B.    The Statute of Limitations Bars All of Plaintiff's Claims Under the    15
            Americans with Disabilities Act.

            1.    The Statute of Limitations on ADA Claims is Two Years.    15

            2.    Plaintiff's Claim of Disability Discrimination Based Upon the    18
                  Adoption of the Six-Attempt Limit Accrued at the Latest on
                  January 1, 2013, and Expired at the Latest on December 31,
                  2014.

      C.    Even If Plaintiff's Claim Regarding the Six-Attempt Limit Were Not    19
            Time-Barred, He Has Adduced No Evidence Whatsoever that the Six-
            Attempt Limit Discriminates, or that Modifying It Would Be a
            Reasonable Accommodation.

      D.    The Court Should Deny Plaintiff's Proposed Second Amended    22
            Complaint as Futile Because None of the Asserted Claims Could Give
            Rise to Relief.

1.    The Court Should Reject Plaintiff's Proposed Claim for Breach    22
      of Contract.

2.    The Court Should Reject Plaintiff's Proposed Claim for    23
      "Misleading Conduct" Because It Fails to State a Cognizable
      Claim.

3.    Plaintiff Fails to State a Claim for Negligent or Intentional    25
      Infliction of Emotional Distress.

4.    The Court Should Reject Plaintiff's Proposed Claim for    26
      "Impairment of Economic Opportunity," Because No Such
      Cause of Action Exists.

5.    Plaintiff Fails to State A Claim for Fraudulent    27
      Misrepresentation.

6.    The Court Should Reject Plaintiff's Request for a Preliminary    27
      Injunction Because, Among Other Reasons, Plaintiff Cannot
      Prevail on the Merits.

V.   CONCLUSION                                                        28

## I.   INTRODUCTION

Plaintiff Richard Katz, *pro se*, now 46 years of age and more than 11 years out of medical school, sued the National Board of Medical Examiners (NBME) and the Federation of State Medical Boards (FSMB) in an amended complaint claiming discrimination under Title III of the Americans with Disabilities Act.  Plaintiff has failed Step 1 of the United States Medical Licensing Examination (USMLE) nine times, and in this action he asks the Court to require the NBME and FSMB to permit him to take Step 1 for the 10th time, contrary to the USMLE's six-attempt limit.

Plaintiff asserts in his amended complaint that the NBME and FSMB discriminated against him on the basis of his mental disability in two respects: first, he claims that the NBME wrongly denied his request for accommodations in 2005-2006; second, he claims that defendants discriminated against him by applying the six-attempt limit on the number of times a medical school student or graduate can take any Step of the USMLE, which is the same limit that applies to all disabled and non-disabled examinees alike.

As set forth in detail below, plaintiff's interpretation of the disability laws is flawed, and his claims of disability discrimination are time barred.

## II.   PROCEDURAL HISTORY OF THE CASE [1]

Plaintiff filed his complaint on June 17, 2015, naming the "NBME/United States Medical Licensing Exam (USMLE) Organization" as defendants.  (Docket no. 1).  Plaintiff also moved for appointment of counsel, and to proceed *in forma pauperis*.  (Docket nos. 2, 3).

---

[1]   Defendants are providing a procedural history that notes significant court filings and events, but does not identify every "exhibit" or "addendum" that plaintiff has filed on the docket because they are voluminous and irrelevant to this motion.

On July 30, 2015, plaintiff filed a form motion to seal the court file.  On August 3, 2015, plaintiff moved to amend the complaint, dropping the "USMLE Organization" and adding the FSMB as a defendant.  (Docket no. 17).  The Court denied the motion to amend as moot on August 12, 2015 (Docket no. 20).  Plaintiff's amended complaint (Docket no. 23) is attached as Exhibit 19.  Defendants filed their answer and affirmative defenses on August 28, 2015.  (Docket no. 33).

On September 3, 2015, the Court denied without prejudice plaintiff's motion to seal the entire record, but sealed Exhibits 4 and 5 to the defendants' answer.  (Docket nos. 37, 38).  On September 16, 2015, the Court denied without prejudice plaintiff's motion to appoint counsel (Docket no. 43), and issued a Scheduling Order.  (Docket no. 45)

On October 1, 2015, plaintiff moved for leave to file a second amended complaint (Docket no. 52), and on October 30, 2015, the Court directed plaintiff to file a separate proposed second amended complaint that was "complete in itself including exhibits," as required by Local Rule 15.1(a).  (Docket no. 58).  Plaintiff re-filed his motion to file a second amended complaint on November 17, 2015.  (Docket no. 63, attached as Exhibit 18).  Defendants opposed the motion because Mr. Katz's proposed second amended complaint again violated Local Rule 15.1(a).  (Docket no. 64).  The Court has not ruled on plaintiff's motion.

The parties proceeded with discovery, and on January 29, 2016, the Court extended the Case Management deadlines.  (Docket no. 85).  Defendants filed a discovery motion on January 28, 2016 (Docket no. 79), and plaintiff filed discovery motions on January 28, 2016, March 15, 2016, April 11, 2016 and April 20, 2016 (Docket Nos. 80, 91, 98 and 99).  Those motions have been briefed and remain pending.  Plaintiff filed a second motion for

appointment of counsel (Docket no. 66), and a "motion to waive costs of deposition – for lay and expert witness fees, and court reporter fees" (Docket no. 71), on which the Court has not ruled.

Under the extended case management deadlines, discovery ended on March 15, 2016, and dispositive motions are due by May 1, 2016.[2]

## III.   STATEMENT OF FACTS

The NBME and FSMB's Statement of Undisputed Facts in Support of Summary Judgment is set forth separately in accordance with Local Rule 56.1.

### A.   Summary of Undisputed Facts and Additional Facts About the NBME and FSMB.

The NBME is an independent, non-profit organization that serves the public through high quality assessments of healthcare professionals.  The NBME, together with the FSMB, develops and administers the USMLE, taken by U.S. medical students and graduates, and international medical students and graduates who wish to practice medicine in the United States. All state medical boards in the United States use the USMLE to assess minimum competence for purposes of medical licensure.

The NBME, established in 1915, and the FSMB, established in 1912, each has as its core mission to protect the health of the public through state of the art assessment of physicians and other health professionals.  While individual state licensing boards grant the license to practice medicine, all medical boards in the U.S. accept a passing score on the USMLE as evidence that an applicant demonstrates the core competencies to practice medicine.  As a result, healthcare consumers throughout the nation enjoy a high degree of confidence that their doctors have met a common standard of minimum competence.

---

[2]      Fed. R. Civ. P. 6 extends the Sunday due date to Monday, May 2, 2016.

