# EXHIBIT 21

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICHARD KATZ | CIVIL ACTION |
| v. | |
| NATIONAL BOARD OF MEDICAL EXAMINERS and FEDERATION OF STATE MEDICAL BOARDS | NO. 3:15-cv-1187 |

**AFFIDAVIT OF CATHERINE FARMER, PSY.D.**

Catherine Farmer, having been duly sworn, hereby deposes and states:

1.  Since September 2006, I have been employed by the National Board of Medical Examiners ("NBME") as Manager/Director of Disability Services and ADA Compliance Officer, Testing Programs. As Director, my duties include, among other things, operational responsibility for the office that receives and processes requests for test accommodations for the United States Medical Licensing Examination ("USMLE"). I am responsible for making decisions to approve or deny such requests, and if approved, the appropriate accommodation(s) to be provided. A copy of my curriculum vitae is attached as Exhibit A.

2.  I resigned my position as Case Manager in Disability Services at the NBME in August 2005 in order to pursue full-time post-doctoral training in clinical psychology at the University of Rochester School of Medicine and Dentistry. During the period of September 2005-August 2006, I worked as an independent consultant for the NBME, reviewing requests for accommodations and the supporting documentation submitted by examinees. At that

time, the NBME's Manager of Disability Services was J. Abram Doane. At the conclusion of my post-doctoral training, I rejoined the NBME as Manager of Disability Services and ADA Compliance Officer in September 2006. The position was retitled to Director in 2011.

### A. The NBME Receives Hundreds of Requests for Accommodation Every Year, and Typically Grants More often than Denies Those Requests

3. Richard Katz, the complainant, made a formal request for testing accommodations on one occasion only, for Step 2 CK and Step 2 CS of the USMLE, in July 2005. Mr. Katz supplied additional information over a period of months, and the NBME completed its evaluation and denied his request for accommodations in March 2006.

4. As a result of working in the office of Disability Services at the NBME since September 2004 and becoming the Manager of Disability Services in September 2006, I know the procedures followed by the Disability Services office when Mr. Katz made his request, as well as the approximate number of requests for accommodations granted at that time.

5. In 2005-2006, as now, the Disability Services office of the NBME received hundreds of requests for test accommodations for the USMLE each year. The majority of the requests for accommodation, then and now, were for claimed learning disabilities or ADHD (Attention Deficit Hyperactivity Disorder), and the most common request was (and is) for extra examination time. Richard Katz's 2005 request for accommodations fell into that category.

6. The NBME's approach to reviewing an examinee's request for accommodations for Step 1, Step 2 CK or Step 2 CS of the USMLE in 2005-2006, which has not changed significantly since that time, can be summarized as follows:

a) The NBME published information and Guidelines to request testing accommodations in the USMLE Bulletin of Information (BOI) and at the USMLE website www.usmle.org.

b) A candidate who believed he or she had a disability that required accommodation on the USMLE would review the published information and submit a Request for Test Accommodations together with supporting documentation in connection with his or her Step exam registration.

c) The NBME Disability Services office would conduct a preliminary audit of the request and supporting documentation submitted by the candidate and advise the candidate of any missing information. The candidate would then have the opportunity to supplement the documentation supporting his or her request for accommodation.

d) The NBME might send the request and supporting documentation to one or more outside consultants for review and recommendation.

e) The Manager/Director of the NBME's Disability Services office would review the written report and recommendation of the outside consultant(s), if applicable, and determine what, if any, accommodation(s) was appropriate for the candidate to access to the examination(s).

f) The NBME Disability Services would notify the candidate of the decision in writing. If accommodations were approved, NBME Disability Services would notify the test vendor of the approved accommodations to be provided for the Step examination.

7.     The documentation submitted by examinees in support of a request for accommodations, both in 2005-2006 and now, typically would include reports of clinical assessment, medical records, school records showing the examinee's history of receiving accommodations or symptomology consistent with the reported disability, letters or reports from caregivers, and the examinee's personal statement. The NBME considers all submitted documentation when assessing whether to grant accommodations on the USMLE.

8.     In 2005-2006, as now, no single element of an examinee's documentation would be dispositive. Over all, consistent with the ADA and implementing regulations, the Office of Disability Services would review the documentation to determine whether the information demonstrated that the examinee had a physical or mental impairment that substantially limited one or more major life activities relevant to the examination, compared with most people in the population and what, if any, accommodation(s) were appropriate to ensure access to the examination(s).

9.     In 2005-2006, the NBME granted approximately 75 percent of the requests it received for accommodations on USMLE. Additional time to take the examination has always been, and is, the most common form of accommodation.

10.    In 2005-2006, if the NBME determined that the examinee's supporting documentation did not document the presence of an impairment that substantially limited a major life activity relevant to the examination compared with most people in the population, it would deny the requested accommodation. The same holds true today.

