IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD KATZ | : | |
| Plaintiff | : | CIVIL ACTION |
| | : | NO. 3:15-cv-1187 |
| v. | : | |
| | : | |
| NATIONAL BOARD OF MEDICAL | : | (MARIANI, J.) |
| EXAMINERS, et al., | : | (SAPORITO, M.J.) |
| Defendants | : | |

**THE NATIONAL BOARD OF MEDICAL EXAMINERS AND THE
FEDERATION OF STATE MEDICAL BOARDS' AMENDED STATEMENT
OF UNDISPUTED FACTS IN SUPPORT OF SUMMARY JUDGMENT**

**I.     Undisputed Facts Concerning the USMLE, Plaintiff's USMLE Testing and His 2005-2006 Request for Accommodations.**

1.     The National Board of Medical Examiners ("NBME"), together with the Federation of State Medical Boards ("FSMB"), develops and administers the United States Medical Licensing Examination ("USMLE"), a multi-step standardized examination (Step 1, Step 2 Clinical Knowledge (CK), Step 2 Clinical Skills (CS) and Step 3) used to evaluate applicants' minimum competence for purposes of medical licensure in the United States and its territories.  Exhibit 22, Affidavit of Gerard F. Dillon, Ph.D.

2.     The USMLE is designed to assess a physician's ability to apply knowledge, concepts, and principles, and to demonstrate fundamental patient-centered skills, that constitute the basis of safe and effective patient care.  Id.

3.     The examination material for all three steps of the USMLE is prepared by examination committees broadly representing the medical profession.  The committees are comprised of recognized experts in their fields, including both academic and non-academic practitioners, as well as members of state medical licensing boards, which rely upon successful

completion of the three USMLE Steps as an important element in the process for licensing physicians.  Id.

4. Step 1 of USMLE is a computer-based multiple choice examination that assesses understanding and application of basic science concepts important to the practice of medicine.  Id.

5. Step 2 CK is a computer-based multiple choice examination that assesses the application of medical knowledge, skills, and understanding of clinical science essential for the provision of patient care under supervision, and includes emphasis on health promotion and disease prevention.  Id.

6. Step 2 CS is a clinical skills examination that utilizes trained actors as standardized patients and assesses whether examinees can gather information from patients, perform physical examinations, accurately document his or her findings, and communicate those findings to patients.  Id.

7. Plaintiff, who graduated from medical school in 2004, first sat for USMLE Step 1 in March 2002.  Exhibit 17, USMLE Scoring Record, p. NBME-Katz 0213; Exhibit 26, p. ECFMG 000016; Exhibit 23, R. Katz depo. p. 215.

8. Between 2002 and June 2005, plaintiff took USMLE Step 1 five times, and failed each time.  Exhibit 17; Exhibit 26.

9. In July 2005, plaintiff applied for test accommodations on Step 2 CK and Step 2 CS.  He did not request accommodations on Step 1.  Exhibit 1, NBME/Katz 0166-0169; Exhibit 2, NBME/Katz 0208-0212; Exhibit 23, R. Katz depo. p. 145-146.

10. In his request for accommodations, plaintiff described the nature of his disability as Attention Deficit Hyperactivity Disorder ("ADHD"), Anxiety and Depression. Exhibit 1, NBME/Katz 0167; Exhibit 2, NBME/Katz 0210.

11. The supporting documentation that plaintiff provided to the NBME in connection with his 2005-2006 Request for Test Accommodations is contained in Exhibits 3 and 6. Correspondence from the NBME and memoranda of telephone contacts between the NBME and plaintiff during that time are contained in Exhibits 4, 5 and 7. Exhibit 23, R. Katz depo. p. 165-167.

12. Plaintiff attended the High School for Art and Design in New York City, followed by Parson's School of Design, where he received a Bachelor of Fine Arts degree. Exhibit 3, personal statement submitted to NBME, p. NBME/Katz 0205-0207.

13. Plaintiff stopped taking math and science courses after his sophomore year of high school, and the only science course he took in college was Wildlife of North America. Exhibit 23, R. Katz depo. p. 25, 41.

