# EXHIBIT 27

# UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF PENNSYLVANIA

**Richard Katz**

Plaintiff

**FILED**
**WILKES BARRE**

MAY 0 3 2016

Per ₘ₇S

Case No.: **3:15-cv-01187**

**SECOND AMENDED COMPLAINT:**
DISCRIMINATION PURSUANT TO TITLE III
OF ADA, BREACH OF CONTRACT,
MISLEADING CONDUCT, NEGLIGENT OR
INTENTIONAL INFLICTION OF EMOTIONAL
DISTRESS, IMPAIRMENT OF ECONOMIC
OPPORTUNITY, FRAUDULENT
MISREPRESENTATION, PRELIMINARY
INJUNCTION, DISCRIMINATION PURSUANT
TO § 504 OF THE REHABILITATION ACT OF
1973

v.

**NATIONAL BOARD OF MEDICAL EXAMINERS (NBME)**
3750 Market Street
Philadelphia, PA 19104

and

**FEDERATION OF STATE MEDICAL BOARDS (FSMB)**
400 Fuller Wiser Road, Suite 300
Euless, Texas 76039-3855

Defendants

## PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT

### INTRODUCTION AND GENERAL STATEMENT OF THE CASE

COMES NOW plaintiff Richard Katz, appearing pro se respectfully requests this Honorable Court to grant leave, thereby permitting filing of a Second Amended Complaint, states as follows:

1. Richard Katz resides in East Stroudsburg, Pennsylvania he graduated Medical School in 2004 and holds a Medical Degree.

1

2. This is a disability access and discrimination complaint alleging that there is an administrative barrier and discriminatory policies in place at the National Board of Medical Examiners (hereinafter NBME) and the Federation of State Medical Boards (hereinafter FSMB). NBME and FSMB own and sponsor the United States Medical Licensing Examination® ("USMLE"), a standardized examination that is used in evaluating applicants for medical licensure in the United States and its territories. The USMLE Organization's primary place of business is located in Philadelphia, PA. Richard Katz is an individual with a disability. This barrier denies full and equal access to in violation of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 and § 504 OF THE REHABILITATION ACT OF 1973, [AS AMENDED, 29 U.S.C. § 794]. **Section 504 of the Rehabilitation Act specifically prohibits discrimination against individuals with disabilities in programs receiving federal funds. *NBME and FSMB are both recipients of federal funds.***

3. In 2011 the USMLE Organization announced that they will place an attempt limit to the number of times examinees can take to pass a USMLE Step Exam. *The previous policy allowed examinees to take the exam as many times as they needed until passing.* In creating this so-called "Six Attempt Limit Rule" the NBME/FSMB made NO concession in their policy development for people with documented disabilities. This is an access violation that does NOT comply with accessibility regulations under Title III of the ADA and § 504 of The Rehabilitation Act Of 1973. This is in violation to the specifications promulgated by the Department of Justice (the "DOJ Standards") who have been investigating Katz's claim since November 28, 2014 (Please see EXHIBIT 6 for Senator Toomey's update).

4. NBME and FSMB are subject to the requirements of Section 309 of the ADA of 1990, 42 U.S.C. § 12189, and the implementing regulations, 28 C.F.R. § 36.309. Private entities that administer examinations related to professional licensing must offer examinations in a place and manner accessible to persons with disabilities. Katz sent an appeal to NBME Disability Services on April 1st 2014, requesting that they modify their "Six Attempt Limit Rule " as a reasonable accommodation under the ADA (Doe v. Samuel Merritt University, 921 F. Supp. 2d. 958 (N.D. Cal. 2013) Preliminary Injunction granted allowing student with a disability to take a podiatric licensing examination unlimited times as an accommodation to University's policy providing for a three exam limit.). The defendants denied this request.

5. A second dispute exists in this case, Katz alleges that he was discriminated by NBME Disability Services in 2005 through 2006. Katz requested exam accommodations and extended exam time for his USMLE exams during this period. NBME Disability Services found that the supporting documentation submitted by Katz did not demonstrate that he was currently substantially limited in a major life activity as compared to most people, so as to be disabled within the meaning of the ADA. Katz had submitted sufficient documentation to demonstrate that he is a person with a disability within the meaning of the ADA, and that he was entitled to reasonable testing accommodations to take his USMLE Exams in 2005-2006.

6. Katz filed his original Complaint in this Court on June 18, 2015. He amended his complaint on August 12, 2015.

7. NBME/FSMB Answer was submitted to this Court on August 28, 2015.

8. Katz *traversed* NBME/FSMB's Answer on September 8, 2015.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction under 28 U.S.C. sections 1331 and 1343.

10. This action is commenced pursuant to 2201 and 2202.

11. Plaintiff seeks declaratory relief pursuant to 28 U.S.C. Section 2201 and 2202. Plaintiff claims for injunctive relief are authorized by 28 U.S.C. Section 2283 and Rule 65 of the Federal Rules of Civil Procedure.

## PARTIES

12. Plaintiff Richard Katz is a citizen of the State of Pennsylvania, United States of America.

13. NBME is a private, non-profit organization. Its principal place of business is located in Philadelphia, Pennsylvania. It is registered as a Professional Society and/or Association by Guidestar database of Non-profit organizations. http://www.guidestar.org

14. NBME and the FSMB together own and sponsor the United States Medical Licensing Examination ("USMLE"), an examination that is a prerequisite for medical licensing in the United States and its territories. NBME administers the USMLE. The USMLE's primary location is in Philadelphia, Pennsylvania.

15. FSMB is a private non-profit organization that is incorporated under the laws of Nebraska but located in Euless, Texas. FSMB is registered as a Research Institute and/or Public Policy Analysis Organization by Guidestar database of Non-profit organizations. http://www.guidestar.org

## FIRST, SECOND AND THIRD
## CAUSES OF ACTION

### [DISCRIMINATION PURSUANT TO TITLE III OF ADA]
### [BREACH OF CONTRACT]
### [MISLEADING CONDUCT]

## [DISCRIMINATION PURSUANT TO TITLE III OF ADA]

16. Pursuant to 28 C.F.R. § 36.309, private entities that administer licensing examinations are required
to provide reasonable modifications to the examination and appropriate auxiliary aids and services
(i.e., testing accommodations) for persons with disabilities. The purpose of testing accommodations
is to ensure, in a reasonable manner, that the "examination results accurately reflect the individual's
aptitude or achievement level or whatever other factor the examination purports to measure, rather
than reflecting the individual's impaired sensory, manual or speaking skills (except where those
skills are the factors that the examination purports to measure)." 28 C.F.R. § 36.309(b)(1)(i).
"Required modifications to an examination may include changes in the length of time permitted for
completion of the examination." 28 C.F.R. § 36.309(b)(2).   Private entities who administer
licensing examinations also now have a duty to provide exam accommodations and to modify
existing rules on the number of times a disabled examinee may take a qualifying professional
examination (Doe v. Samuel Merritt University, 921 F. Supp. 2d. 958 (N.D. Cal. 2013)).

---

Judicial and Regulatory Year in Review 3 Page 6   https://www.mesacc.edu/.../disability.../Judicial%20Year%20in%20Review.
Docx  Summer Reading List. Post-Secondary Disability. Judicial and Regulatory Year in Review.

