**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

_____
RICHARD KATZ                              :
Plaintiff                                 :
                                          :
                                          :
v.                                        :          **CIVIL ACTION**
                                          :
NATIONAL BOARD OF MEDICAL                 :          NO. 3:15-cv-01187
EXAMINERS                                 :
                                          :
and                                       :
                                          :          **JURY TRIAL DEMANDED**
FEDERATION OF STATE MEDICAL BOARDS        :
Defendants_____:


**Pro se Plaintiff Richard Katz  Response Controverting National Board of**
**Medical Examiners (NBME) and Federation of State Medical Boards (FSMB)**
**Undisputed Material Fact (UMF) and**
**Plaintiffs'  Undisputed Material Fact (UMF)**
**and Suporting Evidence.**

| Moving Party's "Undisputed Material Fact" (UMF) & Supporting Evidence | Opposing Party's Response Controverting Moving Party's UMF. |
|---|---|
| **1.** The National Board of Medical Examiners ("NBME"), together with the Federation of State Medical Boards ("FSMB"), develops and administers the United States Medical Licensing Examination ("USMLE"), a multi-step standardized examination (Step 1, Step 2 Clinical Knowledge (CK), Step 2 Clinical Skills (CS) and Step 3) used to evaluate applicants' minimum competence for purposes of medical licensure in the United States and its territories Exhibit 22, Affidavit of Gerard F. Dillon, Ph.D | **ANSWER: Objection. Disputed.** The National Board of Medical Examiners (NBME) and the Federation of State Medical Boards (FSMB) **OWN** and **SPONSOR** the United States Medical Licensing Examination® ("USMLE").<br><br>**(Exhibit 1)** |
| **2**. The USMLE is designed to assess a physician's ability to apply knowledge, concepts, and principles, and to demonstrate fundamental patient-centered skills, that constitute the basis of safe and effective patient care. Id. | **ANSWER: Objection. Disputed. Hearsay.** Medical errors are the third cause of death in the U.S., after heart disease and cancer, causing 250,000 deaths every year, indicating that patient safety efforts fall far short. **The defendants safe and effective patient care argument based on very recent research has no merit. (Exhibit 2 )** |
| **3.** The examination material for all three steps of the USMLE is prepared by examination committees broadly representing the medical profession. The committees are comprised of recognized experts in their fields, including both academic and non-academic practitioners, as well as members of state medical licensing boards, which rely upon successful completion of the three USMLE Steps as an important element in the process for licensing physicians. Id. | **ANSWER: Objection. Disputed. Hearsay.** The NBME convenes a "reference group" once a year including broader representation from medical schools and student organizations. **Many past members of this group report that "their collective concerns have not been seriously addressed by NBME." (Exhibit 3)** |

| | |
|---|---|
| **4.** Step 1 of USMLE is a computer-based multiple choice examination that assesses understanding and application of basic science concepts important to the practice of medicine. | **ANSWER: Objection. Disputed,** only admit that Step 2 CK is a computer-based multiple choice examination. Research by **William C. McGaghie, Ph.D., and others have concluded that the USMLE Step 1, Step 2 CK, and Step 2 CS are NOT reliable measures of Clinical skills acquisition.   Gerard F. Dillon challenges McGaghie in a letter to the editor and he falls by the wayside, (EXHIBIT 4)** |
| **5.** Step 2 CK is a computer-based multiple choice examination that assesses the application of medical knowledge, skills, and understanding of clinical science essential for the provision of patient care under supervision, and includes emphasis on health promotion and disease prevention. Id. | **ANSWER: Objection. Disputed,** Relevance; Conclusory, Lacks foundation.<br><br>**(EXHIBIT 4).** |
| **6.** Step 2 CS is a clinical skills examination that utilizes trained actors as standardized patients and assesses whether examinees can gather information from patients, perform physical examinations, accurately document his or her findings, and communicate those findings to patients. Id. | **ANSWER: Objection. Disputed.**  Organizations like the AMA have "expressed concerns about implementation of the USMLE Step II CS and its use for purpose of medical licensure."  "AMA's concerns are 2-fold: **(1) the USMLE Step II CS may not allow remediation before residency for medical students who fail** the test, **(2) the USMLE Step II CS should not be used for medical licensure because it does not accomplish its stated goal—adequately protecting the public from harm. The NBME has failed to provide evidence that their exam will improve clinical skills or patient safety beyond the level of current medical school-** |

|  | based assessments." (EXHIBIT 3) |
|---|---|

| **7.** Plaintiff, who graduated from medical school in 2004, first sat for USMLE Step 1 in March 2002. Exhibit 17, USMLE Scoring Record, p. NBME-Katz 0213; Exhibit 23, R. Katzdepo. p. 215. | **ANSWER:** Undisputed |
|---|---|

| **8.** Between 2002 and June 2005, plaintiff took USMLE Step 1 five times, and failed each time. Exhibit 17, Exhibit 26. | **ANSWER:** Undisputed that plaintiff failed the USMLE five times from 2002-2005 **under regular exam conditions without accommodations for his disabilities.** |
|---|---|

| **9.** In July 2005, plaintiff applied for test accommodations on Step 2 CK and Step 2 CS. He did not request accommodations on Step 1. Exhibit 1, NBME/Katz 0166-0169; Exhibit 2, NBME/Katz 0208-0212; Exhibit 23, R. Katz depo. p. 145-146. | **ANSWER: Objection. Disputed.** Plaintiff objects to UMF #9 to the extent that it is not relevant. Subject to and without waiving such objections, plaintiff refers the Court to **Exhibit 5** where on June 27, 2005 Plaintiff discussed his difficulties with **USMLE Step 1 and Step 2** with NBME Disability Services at length, **specifically processing speed issues and problems completing the exam within the time allotted under regular exam conditions.** NBME did nothing to accommodate plaintiff after his disclosures. **Exhibit 5** incorporates the defendants response to plaintiff's **Supplemental Interrogatories Number One**, item **#3A,** here the defendants acknowledge plaintiff's June 27, 2005 letter, stating that they: **"took this letter into account in the evaluation of exam accommodations."** |
|---|---|

| **10.** In his request for accommodations, plaintiff described the nature of his disability as Attention | **ANSWER: Objection. Disputed.** Plaintiff objects to characterization of *"nature of his* |
|---|---|

