Under this new standard, for example, it should be considered a material restriction if an individual is disqualified from his or her job of choice because of an impairment. An individual should not need to prove that he or she is unable to perform a broad class or range of jobs. We fully expect that the courts, and the Federal agencies providing expert guidance, will revisit prior rulings and guidance and adjust the burden of proving the requisite "material" limitation to qualify for coverage.

This legislation is long overdue. Countless Americans with disabilities have already been deprived of the opportunity to prove that they have been victims of discrimination, that they are qualified for a job, or that a reasonable accommodation would afford them an opportunity to participate fully at work and in community life.

Some of my colleagues from across the aisle have raised concerns that this bill would cover "minor" or "trivial" conditions. They worry about covering "stomach aches, the common cold, mild seasonal allergies, or even a hangnail."

I have yet to see a case where the ADA covered an individual with a hangnail. But I have seen scores of cases where the ADA was construed not to cover individuals with cancer, epilepsy, diabetes, severe intellectual impairment, HIV, muscular dystrophy, and multiple sclerosis.

These people have too often been excluded because their impairment, however serious or debilitating, was mis-characterized by the courts as temporary, or its impact considered too short-lived and not permanent enough—although it was serious enough to cost them the job.

That's what happened to Mary Ann Pimental, a nurse who was diagnosed with breast cancer after being promoted at her job. Mrs. Pimental had a mastectomy and underwent chemotherapy and radiation therapy. She suffered radiation burns and premature menopause. She had difficulty concentrating, and experienced extreme fatigue and shortness of breath. And when she felt well enough to return to work, she discovered that her job was gone and the only position available for her was part-time, with reduced benefits.

When Ms. Pimental challenged her employer's failure to rehire her into a better position, the court told her that her breast cancer was not a disability and that she was not covered by the ADA. The court recognized the "terrible effect the cancer had upon" her and even said that "there is no question that her cancer has dramatically affected her life, and that the associated impairment has been real and extraordinarily difficult for her and her family."

Yet the court still denied her coverage under the ADA because it characterized the impact of her cancer as "short-lived"—meaning that it "did not have a substantial and lasting effect" on her.

Mary Ann Pimental died as a result of her breast cancer 4 months after the court issued its decision. I am sure that her husband and two children disagree with the court's characterization of her cancer as "short-lived," and not sufficiently permanent.

This House should also disagree—and does—as is shown by the broad bipartisan support for H.R. 3195.

H.R. 3195 ensures that individuals like Mary Ann Pimental are covered by the law when they need it. It directs the courts to interpret the definition of disability broadly, as is appropriate for remedial civil rights legislation. H.R. 3195 requires the courts—and the Federal agencies providing expert guidance—to lower the burden for obtaining coverage under this landmark civil rights law. This new standard is not onerous, and is meant to reduce needless litigation over the threshold question of coverage.

It is our sincere hope that, with less battling over who is or is not disabled, we will finally be able to focus on the important questions— is an individual qualified? And might a reasonable accommodation afford that person the same opportunities that his or her neighbors enjoy.

I urge my colleagues to join me in voting for passage of H.R. 3195, as reported unanimously by the House Judiciary Committee.

☐ 1645

Mr. SENSENBRENNER. Madam Speaker, I yield myself such time as I may consume.

Madam Speaker, 18 years have passed since President George H.W. Bush signed the Americans with Disabilities Act into law. While that bill struck down many barriers affecting disabled Americans, its potential has yet to be realized. This is due to a number of Supreme Court decisions that have restricted ADA coverage for people suffering from illnesses such as diabetes, epilepsy, and cancer, to name a few. Today, this House takes the first step to finally secure the full promise of the original bill.

The bill that the House is voting on this afternoon has undergone a number of changes since I first introduced it in the 109th Congress. Today's ADA Amendments Act of 2008 is a compromise that has the support of a broad and balanced coalition. Business groups such as the U.S. Chamber of Commerce, the HR Policy Association, and the National Association of Manufacturers all back this bill. In addition, advocates for the disability community, including the American Association of People with Disabilities, the Epilepsy Foundation, and the National Disability Rights Network, join in support.

Majority Leader HOYER and I introduced the ADA Restoration Act last summer. We did so to enable disabled Americans utilizing the ADA to focus on the discrimination that they have experienced rather than having to first prove that they fall within the scope of the ADA's protection. Today's bill makes it clear that Congress intended the ADA's coverage to be broad and to cover anyone who faces unfair discrimination because of a disability. To that end, we are submitting for the RECORD a statement outlining our legal intent and analysis of the new definition, as changed by the ADA Amendments Act of 2008.

The ADA Amendments Act makes changes to the original ADA, the primary one being that it will be easier for people with disabilities to qualify for protection under the ADA. This is done by establishing that the definition of disability is to be interpreted broadly. Another important change clarifies that the ameliorative efforts of mitigating measures are not to be considered in determining whether a person has a disability. This provision eliminates the Catch-22 that currently exists, as described by the gentleman from New York (Mr. NADLER), where individuals subjected to discrimination on the basis of their disabilities are unable to invoke the ADA's protections because they are not considered people with disabilities when the effects of their medication or other interventions are considered.

It is important to note that this bill is not one-sided. It is a fair product that is workable for employers and businesses. The bill contains the requirement that an impairment be defined as one that substantially limits a major life activity in order to be considered a disability. There is also an exception in the mitigating measures provision for ordinary eyeglasses and contact lenses. Further, the bill excludes from coverage impairments that are transitory and minor.

The ADA has been one of the most effective civil rights laws passed by Congress. Its continued effectiveness is paramount to ensuring that the transformation that our Nation has undergone and continues in the future and that the guarantees and promises on which this country was established continue to be recognized on behalf of all of its citizens.

I appreciate Majority Leader HOYER's efforts to bring the ADA Amendments Act to the floor, and I encourage my colleagues to vote in favor of it.

Finally, I'd like to pay tribute to my wife, Cheryl, who is the national chairman of the board of the American Association for People with Disabilities. Her tireless efforts have really spread the word amongst many Members of this House and a few of the other body that this legislation is necessary so that people like her do not have barriers in terms of seeking employment. And I appreciate, also, my colleagues on both sides of the aisle listening to her, even when they didn't have a choice.

I reserve the balance of my time.

Mr. CONYERS. Madam Speaker, I am pleased to recognize the distinguished majority leader, who was an original sponsor of the bill some 18 years ago, for 1 minute.

Mr. HOYER. I thank the distinguished chairman of the Judiciary Committee for yielding, and I thank him for his efforts.

I want to thank his staff, as well, who have been extraordinary. Heather, in particular, has had her virtues regaled by Dr. Abouchar of my staff, and I thank her.

I want to thank JIM SENSENBRENNER. I want to thank Cheryl, as well, who has been an extraordinary help on the Americans with Disabilities Act and with this Restoration Act. She has been a giant in her leadership. And I