# Advisory



Nonprofit Organizations

August 6, 2014

# The ADA and Private Professional Certification

By Jerald Jacobs, Julia Judish, Dawn Crowell Murphy and Chris Leuchten*

*Title III of the Americans with Disabilities Act (ADA), as amended, mandates that private entities offering examinations or courses related to certain applications, licensing, certification, or credentialing ensure that such exams and courses are accessible to individuals with disabilities or offer alternative accessible arrangements. Those involved with any aspect of credentialing examinations should pay careful attention to what aids or accommodations must be offered by law.*

For an individual to be considered disabled under the ADA, it must be shown that the individual has an impairment that substantially limits one or more of the individual's major life activities, without regard to mitigating measures such as medicine.[1] If a disabled individual seeks to take an examination offered by a private entity regulated under Title III of the ADA, the Department of Justice (DOJ) regulations require the test be administered so as to "best ensure" that the examination results accurately reflect the individual's aptitude or achievement level, rather than the individual's disability.[2] Courts have interpreted this "best ensure" standard in a broad, plaintiff-friendly manner.

Operators of testing facilities must provide physical spaces that meet ADA accessibility standards. In addition, they may also be required to provide test-taker-specific modifications such as private rooms, individual readers, or specific software for those who have a hearing or visual impairment. The test centers that hold the examinations aren't the only entities regulated by Title III; organizations that help develop and administer the tests also must provide necessary modifications.

### The Standard for "Disability" According to the ADA

The examination section of the ADA is designed to ensure that "individuals with *bona fide* disabilities receive accommodations, and that those without disabilities do not receive accommodations" which could

---

[1] Individuals who have a record of a disability or are "regarded as" disabled are also protected from discrimination under the ADA.
[2] 28 C.F.R. § 36.309(b)(1)(i).

provide them with an unfair advantage on the exam.[3] Therefore, the first step of a claim under Title III requires that a plaintiff establish that he or she is disabled within the meaning of the ADA.[4]

"Disability" is defined as "a physical or mental impairment that substantially limits one or more major life activities."[5] In 2008, Congress amended the ADA and broadened the definition of "disability" by providing that the "determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures such as ... *medication*."[6] Therefore, courts have held that applicants cannot be required to take prescribed medication while being evaluated for accommodations.[7]

The ADA does not include an exhaustive list of conditions that automatically qualify as disabilities, so each plaintiff has a factual burden to meet, based on the effect that the impairment has had on them. Cases suggest some plaintiffs with certain ailments—such as dyslexia—may meet their burden while others with the same ailment may not.[8] However, the amended version of the ADA appears designed to tilt the scales in favor of the individual seeking accommodation. Entities that decline requested accommodations based on their own belief that the requestor's impairment is not significant enough to qualify as a disability face the prospect of defending expensive litigation to determine whether the factual evidence in fact supports their position. The costs of refusing a requested accommodation on the mistaken basis that the requestor is not covered by the ADA can be substantial, and can include not only any damages awarded to the plaintiff, but also responsibility for both parties' attorneys' fees.

### Title III Requirements for Private Entities Offering Exams

Title III of the ADA requires private entities that offer examinations "related to applications, licensing, certification, or credentialing for ... professional, or trade purposes" to "offer such examinations ... *in a place and manner accessible* to persons with disabilities or offer alternative accessible arrangements for such individuals." (42 U.S.C. § 12189) (emphasis added).

Any private entity offering examinations covered by Title III of the ADA must comply with the following regulatory requirements of 28 C.F.R. § 36.309:

- The exam must be administered in accessible facilities or alternative accessible arrangements must be made. § 36.309(b)(1)(iii).

- Exams must be offered to the disabled as often and at equally convenient locations as for other test-takers. § 36.309(b)(1)(ii).

- A private entity must administer an ADA-covered examination to "best ensure" that its results reflect "the individual's aptitude or achievement level or whatever other factor the examination purports to measure," rather than reflecting the individual's disability. § 36.309(b)(1)(i).

- Those offering such an examination must provide "appropriate auxiliary aids" for those with disabilities. § 36.309(b)(3).



---

[3] *Powell v. Nat'l Board of Med. Examiners*, 364 F.3d 79, 88-89 (2d Cir. 2004).

[4] *Roberts v. Royal Atlantic Corp.,* 542 F.3d 363 (2d Cir. 2008).