The USMLE is a three-step examination, assessing a physician's ability to apply knowledge, concepts, and principles, and to demonstrate fundamental patient-centered skills, that are important in health and the treatment of diseases, and that constitute the basis of safe and effective patient care.  Step 1 of the USMLE assesses whether the examinee understands and can apply important concepts of the core sciences basic to the practice of medicine, with special emphasis on principles and mechanisms underlying health, disease, and modes of therapy.  Step 1 ensures mastery of not only the sciences that provide a foundation for the safe and competent practice of medicine in the present, but also the scientific principles required for maintenance of competence through lifelong learning.  Exhibit 22, Affidavit of Gerard F. Dillon, Ph.D.

Step 2 of the USMLE assesses whether the examinee can apply medical knowledge, skills, and understanding of clinical science essential for the provision of patient care under supervision, emphasizing health promotion and disease prevention.  Step 2 is comprised of two parts: Step 2 CK (Clinical Knowledge) is constructed according to an integrated content outline that organizes clinical science material along two dimensions: physician task and disease category.  Step 2 CS (Clinical Skills) is a clinical skills exam that uses standardized patients (actors in the role of patients) to test whether the examinee has the ability to gather information from patients, perform physical examinations, accurately document his or her findings, and communicate his or her findings to patients.  Id.

Step 3 assesses whether the examinee can apply medical knowledge and understanding of biomedical and clinical science essential for the unsupervised practice of medicine, with emphasis on patient management in ambulatory settings.   It is the final examination in the USMLE sequence leading to a license to practice medicine without supervision.  Id.

Examination committees broadly representing the medical profession meticulously prepare the examination materials in all three steps of the USMLE. The committees are comprised of recognized experts in their fields, including both academic and non-academic medical practitioners, as well as members of state medical licensing boards. Id.

Most medical schools in the United States and many located elsewhere require medical students to take USMLE Step 1 after completing the first two years of medical school, which is comprised of the core sciences that form the basis of medical practice. Id.

The NBME's Office of Disability Services (DS) is responsible for implementing the policy of providing test accommodations on the USMLE to individuals with recognized disabilities under the Americans with Disabilities Act (the "ADA"). Exhibit 21, Affidavit of Catherine Farmer, Psy.D.

When an examinee registers for a step of the USMLE and submits a Request for Test Accommodations with supporting documentation, the NBME's Office of Disability Services conducts a review which may include consulting with one or more external experts who specialize in the assessment, diagnosis, and evaluation of the claimed disability to assist in determining whether the documentation submitted by the examinee establishes that she or he has a substantial limitation in a major life activity and, if so, what accommodation is appropriate. Id.

**B.      Summary of Undisputed Facts and Additional Facts Concerning Plaintiff's Background, His 2005-2006 Request for Accommodations, and His USMLE Testing.**

Plaintiff grew up in Queens, New York. In fourth, fifth and sixth grades his school placed him in classes for intellectually gifted children, which he said related not to his academic abilities, but rather to his artistic ones. Exhibit 3, plaintiff's personal statement, p. NBME/Katz 0205. Plaintiff attended the High School for Art and Design in New York City,

where he stopped taking math and science courses after his sophomore year.  Exhibit 23, R. Katz

depo., p. 23-25.  He then attended Parson's School of Design, where he received a Bachelor of

Fine Arts degree.  Again, he took no math or science courses other than one science course in

Wildlife of North America.  Id., p. 41.  Other than receiving speech therapy as a child, plaintiff

never received accommodations at any time through his graduation from college.  Id., p. 144-

145.

　　　　During and after college, Katz worked at a hospital where he enjoyed the energy-

packed environment, and decided that he wanted to be a doctor.  Exhibit 3, p. NBME/Katz 0205.

Plaintiff took post-baccalaureate courses at Queens College and the State University of New

York at Old Westbury to prepare to apply to medical school, and for the first time, at Old

Westbury, he received academic accommodations.[3]  Exhibit 3, NBME/Katz 0204, 0206).  The

only documentation that plaintiff provided to the NBME from the College at Old Westbury, a

one-page memorandum, stated that plaintiff had received accommodations from Fall 1994

through Spring 1997 based upon "documentation of an anxiety disorder and Attention Deficit

Disorder."  Id., NBME/Katz 0204.  Plaintiff did not provide such documentation to the NBME,

however, nor did the Old Westbury memorandum describe the documentation reviewed or relied

upon in granting accommodations, the standards for granting accommodations, or what the

accommodations were.  Id.  In his personal statement submitted to the NBME on June 27, 2005,

plaintiff said that Old Westbury granted accommodations because his family physician "felt" that

his problem "was secondary to test anxiety and possibly an attention-deficit disorder...."  Id.,

NBME/Katz 0206.

---

[3]　　Plaintiff acknowledged at his deposition that when he stated in his Request for Test
Accommodations forms that he received extended time for exams in college, he was referring to
the post-baccalaureate courses he took at SUNY Old Westbury.  Exhibit 23, R. Katz depo., p.
143.

Other documentation that plaintiff submitted to the NBME stated that he did not have psychological testing until 2003, at which time the examiners who performed the testing made no diagnosis of ADD or ADHD.  Exhibit 3, p. NBME/Katz 0174-0191.

In his 2005 personal statement, plaintiff said that he "did not fair [sic.] that well on the MCAT," and that he applied and was accepted at St. Matthew's School of Medicine in Belize.  Exhibit 3, p. NBME/Katz 0206.  In his sworn deposition testimony, however, plaintiff acknowledged that he actually started at a different medical school, Ross University in Dominica, West Indies.  He said that he attended Ross for one semester but he got sick and depressed, failed the semester, and did not return there.  Ex. 23, R. Katz deposition, p. 124-125.[4]  Later that year, plaintiff started at St. Matthew's University School of Medicine in Belize.  He later transferred to St. Christopher's because it offered clinical clerkships in a region that plaintiff preferred.  Id., p. 125-130.

Plaintiff's 2005 request for accommodations to the NBME contained no documentation of any accommodations in medical school and in the section of the Request for Test Accommodations form titled "Accommodation History," he checked "No" for medical school.  Exhibits 1 and 2, p. NBME/Katz 0168, 211.  At his deposition, plaintiff testified that he received "informal accommodations" at medical school, by which he meant that without submitting any documentation, the school permitted him to take as much time as he wanted on examinations:

---

[4]     Defendants note that they sought, in discovery, to obtain more complete and verifiable information concerning plaintiff's background, but plaintiff refused to provide authorizations for the release of his educational, health or vocational records, and he objected to defendants' proposed subpoenas served on him pursuant to Fed. R. Civ. P. 45.  Defendants moved to overrule his objections and plaintiff opposed the motion.  The Court has not yet ruled on that motion, so defendants did not serve the subpoenas.  If the Court does not grant summary judgment, defendants will request an extended discovery period to obtain necessary records.