11.    While an individual with a bona fide learning disability or ADHD might be entitled under the ADA to an accommodation such as extra time on the USMLE, an individual who does

4

not have a learning disability or ADHD should not be given additional time on the examination because doing so could give him or her an unfair advantage compared with examinees who are restricted to the standard amount of time. Moreover, the examination itself would become ineffective at identifying individuals who have the requisite level of knowledge and skills to become competent physicians, and those who do not. Those basic principles were as true in 2005-2006 as they are today.

      **B.**    **Richard Katz's Request for Accommodation Was Denied for Legitimate Reasons, Namely Because the NBME Concluded that His Documentation Did Not Demonstrate an Impairment that Substantially Limited His Ability to Access the Examination As Compared with Most People.**

    12.    As noted, in 2005-2006, before I rejoined the NBME as the full-time Manager of Disability Services at the NBME, I worked as an independent consultant for the NBME performing reviews of examinees' requests for accommodations and the documentation submitted on their behalf. In that capacity, I performed the "outside" review of Richard Katz's request for accommodations and submitted my report and recommendation, dated February 2, 2006, to J. Abram Doane, then the Manager of Disability Services. A copy of my 2006 report is attached as Exhibit B.

    13.    I have reviewed my February 2, 2006, review, as well as the supporting documentation submitted by Mr. Katz at that time on which the review was based. If called upon to review the same documentation today I would come to the same conclusion that I did in 2006, namely that the documentation submitted by Mr. Katz did not document the presence of a substantial limitation in a major life activity because of ADHD, depression or anxiety. The detailed reasons for that conclusion are stated in my February 2, 2006, report. A few of the points that supported my conclusion were:

a) Mr. Katz's documentation did not demonstrate any clinical impairment in childhood, and did not include any historical evidence of substantial difficulties secondary to the claimed neurodevelopmental disorder, ADHD, that would rise to the level of a disability;

b) The diagnosis of ADHD appeared to be based largely on self-report and symptom endorsement on ADHD rating scales, but the diagnosis was not supported with evidence of longstanding impairment that could be reliably or specifically tied to ADHD;

c) Testing showed that performance on a range of cognitive and academic achievement tasks were well within average range and did not suggest impairment in reading or learning;

d) Documentation regarding depression and anxiety was inconsistent at best, and no treating professional had assigned any DSM-IV diagnosis of a mood or anxiety disorder before Mr. Katz applied for accommodations on the USMLE.

Over all, the documentation did not support a finding of a substantial limitation in functioning of a major life activity relevant to accessing the USMLE.

14. I am aware that in this litigation, Mr. Katz has presented some information to the effect that in 2013, during or after a hospitalization, a physician diagnosed him with bipolar disorder, and that the same physician has stated that he believed that the 2005 diagnosis of ADHD was incorrect.

15. This statement by Mr. Katz's treating physician supports my opinion that Mr. Katz's documentation did not demonstrate a significant impairment of a major life activity as a result of ADHD.

  C. **NBME Disability Services Did Not Conduct a Review of Mr. Katz's Potential Entitlement to Accommodations In Or After 2014 Because Mr. Katz Has Not Registered for a Step of the USMLE Or Submitted a Formal, Complete Request for Accommodations in Connection with Such Registration.**

16. As noted, the NBME Disability Services Office conducts a review of an examinee's request for accommodations when he or she registers and is confirmed eligible for a Step of the USMLE and submits a formal request for accommodations and supporting documentation. This process ensures a regular protocol that ties the request for accommodations to the demands of the particular examination, that complete documentation is available for review and consideration, and ensures that administrative and expert consultant resources are prioritized to provide a timely review and decision to eligible USMLE examinees.

17. Mr. Katz has not submitted a formal request for accommodations in connection with a registration since 2005-2006.

18. I am aware that Mr. Katz argues that he is in a "Catch 22" because he is ineligible to take Step 1 of the USMLE based on the six-attempt limit imposed by the USMLE program, but that is a matter of USMLE policy that is unrelated to the NBME Disability Services office.

19. It is important to note, however, that even if Mr. Katz were eligible to take Step 1 as a result of an exception requested by a state medical board, and even if it were true that Mr. Katz has now been "correctly" diagnosed with a different condition (bipolar disorder), it does not automatically mean that he would be entitled to any particular accommodations.

7

Rather, Mr. Katz would have to submit supporting documentation to demonstrate that the claimed condition results in impaired functioning that substantially limits a major life activity relevant to the examination, as compared with the general population. That is a judgment that cannot be made without additional documentation.

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT. EXECUTED ON THIS 29 DAY OF April, 2016.

*Catherine Farmer*
Catherine Farmer, Psy.D.

# EXHIBIT A

# *Catherine Farmer, PsyD*

Work:  215-590-9700
cfarmer@nbme.org

_____

**EDUCATION**

| | | | |
|---|---|---|---|
| PsyD | Immaculata University  (APA approved)<br>Immaculata, Pennsylvania | Clinical Psychology | 2004 |
| MS | Saint Joseph's University<br>Philadelphia, Pennsylvania | Health Education | 1993 |
| BS | Neumann College<br>Aston, Pennsylvania | Biology | 1985 |

**PROFESSIONAL EXPERIENCE**

*INDEPENDENT CONSULTANT*

9/05 – 8/06   Reviewed requests for test accommodations and supporting documentation of mental disorder/disability.  Made recommendations to testing agency regarding appropriate test accommodations based on individual's functional impairment as defined by the Americans with Disabilities Act (ADA).