14. Plaintiff submitted no documentation to the NBME in connection with his 2005 request for accommodations showing that he ever received accommodations for any disability at any time through his graduation from college. Exhibits 3, 6.

15. During college, plaintiff worked at a hospital and decided that he wanted to be a doctor. After he completed his BFA, he started taking science and other background courses to prepare to apply for medical school, and for the first time he received academic accommodations while studying at the State University of New York, College at Old Westbury. Exhibit 3, personal statement, NBME/Katz 0206.

16. On the Request for Test Accommodation forms that plaintiff submitted to the NBME, he checked "yes" regarding accommodations in college, but he acknowledged at his deposition that he was referring to post-baccalaureate coursework at the College at Old Westbury. Exhibits 1, 2; Exhibit 23, R. Katz depo. p. 143.

17. Plaintiff submitted a memorandum from William Lupardo at the College at Old Westbury, dated June 24, 2005, indicating that plaintiff received accommodations from Fall 1994 through Spring 1997 based upon "documentation" of an anxiety disorder and Attention Deficit Disorder, but the memorandum from Old Westbury did not include or describe such documentation, nor did it describe the standards for granting accommodations, or what the accommodations were. Exhibit 3, p. NBME/Katz 0204.

18. In his personal statement submitted to the NBME, plaintiff said that Old Westbury granted accommodations because his family physician "felt" that his problem "was secondary to test anxiety and possibly an attention-deficit disorder ..." Exhibit 3, p. NBME/Katz 0206.

19. Plaintiff did not request or receive accommodations on the Medical College Admission Test ("MCAT"). Exhibit 23, R. Katz depo. p. 119-120; Exhibits 1 and 2.

20. Other documentation that plaintiff submitted to the NBME did not reveal any psychological testing until 2003 and there is no diagnosis of ADD or ADHD that resulted from that testing. Exhibit 3, p. NBME/Katz 0183-0189.

21. Plaintiff first attended Ross University School of Medicine in Dominica, West Indies, but he got sick and depressed, failed the semester, and withdrew after one semester in 2000. He re-started medical school at St. Matthew's University School of Medicine in Belize later that year. He later transferred to St. Christopher's, which is based in Senegal, because it

4

offered clinical rotations in the Northeast region of the U.S. He graduated from St. Christopher's in 2004. Exhibit 23, R. Katz depo. at 125-131, 155.

22. Plaintiff's applications to St. Matthew's School of Medicine and St. Christopher's School of Medicine, and the resumes he submitted with those applications, do not mention his failed semester at Ross University School of Medicine. Exhibit 24, Records of St. Matthew's (partial) at p. St. Matt. 002, 0035-37; Exhibit 25, Records of St. Christopher's (partial), p. St Christopher's 001-002.

23. Plaintiff's 2005 request for accommodations to the NBME contained no record of any disability accommodations in medical school. Exhibits 1, 2.

24. In July 2005, following plaintiff's initial submission of a request for accommodations on Step 2 CK and Step 2 CS of the USMLE, the NBME's Office of Disability Services performed a preliminary audit of the request and supporting documentation and advised plaintiff of missing information. Exhibit 5. Plaintiff supplied additional information over a period of months. Exhibit 6; Exhibit 21, Affidavit of Catherine Farmer, Psy.D.

25. When plaintiff had submitted all of the documentation he had available in connection with his 2005-2006 request for accommodations and stated that his file was complete, the NBME submitted his request for accommodations and supporting documentation to an external consultant, Catherine Farmer, Psy.D., who is now the NBME's Director of Disability Services. Exhibit 21, Affidavit of Catherine Farmer, Psy.D.

26. Dr. Farmer reviewed the request and accompanying documentation and concluded that plaintiff's documentation did not support a finding that plaintiff suffered from a significant impairment of a major life activity because of ADHD, depression or anxiety. Id.