17. Katz submitted sufficient documentation to demonstrate that he is a person with a disability within
the meaning of the ADA, and that he was entitled to reasonable testing accommodations to take his
USMLE exams in 2005-2006.  Catherine Farmer., Psy.D. a Reviewer for the NBME in 2006 (now the
NBME Compliance Officer for Disability Services) was the sole evaluator of Katz's file.  **Ms. Farmer
spent a total of _only four hours_ reviewing a compilation of Katz's psychoeducational reports,
evaluations, and assessments from two psychiatrists and two clinical psychologists that personally
examined him on numerous occasions (see defendants' Exhibit 4 pg. 0070)**.  The Compliance
Officer at the time J. Abram Doane (no longer employed by NBME) stated in the NBME denial letter
to Katz dated March 13, 2006:

**"We consulted EXPER_S in the field of Learning Disability and Mental Disorders to assist us in
reviewing the documentation."**

**In actuality, there were no "EXPER_S" just one individual Psy.D. by the name Catherine
Farmer.**

(Please see defendant's Exhibit 4 page 0077 and plaintiff's Complaint Document 1-2 Filed 06/17/15 Page 17 of 29)

18. Ms. Farmer recommended that Katz's application be denied for accommodations in 2006 despite
ever meeting or evaluating him.  She states in her letter addressed to Mr. Doane dated February 2,
2006:

**"As you know, I have not met or examined Mr. Katz.  My recommendation is based upon my
review of the request and supporting documentation submitted by and behalf of Mr. Katz."**

(Please see defendant's Exhibit 4 page 0071)

19. The Defendant's determination and denial of accommodations was discriminatory then and in light of the 2008 ADAAA the defendants cannot continue their denial. Pursuant to the ADAAA, Katz would be entitled to the accommodations of extended exam time on the USMLE.

20. Pursuant to the ADAAA and its regulatory guidance, NBME/FSMB are mandated to give considerable deference to Katz's evaluators and their recommendations to provide accommodations. The guidelines to the regulations promulgated by the ADA, provide that testing entities should accept without further inquiry, "documentation provided by a qualified professional who has made an individualized assessment of an applicant, that supports the need for modifications, accommodations or aid requested." (See 28 C.F.R. § 36, App A, at 795). **The guidance further explains that "reports from experts who have personal familiarity with candidates should take precedence over those from, for example reviewers from testing agencies, who have never personally met the candidate or conducted the requisite assessments for diagnosis and treatment."**

21. Prior to the ADAAA the NBME and other similar testing entities had a penchant for denying accommodations for students in higher education on the basis that they were not diagnosed at an earlier age or that they performed well academically. In passing the ADAAA, Congress targeted these testing entities noting in the Congressional Record: 2 Cong Rec 8296 (Sept 17, 2008).

22. Katz submitted an Appeal and additional documentation to NBME Disability Services on April 1st 2014 in support of his request for accommodations on the USMLE Step 1, Step 2 CS, CK and Step 3 documenting accommodations he received in undergraduate school, graduate school and medical school. Katz also submitted early childhood medical documentation from The New York Hospital dated 04/22/1981 validating that he had suffered from neurological problems (seizure disorder) as a child (See Document 1-2 Filed 06/17/15 Page 19 of 29).

23. In Rush v. NBME, a second-year medical student with reading and visual processing skills impairments requested and was denied extended time on USMLE Step 1. The court found that the student was substantially limited in his ability to read and process information compared to most people. The court also ruled that the student would suffer an irreparable injury if the requested injunction for additional time was denied. Plaintiff was a medical student with a learning disability who requested and was denied double time in which to take the U.S. Medical Licensing Exam. The court found that Rush was an individual with a disability because he was substantially limited in the major life activities of reading and learning compared to most people. **THE COURT, CRITICAL OF THE BOARD'S (NBME) EXPERTS, granted an injunction requiring the NBME to provide Rush with the accommodations of double time for the exam, stating that without such accommodations the exam would test his disability and not his mastery of the subject matter.**

https://www.ahead.org/node/238

## [BREACH OF CONTRACT]

24. Katz alleges that NBME/FSMB breached "its duty of good faith and fair dealing by wrongfully failing to assist him with his disability in 2005-2006 and again in 2014". He also alleges that NBME/FSMB violated its contract with him by failing to provide testing accommodations in 2006 and in 2014. Katz is disabled as defined by the ADA and Rehabilitation Act. He is entitled to accommodations even though the contract covenants of good faith and fair dealing, as well as third party beneficiaries, are defined *1282 by state, and not federal, law. *See Corneveaux v. CUNA Mut. Ins. Group*, 76 F.3d 1498, 1506 (10th Cir.1996).

"[A] federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S.343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988).

## [MISLEADING CONDUCT]

25. Obstructing justice under federal and state law is generally defined as interfering with the workings of the judicial system, law enforcement, or *regulatory agencies*.

In Shannon the Court of Appeals held:

**"neither must the target be scheduled to testify at the time of the offense nor must he or she actually give testimony at a later time. It is only necessary that there is a *possibility* that the target of the defendant's activities be called on to testify in an official proceeding."**

(Citing the Congressional Record – Senate S272 Jan. 15, 1999)

26. Katz alleges that material fact was concealed by defendants, as there were NO EXPER**TS** in the field of Learning Disability and Mental Disorders that assisted defendants in reviewing his documentation in 2005-2006. **The determination that was made by defendants in 2006 should therefore be rendered null and void.** Katz sent a notarized request to NBME Disability Services on January 27, 2014 requesting his documentation from 2005-2006. On February 4th, 2014 Catherine Farmer replied by mail stating:

*"The NBME does not copy or return the comments of an examinee's disability file or send copies to examinees or third parties."*

(See Document 1-5 Filed 06/17/15 Page 1-2)

6

27. The constitutionality of ownership and control of patient records; reports or copies of records of disclosure of information may warrant further scrutiny by this Court. **This information was not made available to Katz until receiving Exhibits 4 and 5 from defendant's dated August 28, 2015.**

28. Katz contacted NBME Disability services on April 20th 2014 by email to appeal the April 17, 2014 denial of his first appeal and to address a Catch-22 situation presented by the defendants. The defendants were requesting a *'formal request'* for exam accommodations on April 8, 2014. It was explained to defendants that a formal request would not be possible to submit as long as he was locked out from registering for USMLE Step I because of the 'Six Attempt limit Rule' imposed by the defendants. The notion Katz was addressing was you cannot submit a formal request for an exam that you obviously barred from registering for. Hence a Catch-22 situation. Katz regarded this as a form of psychological manipulation and bureaucratic entanglement. The defendants never responded to Katz's second appeal. (See Document 1-4 Filed 06/17/15 Pgs. 2-4).

29. There was only one individual Psy.D.\* by the name of Catherine Farmer who reviewed Katz's file and it only took her *four hours of review to create years of difficulties and hardships for him.* Ms. Farmer likely had some internal affiliation to NBME/FSMB in 2006 as she is now the Compliance Officer of NBME Disability Services. Ms. Farmer's denial of accommodations in 2006 went against the recommendation of Katz's caregivers that included two clinical psychologists and two psychiatrists (one of whom is an MD/PhD). NBME/FSMB interfered with accessibility regulations under the ADA.