| | |
|---|---|
| Deficit Hyperactivity Disorder ("ADHD"), Anxiety and Depression. Exhibit 1, NBME/Katz 0167; Exhibit 2, NBME/Katz 0210. | *disabilities."* Subject to and without waiving such objections, plaintiff was diagnosed with: **Attention Deficit Hyperactivity Disorder (ADHD)** by Dr. Ann E. Hedberg a psychiatrist in Salem Virginia on February 11, 2005, Fred Holtz, Ph.D a psychologist in New York in November 2005, Dr. David Kreditor an M.D./Ph.D in New York in November 2005, and Dr. Florence Sisenwein a psychologist for St. John's University Center for Psychological Studies & Clinical Studies in NYC in June 2005. In addition to the diagnosis of ADHD plaintiff was also diagnosed with **(1) Dysthymia** by Dr. David Kreditor in November 2005. **(2) Adjustment Disorder with Mixed Anxiety and Depressed Mood and Panic Disorder without Agoraphobia** by Dr. Fred Holtz in January 2006. **(3) Depression and Anxiety** by Dr. Teta a psychologist for St. John's University Center for Psychological Studies & Clinical Studies in New York in March 2003. **(4) Anxiety Disorder** in 1994 **(5)** Late 1970's to early 1980's **Seizure Disorder with speech impairment. (EXHIBIT 6**) |

| | |
|---|---|
| **11.** The supporting documentation that plaintiff provided to the NBME in connection with his 2005-2006 Request for Test Accommodations is contained in Exhibits 3 and 6. Correspondence from the NBME and memorandum of telephone contacts between the NBME and plaintiff during that time are contained in Exhibits 4, 5 and 7. Exhibit 23, R. Katz depo. p. 165-167. | **ANSWER: Undisputed.** |

| | |
|---|---|
| **12.** Plaintiff attended the High School for Art and Design in New York City, followed by Parson's School of Design, where he received a Bachelor of Fine Arts degree. Exhibit 3, personal statement submitted to NBME, p. NBME/Katz 0205-0207. | **ANSWER:   Objection.   Disputed.**   Plaintiff **graduated** from The H.S. **of** Art & Design in NYC in 1988, he **graduated** Parson's School of Design in NYC   in 1992 where he received a Bachelor of Fine Arts (BFA) degree. |

| | |
|---|---|
| **13.** Plaintiff stopped taking math and science courses after his sophomore year of high school, and the only science course he took in college was Wildlife of North America. Exhibit 23, R. Katz depo. p. 25, 41. | **ANSWER: Objection. Disputed.** Relevance, unrelated to any material fact in this case. Subject to and without waiving such objections, plaintiff successfully completed his premedical prerequisites as a post baccalaureate completing Pre-calculus, Inorganic Chemistry 1 and 2, Organic Chemistry 1 and 2, Physics 1 and 2 and Biology 1 and 2 as well as successful completion of other scientific courses..  **When Plaintiff's disabilities were accommodated for he went on to make the Deans List for his premedical accomplishments as a post baccalaureate at SUNY College at Old Westbury**. **(EXHIBIT 7)** |

| | |
|---|---|
| **14.** Plaintiff submitted no documentation to the NBME in connection with his 2005 request for accommodations showing that he ever received accommodations for any disability at any time through his graduation from college. Exhibits 3, 6. | **ANSWER: Objection. Disputed.** UMF #14 is vague, ambiguous, confusing and conclusory, it contains sub-parts, a compound, conjunctive, or disjunctive, it seeks the legal reasoning and theories of defendants contentions. |

| | |
|---|---|
| **15.** During college, plaintiff worked at a hospital and decided that he wanted to be a doctor. After he completed his BFA, he started taking science and other background courses to prepare to apply for medical school, and for the first time he received academic accommodations while studying at the State University of New York, College at Old | **ANSWER: Objection. Disputed.**  Subject to and without waiving such objections, plaintiff worked in the emergency department on the weekends supporting himself as a college student.  **It wasn't for two years later that he decided to become a doctor upon completion of his BFA.** Historically plaintiff had problems planning, |

| | |
|---|---|
| Westbury.  Exhibit  3,  personal  statement, NBME/Katz 0206. | organizing, executing, difficulty reading, memorizing and retaining information. **Cognitive and emotional decrements became more pronounced with the stress of heavier academic coursework necessitating accommodations based on a physicians evaluation and recommendation (EXHIBIT 8)**. |

| | |
|---|---|
| **16.**  On  the  Request  for  Test  Accommodation forms  that  plaintiff  submitted  to  the  NBME,  he checked  "yes"  regarding  accommodations  in college,  but  he  acknowledged  at  his  deposition that  he  was  referring  to  post-baccalaureate coursework  at  the  College  at  Old  Westbury. Exhibits 1, 2; Exhibit 23, R. Katz depo. p. 143. | **ANSWER: Objection. Disputed mischaracterizes witnesses testimony.** Subject to and without waiving such objections, plaintiff received private tutoring provided by the New School for Social Research where he took his academic courses while at Parson's School of Design.    The  tutoring  was  necessary  for  his English  Literature  coursework  during  his  first semester of college.   Plaintiff's difficulties were with  reading  comprehension,  organizing  his thoughts, and  trouble extracting concepts for term papers.   **"This form was not regarded at the time  to  be  all  encompassing  of  all accommodations  received  (formal/informal Accommodations)." (ERRATA - EXHIBIT 43).** |

| | |
|---|---|
| **17.**   Plaintiff submitted a memorandum from William Lupardo at the College at Old Westbury, dated June 24, 2005, indicating that plaintiff received accommodations from Fall 1994 through Spring 1997 based upon "documentation" of an anxiety disorder and Attention Deficit Disorder, but the memorandum from Old Westbury did not include or describe such documentation, nor did it describe    the    standards    for    granting | **ANSWER:  Objection.**  Sub-parts,  compound, conjunctive,  or  disjunctive  statement.   Subject to and  without  waiving  such  objections  William Lupardo,  M.S.  submitted  **two**  letters  to  the defendants, one letter in 2005 justifying plaintiff's initial disability application to NBME for exam accommodations and another letter in March of 2014  upon  plaintiff's  **APPEAL**  of  defendants failure to accommodate him for USMLE Step 1. |