[5] 42 U.S.C. § 12102(1)(A).

[6] 42 U.S.C. § 12102(4)(E)(i)(I).

[7] *Dept. of Fair Employment and Housing v. Law School Admission Council Inc.,* 896 F.Supp.2d 849 (N.D. Ca. 2012).

[8] Compare, e.g., *Price v. Nat'l Board of Med. Examiners*, 966 F.Supp 419 (S.D.W. Va. 1997) (granting summary judgment for the defendant) with *Singh v. George Washington Univ. Sch. of Med. & Health Sciences*, 508 F.3d 1097 (D.C. Cir. 2007) (vacating summary judgment against dyslexic plaintiff).

- Auxiliary aids or modifications deemed appropriate based on the above standard are required unless the modification would "fundamentally alter the measurement of the skills or knowledge the examination is intended to test or would result in an undue burden." § 36.309(b)(3).

- Modifications to a test can include additional time or an alteration in "the manner in which the examination is given." § 36.309(b)(2).

- Documentation requested to show proof of disability must be "reasonable." § 36.309(b)(1)(iv).

- When considering a request for accommodation, the testing entity must weigh documentation of past accommodations. § 36.309(b)(1)(v).

### The "Best Ensure" Standard

The most important language applicable specifically to private testing and credentialing entities regulated under Title III of the ADA is the Department of Justice regulation requiring the test be administered so as to "best ensure" that the examination results accurately reflect the individual's aptitude or achievement level rather than the individual's disability.[9] This "Best Ensure" standard is generally interpreted broadly. The leading case on the standard is *Enyart v. National Conference of Bar Examiners, Inc.*,[10] where the Ninth Circuit upheld the DOJ regulation after a challenge to the validity of the DOJ's interpretation of the ADA (a type of suit called a *Chevron* challenge).[11] The National Conference of Bar Examiners (NCBE) challenged the regulation, arguing it was invalid since the regulatory "best ensure" standard exceeded the statutory requirement of "accessibility." The court gave *Chevron* deference to the regulation because it found the statutory phrase "accessible" ambiguous in reference to an examination (as opposed to facilities or vehicles) and found that the regulation was based on a permissible construction. The court then upheld a preliminary injunction issued by the district court compelling NCBE to allow the plaintiff in the case to use the requested modification, finding it necessary to "best ensure" the plaintiff's chances of success on the exam.

In a later case, *Bonnette v. D.C. Court of Appeals*, the federal district court for the District of Columbia outlined the "best ensure" standard this way: if the plaintiff can establish that the alternative accommodations offered by defendants do not make the examination accessible in the same way that the desired accommodation does, then defendants must provide the desired accommodation unless they can establish that doing so would fundamentally alter the nature of the examination or constitute an undue burden.[12] In the *Bonnette* case, the court held that a legally blind law school graduate was entitled to an order allowing her to take her bar exam using a computer equipped with an accessible screen-reading program commonly used by individuals with visual impairments. Although the defendants argued that the approximately $5,000 cost of the software would constitute an undue burden, the court rejected both that argument and the defendants' proposed alternative of hiring someone to read the bar exam questions to the plaintiff. The court explained: "The fact that Bonnette could take the [exam] using a human reader does not mean that this accommodation would best ensure that her score reflected her achievement level rather than her visual impairment; Bonnette is entitled to an auxiliary aid that allows her to perform at her



---

[9] 28 C.F.R. § 36.309(b)(1)(i).

[10] *Enyart v. National Conference of Bar Examiners, Inc.,* 630 F.3d 1153 (9th Cir. 2011).

[11] The Chevron Doctrine is an Administrative Procedure Act principle based on *Chevron U.S.A. Inc. v. Natural Resources Defense Council. Inc.,* 467 U.S. 837 (1984). When an agency rulemaking is challenged as being an incorrect interpretation of a statute, the Chevron Doctrine requires courts to perform a two-step analysis. First, the court must determine whether the statute is unambiguous. If so, the agency must use that interpretation. If the statutory language is ambiguous, then the court must give deference to the agency's interpretation as long as it is based on a "permissible construction" of the statute and not arbitrary or capricious. Essentially the Chevron Doctrine calls for deference to agencies' interpretation of statutes that are unclear on their face.