Q.      And did you request accommodations of double time at St. Matthew's?

A.      Well, this is kind of – it was kind of an informal arrangement.  If I was taking an anatomy exam, I would sit, take the exam.  And if I needed as much time as I wanted to take the test, I think that it was sort of informal to allow me to sit longer with no formal accommodation.  Like there was a professor there, a Ph.D. who was like the student services type person.  But I do not believe there was any formal arrangements set up for a disability for anyone there.  So it was informal.

Q.      Did you investigate whether there was –

A.      I did.  And I would meet with the counselor, the individual I'm taking about.

Q.      Let me finish my question.

A.      Sorry.

Q.      Did you investigate whether they had an office for students with disabilities that could grant accommodations if the student presented documentation?

A.      I did.

Q.      And what did you learn?

A.      I learned that I have to go and meet with this counselor every week he would help me with my study skills.

Q.      And is it your testimony that there was no such thing as formal accommodations at St. Matthew's?

A.      I didn't see it done.  And this individual was really all they had for that purpose.  And I met with him on a weekly basis.

Exhibit 23, R. Katz deposition, p. 137-138.

        Plaintiff, who graduated from medical school in 2004, first sat for USMLE Step 1

in March 2002.  Exhibit 17, p. NBME/Katz 0213.  In July 2005, after he had failed Step 1 five

times and failed Step 2 CK once, plaintiff requested accommodations on Step 2 CK and Step 2

CS.  He did not request accommodations on Step 1.  Exhibits 1 and 2; Exhibit 23, R. Katz depo.
p. 145-146; Exhibit 21, Affidavit of Catherine Farmer, Psy.D.

In 2005, as now, the NBME published information and guidelines for requesting
testing accommodations in the USMLE Bulletin of Information (BOI) that can be found on the
USMLE website, www.usmle.org.  A candidate who believed he or she had a disability that
required accommodation on the USMLE would review the published information and submit a
Request for Test Accommodations together with supporting documentation in connection with
his or her Step exam registration.  Id.  The NBME's Disability Services office handled plaintiff's
Request for Test Accommodations in its usual way, which included:

- It conducted a preliminary audit of the request and supporting documentation
  submitted by plaintiff and advised him of missing information.  Plaintiff then had
  the opportunity to supplement the documentation supporting his Request for Test
  Accommodations (which plaintiff did).

- The NBME sent the request and supporting documentation to an external
  consultant for review and recommendation – in plaintiff's case to Dr. Catherine
  Farmer.

- The Manager/Director of the NBME's Disability Services office would review the
  candidate's submission, the written report and recommendation of the outside
  consultant and determine whether to grant an accommodation.

- The NBME Disability Services Manager/Director would notify the candidate of
  the decision in writing.

Id.

For reasons described at length in Dr. Farmer's February 2, 2006, report to J. Abram Doane, the NBME's then Manager of Disability Services, and in a more summary fashion in Mr. Doane's March 13, 2006, letter to plaintiff, the NBME denied plaintiff's Request for Test Accommodations because his documentation did not demonstrate a significant impairment of a major life activity. Exhibits 8, 9. Mr. Doane stated:

> By definition, ADHD affects people over time and across situations in multiple domains, not in one circumscribed area such as test taking. The impact of the disorder needs to be evident in real world functioning and result in developmentally deviant impairment in at least two domains. Your documentation does not suggest significant and persistent functional impairment over time and across situations, nor does it demonstrate that you were significantly limited in the ability to handle normal developmental, academic and social tasks. To the contrary, the documentation you submitted indicates that you progressed through elementary and grade school, earned a Bachelor's degree, and earned a MD degree, all apparently without accommodations.
>
> Furthermore, you provided little objective evidence or data indicating that you are currently functionally impaired to a degree that would rise to the level of a disability. No documentation was provided via faculty/supervisor comments, job performance evaluations, or through other sources of information verifying that you have shown significant impairment in one or more major life activities. The conclusions of your evaluators notwithstanding, the developmental evidence and current pattern of test results provided in your documentation offers little evidence to support the conclusion of significant impairment in one or more major life activities due to inattention, hyperactivity, and/or impulsivity.
>
> Although your evaluators indicate that you are currently diagnosed with an anxiety and a depressive disorder, your documentation contains no evidence that these conditions impair your day to day functioning to a degree that would rise to the level of a disability. ...

Exhibit 9, p. NBME/Katz 0138-0139.

Plaintiff neither supplemented his Request for Test Accommodations nor submitted another official Request for Test Accommodations.[5]  He continued taking, and failing, the USMLE step exams as shown on Exhibit 17.

### C.   Summary of the Statement of Undisputed Facts and Additional Facts Concerning the USMLE's Adoption of the Six-attempt Limit.

The USMLE Composite Committee establishes policy for the USMLE Program and is composed of representatives of the Federation of State Medical Boards (FSMB), National Board of Medical Examiners (NBME), the Educational Commission for Foreign Medical Graduates (ECFMG), and the American public.  Exhibit 22, Affidavit of Gerard F. Dillon, Ph.D.

Before 2011, the Composite Committee imposed no limit on the number of times an examinee could take any Step of the USMLE.  Rather, each state's medical board decided for that state whether to impose an attempt limit on taking the USMLE, and if so, what the maximum number of attempts would be.  The USMLE did, however, recommend limits to state medical boards, including the recommendation – in place for nearly 20 years leading up to the 2011 adoption of the six-attempt limit – that state medical boards impose a limit of six attempts to pass any Step or Step Component unless the examinee demonstrated that he or she had obtained additional educational experience acceptable to the licensing authority.  Id.

In 2010-2011, when the Composite Committee considered adoption of a limit on the number of attempts to pass any Step or Step Component of the USMLE, 41 out of 50 states (78%) imposed such limits.  The vast majority imposed a limit of three or four attempts per Step.  Pennsylvania was in the minority of states that imposed no attempt limit at all.  Id.

---

[5]   Defendants address below plaintiff's 2014 request to modify or waive the six-attempt limit.

In 2011, the Composite Committee adopted a policy limiting examinees to six attempts to pass any step of the USMLE.  Id.; Exhibit 11.  The policy became effective on January 1, 2012, for examinees who had not previously taken any step of the USMLE.  For examinees like plaintiff, who had taken one or more steps of the USMLE already, the six-attempt limit became effective as of January 1, 2013.  Id.