*ADMINISTRATIVE/MANAGEMENT*

National Board of Medical Examiners (NBME), Philadelphia, PA

9/06 - present   *Director, Disability Services*
*ADA Compliance Officer, Testing Programs*
Oversee the Office of Disability Services.  Supervise exempt and nonexempt staff.  Develop policies, procedures, and best practices to ensure the timely processing of requests for test accommodations.  Develop and manage unit budget.  Review examinee requests for test accommodations and supporting documentation of disability. Consult with experts in physical and mental impairments.  Determine appropriate accommodations based on functional impairments as defined by the ADA.  Make decisions and recommendations for approval of accommodations for United States Medical Licensing Examination (USMLE).  Communicate with examinees regarding the outcome of their request for accommodations.

8/04 **-** 8/05   *Case Manager, Disability Services*
Reviewed requests for test accommodations for the USMLE and supporting documentation of disability.   Communicated NBME/USMLE policy and documentation guidelines to examinees, evaluators, and medical school personnel.  Prepared custom written correspondence to examinees communicating the status and outcome of their requests for accommodation.

5/01 **-** 8/04   *Special Assistant (part-time)*
Assisted with special projects and programs as needed to support the goals and objectives of the Division of Examinee Support Services.  Assisted Disability Services staff with review of examinee requests for test accommodations and documentation of disability.  Prepared custom written correspondence to examinees communicating the status and outcome of their requests for accommodation.

Catherine Farmer, PsyD
Page 2 of 3

1/95 - 5/01     *Assistant Manager, Test Administration*
Managed daily operation of the test administration unit including supervision of four exempt staff members.  Prepared and monitored annual budget.  Communicated policies and procedures regarding delivery of the NBME Certification Examination and the USMLE to examinees, medical school officials, hospital staff, medical licensing authorities and the public.  Supervised the investigation and resolution of problems and irregularities regarding computer based test delivery of USMLE.  Communicated the outcome/resolution of investigations to examinees.

1/93 - 12/94    *Test Center Coordinator*
Assessed compliance with NBME/USMLE test administration procedures at over 200 national test centers.  Conducted test center site visits; evaluated test center facilities and staff.  Planned, developed and conducted on-site proctor training.  Established new test centers, negotiated and monitored vendor service agreements.

*PROJECT MANAGEMENT*

8/88 - 1/93     *Project Coordinator*
Coordinated a collaborative research project between the NBME and the National Council of State Boards of Nursing, Inc. (NCSBN) to develop computer simulations for testing competence in nursing practice.

8/86 - 1/93     *Computer Based eXamination (CBX) Analyst*
Assisted with development of NBME computer-based simulations for testing competence in medical practice.

*TEACHING*

9/05 - 8/06     *Postdoctoral Fellowship: Primary Care Family Psychology*
University of Rochester, School of Medicine and Dentistry, Rochester, New York
Department of Medicine, Highland Hospital

*CLINICAL PSYCHOLOGY TRAINING*

                *Postdoctoral Fellowship: Primary Care Family Psychology*
9/05 - 8/06     University of Rochester, School of Medicine and Dentistry, Rochester, New York
                Department of Psychiatry, Strong Memorial Hospital

                *Predoctoral Internship*
7/03 - 8/04     The Renfrew Center, Philadelphia, Pennsylvania

                *Clinical Practica*
9/01- 6/03      Bryn Mawr Rehab Hospital, Malvern, Pennsylvania
                    Psychology Department
                    Pain Management Program

5/01 - 8/01     Children's Crisis Treatment Center, Philadelphia, Pennsylvania
                    Psychological Assessment

Catherine Farmer, PsyD
Page 3 of 3

## *CLINICAL NURSING EXPERIENCE*

| | |
|---|---|
| 1991 - 95 | Bayada Nurses, Media, Pennsylvania |
| 2001 - 02 | *Licensed Practical Nurse (LPN) (temporary part-time):* Home Care Nursing |

6/88 - 10/91   Western Medical Services, Media, Pennsylvania
*LPN (temporary part-time):* Home Care Nursing

1977 - 86   Mercy Catholic Medical Center, Darby, Pennsylvania (Mercy Fitzgerald Hospital)
*LPN:* Cardiac Step-Down/Telemetry Unit, Surgical Intensive Care/Coronary Care Unit, Operating Room, Medical Intensive Care Unit, General Medical Unit

1975 - 77   St. Francis Country House (Skilled Nursing Facility), Darby, Pennsylvania
*LPN:* Charge nurse

## **PROFESSIONAL MEMBERSHIPS**

American Psychological Association (APA)

# EXHIBIT B

# FILED UNDER SEAL