27. Dr. Farmer prepared a review dated February 2, 2006, addressed to J. Abram Doane, M.S., the Manager of the NBME's Disability Services office at the time. The review provided the detailed reasons for her conclusions and her recommendation to deny plaintiff's request for accommodations. Exhibit 8, February 2, 2006, report; Exhibit 21, Affidavit of Catherine Farmer, Psy.D.

28. Some of Dr. Farmer's findings based upon the documentation plaintiff supplied included:

    a) Plaintiff's documentation did not demonstrate any clinical impairment in childhood, and did not include any historical evidence of substantial difficulties that would rise to the level of a disability;

    b) The diagnosis of ADHD appeared to be based largely on self-report and symptom endorsement on ADHD rating scales, but the diagnosis was not supported with evidence of longstanding impairment that could be reliably or specifically tied to ADHD;

    c) Testing showed that performance on a range of cognitive and academic achievement tasks was well within average range and did not suggest impairment in reading or learning;

    d) Documentation regarding depression and anxiety was inconsistent at best, and no treating professional had assigned any DSM-IV diagnosis of a mood or anxiety disorder before plaintiff applied for accommodations on the USMLE.

Exhibit 21, Affidavit of Catherine Farmer, Psy.D.

29. On March 13, 2006, Mr. Doane of the NBME sent a letter to plaintiff denying his request for accommodations and explaining the decision in detail. Exhibit 9.

30. Plaintiff neither supplemented his application for accommodations nor submitted any other formal request for accommodations to the NBME's Office of Disability Services after his 2005-2006 request. Exhibit 21, Affidavit of Catherine Farmer, Psy.D.

31. After the NBME denied his request for accommodations in March 2006, plaintiff continued taking USMLE step exams as shown on Exhibit 17 and Exhibit 26.

## II. Undisputed Facts Concerning the USMLE's Adoption of the Six Attempt Limit and Plaintiff's Subsequent Testing.

32. The USMLE Composite Committee establishes policy for the USMLE Program and is composed of representatives of the Federation of State Medical Boards (FSMB), the National Board of Medical Examiners (NBME), the Educational Commission for Foreign Medical Graduates (ECFMG), and the American public. Exhibit 22, Affidavit of Gerard F. Dillon, Ph.D.

33. Before January 1, 2011, the Composite Committee imposed no limit on the number of times an examinee could take any Step of the USMLE. Rather, the USMLE left it to each state medical board to decide whether or not to impose attempt limits on the USMLE, and the majority state medical boards imposed such limits. Id.

34. In August 2011, the USMLE Composite Committee adopted a policy limiting examinees to six attempts to pass any Step or Step Component of the USMLE. Exhibit 11; Exhibit 22, Affidavit of Gerard F. Dillon, Ph.D.

35. The six-attempt limit policy became effective on January 1, 2012, for examinees who had not previously taken any Step of the USMLE. For examinees like plaintiff, who had

7

taken one or more Steps of the USMLE already, the six-attempt limit became effective as of January 1, 2013. Exhibit 11.

36. The six-attempt limit applies to all examinees, without regard to disability status. If an examinee applies for and receives accommodations in connection with his or her first registration for USMLE Step 1, for example, then he or she would be entitled to accommodations on up to six attempts at Step 1. If an examinee does not apply for or is found not to be entitled to accommodations, then each attempt is made without accommodations. Exhibit 22, Affidavit of Gerard F. Dillon, Ph.D.

37. Plaintiff had already failed USMLE Step 1 six times when the USMLE Composite Committee adopted the six-attempt limit, but because of the extra year provided to examinees who had already taken one or more Steps of the USMLE, plaintiff had until December 31, 2012, to register again for Step 1. Exhibits 11, 17.

38. Plaintiff registered and took Step 1 three additional times after the USMLE adopted the six-attempt limit, and he failed each time. Exhibit 17; Exhibit 26; Exhibit 23, R. Katz depo. p. 216-217.

39. Plaintiff received a diagnosis of bipolar disorder for the first time in March 2013. Exhibit 13, p. NBME/Katz 0079.

40. Plaintiff had registered for Step 1 on December 7, 2012, before he received the new diagnosis, with an examination eligibility period from June 1, 2013 to November 30, 2013. Exhibit 17.