---

Note\*

In the United States, both the Psy.D. and Ph.D. are the only two doctorate degrees that are eligible to sit for the Examination for Professional Practice of Psychology (EPPP). This is the national licensing exam and successful completion is required in order to obtain a license to practice psychology.

Schaffer and colleagues (2012) found that students trained in Ph.D. programs passed the EPPP at higher rates (82%) than students trained in Psy.D. programs (69%).

Schaffer, Jack B.; Rodolfa, Emil; Owen, Jesse; Lipkins, Robert; Webb, Carol; Horn, Jacqueline (February 2012). "The Examination for Professional Practice in Psychology: New data–practical implications". Training and Education in Professional Psychology 6 (1): 1–7. Doi:10.1037/a0026823.

---

Citing
**Statutory Law**

*18 U.S.C. § 1515(a)(3) (2010) (Title 18—Chapter 73: Obstruction of Justice)*
**(a) As used in sections 1512 and 1513 of this title [18 U.S.C. §§ 1512 and 1513] and in this section—**

(3) the term "misleading conduct" means –
(A) knowingly making false statement;
(B) intentionally omitting information from a statement and thereby causing a portion of such statement to be misleading, or intentionally concealing a material fact, and thereby creating a false, forged, altered, or otherwise

7

lacking in authenticity;
(C) with intent to mislead, knowingly submitting or inviting reliance on a writing or recording that is false, forged, altered, or otherwise lacking in authenticity;
(D) with intent to mislead, knowingly submitting or inviting reliance on sample, specimen, map, photograph, boundary mark, or other object that is misleading in a material respect; or
(E) knowingly using a trick, scheme, or device with intent to mislead;

30. Mr. Doane's **LinkedIn** Profile (Please see Exhibit 7), states he was:

"Manager of Disability/ADA Compliance for NBME from July 2003 through July 2006."

He then became a *Consultant* for NBME Office of General Counsel on July 2006 until ultimately leaving the NBME organization in July 2008.

31. Mr. Doane states in the Education section of his profile that he has a:

- "**Ph.D. (ABD)** in *Communication Sciences and Disorders/Learning Disabilities* from Northwestern University from 1996-2012."

- **ABD stands for "All But Dissertation."** "All But Dissertation" (ABD) is a mostly unofficial term identifying a stage in the process of obtaining a research doctorate in the United States. At this stage, the student has completed the preparatory coursework, qualifying examinations, comprehensive examinations, and *may have* defended his or her dissertation proposal.

- **To complete the degree, the student must carry out the proposed research and write the dissertation that defines a Ph.D. or equivalent research doctorate. "All but dissertation" attrition ranges from 43% to 51% depending on the field.**

32. Mr. Doane's states in his LinkedIn profile that his role at NBME was:

- "Reviewed documentation and reports in support of student requests for services, and was; **Decision-maker for accommodations for NBME testing programs and state medical licensing boards."**

- Richard Katz applied to NBME Disability Services for exam accommodations in 2005 until receiving a denial by Mr. Doane on March 13, 2006.

33. Mr. Doane states in his profile that he was: "Manager of Disability Services/ADA Compliance Officer at (NBME) from July 2003 through July 2006." This was within the time period that Katz applied to NBME Disability Services for exam accommodations (2005-2006). Mr. Doane was not a Ph.D. during this period.

8

**34. Richard Katz respectfully brings to the Courts attention, that Mr. Doane:**

- **did not have a Ph.D. at the time Katz applied for exam accommodations in 2005-2006;**

- **was *not qualified* to make any determination on Katz's disability application in 2005-2006;**

- **was not qualified to disagree with Katz's caregivers (Ph.D.'s, M.D.'s etc.) in 2005-2006.**

35. It must be questioned whether Mr. Doane transferred from his role as Compliance Officer of Disability Services because the liability threshold was high. Did NBME realize that Mr. Doane did not have the credentials to hold such a position and was in fact a liability because of his Ph.D./ABD status? It would seem logical that the position would call for a full-fledged Ph.D. candidate.

36. Mr. Doane was the only transparent NBME Representative signing off on disability determinations. By remaining with the NBME organization as a Consultant in 2006 he would lose his transparency and be out of public view (Please See EXHIBIT 8).

---

Schuman, Rebecca (1 August 2014). "ABD Company - What's worse than getting a Ph.D. in today's job market? Not finishing one.". Slate. Retrieved 17 October 2014.

Sowell, Robert (31 March 2008). "Ph. D. Completion and Attrition: Analysis of Baseline Data" (PDF). Council of Graduate Schools. Retrieved 17 October 2014.

---

## The Pennsylvania's Unfair Trade Practices and Consumer Protection Law (UTPCPL) 73 P. S. §§ 201-1 –201-9.2

### The "Catchall" Provision

37. The Act's twenty-first unfair trade practice definition, its "catchall," is "any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding."

38. Before the 1996 amendments, the catchall provision addressed only "fraudulent conduct," requiring a plaintiff to prove the elements of common law fraud, including proof that a

misrepresentation was made intentionally or with reckless disregard of its truth. Rodriguez v.
Mellon Bank, N.A., 218 B.R. 764 (Bankr. E.D. Pa. 1998).

**39. However the 1996 amendments expanded the catchall provision to include a wider variety
of unsavory conduct withir the reach of the UTPCPL**

40. In Fazio, the Superior Court reviews a series of cases, mostly in the federal courts, that recently
held that proof of common law fraud was NOT required and concludes:

**"Notwithstanding prior case law on the catchall provision, our review of decisions from the
Commonwealth Court, the federal courts interpreting Pennsylvania law, as well as the statutory
language of the post-amendment catchall provision leads us to conclude the court's jury
instruction regarding 'misleading' conduct accurately set forth the standard of liability under the
amended catchall provision."**

41. The courts that have actually examined the issue closely have concluded, rightfully, that the
legislative change is intended to broaden that catchall so that common law fraud is not required.
Grimm v. Washington Mutual Bank, 2008 U.S. Dist. LEXIS 55628, 2008 WL 2858377 (W.D.
Pa. July 22, 2008), Hansford v. Bank of America, 2008 WL 4078460, 2008 U.S. Dist. LEXIS
65502 (E.D. Pa. Aug. 22, 2008); Wilson v. Parisi, 549 F.Supp.2d 637 (M.D. Pa. 2008).

http://www.pittsburghlegalbacktalk.com/archives/7336#sthash.GlBfYf3T.dpuf

## FOURTH CAUSE OF ACTION

### [NEGLIGENT OR INTENTIONAL INFLICTION

### OF EMOTIONAL DISTRESS]

42. Richard Katz has been subjected to intense mental anguish as a result of NBME/FSMB's failure to provide reasonable accommodations in 2005-2006 and again in 2014. This has resulted in repeated studying, multiple attempts at the USMLE exams and subsequent failures all subverting his self-esteem and sense of self-worth not to mention crippling him financially. This took a toll on his mental resources and ultimately his overall health. The 'Make or Break' nature of the 'Six Attempt Limit Rule' was *"the straw that broke the camel's back."* Katz ran out of mental resources and had a nervous breakdown in March of 2013. This resulted in a week long in-patient hospitalization at Pocono Medical Center Behavioral Health Unit.

43. Katz has endured persistent and recurring severe abdominal pain due to emotional distress ultimately a repercussion of the defendant's behavior. He was admitted to the Pocono Medical Center Emergency Room on August 20th 2015. The nature of this ailment is currently being evaluated by a Gastroenterologist requiring further testing.