| | |
|---|---|
| accommodations, or what the accommodations were. Exhibit 3, p. NBME/Katz 0204. | **(EXHIBIT 8 )** |
| **18.** In his personal statement submitted to the NBME, plaintiff said that Old Westbury granted accommodations because his family physician "felt" that his problem "was secondary to test anxiety and possibly an attention-deficit disorder ..." Exhibit 3, p. NBME/Katz 0206. | **ANSWER: Objection.   Disputed.** UMF #18 mischaracterizes testimony. Plaintiff objects to the defendants characterization that plaintiff's family physician "felt" that his problem "was secondary to test anxiety and possibly an attention deficit disorder..."  As stated by Mr. William Lupardo's first letter dated 6/24/2005 to defendants, plaintiff submitted documentation justifying the need for accommodations.  **(Exhibits 8)** |
| **19.** Plaintiff did not request or receive accommodations on the Medical College Admission Test ("MCAT"). Exhibit 23, R. Katz depo. p. 119-120; Exhibits 1 and 2. | **ANSWER: Objection.** Relevance, unrelated to any material fact in this case.  Subject to and without waiving such objections. Plaintiff applied to NCFMEA approved Medical Schools abroad as academic accomplishments and faculty evaluations were weighted more than MCAT Scores. |
| **20.** Other documentation that plaintiff submitted to the NBME did not reveal any psychological testing until 2003 and there is no diagnosis of ADD or ADHD that resulted from that testing. Exhibit 3, p. NBME/Katz 0183-0189. | **ANSWER: Objection. Disputed.** Relevance, Conclusory, lacks foundation. The purpose of psychological testing in 2003 was to determine if Plaintiff had a learning disability based on plaintiff's psychologist's recommendation.  **The examiner did not test for ADHD at this time. (EXHIBIT 9)** |
| **21.** Plaintiff first attended Ross University School of Medicine in Dominica, West Indies, but he got sick and depressed, failed the semester, and withdrew after one semester in **2000. He re-** | **ANSWER: Undisputed** that during plaintiff's first semester of medical school in 1999 at Ross University **he suffered a major depressive episode**, his functioning began to deteriorate, and |

| | |
|---|---|
| **started medical school at St. Matthew's University School of Medicine in Belize later that year. He later transferred to St. Christopher's, which is based in Senegal, because it** offered clinical rotations in the Northeast region of the U.S. He graduated from St. Christopher's **in 2004. Exhibit 23, R. Katz depo. at 125-131, 155.21.** P | he was **treated with Prozac** by the University psychiatrist. Upon returning home to NYC he consulted a psychiatrist by the name of Ubaldo Leli, M.D.. **Dr. Leli** diagnosed plaintiff with ***adjustment disorder with depressed mood***. Plaintiff transferred to St. Matthew's University (SMU) School of Medicine the following semester because he learned it was a smaller more didactic program and students were afforded more overlap with their professors.  **(EXHIBIT 10)** |
| 22.  Plaintiff's applications to St. Matthew's School of Medicine and St. Christopher's School of Medicine, and the resumes he submitted with those applications, do not mention his failed semester at Ross University School of Medicine. Exhibit 24, Records of St. Matthew's (partial) at p. St. Matt. 002, 0035-37; Exhibit 25, Records of St. Christopher's (partial), p. St Christopher's 001-002. | **ANSWER:  Objection.** St. Matthew's was aware of the failed semester at Ross, they were not aware of **the reason for the failure (as plaintiff's mental health is his personal business) - <u>a diagnosis of adjustment disorder with depressed mood diagnosed by Dr. Leli on Dec. 29, 1999 (EXHIBIT 10).</u>**  There was no reason to inform St. Christopher's of the previous failure as Katz had successfully completed his basic-science curriculum at St. Matthew's and was a student in good standing.  He transferred to St. Christopher's because they offered clinical rotations in the northeast, St. Matthew's did not.  Katz resided in the Northeast (NYC). |
| 23.  Plaintiff's 2005 request for accommodations to the NBME contained no record of any disability accommodations in medical school. Exhibits 1, 2. | **ANSWER:** Brian M. Matayoshi, Ph. D. Is professor of the Department of Bio-Medical Science PCOM-Georgia is Associate Director for Graduate Program in Biomedical Science/Professor of Neuroscience, Physiology, and Pharmacology.  **Dr. Matayoshi was Katz's professor at St. Mathew's School of Medicine.** |

| | |
|---|---|
| | **He was involved with student services at St. Matthews.** Dr. Matayoshi's bio is provided (Exhibit 42). **He has over 25 years of diverse teaching, academic and student support experience. He is a trained educational consultant.** Dr. Matayoshi met with Katz regularly, he provided study skills instruction, and arranged additional testing time to take his basic science exams. Katz states in Errata correction deposition page 143 line 10 "this form (Request for Test Accommodation) was not regarded at the time to be all encompassing of all accommodations (formal and informal) ever received **(ERRATA EXHIBIT 43).**" |
| **24.** In July 2005, following plaintiff's initial submission of a request for accommodations on Step 2 CK and Step 2 CS of the USMLE, the NBME's Office of Disability Services performed a preliminary audit of the request and supporting documentation and advised plaintiff of missing information. Exhibit 5. Plaintiff supplied additional information over a period of months. Exhibit 6; Exhibit 21, Affidavit of Catherine Farmer, Psy.D. | **ANSWER:    Objection.  Disputed.** Plaintiff objects to defendants characterization that plaintiff was **"missing information"** The defendants requested in 2005-2006 academic records from Kindergarten to sixth grade.   However, **the records in question were NOT located by the NYC Board of Education because 25 or more years had elapsed.** As stated in plaintiff's second amended complaint: regarding the DOJ settlement agreement with NBME  DJ# 20216 – 181: "In the past, demands for **unnecessary or redundant documentation, burdensome** and expensive repeated professional evaluations, **or irrelevant evaluative testing unrelated to the ability to demonstrate one's knowledge or skills on an examination prevented individuals with appropriately documented disabilities from** |