[12] *Bonnette v. D.C. Court of Appeals*, 796 F.Supp.2d 164 (D.D.C. 2011).

achievement level, not just one that might be good enough for her to pass." The costliness of the proposed accommodation did not trouble the court in light of the multi-million dollar operating budget of the testing company.

### Aids Required for Accommodation

The aids required to be provided as accommodations to the disabled are not limited to those specified in the statute or the regulations and should advance as technology advances. In *Enyart*, the Ninth Circuit noted that a test provider which offers some or all of the aids listed in the regulations does not necessarily fulfill its requirement as a matter of law.[13] The Court observed that "assistive technology is not frozen in time: as technology advances, testing accommodations should advance as well," and aids should "keep pace with the rapidly changing technology of the times."[14] For example, in addition to the screen-reading software that the court ordered be provided to the plaintiff in *Bonnette*, courts have ordered that other testing entities provide audio CDs, a separate room, rest breaks, extra time, and use of spell check.

It is important to note, however, that "nothing in the ADA itself or its implementing regulations dictates that a disabled individual *must* be provided with the type of auxiliary aid or service he requests."[15] An individual's request "need not be honored if 'another effective means of communication exists'."[16] Effectiveness is not judged on an absolute scale, but rather it is a fact-based "contextual determination." Additionally, an individual must provide adequate advance notice of his need for accommodations.[17]

### Who "Offers" an Exam?

To be regulated under Title III of the ADA, an entity must "offer" the examination. Courts have again broadly interpreted that language, holding that any entity that exercises control over the manner in which the examination is given can be considered to "offer" the exam.

In *Bonnette* and other similar cases against the entity that designs the bar examinations, NCBE claimed only to sell the testing materials and contended it did not "offer" the bar exam within the meaning of the ADA. Rather, NCBE argued that the state courts that required the examination for admission to practice in their jurisdictions were the entities that "offered" the exam. Courts have rejected that argument, holding that if NCBE "exercises control over the manner in which the examination is given, it is subject to [the ADA regulations]." However, in *Binno v. American Bar Association*,[18] the district court granted the American Bar Association's motion to dismiss an ADA accommodation claim against it because it merely reviewed the LSAT examination, but did not administer, develop, or control the format of the test.

In sum, any entity that exercises control over the manner in which a credentialing exam is taken "offers" the exam, and is required under Title III of the ADA to administer the exam so as to "best ensure" that the examination results accurately reflect a disabled individual's aptitude or achievement level rather than a disability by providing accommodations and technologically appropriate aids. Private entities that offer



[13] The regulation mentions examples of assistive devices that entities may offer to individuals with disabilities, including "taped texts, interpreters or other effective methods of making orally delivered materials available to individuals with hearing impairments, Brailled or large-print texts or qualified readers for individuals with visual impairments and learning disabilities, classroom equipment adapted for use by individuals with manual impairments, and other similar services and actions."

[14] *Enyart*, 630 F.3d at 1163-64.

[15] *Burkhart v. Wash. Metro. Area Transit Auth.,* 112 F.3d 1207, 1213 (D.C. Cir. 1997).

[16] *Id*. at 1213.

[17] See *Shaywitz v. American Board of Psychiatry and Neurology*, 848 F.Supp.2d 460 (S.D.N.Y. 2012).

[18] 2012 WL 4513617 (E.D. Mich. 2012).

**Advisory** Nonprofit Organizations

licensure, certification, or credentialing courses or examinations must therefore ensure that they have developed and follow careful procedures to meet the needs of individuals with disabilities who seek to take their examinations or courses.

*We would like to thank our Summer Associate Chris Leuchten for his contribution to the advisory.*

If you have any questions about the content of this advisory, please contact the Pillsbury attorney with whom you regularly work, or the authors below.

Jerald A. Jacobs (bio)
Washington, DC
+1.202.663.8011
jerry.jacobs@pillsburylaw.com

Julia E. Judish (bio)
Washington, DC
+1.202.663.9266
julia.judish@pillsburylaw.com

Dawn Crowell Murphy (bio)
Washington, DC
+1.202.663.8043
dawn.crowell@pillsburylaw.com

This publication is issued periodically to keep Pillsbury Winthrop Shaw Pittman LLP clients and other interested parties informed of current legal developments that may affect or otherwise be of interest to them. The comments contained herein do not constitute legal opinion and should not be regarded as a substitute for legal advice.
© 2014 Pillsbury Winthrop Shaw Pittman LLP. All Rights Reserved.