The six-attempt limit applies to all examinees, without regard to disability status. If an examinee applies for and receives accommodations for his or her first attempt at USMLE Step 1, for example, then he or she would be entitled to accommodations on up to six attempts at Step 1.[6]  If an examinee does not apply for or is found not entitled to accommodations, then each of up to six attempts is made without accommodations.  Id.

The primary impetus for the Composite Committee's consideration of a six-attempt limit was a security issue involving the computerized Steps of the USMLE, in which the concern was that examinees who took a Step multiple times might be contributing to the "leak" of examination questions.  Id.

A secondary but important motivation was the concern within the Composite Committee that among the very small percentage of examinees who repeatedly failed a Step of the USMLE, an unqualified examinee might eventually pass by chance alone if give enough opportunities.  Id.

The Composite Committee created an exception to the six-attempt limit under which a state medical board may request that the USMLE permit an examinee to have an additional attempt beyond the six-attempt limit for any reason the state board deems appropriate. In that way, just as before the adoption of the six-attempt limit each state medical board could

---

[6]     Examinees apply for accommodations when they register for a step of the USMLE, and must do so for each step in the USMLE sequence.

determine whether or not to impose attempt limits, so too, after the adoption of the six-attempt limit, if a state medical board believes that an examinee should be given an additional attempt, the control would be with the state board.  Id.

Plaintiff had already failed USMLE Step 1 six times when the USMLE Composite Committee adopted the six-attempt limit.  Because of the extra year provided to examinees who had already taken one or more steps of the USMLE, plaintiff had until December 31, 2012, to register again for Step 1.[7]  Exhibits 11, 17.  Plaintiff registered and took Step 1 three additional times after the USMLE adopted the six-attempt limit, and he failed each time.  Exhibit 17.

Plaintiff received a diagnosis of bipolar disorder for the first time in March 2013.  Exhibit 13, p. NBME/Katz 0079.  Plaintiff had registered for Step 1 on December 7, 2012, with an examination eligibility period from June 1, 2013 to November 30, 2013.  Exhibit 17.  Plaintiff could have, but did not, submit a Request for Test Accommodations in connection with his pending registration for Step 1 after he received the new diagnosis in March 2013.  Exhibit 21, Affidavit of Catherine Farmer, Psy.D.  Plaintiff has not submitted a formal request for accommodations in connection with a registration since 2005-2006.  Id.  Plaintiff took the examination for the final time on November 12, 2013, and failed.  Ex. 13, p. NBME/Katz 0079.

## IV.    STATEMENT OF THE QUESTIONS INVOLVED

1.    Are all of plaintiff's claims under the Americans with Disabilities Act barred by the statute of limitations?

Suggested answer: yes.

---

[7]    Plaintiff has not yet exhausted his attempts at USMLE Step 2 CK or CS (or Step 3).  He could sign up at any time for Step 2 CK or CS and could submit a new Request for Test Accommodations at that time.

2.      Does plaintiff's pending motion for leave to file a second amended complaint provide any potential basis for recovery?

Suggested answer: no.

## V.      ARGUMENT

### A.      Legal Standard for Summary Judgment

Summary judgment is appropriate if the pleadings, depositions, answers to discovery and affidavits show that there are no genuine issues of material fact and that defendants are entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  An issue is "genuine" if a reasonable jury could consider the issue and return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986).  A factual dispute is "material" if it might affect the outcome of the case under governing law.  Id.

In Thomas v. NBME-National Board of Medical Examiners, 2015 WL 667077 (E.D. Pa. 2015), the Court summarized the summary judgment standard in the context of a *pro se* case as follows:

> In evaluating a summary judgment motion, a court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor.  Further, a court may not weigh the evidence or make credibility determinations.  Nevertheless, the party opposing summary judgment must support each essential element of the opposition with concrete evidence in the record.  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  This requirement upholds the "underlying purpose of summary judgment [which] is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense."  Therefore, if, after making all reasonable inferences in favor of the non-moving party, the court determines that there is no genuine dispute as to any material fact, summary judgment is appropriate.  Finally, although the Court liberally construes Plaintiff's *pro se* filings, Plaintiff must set forth facts, supported by affidavits or other evidence of record, sufficient to survive summary judgment.

2015 WL 667077, *2 (footnotes omitted).

**B.      The Statute of Limitations Bars All of Plaintiff's Claims Under the Americans with Disabilities Act.**

Viewing the allegations of the amended complaint expansively, plaintiff raises two claims under the ADA.  First, he claims that the NBME discriminated against him in 2005-2006 when it denied his request for accommodations.  Exhibit 19, Amended Complaint, ¶ 18-20.  Specifically, he claims that he submitted sufficient documentation (in 2005) to demonstrate a disability and that the NBME should have granted the accommodations he requested.  Id.  Second, plaintiff claims that the six-attempt limit on taking any Step or Step Component of the USMLE discriminates and/or unlawfully denies him access to the USMLE.  He claims that the USMLE Bulletin that explains the six-attempt limit "does not discuss exceptions to this rule" or matters involving ADA, the ADAAA or Rehabilitation Act policies.  Id., ¶ 13.

For the following reasons, the Court should find both of plaintiff's claims of alleged violation of the Americans with Disabilities Act barred by the statute of limitations.

**1.      The Statute of Limitations on ADA Claims is Two Years.**

The Americans with Disabilities Act does not contain its own statute of limitations.  Consequently, courts borrow and apply the most appropriate state limitations period.  In Disabled in Action of Pa. v. S.E. Pa. Trans. Auth., 539 F.3d 199 (3d Cir. 2008), the plaintiff advocacy organization sued a transportation authority for failure to make a renovated train station entrance accessible to individuals who use wheelchairs.  The trial court dismissed the case on statute of limitations grounds, concluding that Pennsylvania's two-year limitations period for personal injury actions was the most analogous state law cause of action, and that plaintiff had not initiated the lawsuit within two years of when the cause of action accrued.  The Court of Appeals agreed with the trial court's conclusion that ADA and Rehabilitation Act claims are subject to the two-year statute of limitations:

15

Accordingly, we hold that the statute of limitations applicable to claims under Title II of the ADA and Section 504 of the RA is the statute of limitations for personal injury actions in the state in which the trial court sits.  In this case, the applicable statute is 42 PA. CONS. STAT. § 5524, which prescribes a two-year statute of limitations.