41. After he received the new diagnosis but before he took Step 1 again, when he had all of the information that he now claims should be considered, plaintiff could have submitted a new Request for Test Accommodations in conjunction with his then pending USMLE Step 1

registration. Plaintiff did not submit a Request for Test Accommodations at that time, and has not submitted a formal request for accommodations in connection with a registration since 2005-2006. Exhibit 21, Affidavit of Catherine Farmer, Psy.D.

42. Plaintiff took Step 1 on November 12, 2013, and failed. Ex. 13, p. NBME/Katz 0079; Exhibit 26.

43. On December 18, 2013, plaintiff contacted the NBME's Office of Disability Services by telephone and said that in 2005 he had requested and been denied accommodations based on a diagnosis of ADHD, but the diagnosis of ADHD was incorrect and he had recently been diagnosed with bipolar disorder. Plaintiff said that he had exceeded the test limit on Step 1, and asked what the NBME could do retrospectively about the incorrect diagnosis. Exhibit 12, p. NBME/Katz 0127.

44. In the December 18, 2013, telephone conversation, the NBME Disability Services representative explained to plaintiff that the Disability Services office could process a request for accommodations based on a current diagnosis only if plaintiff were currently registered for a Step of the USMLE, and that the Disability Services office had nothing to do with attempt limits. The Disability Services representative suggested that plaintiff speak with his registration entity, the Education Commission for Foreign Medical Graduates ("ECFMG"). Id.

45. On April 1, 2014, plaintiff wrote to the ECFMG, with a copy to the NBME, to "appeal" the six-attempt limit. Plaintiff included selected medical information with his letter, and he followed up by sending additional material to the NBME, including a letter dated April 4, 2014, from Samuel Garloff, D.O., referring to plaintiff's March 2013 hospitalization and diagnosis with bipolar disorder. Dr. Garloff stated that "the previous diagnosis of ADHD was incorrect." Exhibit 13, p. NBME/Katz 0079-0084.

46. On April 8, 2014, the NBME Disability Services office acknowledged to plaintiff that it had received plaintiff's April 1, 2014, letter and related materials, on which it had been copied, and informed plaintiff that it would hold his paperwork in a pending status until he submitted a formal written request for test accommodations.  Exhibit 12, p. NBME/Katz 0128.

47. On April 17, 2014, the USMLE Secretariat wrote to plaintiff and acknowledged that it had received his April 1, 2014, letter to the ECFMG and related materials, and told plaintiff it could not grant his request for an additional attempt on Step 1 beyond the six-attempt limit and explained to plaintiff that the only exception to the six-attempt policy is "to allow examinees who have six or more attempts at a Step or component to have an additional attempt if so requested by a state medical board that is fully informed of the individual's prior examination history."  Exhibit 13, p. NBME/Katz 0088.

48. On April 20, 2014, plaintiff wrote to the NBME Disability Services office and explained that he could not submit a formal request for accommodations on Step 1 because of the six-attempt limit.  Exhibit 14.

49. Plaintiff requested that the Pennsylvania Medical Board intercede on his behalf to request an exception to the six-attempt limit, but on May 19, 2015, the Pennsylvania Medical Board denied his request.  Exhibit 15, 16; Exhibit 20, at p. NBME/Katz 0277.

50. Plaintiff initiated this lawsuit on June 17, 2015.

          **RESPECTFULLY SUBMITTED,**

          /s/ Michael E. Sacks
          Neil J. Hamburg
          Michael E. Sacks
          HAMBURG & GOLDEN, P.C.
          Pa. I.D. Nos. 32175, 39774
          1601 Market Street, Suite 3310
          Philadelphia, PA  19103-1443

(215) 255-8590
hamburgnj@hamburg-golden.com
sacksme@hamburg-golden.com

Attorneys for Defendants,
The National Board of Medical Examiners and the Federation of State Medical Boards of the United States