44. Katz has experienced frequent exacerbations of his asthma during the past two years. The experience of an acute negative event increases the risk of a subsequent asthma attack by nearly 2-fold. The long-term stress has also induced frequent headaches, high blood sugar approaching a pre-diabetic state, skin conditions for which he sees a Dermatologist monthly since 2013, depression, anxiety and sleep disturbance (Please see EXHIBIT 9 Under Seal).

## FIFTH CAUSE OF ACTION

### [IMPAIRMENT OF ECONOMIC OPPORTUNITY]

45. A defendant is liable for damages if it can be proven that their negligence was both the cause-in-fact and the proximate cause of the consequent harm. In most negligence cases the "but for" test provides a bright line rule for determining whether the defendant's actions were the cause-in-fact of the plaintiff's loss. The plaintiff must successfully argue that but for the act of negligence he would not have suffered the subsequent economic loss.

http://academic.udayton.edu/Lawecon/Readings/Paper%20-%20Loss%20of%20chance%20for%20LE%20Class.pdf

46. Richard Katz's medical career has been in a state of perpetual limbo since graduating Medical School in 2004. If NBME/FSMB granted Katz's accommodation request in 2006 only two years would have been lost instead of a decade. By not granting the accommodation Katz sorely needed for success he was subjected to a decade of studying and struggling to apply methods in order to compensate for his disability. This proved to be futile as his resourcefulness could do nothing to

11

compensate for the clock.  NBME/FSMB refused to grant Katz additional time on his USMLE exams in 2006 and again in 2014.

47. Frederick Romberg a Yale Medical Student with dyslexia (now an Anesthesiology Resident at the University of Utah) only waited a year for the DOJ to settle with NBME for his disability DJ# 20216-181.  On February 23, 2011, NBME entered into a settlement agreement with DOJ resolving a complaint by Romberg who was refused the accommodations he requested because of his disability. **The Board agreed to provide reasonable testing accommodations to people with disabilities when taking the U.S. Medical Licensing Examination and agreed to grant the complainant the accommodations he needed -- double the standard testing time and a separate testing area to take the test.**

http://massivearticles.com/news/Frederick-Romberg.html

48. **"In the past, demands for unnecessary or redundant documentation, burdensome and expensive repeated professional evaluations, or irrelevant evaluative testing unrelated to the ability to demonstrate one's knowledge or skills on an examination prevented individuals with appropriately documented disabilities from pursuing their chosen professions."** said Thomas E. Perez, assistant attorney general for DOJ's Civil Rights Division. "By entering into this agreement, NBME is doing its part to ensure that people with a reading disability like Mr. Romberg will have the opportunity to take the USMLE with the reasonable testing accommodations they need to demonstrate their knowledge and ability

http://healthleadersmedia.com/page-1/PHY-262976/DOJ-NBME-Reach-Settlement-in-ADA-Complaint

49. Under the agreement, the NBME was to:

**Only request documentation about (a) the existence of a physical or mental impairment; (b) whether the applicant's impairment substantially limits one or more major life activities within the meaning of the ADA; and (c) whether and how the impairment limits the applicant's ability to take the USMLE under standard conditions;**

http://massivearticles.com/news/Frederick-Romberg.html

50.  **"Too many people like Frederick have seen their hard work disregarded and their career paths disrupted,"** according to the Director of the Yale Center for Dyslexia & Creativity Sally Shaywitz. Mrs. Shaywitz wes influential in helping Romberg receive accommodations he needed.  She stated:

**"What testing agencies have tended to do is ask for a whole panoply of information and testing that wasn't relevant for determining who had a disability. At the very least, the settlement acknowledges that it's important to give careful consideration to the medical history of the specific individual who's being evaluated."**

http://massivearticles.com/news/Frederick-Romberg.html

51. This agreement was signed February of 2011 and was over in February of 2013. Katz sent an appeal to the USMLE Organization in April of 2014 and was *denied* accommodations by the USMLE Secretariat's Office (see Document 1-2 Filed 06/17/15 Page 1 of 29 and Document 1-4 Filed 06/17/15 Page 1 of 5).

52. Katz exhausted all Administrative remedies in resolving this matter with NBME/FSMB prior to filing this lawsuit. As stated in Amy Bueno's (Office of the USMLE Secretariat) letter dated April 17, 2014:

"According to the *USMLE Bulletin of Information,* the only exception to this policy identified by the USMLE Composite Committee (the governing body of the USMLE program) involves state medical boards. The policy includes a provision to allow examinees who have six or more attempts at a Step or component to have an additional attempt if so requested by a state medical board that is fully informed of the individual's prior examination history."

Document 1-4 Filed 06/17/15 Page 1 of 5

53. With the help of Representative David Parker's Office of District 115 Katz inquired about the above provision on March of 2015 and the matter was placed on the May 2015 Agenda of the Pennsylvania State Board of Medicine. The conclusion is stated in the Counsel for the State of PA Board of Medicine's letter dated June 4, 2015:

"The Board determined that the request to waive the six-attempt limit is premature. If you are successful in your appeal, the Board anticipates that the NBME will grant reasonable accommodations and authorize your client (Katz) to re-test. If for some reason the NBME will provide accommodations but will not allow re-testing without authorization from the Board to waive the six-attempt limit, please correspond with us again and the matter will be presented to the Board for action."

Document 1-7 Filed 06/17/15 Page 4 of 5

## SIXTH CAUSE OF ACTION

### [FRAUDULENT MISREPRESENTATION]

54. A plaintiff can recover against a defendant on the grounds of fraudulent misrepresentation if (1) a representation was made; (2) that was false; (3) that when made, the representation was known to be false or made recklessly without knowledge of its truth; (4) that it was made with the intention that the plaintiff rely on it; (5) that the plaintiff did rely on it; and (6) that the plaintiff suffered damages as a result.

**1. The defendant must have made a representation as to a past or existing material fact.**
*Affirmative.* Mr. Doane in his March 13, 2006 letter made a *false representation* stating that Katz's documentation was given to "experts in the field of Learning Disability and Mental Disorders to assist NBME Disability Services in reviewing the documentation"

13

**2. The representation must have been false.** *Affirmative.* It was based on review of the defendant's exhibit 4.

**3. The defendant must have known that the representation was false when made or must have made the representation recklessly without knowing whether it was true or false.** *Affirmative.* Mr. Doane would have had knowledge as to who the Reviewers were in 2006 because he would of received a statement from each Reviewer evaluating Katz's file.

**4. The defendant must have made the representation with an intent to defraud the plaintiff, that is, he she must have made the representation for the purpose of inducing the plaintiff to rely upon it and to act or to refrain from acting in reliance thereon.** *Affirmative.* Mr. Doane intentionally affected Katz's transaction with NBME by employing a *false statement.*

**5. The plaintiff must have been unaware of the falsity of the representation; must have acted in reliance upon the truth of the representation and must have been justified in relying upon the representation.** *Affirmative.* The defendants required excessive documentation in 2005-2006 that was not financially feasible. Katz felt that he submitted sufficient documentation to justify his disability under the guidelines of the ADA. This was the same complaint in the Romberg case that prompted NBME to enter into agreement with DOJ, 'the requirement of excessive documentation to substantiate disability claims.'