| | |
|---|---|
| | **pursuing their chosen professions."** said Thomas E. Perez, assistant attorney general for DOJ's Civil Rights Division. **(EXHIBIT 12)** |
| **25. When plaintiff had submitted all of the documentation he had available in** connection with his 2005-2006 request for accommodations and stated that his file was complete, the NBME submitted his request for accommodations and supporting documentation to an external consultant, Catherine Farmer, Psy.D., who is now the NBME's Director of Disability Services. Exhibit 21, Affidavit of Catherine Farmer, Psy.D. | **ANSWER: Objection.  Disputed.** Objection to defendants characterizing Catherine Farmer's role as an **"external consultant."** Based on Catherine Farmer's Resume she was employed by NBME in various capacities from 1993 to 2016 and was far from an objective "external consultant**."** The **t**erm "external consultant" is a misnomer.  The correct term should be **"internally affiliated consultant." (EXHIBIT 13 )** |
| **26. Dr. Farmer reviewed the request and accompanying documentation and concluded** that plaintiff's documentation did not support a finding that plaintiff suffered from a significant impairment of a major life activity because of ADHD, depression or anxiety. | **Objection. Disputed.**  According to Farmer's Resume she graduated as a Psy.D in 2004 the same year plaintiff graduated medical school. <u>**FARMER NEVER ACHIEVED OR ACQUIRED A PENNSYLVANIA LICENSE TO PRACTICE AS A Psy.D. IN 2006,  EVEN CURRENT DAY SHE HOLDS NO LICENSE.  SHE DOES HOLD AN EXPIRED (2008) NURSING (LPN) LICENSE.  LPN'S WORK UNDER THE DIRECTION OF REGISTERED NURSES (RN'S).**</u>  **Farmer did not have adequate experience to constitute the designation of "expert."  Moreover, EXPERTS are typically LICENSED in their respective field. (EXHIBIT 13 & 14)** |
| **27.** Dr. Farmer prepared a review dated February 2, 2006, addressed to J. Abram Doane, M.S., the Manager of the NBME's Disability Services office | **ANSWER: Admit** that Farmer prepared a review dated February 2, 2006 addressed to J. Abram Doane, M.S.  The Manager of the NBME's |

| | |
|---|---|
| at the time. The review provided the detailed reasons for her conclusions and her recommendation to deny plaintiff's request for accommodations. Exhibit 8, February 2, 2006, report; Exhibit 21, Affidavit of Catherine Farmer, Psy.D. | Disability Services Office in 2006.  **Deny** that the **UNLICENSED** Farmer had the qualifications or experience to make any determination on plaintiff's file or to go against the recommendations of plaintiff's **LICENSED** caregivers that included two clinical psychologists and two psychiatrists after **ONLY FOUR HOURS OF REVIEW.[1]  (EXHIBIT 15)** |

| | |
|---|---|
| **28.** Some of Dr. Farmer's findings based upon the documentation plaintiff supplied included:<br><br>a) Plaintiff's documentation did not demonstrate any clinical impairment in childhood, and did not include any historical evidence of substantial difficulties that would rise to the level of a disability;<br><br>b) The diagnosis of ADHD appeared to be based largely on self-report and symptom endorsement on ADHD rating scales, but the diagnosis was not supported with evidence of longstanding impairment that could be reliably or specifically tied to ADHD; | **ANSWER: Objection. DISPUTED.**<br>**a). Plaintiff had a seizure disorder during childhood and speech impairment.**<br>**b). Farmer never met or examined plaintiff personally.  Farmer's denial of accommodations in 2006 went against** the recommendation of **Katz's LICENSED caregivers** that included two clinical psychologists and two psychiatrist. NBME/FSMB interfered with accessibility regulations under Title III of the ADA.<br>**c). Psychological Testing recommendations in 2005 were as follows:**<br>• **The patient (Katz) would benefit from Psychotherapy that addressed his ADHD, as well as his symptoms of** |

---

1   According to www.**expert**communications.com/documents/hte_**Prep**_for_Depo.pdf
    the average length of time for expert review is between 5 and 10 hours, this benchmark applies to
    expert preparation for deposition and trial.  The time required to review a disability applicants' file
    for accommodations on the USMLE by NBME is never made available to the applicant nor is the
    identity or credentials of the reviewer.  Plaintiff became aware that it took Farmer 4 hours to review
    his file because it is recorded on a document (EXHIBIT 15) obtained from defendants during the
    discovery phase of this lawsuit.

1.

| | |
|---|---|
| c) Testing showed that performance on a range of cognitive and academic achievement tasks was well within average range and did not suggest impairment in reading or learning;<br><br>d) Documentation regarding depression and anxiety was inconsistent at best, and no treating professional had assigned any DSM-IV diagnosis of a mood or anxiety disorder before plaintiff applied for accommodations on the USMLE.<br><br>Exhibit 21, Affidavit of Catherine Farmer, Psy.D. | anxiety and depression.<br><br>• **<u>The examinee (Katz) would benefit from extended testing time on exams.</u>**<br><br>• **The examinee (Katz) could seek out a tutor to help him to improve his study skills.**<br><br>**d). Dysthymia** by Dr. David Kreditor in November of 2005.**Adjustment Disorder with Mixed Anxiety and Depressed Mood and Panic Disorder without Agoraphobia** by Dr. Fred Holtz in January of 2006. **Depression and Anxiety** by Dr. Teta a psychologist for St. John's University Center for Psychological Studies & Clinical Studies in New York in March of 2003. **(EXHIBIT 6)** |
| **29.** On March 13, 2006, Mr. Doane of the NBME sent a letter to plaintiff denying his request for accommodations and explaining the decision in detail. Exhibit 9. | **ANSWER: Objection. DISPUTED.** Mr. Doane in his March 13, 2006 letter made a ***false representation*** stating that Katz's "documentation was given to "expert(**s)"** in the fields of Learning Disability and Mental Disorders to assist NBME Disability Services in reviewing the documentation" **There were NO EXPERTS! FARMER in 2006 and TO DATE Holds NO Psy.D. License in Pennsylvania or any other U.S. state for that matter. (EXHIBIT 13, 14, 16)**<br><br>An expert who—either due to lack of experience, education, or simply because the sources are inadequate—manipulates either the data or the process to reach a desired outcome should not be relied on because his extrapolations are mere ipse dixit.[2]  As the Court held in Donahue v. Barnhart, "[e]vidence is not 'substantial' if vital |