539 F.3d 199, 208.

While Disabled in Action arose under Title II of the ADA, which pertains to "Public Services," the Court of Appeals cited with approval Soignier v. Am. Bd. of Plastic Surgery, 92 F.3d 547 (7th Cir. 1996) which, like the present case, arose under the section of Title III of the ADA covering courses and examinations for professional licensing, 42 U.S.C. § 12189.

In Soignier, the plaintiff plastic surgeon sued his specialty's professional board claiming that the board denied him sufficient accommodations for his learning disability, resulting in his failure of an oral board certification examination.  The parties agreed, and the trial court and court of appeals held, that the Illinois two-year statute of limitations for personal injury claims applied to the Title III failure to accommodate claim:

> The statute Soignier invokes in Title III of the ADA prohibits discrimination by a private entity offering a professional certification examination.  We agree with the parties that this claim is best characterized as one for personal injury.  See, e.g., Goodman v. Lukens Steel Co., 482 U.S. 656, 661, 107 S.Ct. 2617, 2621, 96 L.Ed.2d 572 (1987) (action for discrimination is one for "fundamental injury to the individual rights of a person"); Wilson, 471 U.S. at 280, 105 S.Ct. at 1949 (claims which allege discrimination are best characterized as personal injury actions).  The district court thus correctly applied Illinois' two-year statute of limitations for personal injuries as the most analogous limitations period for Soignier's ADA claim.

92 F.3d 547, 551.

Federal courts in Pennsylvania have consistently followed Soignier and Disabled in Action in applying the two-year statute of limitations for personal injury actions to ADA/RA cases.  See O'Shea v. Interboro School Dist., 2014 WL 1673237, *4 (E.D. Pa. 2014); George v. County of Allegheny, 2013 WL 4455607 (W.D.Pa. 2013); Stine v. Pennsylvania State Police,

2012 WL 959362, *5 (M.D.Pa. 2012); Datto v. Harrison, 664 F.Supp.2d 472 (E.D. Pa. 2009).

Soignier further instructs that the plaintiff's cause of action for denial of testing accommodations accrued no later than the date he took the examination without the accommodations he requested, because the "time starts to run with 'the *discriminatory act*, not the point at which the *consequences* of the act become painful.'"  92 F.3d 547, 552, quoting Lever v. Northwestern Univ., 979 F.2d 552, 553 (7th Cir. 1992) (emphasis in original, quoting Chardon v. Fernandez, 454 U.S. 6, 8, 102 S.Ct. 28, 29, 70 L.Ed.2d 6 (1981), *cert. denied,* 508 U.S. 951, 113 S.Ct. 2443, 124 L.Ed.2d 661 (1993).

Following the logic of Soignier, plaintiff's cause of action in this case for alleged discrimination in the denial of accommodations accrued either on March 13, 2006, when the NBME informed him of the denial, or on the date thereafter in 2006 when he next took a Step of the USMLE without the accommodations he had requested.  The statute of limitations on such claim expired sometime in 2008, long before he brought this lawsuit in 2015.  Accordingly, plaintiff's claim of discrimination for failure to provide the accommodations he requested in 2005-2006 is barred by the two-year statute of limitations.[8]

---

[8]    Even if plaintiff's claim of disability discrimination were not clearly barred by the two-year statute of limitations, defendants note that plaintiff has provided no actual evidence whatsoever that the NBME wrongly denied his request for accommodations in 2006, or acted in any kind of discriminatory manner.  In her affidavit, Dr. Catherine Farmer states that the NBME Disability Services office handled plaintiff's request for accommodations in its usual manner (which she describes), and the NBME's well reasoned basis for denial is provided at Exhibits 8 and 9.  Moreover, according to Dr. Farmer, if the NBME received a request with the same documentation today, it would come to the same conclusion.  Plaintiff's suggestion that the NBME wrongly denied his request for accommodations is further undermined by the 2013 letter that he provided from his own doctor saying that the 2005 diagnosis of ADHD, on which plaintiff relied in his request for accommodations, was incorrect.

2.     **Plaintiff's Claim of Disability Discrimination Based Upon the Adoption of the Six-Attempt Limit Accrued at the Latest on January 1, 2013, and Expired at the Latest on December 31, 2014.**

Plaintiff acknowledges in the Amended Complaint that "[i]n 2011 USMLE Organization announced that they will place an exam limit to the number of times examinees can take to pass a USMLE Step Component. ..."  Exhibit 19, Amended Complaint, ¶ 11.  A copy of the USMLE's August 25, 2011, announcement, along with a follow up announcement dated June 20 2012, is attached as Exhibit 11.

The USMLE implemented the six-attempt limit in two stages.  For those examinees who had not yet taken any Step or Step Component of the USMLE before January 1, 2012, the six-attempt limit became effective on that date.  However, the USMLE gave examinees like plaintiff, who had already taken one or more Steps or Step Components of the USMLE, an additional year, until January 1, 2013, before the six-attempt limit became effective for them. Exhibit 11, p. NBME/Katz 0218-0219.

Plaintiff admitted in his sworn deposition testimony that he became aware of the six-attempt limit around the time that the USMLE adopted it in 2011 from the on-line USMLE bulletin.  Exhibit 23, R. Katz depo., p. 216-217.  Plaintiff registered and took Step 1 three additional times after the USMLE adopted the six-attempt limit, and he failed each time.  Exhibit 17.

Since plaintiff had all relevant information about the imposition of the six-attempt limit by August 2011, and the six-attempt limit became effective for him on January 1, 2013, the statute of limitations for a challenge to the policy (as to him specifically or as to disabled persons generally who had already taken one or more Steps or Step Components of the USMLE) began to run no later than January 1, 2013, and expired no later than December 31, 2014.  Plaintiff filed

this lawsuit on June 17, 2015, more than six months after the expiration of the two-year statute of limitations applicable to such claim.

 Accordingly, the Court should find plaintiff's claim that the defendants violated his rights under the ADA by adopting the six-attempt limit time-barred.

 **C.**   **Even If Plaintiff's Claim Regarding the Six-Attempt Limit Were Not Time-Barred, He Has Adduced No Evidence Whatsoever that the Six-Attempt Limit Discriminates, or that Modifying It Would Be a Reasonable Accommodation.**

 Defendants are subject to Title III of the Americans with Disabilities Act, 42 U.S.C. § 12189, which covers agencies that provide testing for professional licensing.[9] Exhibit 19, amended complaint, paragraph 14.  To prevail on a claim under Section 12189, a plaintiff must prove that he is disabled, that his request for accommodations is reasonable, and that the request has been denied.  Rawdin v. American Bd. of Pediatrics, 985 F.Supp.2d 636, 647-648 (E.D. Pa. 2013), aff'd., 582 Fed.Appx. 114 (3d Cir. 2014); Mahmood v. Nat'l Board of Medical Examiners, 2012 WL 2368462, at *4 (E.D. Pa. 2012).