**6. And, finally, as a result of the reliance upon the truth of the representation, the plaintiff must have sustained damage.** *Affirmative.* Katz was obviously harmed by the final transaction as described above in the FOURTH and FIFTH CAUSES OF ACTION.

http://www.west.net/~smith/deceit.ht

## SEVENTH CAUSE OF ACTION

### [PRELIMINARY INJUNCTION]

55. To obtain a preliminary injunction, the moving party must demonstrate:

(1) A substantial likelihood of success on the merits;
(2) A substantial threat of irreparable injury if the injunction is not granted;
(3) The threatened injury to the movant outweighs the damage to the opposing party; and
(4) Granting the injunction would not be adverse to the public interest. Four Seasons Hotels & Resorts v. Consorcio Barr, 320 F.3d 1205, 1210 (11th Cir. 2003).

56. First, Katz has a substantial likelihood of success on the merits.

Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of

disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182(a). To succeed on his ADA claim, Katz would need to prove that:

(1) He is disabled,
(2) NBME/FSMB is a private entity which owns, leases or operates a place of public accommodation;
(3) NBME/FSMB failed to make reasonable modifications in its policies, practices, or procedures to accommodate Katz's disability without fundamentally altering the nature of the public accommodation. See 42 U.S.C. § 12182(a);

57. Under the ADA, the term "disability" means, with respect to an individual, "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; [5](B) a record of such an impairment; or (C) being regarded as having such an impairment" as described in 42 U.S.C. § 12102(3). 42 U.S.C. § 12102(1).

Katz satisfies criteria for A, B, and C as stated above.

58. Katz satisfies:

(1) Criteria one above.  Katz has impairment of a major life activity substantially limiting him, he has difficulty thinking, concentrating, and reading. He had the same difficulties back in 2005-2006 when he applied for exam accommodation to NBME Disability Services. He suffers from bipolar disorder. Bipolar disorder often appears in the late teens or early adult years. At least half of all cases start before age 25. Some people have their first symptoms during childhood, while others may develop symptoms late in life.

---

Kessler RC, Berglund P, Demler O, Jin R, Merikangas KR, Walters EE. Lifetime prevalence and age-of onset distributions of DSM-IV disorders in the National Comorbidity Survey Replication. Arch Gen Psychiatry. 2005 Jun;62(6):593–602

(2) Criteria two as stated above does not appear to be in dispute in this case.

(3) Katz satisfies Criteria three as stated above. He provided sufficient documentation to NBME in 2005-2006 to demonstrate that he is a person with a disability.  A telephone conversation with Nabina Sinha Trial Attorney for the DOJ on July 23rd 2015 at 10:30 AM stated; based on the Department's review of his documentation from 2005-2006 and current, that he "is covered under the ADA." Mr. Doane Compliance Officer for Disability Services in 2005-2006 made a false statement as Katz's documentation in 2005-2006 was never evaluated by EXPERTS in the fields of Learning Disability and Mental Disorders. Also, "The Six Attempt Limit Rule" is a violation to individuals with documented disabilities under the ADA based on the following precedent Doe v. Samuel Merritt University, 921 F. Supp. 2d. 958 (N.D. Cal. 2013).

59. Second, Katz has shown that he faces a substantial threat of irreparable injury because granting such an injunction would allow Katz to take the USMLE while his knowledge of the subject matter remains relatively fresh.  His last attempt on USMLE Step I was November 12, 2013 he failed by six points, the attempt before last was November 2, 2012 he failed by three points (see Document 1-6 filed

15

06/17/15 Pgs. 1-2/7).  The fact that Katz is on the cusp of passing without accommodations speaks volumes of what he is likely to achieve if his disability was accounted for and the playing field levelled.  It is quite feasible that Katz could achieve very high scores on the USMLE exams due to the fact that he has reached near passing scores while carrying the burden of his disability.  *Lastly, if Katz is not granted future attempts at the USMLE exams with accommodations he will be in financial ruin because of the failure to mee₁ the commitment of his medical educational loans.*

60. Third, the threat of harm to Katz outweighs the damage to the opposing party.  Katz's request for extended exam time for the USMLE Exams is a reasonable accommodation under the ADA.  His request to modify the 'Six Attempt Limit Rule' is a reasonable accommodation and does not substantially compromise USMLE standards.

61. Fourth, preliminary injunction would not harm the public interest especially in light of the DOJ's involvement and investigation into this case.

62. Because Richard Katz has carried the burden on all four elements the balance of equities tips in his favor.  He respectfully requests this Honorable Court to grant Motion for Preliminary Injunction adopting his arguments.

## EIGHTH CAUSE OF ACTION

### [DISCRIMINATION PURSUANT TO
### § 5C4 OF THE REHABILITATION ACT OF 1973]

63. Section 504 of the Rehabilitation Act specifically prohibits discrimination against individuals with disabilities in programs receiving federal funds.  Both NBME and FSMB are recipients of Federal Funds.  Section 504 covers individuals who have physical or mental impairments that are substantially limited by one or more major life activities, have a record of such impairments, or are regarded as having such impairments.   Richard Katz satisfies all three criteria due to his disability (bipolar disorder).

64. NBME/FSMB violated Katz's rights under § 504 by refusing to accommodate his disability, and by barring him from registering for USMLE Step I because of their 'Six Attempt Limit Rule.'

§ 504 of the Rehabilitation Act provides:

**"No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ."**
Section 504, 29 U.S.C.§794

65. Katz exhausted all administrative remedies prior to filing this suit, he clearly asked defendants to accommodate his disabilities in his April 1st 2014 Appeal (see Documents 1-2 Pages 1-29). He needed extra time during his medical licensing exams because his disability prevented him from processing all of the exam questions in the time permitted under regular exam conditions. This request was denied on April 17, 2014 by the office of the USMLE Secretariat (Document 1-4 Page 1). Katz responded with a second Appeal of the April 17, 2014 denial on April 20, 2014 to NBME Disability Services regarding the injustice of 'The Six Attempt Limit Rule' for people with disabilities.  Compliance Officer for NBME Disability Services Catherine Farmer never responded to Katz's second Appeal (see Documents 1-4 Pages 2-4).

66. The Rehabilitation Act requires defendants to grant Katz's requests to waive 'The Six Attempt Limit Rule' and to provide double time and a separate testing area for him to take his examinations. It also requires defendants to provide Katz additional time (double time) for his USMLE Step 2 CS exam Patient Encounter and double time for writing his Patient Note.  (See EXHIBIT 10 Proof of Federal Funding)

67. Remedies for violations of § 504 of the Rehabilitation Act include declaratory judgments, injunctions (including preliminary injunctions and temporary restraining orders, where appropriate), costs, and attorney fees at market rates. Money damages may also be available[1] .

---

[1] See, e.g., Ferguson v. City of Phoenix, 157 F.3d 668, 674 (9th Cir. 1998.

### PRAYER FOR RELIEF

WHEREFORE, the plaintiff respectively prays that this Honorable Court enter judgment granting plaintiff:

### ON ALL CAUSES OF ACTION:

68. For general and special damages according to proof;

69. For attorneys' fees and costs incurred;

70. For an adequate and sufficient sum to indemnify Plaintiff from any and all losses or liabilities, attorneys' fees, experts' fees, or any other damages arising from Defendants' actions;

17

71. A declaration that the acts and omissions described herein violated plaintiffs' right under the Constitution and laws of the United States of America.