---

2  *See McKinnie,* 368 F.3d at 910

| | |
|---|---|
| | testimony has been conjured out of whole cloth."[3] |
| **30.** Plaintiff neither supplemented his application for accommodations nor submitted any other formal request for accommodations to the NBME's Office of Disability Services after his 2005-2006 request. Exhibit 21, Affidavit of Catherine Farmer, Psy.D. | **ANSWER: Objection. DISPUTED.** The defendants required excessive documentation in 2005-2006 that was not financially feasible. **Katz submitted sufficient documentation to justify his disability under the guidelines of the ADA.** This was the same complaint in the Romberg case that prompted NBME to enter into settlement with DOJ - DJ# 20216-181, 'the requirement of excessive documentation to substantiate disability claims.' **(EXHIBIT 17)** |
| **31.** After the NBME denied his request for accommodations in March 2006, plaintiff continued taking USMLE step exams as shown on Exhibit 17. | **ANSWER: Undisputed** |
| **32.** The USMLE Composite Committee establishes policy for the USMLE Program and is composed of representatives of the Federation of State Medical Boards (FSMB), the National Board of Medical Examiners (NBME), the Educational Commission for Foreign Medical Graduates (ECFMG), and the American public. Exhibit 22, Affidavit of Gerard F. Dillon, Ph.D. | **ANSWER: Objection. Disputed, relevance, hearsay.** |
| **33.** Before January 1, 2011, the Composite | **ANSWER:** Objection. Disputed, relevance, |

---

3 Donahue v. Barnhart, 279 F.3d 441, 446 (7th Cir. 2002) (citing Peabody Coal Co. v. McCandless, 255 F.3d 465 (7th Cir. 2001); Elliott v. CFTC, 202 F.3d 926 (7th Cir. 2000)).

| | |
|---|---|
| Committee imposed no limit on the number of times an examinee could take any Step of the USMLE. Rather, the USMLE left it to each state medical board to decide whether or not to impose attempt limits on the USMLE, and the majority state medical boards imposed such limits. Id. | hearsay.  Admit that prior to January 1, 2011 there was no limit to the number of attempts an examinee could take any Step of the USMLE. The USMLE Org. Bulletin currently does not address exceptions to the six-attempt limit policy based upon the ADA or related laws.<br><br>**(EXHIBIT 18)** |
| **34.** In August 2011, the USMLE Composite Committee adopted a policy limiting examinees to six attempts to pass any Step or Step Component of the USMLE. Exhibit 11; Exhibit 22, Affidavit of Gerard F. Dillon, Ph.D. | **ANSWER: Objection. Disputed, relevance, hearsay.** |
| **35.** The six-attempt limit policy became effective on January 1, 2012, for examinees who had not previously taken any Step of the USMLE. For examinees like plaintiff, who had taken one or more Steps of the USMLE already, the six-attempt limit became effective as of January 1, 2013. Exhibit 11. | **ANSWER: Objection. Dispute the defendants' characterization:  "For examinees like plaintiff...."  The defendants made no concession in their policy development for individuals with documented mental disabilities under the ADA. (EXHIBIT 18)** |

| | |
|---|---|
| **36.** The six-attempt limit applies to all examinees, without regard to disability status. If an examinee applies for and receives accommodations in connection with his or her first registration for USMLE Step 1, for example, then he or she would be entitled to accommodations on up to six attempts at Step 1. If an examinee does not apply for or is found not to be entitled to accommodations, then each attempt is made | **ANSWER: Objection. Disputed.** UMF #35 is vague, ambiguous, confusing and conclusory, it contains sub-parts, a compound, conjunctive, or disjunctive, it seeks the legal reasoning and theories of defendants contentions.  Subject to and without waiving such objections, what the defendants' claim in UMF #35 reveals flawed logic essentially no different than the illustration depicted below. |
| without accommodations. Exhibit 22, Affidavit of Gerard F. Dillon, Ph.D. |  **"SIX ATTEMPT LIMIT RULE"** YOU HAVE '**SIX ATTEMPTS'** TO ASCEND THE LONG FLIGHT OF STAIRS WITHOUT ASSISTANCE IN YOUR WHEELCHAIR! Good luck competing with the non-disabled individual who already made it to the top of the stairs!  The facts of this case are no different.  The defendants' logic is ideological as they hide behind ideas that they believe to be true! |

| | |
|---|---|
| **37.** Plaintiff had already failed USMLE Step 1 six times when the USMLE Composite Committee adopted the six-attempt limit, but because of the extra year provided to examinees who had already taken one or more Steps of the USMLE, plaintiff had until December 31, 2012, to register again for Step 1. Exhibits 11, 17 | **ANSWER:  Objection.  Disputed, relevance, hearsay.** |

| | |
|---|---|
| **38.** Plaintiff registered and took Step 1 three additional times after the USMLE adopted the six-attempt limit, and he failed each time. Exhibit 17; Exhibit 25, Exhibit 23, R. Katz depo. p. 216-217. | **ANSWER:   Objection. Disputed,** Please see admission #8 below:<br><br>**8. Admit or Deny that when Plaintiff registered for the USMLE Step I exam on November 18th, 2011, March 26th 2012, and December 7th 2012 that he was not yet aware that he suffered from Bipolar Disorder.**<br><br>**Defendants' Answer: "**After reasonable inquiry based on the information it has or can readily obtain, defendants are unable to either admit or deny Request for Admission 8 because it pertains to plaintiff's subjective knowledge.  Defendants admit that from the limited medical records to which they have had access, it appears that plaintiff was first diagnosed with bi-polar disorder in March 2013." **(EXHIBIT 19)** |

| | |
|---|---|
| **39.** Plaintiff received a diagnosis of bipolar disorder for the first time in March 2013. Exhibit 13, p NBME/Katz 0079. | **ANSWER:   Objection.   Disputed,** Please see UMF 37 above. |

| | |
|---|---|
| **40.** Plaintiff had registered for Step 1 on December 7, 2012, before he received the new diagnosis, with an examination eligibility period from June 1, 2013 to November 30, 2013.Exhibit 17. | **ANSWER:   Objection.   Disputed,** Please see UMF 37 above. |