 In paragraph 18 of the amended complaint, plaintiff asserts the following with regard to the six-attempt limit:

> Plaintiffs' request to modify six attempt policy, is a reasonable accommodation and does not substantially modify the the USMLE's standards. *See e.g. Doe v. Samuel Merritt University,* 921 F.Supp. 2d. 958 (N.D. Cal. 2013) (Preliminary Injunction granted allowing student with a disability to take a podiatric licensing examination unlimited times as an accommodation to University's policy providing for a three exam limit).

---

[9]   42 U.S.C. § 12189 provides:

Any person that offers examinations or courses related to applications, licensing, certification, or credentialing for secondary or post-secondary education, professional, or trade purposes shall offer such examinations or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals.

Exhibit 19, Amended Complaint, paragraph 18.[10]   Notwithstanding his assertion that "modification" of the six-attempt limit would be a reasonable accommodation, plaintiff has not produced any evidence whatsoever to support that claim.

In his affidavit in support of summary judgment, Dr. Gerard F. Dillon explains the background of six-attempt limit, including the USMLE Composite Committee's concern, which contributed to the adoption of the six-attempt limit, that in the absence of a limit, if given enough opportunities, some unqualified examinees might eventually pass just by chance a Step that they had repeatedly failed.  Exhibit 22, Affidavit of Gerard F. Dillon, Ph.D.

Dr. Dillon further points out in his affidavit that providing an exception to the six-attempt limit just for disabled individuals would create an unfair advantage for them that could undermine the integrity of the examination.  Id.[11]

In Rawdin v. American Bd. of Pediatrics, a highly regarded pediatrician who had suffered a brain tumor and its recurrence repeatedly failed his specialty board's certification examination.   Dr. Rawdin requested that the board alter the format of the certification

---

[10]      The case that plaintiff cites in paragraph 18 of the amended complaint, Doe v. Samuel Merritt University, 921 F.Supp. 2d. 958 (N.D. Cal. 2013), is inapposite.  In that case, the Court granted a preliminary injunction in favor of a podiatry student whom the defendant University dismissed for having failed Part 1 of her podiatric licensing examination three times.  Notably, the Court said it was restoring the status quo, in which the plaintiff in that case was a student entitled to test.  In contrast, plaintiff has not been entitled to take USMLE Step 1 for more than two years.  Moreover, the Court in Doe considered it important to permit the plaintiff to test while the material she learned in podiatric school was fresh in her mind, whereas in this case, plaintiff has been out of medical school for more than 11 years already.  Finally, the Court in Doe noted that it made no decision on the merits, so even if plaintiff passed the test that she took as a result of the preliminary injunction that permitted her to make further attempts during the pendency of the litigation, the court's final decision on the merits would determine whether a passing grade would count, or whether the school's policy of dismissing a student for failing three times would govern.

[11]      Plaintiff testified that he believes that the six attempt limit should be eliminated for anyone with disabilities, even if they receive other accommodations that are intended to even the playing field.  Exhibit 23, R. Katz deposition, page 219-222.  Plaintiff's view is contrary to the law.  See discussion of Rawdin, infra.

examination as an accommodation, but the board refused.  In a lawsuit against the board, the

Court – although sympathetic to the plaintiff's health history and his talent as a physician –

found, among other things, that plaintiff had not proved his proposed accommodation to be

reasonable.[12]  The Court noted that the ADA is intended to place disabled individuals on an even

footing, but not to give them a choice of accommodations or an advantage over non-disabled

persons:

> Even if Dr. Rawdin was disabled — which he is not — the Court also concludes
> he is not entitled to the accommodations he seeks. Disabled individuals are
> entitled to reasonable accommodations "that permit them to have access to and
> take a meaningful part in public services and public accommodations." *Powell v.
> Nat'l Bd. of Med. Exam'rs,* 364 F.3d 79, 85 (2d Cir.2004).  ...  Reasonable
> accommodation is mandated in order to place people with disabilities on an even
> playing field, but "it does not authorize a preference for disabled people generally
> [,] ... [and it] does not extend to the provision of adjustments or modifications that
> are for the personal benefit of the individual with a disability." (Citations
> omitted).

985 F.Supp.2d 636, 653-654.

In this case, the only competent evidence regarding the reasonableness of the six-

attempt limit comes from Dr. Dillon, who participated in the USMLE Composite Committee's

discussions leading to the six-attempt limit's adoption.  Dr. Dillon explained why the USMLE

adopted the limit in 2011; that the limit was consistent with the policies of the vast majority of

state medical boards at the time; and that a state medical board can, for any reason it deems

appropriate, request an exception to the limit for an individual examinee.  Exhibit 22, Affidavit

of Gerard F. Dillon, Ph.D.

---

[12]    Notably, the Court in <u>Rawdin</u> also found that notwithstanding plaintiff's proof that his
memory was weaker than other aspects of his cognitive functioning, such deficit did not render
him disabled because his memory still functioned within normal limits.

Significantly, the plaintiff asked the Pennsylvania Medical Board to intercede on his behalf and request an exception to the six-attempt limit, but the Pennsylvania Board has declined to do so to date.  Exhibits 15, 20.

Accordingly, even if plaintiff were not time-barred from pursuing a claim based on the adoption of the six-attempt limit, his failure to produce any evidence whatsoever that modification of the limit would be a reasonable accommodation is fatal to his claim.

### D.   The Court Should Deny Plaintiff's Proposed Second Amended Complaint as Futile Because None of the Asserted Claims Could Give Rise to Relief.

Plaintiff's proposed second amended complaint is attached as Exhibit 18.  For all the reasons set forth above, if the Court permitted plaintiff to file his second amended complaint, his claims of discrimination under the ADA (and the Rehabilitation Act) would be subject to dismissal.[13]  For the reasons that follow, none of the state-law claims that plaintiff seeks to assert in the proposed second amended complaint provide an avenue for relief.  Accordingly, the Court should deny the pending motion as futile.[14]

### 1.   The Court Should Reject Plaintiff's Proposed Claim for Breach of Contract.

In his proposed claim for breach of contract, plaintiff alleges that the defendants breached the "duty of good faith and fair dealing by wrongfully failing to assist him with his disability in 2005-2006 and again in 2014," and also breached a contract by "failing to provide

---

[13]    Defendants do not concede that the Rehabilitation Act applies to them, but that issue is not addressed at this time because even if the Rehabilitation Act were applicable, plaintiff could not make out a viable claim for the same reasons that his claims under the ADA fail.  It is well settled that a court should evaluate a claim of discrimination under the Rehabilitation Act under the same standards as it applies to the Americans with Disabilities Act.  Walsh v. University of Pittsburgh, 2015 WL 128104, *11 (W.D.Pa. 2015), citing McDonald v. Com. Of Pa., Dept. of Public Welfare, 62 F.3d 92, 95 (3d Cir. 1995).