72. A preliminary and permanent injunction ordering defendants to overturn Six Attempt Limit Rule and allow plaintiff to register for USMLE Step 1, Step 2 (CK and CS) and Step 3 with Exam accommodations (double exam time) on all USMLE exams under the ADA ADAAA and Rehabilitation Act, as well as a separate room in which to complete the exams.

73. Plaintiff requests from this Court that all of his previous attempts on USMLE Step 1, Step 2 CS and CK be wiped clean from the record. These attempts occurred without any form of exam accommodations, during regular exam conditions, and as a result the playing field was not levelled based on plaintiffs' disability pursuant to Title III of the ADA.

74. Compensatory damages against defendants, jointly and severely based on what this Honorable Court finds fair and equitable based on DOJ guidelines.

75. Punitive damages against Defendants severely based on what this Honorable Court finds fair and equitable based on DOJ guidelines.

76. A jury Trial on all issues triable by Jury

77. Plaintiff's Costs for registering for all USMLE Steps without the proper exam accommodations needed for his disability since February 1st 2006 totaling $8,660.00.

78. Any additional relief this court deems, just, proper, and equitable.

Respectfully submitted,

Richard Katz
3364 Parker Lane
East Stroudsburg, PA
18301
pro se

/s/ Richard Katz
Richard Katz

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing Second Amended Complaint has been served upon:

Michael Sacks
Hamburg & Golden, P.C.
1601 Market Street Suite 3310
Philadelphia PA 19103-1443


Date: November 13, 2015


/s/ Richard Katz
Richard Katz

PRESS FIRMLY TO SEAL




U.S. PAID
EAST STROUDSBURG, PA
18301
NOV 13 15
AMOUNT
**$5.75**
R2304N118528-02

1005          18501

Richard Katz
3364 Parker Lane
East Stroudsburg, PA
18301

ECEIVED
CRANTON

NOV 1 7 2015

DEPUTY CLERK

TO:

The Middle District of Pennsylvania
William J. Nealon Federal Bldg. & US
Courthouse

ATT: CLERK OF COURT
US DISTRICT COURT
PO Box 1148

235 N. Washington Avenue
Scranton, PA 18501-1148

# VISIT US AT USPS.COM®
## ORDER FREE SUPPLIES ONLINE



UNITED STATES
POSTAL SERVICE®

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® this

1 ScV 1187

FILED
SCRANTON

NOV **1 7** 2015

PER _____
DEPUTY CLERK

# EXHIBIT 6

PATRICK J. TOOMEY
PENNSYLVANIA

COMMITTEES:
FINANCE
BANKING, HOUSING, AND
URBAN AFFAIRS
BUDGET

# United States Senate
## WASHINGTON, DC 20510

October 26, 2015

Richard Katz
3364 Parker Ln
East Stroudsburg, PA, 18301-8737

Dear Mr. Katz,

Thank you for contacting my office regarding your inquiry with the Department of Justice. I contacted the appropriate officials and received the enclosed response.

According to the response, you have been in contact with officials at the Department of Justice. I suggest that you continue to work directly with them to find a resolution to your inquiry. If you find yourself having issues hearing back from the Department of Justice, please contact my office and we will be happy to assist you.

If you have any questions, please contact my Constituent Advocate Magdalena Jagla. Magdalena can be reached by phone at (610) 434-1444, by email at Magdalena_Jagla@toomey.senate.gov, by fax at (610) 434-1844 or by mailing address at 1150 S. Cedar Crest Blvd., Suite 101, Allentown, PA 18103.

Sincerely,

Pat Toomey
U.S. Senator

**U.S. Department of Justice**                OCT 2 2 2015

Civil Rights Division

*Office of the Assistant Attorney General*                *Washington, D.C. 20530*

                                    OCT 1 4 2015

The Honorable Patrick Toomey
United States Senate
1150 S. Cedar Crest Blvd
Suite 101
Allentown, PA  18103

Dear Senator Toomey:

    This responds to your email to the Office of Legal Affairs dated June 29, 2015, regarding your constituent, Mr. Richard Katz. We apologize for our delay in responding to your email. Mr. Katz is a person with a disability and he alleges that a private testing entity, the National Board of Medical Examiners (NBME), violated the Americans with Disabilities Act (ADA) when it refused to grant him his requested testing accommodations for the United States Medical Licensing Examination (USMLE). You previously contacted the Department of Justice (the Department) regarding this matter and you now request an update.

    The Disability Rights Section of the Civil Rights Division enforces the ADA. Title III of the ADA protects individuals with disabilities from discrimination by private testing entities, such as NBME. Specifically, the ADA implementing regulations require that private testing entities administer examinations to people with disabilities "so as to best ensure that...the examination results accurately reflect the individual's aptitude or achievement level...rather than reflecting the individual's [disability]". 28 C.F.R. § 36.309. More information on the ADA is available on the Department's ADA Home Page at http://www.ada.gov.

    Since this office's last communication with you (attached), Section staff have opened an investigation of Mr. Katz's complaint. Staff have collected additional information from him and are currently monitoring the progress of Mr. Katz's private lawsuit against NBME. As a result, Mr. Katz is in regular contact with Section staff.

The Honorable Patrick Toomey
Page Two

    We hope this information is helpful to you.  Please do not hesitate to contact the
Department if we can be of assistance in this or any other matter.

                              Sincerely,

# EXHIBIT 7

**EXHIBIT 7**

Misleading Conduct
Katz v. NBME/FSMB
Case No. 3:15-cv-01187



# Abram Doane

Coordinator, Office for Academic Success at Salus University

Greater Philadelphia Area | Higher Education

Previous    J.A. Doane Consulting / Student Support Services, National
            Board of Medical Examiners, Temple University
Education   Washington University in St. Louis School of Law

**Send Abram InMail** ▼

**263**
connections

https://www.tnkedin.com/in/jadoane            Contact Info

**Background**

 **Summary**

Check back....I'm updating...

Specialties: Coaching adults with ADD, their partners, and families. Trained in adult ADD, LD and related challenges. Experienced with the effects of ADD in post-secondary education, medical and law schools and certification/licensure, as well as law and medical practice. Experienced teacher and speaker. Trained mediator.

Psychoeducational assessment, disability services consultation, and advocate for individuals with disabilities.

 **Experience**

## Coordinator, Office for Academic Success
Salus University
August 2015 – Present (3 months) | Elkins Park, PA

ADA and Rehab Act compliance, accessibility services; advocacy, universal design promotion

## Coach, Disability Services Consultant, Advocate, Mediator
J.A. Doane Consulting / Student Support Services
August 2007 – August 2015 (8 years 1 month) | United States

Enlightened professional support for young adults and adults with ADD/ADHD, their partners and families. Providing individual and group coaching, conversation facilitation. Psychoeducational assessment, advocacy for individuals with disabilities and conflict mediation. Services offered in-person, via phone, and online.