| | |
|---|---|
| **41.** After he received the new diagnosis but before he took Step 1 again, when he had all of the information that he now claims should be considered, plaintiff could have submitted a new Request for Test Accommodations in conjunction | **ANSWER:   Objection.   Disputed,** UMF #40 is vague, ambiguous, confusing it contains sub-parts, a compound, conjunctive, or disjunctive, it seeks the legal reasoning and theories of defendants contentions.  Subject to and without waiving such |

| | |
|---|---|
| with his then pending USMLE Step 1 registration. Plaintiff did not submit a Request for Test Accommodations at that time, and has not submitted a formal request for accommodations in connection with a registration since 2005-2006. Exhibit 21, Affidavit of Catherine Farmer, Psy.D. | objections **Plaintiff has conducted an experimental field trial that addresses UMF # 40 in greater detail in order to establish a "material fact." Plaintiff directs the Court to (Exhibit 20  Affidavit of Richard Katz & Field Study).** |

| | |
|---|---|
| **42.** Plaintiff took Step 1 on November 12, 2013, and failed. Ex. 13, p. NBME/Katz 0079. Exhibit 26. | **ANSWER: Undisputed that plaintiff failed the USMLE Step I on November 12, 2013 by six points under regular exam conditions without accommodations for his disabilities.** |

| | |
|---|---|
| **43.** On December 18, 2013, plaintiff contacted the NBME's Office of Disability Services by telephone and said that in 2005 he had requested and been denied accommodations based on a diagnosis of ADHD, but the diagnosis of ADHD was incorrect and he had recently been diagnosed with bipolar disorder. Plaintiff said that he had exceeded the test limit on Step 1, and asked what the NBME could do retrospectively about the incorrect diagnosis. Exhibit 12, p. NBME/Katz 0127. | **ANSWER:  Objection. Disputed.** UMF #40 is vague, ambiguous, confusing and conclusory, it contains sub-parts, a compound, conjunctive, or disjunctive, it seeks the legal reasoning and theories of defendants contentions. |

| | |
|---|---|
| **44.** In the December 18, 2013, telephone conversation, the NBME Disability Services representative explained to plaintiff that the Disability Services office could process a request for accommodations based on a current diagnosis only if plaintiff were currently registered for a Step of the USMLE, and that the Disability Services office had nothing to do with attempt limits. The Disability Services representative | **ANSWER: Objection. Disputed**. Please see **EXHIBIT 21.** |

| | |
|---|---|
| suggested that plaintiff speak with his registration entity, the Education Commission for Foreign Medical Graduates ("ECFMG"). Id. | |

| | |
|---|---|
| **45.** On April 1, 2014, plaintiff wrote to the ECFMG, with a copy to the NBME, to "appeal" the six-attempt limit. Plaintiff included selected medical information with his letter, and he followed up by sending additional material to the NBME including a letter dated April 14, 2014, from Samuel Garloff, D.O., referring to plaintiff's March 2013 hospitalization and diagnosis with bipolar disorder. Dr. Garloff stated that "the previous diagnosis of ADHD was incorrect." Exhibit 13, p. NBME/Katz 0079-0084. | **ANSWER: Undisputed** that Dr. Garloff stated that plaintiff suffers from Bipolar Disorder and not ADHD, and ascribes to a debate in the medical literature that a person is unlikely to have both ADHD and comorbid Bipolar Disorder. Plaintiff's current psychiatrist Dr. Arif Hussain believes otherwise. According to the medical literature Attention-deficit/hyperactivity disorder (ADHD) in adults can resemble, and often co-occurs with, bipolar disorder (BD) - (EXHIBIT 50). This debate is beyond the parameters of this lawsuit. Attention and cognitive problems exist as a sequelae of Plaintiff's history of Rolandic Epilepsy (EXHIBIT 6 pg. 33 & EXHIBIT 49). Plaintiff applied for accommodations for anxiety and depression as well as ADHD on the USMLE in 2005-2006, all cause cognitive and attentional impairment (EXHIBIT 58). Plaintiff was refused accommodations by NBME in March of 2006 (EXHIBIT 16). |

| | |
|---|---|
| **46.** On April 8, 2014, the NBME Disability Services office acknowledged to plaintiff that it had received plaintiff's April 1, 2014, letter and related materials, on which it had been copied, and informed plaintiff that it would hold his paperwork in a pending status until he submitted a formal written request for test accommodations. Exhibit 12, p. NBME/Katz | **ANSWER: Objection. Disputed,** UMF #45 is vague, ambiguous, and confusing. Plaintiff contacted NBME on April 20, 2014 by email to appeal the April 17, 2014 denial of his **FIRST APPEAL** and to address a Catch-22 situation presented by defendants. They requested a *'formal request'* for exam accommodations on April 8, 2014. **It was explained to defendants** |

| 0128. | that a formal request would not be possible to submit as long as he was locked out from registering for USMLE Step I because of the 'Six Attempt limit Rule." *The notion Katz was addressing was you cannot submit a formal request for an exam that you obviously can't register for.* Plaintiff regarded this as a form of psychological manipulation and bureaucratic entanglement. The defendants never responded to Plaintiff's **SECOND APPEAL. (EXHIBIT 21)** |
|---|---|
| **47.** On April 17, 2014, the USMLE Secretariat wrote to plaintiff and acknowledged that it had received his April 1, 2014, letter to the ECFMG and related materials, and told plaintiff it could not grant his request for an additional attempt on Step 1 beyond the six-attempt limit and explained to plaintiff that the only exception to the six-attempt policy is "to allow examinees who have six or more attempts at a Step or component to have an additional attempt ifso requested by a state medical board that is fully informed of the individual's prior examination history." Exhibit 13, p. NBME/Katz 0088. | **ANSWER: Objection. Disputed.** Plaintiff sent an **APPEAL** with support documents dated April 1st 2014 to ECFMG and NBME Disability Services. These materials were forwarded to the USMLE Secretariat who responded to plaintiff on April 17, 2014 by email and regular mail **denying his request never acknowledging or asking for additional information regarding the recent diagnosis of Bipolar Disorder. (EXHIBIT 22)** |
| **48.** On April 20, 2014, plaintiff wrote to the NBME Disability Services office and explained that he could not submit a formal request for accommodations on Step 1 because of the six-attempt limit. Exhibit 14. | **ANSWER: UNDISPUTED.** Please see Response to UMF # 45. |
| **49.** Plaintiff requested that the Pennsylvania Medical Board intercede on his behalf to request | **ANSWER: Objection. Disputed.** With the help of Representative David Parker's Office of |