[14]    A motion to amend the pleadings may be denied as futile where the proposed claims are legally insufficient.  Walker v. Zenk, 323 Fed.Appx. 144, 147-148 (3d Cir. 2009).

testing accommodations in 2006 and in 2014." Exhibit 18, Proposed Second Amended Complaint, ¶ 24.

Plaintiff never had a contract with the NBME or the FSMB to receive accommodations, and the duty of good faith and fair dealing that plaintiff cites arises only in the context of a contract, and cannot be imposed in the absence of a contract. Donahue v. Federal Express Corp., 753 A.2d 238, 243 (Pa. Super. 2000).

Assuming for present purposes that plaintiff's 2005-2006 registration for Step 2 CK and/or Step 2 CS, together with the USMLE Bulletin of Information, comprised a contract to which the duty of good faith and fair dealing could attach, the four-year statute of limitations in Pennsylvania for breach of contract cases expired long before plaintiff filed this lawsuit in 2015.[15] With regard to 2014, plaintiff did not register for the USMLE so he did not have any contract at all with the defendants at that time.

Since any possible breach of contract claim related to 2005-2006 would be barred by the statute of limitations, and plaintiff cannot establish the elements of a breach of contract claim with regard to 2014,[16] the Court should reject plaintiff's proposed claim for breach of contract.

2.     **The Court Should Reject Plaintiff's Proposed Claim for "Misleading Conduct" Because It Fails to State a Cognizable Claim.**

Plaintiff throws the kitchen sink into the third cause of action in his proposed Second Amended Complaint, which he calls "Misleading Conduct." None of the theories or

---

[15]     Pennsylvania's four-year statute of limitations on contract actions is set forth at 42 Pa.C.S.A. § 5525.

[16]     To state a viable claim for breach of contract, plaintiff must be able to show the existence of a contract, the breach of a duty imposed by the contract, and damages resulting from the breach. Pennsy Supply, Inc. v. American Ash Recycling Corp. of Pa., 895 A.2d 595, 600 (Pa. Super. 2006).

allegations in paragraphs 25-41, whether considered separately or together, state a claim upon which relief can be granted.

Chief among plaintiff's frivolous theories is that when the NBME denied his request for accommodations in 2006, the letter sent by Mr. Doane, the Manager of Disability Services, said the NBME had consulted with "experts," whereas plaintiff learned in this litigation that there was only one expert, Catherine Farmer, Psy.D.  Based on this allegation, plaintiff claims that the NBME "obstructed justice," citing 18 U.S.C. 1515(a)(3), which is a definitional statute applicable to a federal criminal witness tampering statute.  Simply put, plaintiff's disparagement of the credentials of Dr. Farmer or Mr. Doane or his use of the plural "experts" do not constitute witness tampering.

Plaintiff also cites the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") as supporting his claim for "misleading conduct."  The consumer protection statute, however, prohibits unfair methods of competition and unfair or deceptive practices *in the conduct of trade or commerce*, which has no application to this case.[17]

For these reasons, Mr. Katz has not stated a valid cause of action for "misleading conduct."

---

[17]     The UTPCPL definitions section, 73 P.S. §201-2, includes the following:

> (3) **"Trade"** and **"commerce"** mean the advertising, offering for sale, sale or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situate, and includes any trade or commerce directly or indirectly affecting the people of this Commonwealth.

24

>    3.    **Plaintiff Fails to State a Claim for Negligent or Intentional Infliction
>          of Emotional Distress.**

In the fourth cause of action in plaintiff's proposed second amended complaint, plaintiff asserts that the defendants either negligently or intentionally inflicted emotional distress on him by failing to grant his requested accommodations. He alleges that the denial of accommodations caused him to fail the USMLE exams multiple times, subverting his self-esteem and taking a toll on his physical and mental health. Exhibit 18, ¶¶ 42-44. Ignoring for present purposes the statute of limitations, plaintiff's allegations do not allege a valid claim for either negligent or intentional infliction of emotional distress (NIED) or intentional infliction of emotional distress (IIED).

Briefly, to sustain a claim for NIED, a plaintiff must show a physical impact, that he was in the zone of danger of a physical impact, that he witnessed a tortious injury of a close relative, or that the defendant had a special contractual or fiduciary duty toward him. Walsh v. University of Pittsburgh, 2015 WL 128104 (W.D.Pa. 2015, *15). The Court in Walsh elaborated on the requirements for an NIED claim based upon a contractual or fiduciary relationship:

> Pennsylvania courts have limited NIED claims based on contractual or fiduciary duties "to preexisting relationships involving duties that obviously and objectively hold the potential of deep emotional harm in the event of breach.... [T]hese special relationships must encompass an implied duty to care for the plaintiff's emotional well-being." Weiley, 51 A.3d at 218 (citing Toney v. Chester Cnty. Hosp., 614 Pa. 98, 36 A.3d 83, 95 (Pa.2011).[5] "The potential emotional harm must not be the type that a reasonable person is expected to bear. Compensable emotional harm has been described as likely to be experienced as a visceral and devastating assault on the self, such that it resembles physical agony in its brutality." Toney, 614 Pa. 98, 36 A.3d at 95. Since first allowing NIED claims based on breach of a contractual or fiduciary relationship, Pennsylvania courts have found only certain doctor/patient relationships and one between an adoption agency and adoptive parents to support such a claim, refusing to extend liability further. Hershman v. Muhlenberg Coll., No. 13–7639, 2014 WL 1661210, at *4 (E.D. Pa. Apr.24, 2014). Given the development of the law in this area, we agree with the court in Hershman which found that, "the relationship between a college and its students does not obviously hold the potential of deep emotional harm,"

and will not support a claim for NIED by a student against a college. *Id.*

2015 WL 128104, *15.

Similarly, plaintiff cannot sustain a claim for IIED because such a claim must allege behavior by the defendant that is so extreme and outrageous that it would universally be considered intolerable in a civilized society. Gouda v. Harcum Jr. College, 2015 WL 3528251, *5 (E.D. Pa. 2015) ("Even if Defendants had violated Harcum's policies regarding nondiscrimination, appeals, and Academic Warnings with the sole purpose of dismissing Gouda from the Nursing Program, the conduct Gouda alleges is insufficiently severe and egregious to state a cause of action [for IIED] ...").