## Consultant, Office of the General Counsel
National Board of Medical Examiners
July 2006 – July 2008 (2 years 1 month) | Greater Philadelphia Area

Consultant for general counsel regarding ADA compliance and disability-related matters

## Adjunct Faculty, Institute on Disabilities
Temple University
September 2006 – June 2008 (1 year 10 months) | Greater Philadelphia Area



## Manager, Disability Services/ADA Compliance Officer
National Board of Medical Examiners
July 2003 – July 2006 (3 years 1 month) | Greater Philadelphia Area



• Reviewed documentation and reports in support of student requests for services. Decision-maker for accommodations for NBME testing programs and state medical licensing boards. Developed and implemented non-standard computer-based and clinical skills examinations
• Reorganized unit to improve professionalism and efficiency. Designed and implemented information processing confidential system in collaboration with technical staff. Trained staff in use
• Supervised professionals, support staff, and external consultants. Formulated policies and procedures, annual budget and best practices. Managed escalated, highly sensitive, and high profile cases in conjunction with general counsel and contracted law firms. Advised senior management regarding ADA compliance
• Represented NBME at professional conferences. Presented seminars at national, state, and local events

# EXHIBIT 8

Misleading Conduct                Katz v. NBME/FSMB                    Case No. 3:15-cv-01187

## COMPLIANCE OFFICER







Misleading Conduct                    Katz v. NBME/FSMB                    Case No. 3:15-cv-01187

## MISLEADING CONDUCT

## Example:

Any of the above Disability Applicants depicted in the above illustration can be potential
*TARGETS* of the Compliance Officer.

"Neither must the target be scheduled to testify at the time of the offense nor must he or she
actually give testimony at a later time. It is only necessary that there is a possibility that the
target of the defendant's activities be called on to testify in an official proceeding."

-The Court of Appeals.

If a defendant lies to a Target hoping the Target will believe his story, this is misleading conduct.

Any act interfering with administration of justice constitutes obstruction. *No official proceeding
needs to be pending.* This law applies to all businesses.

For instance, let's say that the Compliance Officer in a written denial letter to the Disability
Applicant states that his/her records have been reviewed by "EXPERTS" in the fields of learning
disabilities and mental disorders and do not qualify for exam accommodations because his/her
disability does not substantially limit them in a *major life activity.* If the disability candidates'
file is never reviewed by such experts does this constitute misleading conduct?

The Compliance Officer misleads the Disability Applicant expecting that he/she will believe his
story as true and move on without the much needed accommodation that he/she required for
success. The Compliance Officer knows that the Disability Applicant will likely never get to see
his/her reviews by the "Experts" in the field of Learning Disorders and Mental Disabilities that
were supposedly consulted, as this is not available and never made available to the Applicant.
This is unless his/her case happens to appear in front of a Court of law and these reports are
obtained. In essence the Disability Applicant falls victim to the falsification of a record and as a
result never obtains the justice that he/she required or deserved for success and individual career
goals are never achieved.

Obstruction of Justice is a broad concept that extends to any effort to prevent the execution of
lawful process or the administration of justice in either criminal or *civil matters.*

In the November 2011 United States Government Accountability Office (GAO) Report to
Congressional Requesters entitled: **HIGHER EDUCATION AND DISABILITY** Improved

Misleading Conduct                    Katz v. NBME/FSMB                    Case No. 3:15-cv-01187

**Federal Enforcement Needed to Better Protect Students' Rights to Testing Accommodations** GAO states:

"Since we found testing companies believe their practices are already in compliance with the new regulatory requirements, it is unclear whether these changes will better protect the rights of students with disabilities. **In order to ensure individuals with disabilities have equal opportunity to pursue their education and career goals, it is imperative for Justice (DOJ) to establish a credible enforcement presence to detect, correct, and prevent violations."**

This report goes on to say:

"Given the critical role that standardized tests play in making decisions on higher education admissions, licensure, and job placement, federal laws require that individuals with disabilities are able to access these tests in a manner that allows them to accurately demonstrate their skill level. **Test takers and disability advocates continue to raise questions about whether testing companies are complying with the law in making their determinations."**

---

*References:*

1. http://www.armstrongteasdale.com/ClientAlerts/GoodLivingUnderTheNewObstructionOfJusticeLaw-may04.pdf

2. http://www.nytimes.com/1999/01/16/us/the-trial-of-the-president-applying-witness-tampering-in-civil-cases.html

3. http://www.wholechildeducation.org/blog/self-selecting-real-world-learning-communities

4. http://www.gao.gov/assets/590/587367.pdf

5. 329 U.S.C. § 794.

6. 442 U.S.C. § 12189. Section 309 is found in Title III of the ADA.

# EXHIBIT 10

## PROOF OF
## FEDERAL FUNDING

EXHIBIT PROOF OF FEDERAL FUNDING                    Katz v. NBME/FSMB

Case No. **3:15-cv-01187**


## Proof of Federal Funding NBME:


**www.usaspending.gov/Pages/AdvancedSearch.aspx?k=national%20board%20of%20medic al%20examiners**

Filters: national board of medical examiners; O, G, L, O; FY 2016, FY 2015, FY 2014, FY 2013, FY 2012, FY 2011, FY 2010, FY 2009, FY 2008

| Total Number of Transactions | Total Prime Recipient Transaction Amount | Total Sub-Award Transaction Amount |
|---|---|---|
| 29 | $639,012 | $0 |

| 29 Contracts | O Grants | O Loans | O Other Financial Assistance |
|---|---|---|---|