| | |
|---|---|
| an exception to the six-attempt limit, but on May 19, 2015, the Pennsylvania Medical Board denied his request. Exhibit 15, 16; Exhibit 20, at p. NBME/Katz 0277. | **District 115 plaintiff inquired about the provision on March of 2015,** the matter was placed on the May 2015 Agenda of the Pennsylvania State Board of Medicine. The conclusion is stated in the Counsel for the State of PA Board of Medicine's letter dated June 4, 2015: "The Board determined that the request to waive the six-attempt limit is **PREMATURE**" They stated: ***If you are successful in your appeal, the Board anticipates that the NBME will grant reasonable accommodations and authorize your client (Katz) to re-test.*** They go on to say: ***"If for some reason the NBME will provide accommodations but will not allow re-testing without authorization from the Board to waive the six-attempt limit, please correspond with us again and the matter will be presented to the Board for action."*** (EXHIBIT 23 Pg. 44/44) |
| **50.** Plaintiff initiated this lawsuit on June 17, 2015. | **ANSWER: UNDISPUTED** |

>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>

| PLAINTIFF'S UNDISPUTED MATERIAL FACT (UMF) | PLAINTIFFS' SUPPORTING EVIDENCE |
|---|---|
| **1.** Plaintiff is a 2004 medical school graduate with documented disabilities, in 2005 he applied for exam accommodations on the United States Medical Licensing Exams (USMLE), his disabilities prevented him from keeping up with | **EXHIBIT 5** |

| | |
|---|---|
| the time constraints of the USMLE under regular exam conditions. | |

| | |
|---|---|
| **2.** The defendants denied Katz's application in 2006 despite submission of reports from his LICENSED psychiatrist and psychologists who evaluated his disabilities under the guidelines of the Americans with Disabilities Act (ADA) on numerous occasions.  Below are the  determined diagnoses in 2006:<br><br>• ADHD,<br>• Depression, Dysthymia<br>• Anxiety,<br>• Adjustment Disorder with Mixed Anxiety and Depressed Mood<br>• Panic Disorder without Agoraphobia | **EXHIBIT 6** |

| | |
|---|---|
| **3.** Catherine Farmer. a so-called "External Consultant" and "EXPERT" for NBME in 2006 (now acting NBME Compliance Officer) was the main evaluator of Katz's file. Farmer  only became a Psy.D in 2004 and to date has NEVER ACHIEVED OR AQUIRED A Psy.D. LICENSE in the state of Pennsylvania or any other U.S. state for that matter. | **EXHIBIT 14 & EXHIBIT 24** |

| | |
|---|---|
| **4.** Based on  Farmer's Resume she was employed by NBME in various capacities from 1993 to 2016 and due to her internal affiliation was NOT an objective "external consultant."  She was NOT an "Expert" as she only graduated as a Psy.D in 2004. One year later she was evaluating Katz's documentation for accommodations for the USMLE.  ***There is no such thing as an EXPERT*** | **EXHIBIT 13 & EXHIBIT 24** |

| | |
|---|---|
| ***Psy.D. in one year! Especially one that holds no license in their respective field!*** | |

| | |
|---|---|
| **5.** The **UNLICENSED** Farmer spent a total of just ***four hours*** reviewing Katz's psychological reports, evaluations, and assessments from two **LICENSED** psychiatrists and two **LICENSED** clinical psychologists, and other evaluators that personally examined him on numerous occasions. **Farmer recommended Katz's application be *denied* for accommodations despite ever meeting or evaluating him personally or ever speaking directly to his caregivers.** | **EXHIBIT 15 & EXHIBIT 24** |

| | |
|---|---|
| **6.** On February 2, 2006, Farmer stated in her letter to Mr. J. Abram Doane, M.S. (the Compliance Officer of NBME at the time) ***"As you know, I have not met or examined Mr. Katz. My recommendation is based upon my review of the request and supporting documentation submitted by and on behalf of Mr. Katz."*** | **EXHIBIT 24** |

| | |
|---|---|
| **7.** J. Abram Doane (no longer employed by NBME) stated in his NBME denial letter to Katz dated March 13, 2006: **"We consulted 'EXPERT<u>S</u>' in the field<u>S</u> of Learning Disability and Mental Disorder<u>S</u> to assist us in reviewing the documentation."** In actuality, there were no "EXPERT(S)" just one **UNLICENSED** neophyte Psy.D. of one year by the name of Catherine Farmer. | **EXHIBIT 16** |

| | |
|---|---|
| **8.** Prior to the ADAAA the NBME and other | **EXHIBIT 31** |

| similar testing entities had a penchant for denying accommodations for students in higher education on the basis that they were not diagnosed at an earlier age or that they performed well academically. In passing the ADAAA, Congress targeted these testing entities. | (noting in the Congressional Record: 2 Cong Rec 8296 (Sept 17, 2008). |
|---|---|
| **9.** Based on Doane's LinkedIn Profile, he states he was Manager of Disability/ADA Compliance for NBME from July 2003 through July 2006. . Doane states in his profile that he: "Reviewed documentation and reports in support of student requests for services, and was; **Decision-maker for accommodations for NBME testing programs and state medical licensing boards."** **But Doane only has a masters degree, he has no advanced mental health degree, to date holds no PROFESSIONAL LICENSES and was not justified to make any such determinations on disability applicants requests for accommodations or to go against the applicants' LICENSED professional caregivers.** | **EXHIBIT 35** |
| **10.** After his role of Manager of Disability/ADA Compliance and **'decision-maker'** for NBME Doane became a *Consultant* for NBME Office of General Counsel on July 2006 until leaving the NBME organization in July 2008. Doane in his March 13, 2006 letter made a *false representation* stating that Katz's documentation was given to "EXPERT**S**" in the field**S** of Learning Disability and Mental Disorder**S** to assist NBME Disability Services in reviewing the documentation" | **EXHIBIT 16 & EXHIBIT 35** |