Accordingly, the Court should reject plaintiff's proposed claims for negligent or intentional infliction of emotional distress.

**4.    The Court Should Reject Plaintiff's Proposed Claim for "Impairment of Economic Opportunity," Because No Such Cause of Action Exists.**

The fifth cause of action in plaintiff's proposed second amended complaint, Exhibit 18, ¶¶ 45-53, asserts a claim that plaintiff calls "Impairment of Economic Opportunity." Such a claim does not exist as an independent cause of action. Rather, the claim describes an element of economic damages that might come into consideration if plaintiff presented a legitimate claim based in negligence or contract, which he has not done. Plaintiff's discussion of the administrative resolution of a matter involving a different examinee who applied for accommodations, Frederick Romberg, is incomplete, misleading, and has no bearing whatsoever on plaintiff's case or his claim for damages. His quotation of things that people said regarding Mr. Romberg are irrelevant and the Court should disregard them.

### 5. Plaintiff Fails to State A Claim for Fraudulent Misrepresentation.

In the proposed sixth cause of action, Exhibit 18, ¶ 54, plaintiff asserts that the NBME made a fraudulent misrepresentation in its March 13, 2016, letter denying his request for accommodations because the letter stated that his documentation had been reviewed by "experts" (plural), rather than referring to an expert (singular).

The elements of a claim for fraudulent misrepresentation are well settled:

> (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; **and** (6) the resulting injury was proximately caused by the reliance.

Kostryckyj v. Pentron Laboratory Technologies, LLC, 52 A.3d 333, 338 (Pa. Super. 2012); Pflumm Paving and Excavating, Inc. v. Foundation Services Co., 816 A.2d 1164, 1171 (Pa. Super. 2003).

Defendants will not belabor the point. Plaintiff's claim fails for several reasons, including because the so-called false statement was not material and was not intended to induce Mr. Katz to do or refrain from doing anything.

### 6. The Court Should Reject Plaintiff's Request for a Preliminary Injunction Because, Among Other Reasons, Plaintiff Cannot Prevail on the Merits.

This case is now at the summary judgment stage. It is late to consider a preliminary injunction.

Title III of the ADA provides only for injunctive relief. Goldberg v. Chicago School for Piano Technology NFP, 2015 WL 468792, *4 (N.D.Ill. 2015), citing Scherr v. Marriott Int'l, Inc., 703 F.3d 1069, 1075 (7th Cir. 2013). In the event the Court does not grant summary judgment and dismiss all claims with prejudice, the defendants will request an

extended discovery period in which they will be able to fully develop the record on all matters in which plaintiff blocked discovery through his objections to subpoenas.  Plaintiff would then have to win on the merits of his discrimination claims to be entitled to injunctive relief.  For all the reasons stated above, plaintiff cannot prevail on the merits.

## V.     CONCLUSION

For the reasons set forth above, the Court should dismiss plaintiff's claims under the Americans with Disabilities pursuant to the statute of limitations.  Moreover, even if plaintiff's claims were not time-barred, he has failed to produce any evidence whatsoever that the NBME wrongly denied his 2005-2006 request for accommodations, or that his request for an exception to the USMLE's six-attempt is a reasonable accommodation.

Further, plaintiff's proposed second amended complaint fails to state any viable claims for relief, so the Court should deny plaintiff's pending motion for leave to file a second amended complaint as futile.

For all these reasons, the Court should grant summary judgment to defendants and dismiss this case with prejudice.

**RESPECTFULLY SUBMITTED,**

/s/ Michael E. Sacks
Neil J. Hamburg
Michael E. Sacks
HAMBURG & GOLDEN, P.C.
Pa. I.D. Nos. 32175, 39774
1601 Market Street, Suite 3310
Philadelphia, PA  19103-1443
(215) 255-8590
hamburgnj@hamburg-golden.com
sacksme@hamburg-golden.com

Attorneys for Defendants,
The National Board of Medical Examiners and the Federation of State Medical Boards of the United States

**LIST OF EXHIBITS**

| DEF. EXH. NO. | DESCRIPTION AND NOTES |
|---|---|
| 1 | Applicant's Request for Test Accommodations (Step 2 CK) |
| 2 | Applicant's Request for Test Accommodations (Step 2 CS) |
| 3 | Material submitted by R. Katz July 7, 2005 |
| 4 | July 7, 2005, letter from M.Fuentes to R. Katz |
| 5 | July 15, 2005, letter from J.A.Doane to R. Katz |
| 6 | Additional material submitted by R. Katz in 2005 |
| 7 | NBME telephone contact memos 2005, 2006 |
| 8 | February 2, 2006, letter (report) from C.Farmer to J.A.Doane |
| 9 | March 13, 2006, letter from J.A.Doane to R. Katz (denial letter) |
| 10 | March 7, 2006, decision forms regarding accommodations requested |
| 11 | USMLE announcements re Six Attempt Limit |
| 12 | 2013-2014 contacts and emails |
| 13 | April 2014 letter from R. Katz to ECFMG, with supporting documents |
| 14 | April 2014 emails between R. Katz and NBME |
| 15 | June 2015 email from R. Katz to Mr. Rish at Pa. Board of Medicine |
| 16 | April 3, 2015, letter from T.Lazo, Counsel for Pa. Board of Medicine, to R. Katz |
| 17 | USMLE Candidate Score Inquiry List re R. Katz |
| 18 | Plaintiff's (proposed) Second Amended Complaint, with attachments |
| 19 | Plaintiff's Amended Complaint |
| 20 | Minutes of the May 19, 2015, meeting of the Pennsylvania Medical Board |

| DEF.<br>EXH.<br>NO. | DESCRIPTION AND NOTES |
|---|---|
| 21 | Affidavit of Catherine Farmer, Psy.D. |
| 22 | Affidavit of Gerard F. Dillon, Ph.D. |
| 23 | Deposition of Richard Katz, February 9, 2016 |

**CERTIFICATE OF SERVICE**

I certify that the foregoing Motion for Summary Judgment of Defendants, the National Board of Medical Examiners and the Federation of State Medical Boards, with Memorandum of Law and Exhibits, is being filed electronically with the Clerk of the Court on May 2, 2016, using the electronic case filing system, which will automatically send email notifications of such filing to registered parties.  The motion is also being served by regular mail upon:

Richard Katz
3364 Parker Lane
East Stroudsburg, PA  18301
cat2400@msn.com

*Pro se*

/s/ Michael E. Sacks
Michael E. Sacks