**SEARCH RESULTS**

1 to 29 of 29 transactions

Download Results

| Recipient ¢ | Award ID ¢ | Award Amount ¢ | Award Date ¢ | Award Type ¢ | Awarding Agency ¢ | Funding Agency ¢ | Role ¢ |
|---|---|---|---|---|---|---|---|
| AXIOM RESOURCES MANAGEMENT INCORPORATED | DTMC7607D00010 | $0 | 09/11/2008 | Contracts | Department of Transportation | Department of Transportation | Prime |
| NATIONAL BOARD OF MEDICAL EXAMINERS INC | HTP4041SJA2521 | $72,978 | 08/02/2013 | Contracts | Department of Defense | Department of Defense | Prime |
| NATIONAL BOARD OF MEDICAL EXAMINERS INC | HTP4041SJA2517 | $70,370 | 12/28/2012 | Contracts | Department of Defense | Department of Defense | Prime |
| NATIONAL BOARD OF MEDICAL EXAMINERS INC | HU00011I0AV510 | $8,370 | 12/23/2008 | Contracts | Department of Defense | Department of Defense | Prime |
| NATIONAL BOARD OF MEDICAL EXAMINERS INC | HU00011I0AV172 | $18,890 | 04/22/2010 | Contracts | Department of Defense | Department of Defense | Prime |
| NATIONAL BOARD OF MEDICAL EXAMINERS INC | HU00011I4AV517 | $79,810 | 07/11/2014 | Contracts | Department of Defense | Department of Defense | Prime |
| NATIONAL BOARD OF MEDICAL EXAMINERS INC | HU00011IAV520 | $7,095 | 11/24/2008 | Contracts | Department of Defense | Department of Defense | Prime |
| NATIONAL BOARD OF MEDICAL EXAMINERS INC | VA74116P0008- | $196,000 | 11/23/2015 | Contracts | Department of Veterans Affairs | Department of Veterans Affairs | Prime |
| NATIONAL BOARD OF MEDICAL EXAMINERS INC | HU00011IAV211 | $0 | 04/25/2011 | Contracts | Department of Defense | Department of Defense | Prime |
| NATIONAL BOARD OF MEDICAL EXAMINERS INC | HU00011IAV521 | $37,554 | 09/03/2011 | Contracts | Department of Defense | Department of Defense | Prime |
| NATIONAL BOARD OF MEDICAL EXAMINERS INC | VA74111P0008 | $0 | 12/01/2014 | Contracts | Department of Veterans Affairs | Department of Veterans Affairs | Prime |
| NATIONAL BOARD OF MEDICAL EXAMINERS INC | HU00011IAV577 | $3,917 | 04/19/2011 | Contracts | Department of Defense | Department of Defense | Prime |
| NATIONAL BOARD OF MEDICAL EXAMINERS INC | HU00011IAV313 | $9,000 | 04/29/2011 | Contracts | Department of Defense | Department of Defense | Prime |
| NATIONAL BOARD OF MEDICAL EXAMINERS INC | HU00011IAV258 | $7,390 | 01/20/2011 | Contracts | Department of Defense | Department of Defense | Prime |
| NATIONAL BOARD OF MEDICAL EXAMINERS INC | HU00011ILAV563 | $7,490 | 12/22/2010 | Contracts | Department of Defense | Department of Defense | Prime |
| NATIONAL BOARD OF MEDICAL EXAMINERS INC | HU00011IAV517 | $3,530 | 04/29/2011 | Contracts | Department of Defense | Department of Defense | Prime |
| NATIONAL BOARD OF MEDICAL EXAMINERS INC | HU00011IAV553 | $7,490 | 04/27/2011 | Contracts | Department of Defense | Department of Defense | Prime |
| NATIONAL BOARD OF MEDICAL EXAMINERS INC | HU00011 IV583 | $7,490 | 04/27/2011 | Contracts | Department of Defense | Department of Defense | Prime |
| NATIONAL BOARD OF MEDICAL EXAMINERS INC | HU0001B9AV925 | $9,200 | 03/03/2008 | Contracts | Department of Defense | Department of Defense | Prime |
| NATIONAL BOARD OF MEDICAL EXAMINERS INC | HU00018SAV110 | $6,330 | 03/00/2008 | Contracts | Department of Defense | Department of Defense | Prime |
| NATIONAL BOARD OF MEDICAL EXAMINERS INC | HU00019AV204 | $6,720 | 11/07/2008 | Contracts | Department of Defense | Department of Defense | Prime |
| NATIONAL BOARD OF MEDICAL EXAMINERS INC | HU00019AV510 | $6,720 | 11/29/2008 | Contracts | Department of Defense | Department of Defense | Prime |
| NATIONAL BOARD OF MEDICAL EXAMINERS INC | HU0001904AV43 | $13,440 | 08/11/2000 | Contracts | Department of Defense | Department of Defense | Prime |
| NATIONAL BOARD OF MEDICAL EXAMINERS INC | HTP404132AV454 | $7,545 | 08/11/2013 | Contracts | Department of Defense | Department of Defense | Prime |
| NATIONAL BOARD OF MEDICAL EXAMINERS INC | HTP4041I2AV457 | $7,700 | 11/21/2011 | Contracts | Department of Defense | Department of Defense | Prime |
| NATIONAL BOARD OF MEDICAL EXAMINERS INC | HTP4041I2AV271 | $10,030 | 04/25/2012 | Contracts | Department of Defense | Department of Defense | Prime |
| NATIONAL BOARD OF MEDICAL EXAMINERS INC | HU00011IAV233 | $4,760 | 03/25/2011 | Contracts | Department of Defense | Department of Defense | Prime |
| NATIONAL BOARD OF MEDICAL EXAMINERS INC | HU00011IAV503 | $16,250 | 12/12/2014 | Contracts | Department of Defense | Department of Defense | Prime |
| NATIONAL BOARD OF MEDICAL EXAMINERS INC | HU00011IAV542 | $21,000 | 12/06/2012 | Contracts | Department of Defense | Department of Defense | Prime |

EXHIBIT PROOF OF FEDERAL FUNDING                          Katz v. NBME/FSMB

Case No. **3:15-cv-01187**

**www.usaspending.gov/transparency/Pages/RecipientProfile.aspx?DUNSNumber=06184032
8&FiscalYear=2015**



USA SPENDING.GOV

RECIPIENT PROFILE: NATIONAL BOARD OF MEDICAL EXAMINERS INC

Address   3750 MARKET ST
          Philadelphia, Pennsylvania 19104
DUNS Number   061840328

Fiscal year 2015  Go

| Total Funds Awarded - FY 2015 | Total Number of Transactions - FY 2015 |
|---|---|
| $24,006 | 3 |

Prime Award Only
Prime Award As A Sub Only

| Total Funds Awarded as Prime - FY 2015 | Total Transactions as Prime - FY 2015 |
|---|---|
| $24,006 | 3 |

| Total Funds Awarded as Sub - FY 2015 | Total Transactions as Sub - FY 2015 |
|---|---|
| $0 | 0 |

EXHIBIT PROOF OF FEDERAL FUNDING                    Katz v. NBME/FSMB

Case No. 3:15-cv-01187



EXHIBIT PROOF OF FEDERAL FUNDING                    Katz v. NBME/FSMB

Case No. 3:15-cv-01187

PRIME AWARD DATA

### PRIME AWARDS BY SPENDING TYPE



■ Contracts

Text View of Prime Awards By Spending Type

### PRIME'S SUB-AWARDEES

No Data Found

### TOP PRODUCTS OR SERVICES

| | | |
|---|---|---|
| 1. Education Services | | $19,250 |
| 2. Personnel Testing | | $4,756 |
| 3. Other Education and Training Services | | $0 |

Text View and More Details on Top Products/Services

### AWARDING AGENCIES



| | | |
|---|---|---|
| 1. Department of Defense | | $24,006 |
| 2. Department of Veterans Affairs | | $0 |

Text View and More Details on Awarding Agencies

### TOP PROGRAMS

No Data Found

### AWARDS BY STATES



PA

| | | |
|---|---|---|
| 1. Pennsylvania | | $19,250 |
| 2. Maryland | | $4,756 |

Text View and More Details on Awards by States

EXHIBIT PROOF OF FEDERAL FUNDING                    Katz v. NBME/FSMB

Case No. **3:15-cv-01187**

## Proof of Federal Funding FSMB:

**www.usaspending.gov/Pages/AdvancedSearch.aspx?k=Federation%20of%20State%20Me
dical%20Boards**



EXHIBIT PROOF OF FEDERAL FUNDING                                 Katz v. NBME/FSMB

Case No. **3:15-cv-01187**

www.usaspending.gov/transparency/Pages/RecipientProfile.aspx?DUNSNumber=051010890&F
iscalYear=2015

PRESS FIRMLY TO SEAL




U.S.
PAID
EAST STROUDSBURG, PA
18301
NOV 13 15
AMOUNT
$5.75
R2304N118526-02

1005        18501

Richard Katz
3364 Parker Lane
East Stroudsburg, PA
18301

ECEIVED
CRANTON

NOV 1 7 2015

DEPUTY CLERK

TO:

The Middle District of Pennsylvania
William J. Nealon Federal Bldg. & US
Courthouse

ATT: CLERK OF COURT
US DISTRICT COURT
PO Box 1148

235 N. Washington Avenue
Scranton, PA 18501-1148

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE



This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® ship