| | |
|---|---|
| **11.** Doane misled Katz expecting he would believe his story as true and move on without the much needed accommodation that he required for success. Doane knew that Katz would never get to see Farmer's review denying his accommodation as this review was never made available to Katz despite his request. | **EXHIBIT 36** |
| **12.** Katz sent a notarized request to NBME Disability Services on January 27, 2014 requesting his documentation from 2005-2006. On February 4th, 2014 Catherine Farmer replied by mail stating: ***"The NBME does not copy or return the comments of an examinees' disability file or send copies to examinees or third parties."*** | **EXHIBIT 33** |
| **13.** Pursuant to the ADAAA and its regulatory guidance, the defendants are mandated to give deference to Katz's **LICENSED** evaluating psychiatrists and psychologists and their recommendations to provide accommodations. The guidelines to the regulations by the ADAAA, provide that testing entities should accept without further inquiry, **"documentation provided by a qualified professional who has made an individualized assessment of an applicant, that supports the need for modifications, accommodations or aid requested.".** | **EXHIBIT 34**<br><br>**(28 C.F.R. pg 36, App A, at 795).** |
| **14.** The ADAAA and its regulatory guidance further explains that "reports from experts who have personal familiarity with candidates should | **EXHIBIT 34** |

| | |
|---|---|
| take precedence over those from, for example reviewers from testing agencies (Farmer) who have never personally met the candidate (Katz) or conducted the requisite assessments for diagnosis and treatment." | |
| **15.** In January of 2012, the defendants implemented an attempt limit to the number of times examinees can take to pass any of the USMLE Step Exams, this is currently limited to six attempts. The previous policy permitted examinees to take the USMLE Exams as many times as they needed until passing. **In creating this so called 'Six Attempt Limit Rule' the defendants made NO concession in their policy development for people with documented mental disabilities under the ADA.** | **EXHIBIT 18 & EXHIBIT 39** |
| **16.** In November of 2013 Katz exceeded his attempt limit on USMLE Step 1, failing by six points under regular exam conditions as the defendants never granted him accommodations he sorely needed for success. The defendants then barred him from registering for the **USMLE Step 1 Exam.** | **EXHIBIT 22** |
| **17.** Katz sent an APPEAL to defendants on April 1, 2014 explaining recent changes to his diagnosis, new information confirming that the defendants made a wrongful denial of testing accommodations in 2005-2006. Katz also informed defendants that their 'Six Attempt Limit Rule' is an administrative barrier to people with | **EXHIBIT 22 & EXHIBIT 31** |

| | |
|---|---|
| documented mental disabilities. | |

| | |
|---|---|
| **18.** The defendants replied to this APPEAL with a denial on April 17, 2014 never acknowledging Katz's caregiver reports, or the recent changes to his diagnosis and treatment. The defendants even refused to acknowledge that Katz submitted an APPEAL referring to it as "your letter and supporting documents." | **EXHIBIT 22 & EXHIBIT 30** |

| | |
|---|---|
| **19.** Despite Plaintiff's multiple failures (a direct result of defendants negligence) he has remaining attempts for USMLE Step 2  Clinical Skills (CS), USMLE Step 2 Clinical Knowledge (CK) and USMLE Step 3 under regular exam conditions. **However he is barred from registering for USMLE Step 1 because of the "Six Attempt Limit Rule". The defendants have hindered Katz's licensure as a practicing physician in the United States of America with a faulty administrative barrier policy to individuals with mental disabilities.** | **EXHIBIT 22 EXHIBIT 30 EXHIBIT 31** |

| | |
|---|---|
| **20.** Because of the defendants negligence Katz was subjected to repeated studying, and subsequent failures, having to take the USMLE Exams under regular exam conditions, much like a swimmer attempting to swim against a riptide, this took its toll on his mental and overall health. With the implementation of the 'make or break' nature of the 'Six Attempt Limit Rule' policy Katz had a mental breakdown in March of 2013 and had to be hospitalized for one week in the | **EXHIBIT 59** |

| | |
|---|---|
| Behavioral Health Unit at Pocono Medical Center in Stroudsburg, PA. | |
| **21.** Katz currently suffers from numerous stress related conditions, including but not limited to, bipolar disorder, anxiety disorder, panic disorder, specific phobia associated with test-taking, two functional gastrointestinal disorders associated with stress, gastroesophageal reflux disease (GERD) and irritable bowel syndrome (IBS), chronic frequent exacerbation of asthma, migraine headaches, elevated blood sugar approaching a prediabetic state, sleep disturbance, and a chronic skin condition all **stress related conditions** exacerbated by defendants. | **EXHIBIT 27, EXHIBIT 28, EXHIBIT 38** |
| **22.** The Disability Rights Section of the Department of Justice (Justice) has been conducting an investigation into the defendants demands for unnecessary or redundant documentation, burdensome and expensive repeated professional evaluations, irrelevant evaluative testing unrelated to the ability to demonstrate one's knowledge or skills on an examination like the USMLE.   This investigation predates Katz's complaint of discrimination to senator Pat Toomey's Office and Toomey's submission of his complaint to Justice.  Justice is currently investigating Katz's complaint as an "aggregate" to a larger investigation. | **EXHIBIT 17 & EXHIBIT 29** |
| **23.** Frederick Romberg a Yale Medical Student with dyslexia (now an Anesthesiology Resident at | **EXHIBIT 17** |

| | |
|---|---|
| the University of Utah) waited a year for Justice to settle with NBME for his disability DJ# 20216-181. On February 23, 2011, NBME entered into a two year settlement agreement with Justice resolving a complaint by Romberg who was twice refused the accommodations he requested because of his disability (dyslexia). | |

| | |
|---|---|
| **24.** The defendants agreed to provide reasonable accommodations on the USMLE to people with disabilities granting the complainant accommodations needed - double standard testing time, a separate testing area to take the test.  By March 2013 the agreement with Justice was over. Katz sent his APPEAL to the defendants on April 1, 2014.  Katz's claims are not much different from the complainant's, but Katz suffered far worse repercussions as a result of defendants negligence, he suffered economically, physically and mentally. | **EXHIIT 17, EXHIBIT 25, EXHIBIT 26, EXHIBIT 27 & EXHIBIT 28** |

**RESPECTFULLY SUBMITTED,**

Richard Katz
3364 Parker Lane
East Stroudsburg, PA 18301
*Pro se*