# EXHIBIT 37

# CONFIDENTIALITY OF MENTAL HEALTH RECORDS IN FEDERAL COURTS: THE PATH BLAZED BY *SABREE V. UNITED BROTHERHOOD OF CARPENTERS & JOINDERS OF AMERICA, LOCAL NO. 33*

## Sherry L. Ruschioni[*]

### I.   INTRODUCTION

In civil actions alleging emotional distress damages, evidence of a plaintiff's mental health before and after the event at issue may provide an element of proof for the plaintiff and an important discovery tool for the defense. If a plaintiff alleges a specific, psychiatric injury resulting from the defendant's actions, there is generally no dispute that his or her mental health records[1] may be the subject of discovery, if relevant. This Article addresses only those cases in which a plaintiff alleges "garden-variety" emotional distress damages in federal court—those in which neither a psychic injury nor a psychiatric disorder is alleged to have resulted from the defendant's actions.[2] The mental health field is not an exact science. The subjectivity of evidence discovered through a plaintiff's mental health treatment records may be easily manipulated in a legal dispute. Therefore, mental health records may become wholly determinative to the outcome of

---

[*] Associate, Weisman & Associates, P.C., in Boston, Massachusetts. Ms. Ruschioni specializes in the representation of plaintiffs in complex tort cases, including products liability, education, civil rights, and general litigation. Prior to attending law school, Ms. Ruschioni worked as a mental health therapist, specializing in the counseling of children, adolescents and families.

[1].   For the purposes of this Article, "mental health records" include recordings by all medical and nonmedical mental health therapy professionals taken during the course of mental health treatment.

[2].   *See* Sabree v. United Bhd. of Carpenters & Joinders of Am., Local No. 33, 126 F.R.D. 422, 426 (D. Mass. 1989) [hereinafter *Sabree*].

a civil suit[3] in which a plaintiff alleges garden-variety emotional distress damages.

Mental health treatment takes many forms, ranging from hospitalization for major depression, to weekly sessions with a psychologist for treatment relating to childhood abuse, to attending family therapy focusing on the treatment of another family member. Most individuals receiving some form of mental health treatment expect that communications with their psychotherapist[4] will remain private and confidential. However, without the recognition of a psychotherapist-patient privilege to protect such confidential communications in courts, a plaintiff's privacy interests may be invaded by a defendant seeking discovery of the plaintiff's mental health records as a defense to the plaintiff's garden-variety emotional distress claim.

The unsuspecting plaintiff may face a potential torrent of discovery requests from the defendant. The plaintiff then finds himself in the position of producing his mental health records in order to prove that his emotional distress results from the defendant's actions and not some other difficulty in the plaintiff's life.[5] Had the plaintiff known that his mental health records were not, in fact, protected from discovery in a federal court, he may never have sought treatment for his mental health issues.

Prior to Magistrate Judge Joyce Alexander's landmark opinion in *Sabree v. United Brotherhood of Carpenters & Joinders of America, Local No. 33*,[6] federal courts, including the First Circuit, had previously declined to decide whether a psychotherapist-patient privilege existed under federal common law.[7] Without the recognition of a psychotherapist-patient privilege, a plaintiff alleging an emotional distress claim in federal court[8]

---

3.     The issue of the discovery of mental health records has become widely disputed in employment discrimination cases since the enactment of the Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071, 42 U.S.C. § 102 (codified as amended at 42 U.S.C. § 1981a), providing compensatory damages including "future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses." § 1981(b)(3). While much of the available literature and current case law address the discovery of mental health records in employment discrimination cases, this Article broadens the focus to include most civil actions, finding the underlying theories applicable to other areas of the law.

4.     The term "psychotherapist" is used in this Article as it is the mental health professional most often referred to in the relevant case and statutory law.

5.     *See generally* Steven B. Bisbing, *Challenging Psychological Damages Claims in Civil Litigation*, 59 DEF. COUNS. J. 358 (1992).

6.     126 F.R.D. 422 (D. Mass. 1989).

7.     *See* United States v. Barrett, 766 F.2d 609, 616 n.8 (1st Cir. 1985).

8.     At the time of Judge Alexander's decision in *Sabree*, the Massachusetts Legislature had previously enacted a statutory psychotherapist-patient privilege. *See* MASS. GEN. LAWS ch. 233, § 20B (2002).

was open to having his or her mental health records open to discovery by defendants. Judge Alexander's ground-breaking opinion in *Sabree* influenced courts throughout the nation, including the United States Supreme Court, in establishing and shaping the recognition of the psychotherapist-patient privilege, providing a measure of protection for plaintiffs in maintaining the confidentiality of their mental health records.

## II.   THE ANALYSIS UNDERLYING THE RECOGNITION OF THE FEDERAL COMMON LAW PSYCHOTHERAPIST-PATIENT PRIVILEGE: *SABREE V. UNITED BROTHERHOOD OF CARPENTERS & JOINDERS OF AMERICA, LOCAL NO. 33*

In *Sabree*, the plaintiff sought lost wages damages in federal court pursuant to 42 U.S.C. § 2000e and Massachusetts General Laws chapter 151B, section 4, alleging that the defendant union (Union) had "unlawfully denied him membership because he [was] black."[9] Sabree also sought damages for emotional distress under Massachusetts law, because "42 U.S.C. § 2000e does not provide for emotional distress damages."[10] The Union sought an order from Judge Alexander to compel the production of Sabree's mental health treatment records pursuant to Federal Rule of Civil Procedure 34.[11] Sabree opposed the production of his mental health treatment records, arguing that they were confidential communications within the purview of the psychotherapist-patient privilege as established by Massachusetts General Laws chapter 233, section 20B.[12]

---

9.   *Sabree*, 126 F.R.D. at 423.

10.   *Id.* at 423 n.1.

11.   *See id.* at 423.

12.   Mass. Gen. Laws ch. 233, § 20B provides in relevant part:

Except as hereinafter provided, in any court proceeding and in any proceeding preliminary thereto and in legislative and administrative proceedings, a patient shall have the privilege of refusing to disclose, and of preventing a witness from disclosing, any communication, wherever made, between said patient and a psychotherapist relative to the diagnosis or treatment of the patient's mental or emotional condition. . . .

The privilege granted hereunder shall not apply to any of the following communications:

. . . .

(c) In any proceeding, except one involving child custody . . . in which the patient introduces his mental or emotional condition as an element of his claim or defense, and the judge or presiding officer finds that it is more important to the interests of justice that the communication be disclosed than that the relationship between patient and psychotherapist be protected.

*Id.*; *see also Sabree*, 126 F.R.D. at 423 n.2.

The Union contended that, whether analyzed under federal or state law, it was entitled to the production of Sabree's mental health records.[13] Under Federal Rule of Evidence 501, the Union argued, the federal rules of privilege should apply to both Sabree's federal- and state-based claims. Because federal common law had not previously established the psychotherapist-patient privilege asserted by Sabree, the Union contended that the court must not recognize such a privilege.[14] However, even assuming, *arguendo*, that the court found the state-based privilege to be applicable, the Union asserted that it was inapplicable in the case before the court, because Sabree had placed his mental or emotional condition at issue simply by seeking emotional distress damages.[15]

Judge Alexander began her analysis by noting that under Federal Rule of Civil Procedure 26(b)(1), parties may obtain discovery concerning any matter that is relevant but not privileged to the subject matter at issue in the action.[16] In addition, Federal Rule of Evidence 501 governs evidentiary privileges in the federal courts. Therefore, Judge Alexander agreed with the Union's contention that under Federal Rule of Evidence 501, as in the case before the court, "evidence that is the subject of an asserted privilege is relevant to both federal and state law claims, federal law governs the privilege."[17] Judge Alexander went further, looking to the Senate's report accompanying the Senate's version of Rule 501, which supported the conclusion that federal law would govern the psychotherapist-patient privilege by stating that "it is also intended that the federal law of privileges should be applied with respect to pendent state law claims when they arise in a federal question case."[18] Therefore, Judge Alexander held that federal law governed the psychotherapist-patient privilege asserted by Sabree.[19]

However, Judge Alexander disagreed with the Union, which assumed that because Congress had not specifically adopted a psychotherapist-patient privilege, a federal court would be precluded from recognizing such a privilege.[20] Judge Alexander, turning to the instruction of Federal Rule of Evidence 501, recognized that a privilege "shall be governed by the principles of the common law as they may be interpreted by the courts of

---

13.    *Sabree*, 126 F.R.D. at 424.

14.    *See id.*

15.    *See id.*

16.    *See id.*

17.    *Id.* (citing First Fed. Sav. & Loan Ass'n of Pittsburgh v. Oppenheim, Appel, Dixon & Co., 110 F.R.D. 557, 560 (S.D.N.Y. 1986)).

18.    *Id.* at 424 (quoting S. Rep. No. 93-1277, *reprinted in* 1974 U.S. CODE, CONG. & ADMIN. NEWS 7051, 7059 n.16).

19.    *See Sabree*, 126 F.R.D. at 424.

20.    *Id.*

the United States in light of reason and experience."[21] Moreover, noted Judge Alexander, the express terms of Rule 501 "envision[ ] the flexible development of the federal common law of privilege on a case-by-case basis."[22] In addition, concerning the psychotherapist-patient privilege, the Senate Report to Rule 501 stated in relevant part:

> It should be clearly understood that, in approving this general rule as to privileges, the action of congress should not be understood as disapproving any recognition of a psychiatrist-patient . . . or any other of the enumerated privileges contained in the Supreme Court Rules. Rather, our action should be understood as reflecting the view that the recognition of a privilege based on a confidential relationship and other privileges should be determined on a case-by-case basis.[23]

Given this foundation, Judge Alexander concluded that a federal court, despite the fact that Congress had not specifically adopted a psychotherapist-patient privilege, and that the First Circuit had previously declined to decide whether such a privilege existed under federal common law,[24] had the authority to recognize such a privilege on a case-by-case basis.[25]

In deciding whether a psychotherapist-patient privilege was applicable to the case before the court, Judge Alexander noted that the court must balance the federal interests involved with the "rationale and comparative strength" of the evidentiary privilege that Sabree claimed.[26] In addition, a federal court must recognize state privileges in instances where "no substantial cost to federal substantive and procedural policy" would result in order to encourage comity between federal and state law.[27] This determination required a four-prong analysis in order to ensure that federal and state interests would remain balanced.[28] First, the court must determine whether the state courts would recognize the privilege.[29] Second, the court should consider whether the state-based asserted privilege would be

21.   *Id.* (quoting FED. R. EVID. 501).

22.   *Id.* (quoting *In re* Prod. of Records to the Grand Jury, 618 F. Supp. 440, 442 (D. Mass. 1985); United States v. Gillock, 445 U.S. 360, 367 (1980)).

23.   *Id.* at 424-25 (quoting S. Rep. No. 93-1277, *reprinted in* 1974 U.S. CODE, CONG. & ADMIN. NEWS 7051, 7059).

24.   *Id.* at 425 (citing United States v. Barrett, 766 F.2d 609, 618 n.8 (1st Cir. 1985)).

25.   *Sabree*, 126 F.R.D. at 425.

26.   *Id.* (citing *In re* Prod. of Records to the Grand Jury, 618 F. Supp. 440, 442 (D. Mass. 1985)).

27.   *Id.* (quoting Lora v. Bd. of Educ., 74 F.R.D. 565, 576 (E.D.N.Y. 1977)).

28.   *Id.*

29.   *Id.*

*NEW ENGLAND LAW REVIEW*            [Vol. 38:4

"intrinsically meritorious" in the court's independent judgment.[30] Third, the court must assess whether the asserted privilege should be "sedulously fostered."[31] Finally, the court must determine whether the injury that would result from the disclosure of the privileged communications would be greater than the benefit gained.[32] When applied to the case before the court, Judge Alexander held that the federal common law of privilege should indeed recognize the evidentiary privilege of the Massachusetts psychotherapist-patient privilege raised by Sabree.[33]

Judge Alexander first noted that the courts of Massachusetts would in fact recognize Sabree's psychotherapist-patient privilege because the Legislature of Massachusetts had expressly enacted such a statutory privilege.[34] Next, Judge Alexander opined that the rationale of the psychotherapist-patient privilege was clear: "[U]nlike the patient with physical complaints who will consult a physician regardless of whether confidentiality is guaranteed, a neurotic or psychotic individual may seek help only if he is assured that his confidences will not be divulged, even in a courtroom."[35]

Judge Alexander also determined that the interests protected by the court's recognition of a psychotherapist-patient privilege extended further than the particular case before the court.[36] Such a privilege would protect the interests of the person seeking mental health treatment, as well as society's interest in ensuring mental health for its members.[37] Given the importance and wide range of the interests protected, as well as the Legislature of Massachusetts enacting the psychotherapist-patient privilege, Judge Alexander explained that it was "readily apparent that the psychotherapist-patient privilege is 'intrinsically meritorious' and should be 'sedulously fostered.'"[38]

Finally, Judge Alexander weighed the importance of Sabree's asserted privacy interests with the defendant's need for the privileged information.[39] The Union asserted that Sabree's communications with his psychotherapist

---

30.    *Id.*

31.    *Sabree*, 126 F.R.D. at 425.

32.    *Id.*

33.    *See id.* at 426.

34.    *Id.* (citing MASS. GEN. LAWS ch. 233, § 20B (2000); Commonwealth v. Kobrin, 479 N.E.2d 674, 680-82 (Mass. 1985)).

35.    *Id.* at 425 (citing Jennings v. D.H.L. Airlines, 101 F.R.D. 549, 551 (N.D. Ill. 1984), *quoting* 2 J. WEINSTEIN & M. BERGER 504[3] at 504-15-16 (1982)).

36.    *Id.*

37.    *Sabree*, 126 F.R.D. at 425 (citing *In re* Zuniga, 714 F.2d 632 (6th Cir. 1983) (citing cases and authorities)).

38.    *Id.* at 425.

39.    *Id.*

were necessary to demonstrate that his emotional distress damages may be attributed to causes other than those associated with the Union.[40] Plaintiff contended that the injury to his privacy interests resulting from disclosure of his communications with his psychotherapist would outweigh the Union's need for such evidence.[41] In addition, Judge Alexander conducted an *in camera* review of Sabree's mental health records, concluding not only that the injury to Sabree's privacy interests would overwhelmingly outweigh the benefits that the Union may find if the court compelled disclosure, but that the records were entirely irrelevant to Sabree's claims.[42] Therefore, Judge Alexander held that "in [sic] light of reason and experience," the psychotherapist-patient privilege asserted by Sabree was indeed applicable.[43]

Although Judge Alexander held that the psychotherapist-patient privilege applied to Sabree's mental health records, the court also found no applicable exception to that privilege.[44] Judge Alexander held that Sabree did not put his mental health in issue simply by making a "garden-variety" claim for emotional distress, as opposed to a claim involving a "psychic injury or psychiatric disorder" as a result of the alleged discrimination he suffered.[45] Therefore, Judge Alexander denied the Union's motion to compel, protecting the confidentiality of Sabree's mental health records, holding that he had not placed his mental condition at issue.[46]

---

40.  *Id.* Judge Alexander opined that the case upon which the Union relied in asserting its argument, *Flora v. Hamilton*, 81 F.R.D. 576 (M.D.N.C. 1978), was entirely distinguishable. In *Flora*, the court allowed discovery of the plaintiff's army medical file, which included notes from an interview the plaintiff had with a psychiatrist prior to the time the defendant discharged the plaintiff from employment. The *Flora* court held that such information was relevant to discovery where the plaintiff's ability to perform and his fitness for duty were directly in dispute. In *Sabree*, Judge Alexander noted that the plaintiff's ability to perform his duties as a carpenter were not disputed. *Sabree*, 126 F.R.D. at 425 n.3.

41.  *Sabree*, 126 F.R.D. at 426. Plaintiff cited to *Franklin Publishing Co., Inc. v. Mass. Commission Against Discrimination*, 519 N.E.2d 798 (Mass. App. Ct. 1988), which Judge Alexander found to be applicable to his claims. *See Sabree*, 126 F.R.D. at 426. Judge Alexander noted that the *Franklin* court held that under Massachusetts's law, testimony by a psychotherapist is not necessary to establish emotional distress damages in an employment discrimination suit. *See id.*

42.  *Sabree*, 126 F.R.D. at 426 (noting that Sabree's communications with his psychotherapist related to his private, sexual issues and had he known that his privacy interests may be disclosed, he may not have sought mental health treatment).

43.  *Id.* at 426 (citing FED. R. EVID. 501).

44.  *Id.*

45.  *Id.* (distinguishing Miller v. Colonial Refrigerated Transp. Inc., 81 F.R.D. 741 (M.D. Pa. 1979), in which the plaintiff claimed personal injuries including post traumatic neurosis).

46.  *Id.*

### III.  *JAFFEE V. REDMOND*: ADOPTION OF THE PSYCHOTHERAPIST-PATIENT PRIVILEGE UNDER FEDERAL COMMON LAW, MIRRORING JUDGE ALEXANDER'S ANALYSIS IN *SABREE*.

Following in the footsteps of Judge Alexander's analysis of the applicability of the psychotherapist-patient privilege in federal courts in *Sabree*, the United States Supreme Court addressed the same issue in *Jaffee v. Redmond*.[47] The opinions of both *Jaffee* and *Sabree* were based upon motions to compel a party's psychotherapy records, and both courts determined that those records were confidential and privileged.[48] In *Sabree*, Judge Alexander extensively analyzed the interests implicated by the psychotherapist-patient privilege based on the foundation that federal common law at the time did not recognize the privilege that the plaintiff asserted pursuant to Massachusetts's statutory law. The United States Supreme Court's opinion in *Jaffee* recognized an absolute privilege regarding communications between psychotherapists and their patients, explicitly establishing a federal common law psychotherapist-patient privilege.[49] By adopting a federal common law psychotherapist-patient privilege, the Supreme Court rendered the portion of Judge Alexander's analysis in *Sabree* concerning the application of a *state* privilege in a federal case null. However, the language and spirit of Judge Alexander's analysis of the interests involved in the determination of recognizing the psychotherapist-patient privilege resonates within the Supreme Court's analysis of this issue in *Jaffee*.

In *Jaffee*, the petitioner[50] alleged that the defendant police officer had used excessive force in the shooting of the decedent; thereby violating the decedent's constitutional rights.[51] After the shooting, the defendant police officer participated in extensive mental health counseling.[52] Petitioner filed a motion to compel, seeking access to the defendant's psychotherapist's notes regarding the substance of the therapy sessions.[53] The Seventh Circuit held that the trial court had committed reversible error in not giving proper protection to the communications between the defendant and the

---

47.   518 U.S. 1 (1996).

48.   *Id.* at 15; *Sabree*, 126 F.R.D. at 426.

49.   *Jaffee*, 518 U.S. at 15.

50.   Petitioner was the administrator of the estate of the decedent. *See id.* at 4.

51.   *See id.* at 5.

52.   *See id.*

53.   *See id.*

defendant's psychotherapist.[54] Although the Seventh Circuit recognized a federal psychotherapist-patient privilege, it was a qualified privilege that applied if "in the interests of justice, the evidentiary need for the disclosure of the contents of a patient's counseling sessions outweighs that patient's privacy interests."[55] The Supreme Court explicitly affirmed the Seventh Circuit's acknowledgement of a federal common law psychotherapist-patient privilege.[56]

The Supreme Court then turned to the outstanding issue: "whether a privilege protecting confidential communications between a psychotherapist and her patient 'promotes sufficiently important interests to outweigh the need for probative evidence. . . .'"[57] In its analysis of the importance of the privacy interests protected by the recognition of a psychotherapist-patient privilege, the Supreme Court echoed Judge Alexander's analysis in *Sabree*. The Supreme Court compared the psychotherapist-patient privilege with both the spousal and attorney-client privileges, stating that all three were "rooted in the imperative need for confidence and trust."[58] The Court distinguished psychotherapy from medical treatment, which can be based on objective information, physical examinations, and diagnostic tests.[59] Psychotherapy depends upon the relationship between the therapist and patient, which allows the patient to willingly and completely disclose all facts and feelings, no matter how personal or intimate.[60] The *Jaffee* Court noted that because of the sensitive nature and the possibility of disclosure of communications between the therapist and patient may occur, it may inhibit patients from speaking freely, thereby making successful mental health treatment difficult, if not impossible.[61]

Given these considerations, the Supreme Court held that the psychotherapist-patient privilege protects important, private interests.[62] Further, the psychotherapist-patient privilege serves a public interest of "transcendent importance" by encouraging those who need psychotherapy to seek appropriate treatment.[63] The Court also reasoned that the evidentiary price from recognizing such a privilege would be low, since if the privilege were rejected, communications between psychotherapists and

---

54. *See id.* at 6-7 (citing Jaffee v. Redmond, 51 F.3d 1346, 1355 (7th Cir. 1995)).

55. *Jaffee*, 518 U.S. at 7 (quoting *Jaffee*, 51 F.3d at 1357).

56. *Id.* at 7-8.

57. *Id.* at 9-10 (quoting Trammel v. United States, 445 U.S. 40, 51 (1980)).

58. *Id.* at 10 (quoting *Trammel*, 445 U.S. at 51).

59. *Id.* at 10.

60. *See id.*

61. *See Jaffee*, 518 U.S. at 10.

62. *See id.* at 11.

63. *Id.*

patients would be "chilled,"[64] therefore, much of the evidence sought would not exist, serving no greater truth-seeking function than if it had been communicated and privileged.[65]

The Supreme Court explicitly rejected the balancing test employed by the Seventh Circuit.[66] The Court stated:

> Making the promise of confidentiality contingent upon a trial judges later evaluation of the relative importance of the patient's interest in privacy and the evidentiary need for disclosure would eviscerate the effectiveness of the privilege . . . . [I]f the purpose of the privilege is to be served, the participants in the confidential conversation "must be able to predict with some degree of certainty whether particular discussions will be protected. An uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all."[67]

In *Jaffee*, the defendant's version of the facts of the case conflicted significantly with the testimony of plaintiff's witnesses, therefore, the defendant's prior statements to her therapist regarding the event at issue would likely be highly relevant.[68] However, the Supreme Court held the psychotherapist-patient privilege could not be qualified by considerations of evidentiary need.[69]

The Supreme Court did recognize that the psychotherapist-patient privilege, like other privileges, could be waived by the patient-plaintiff.[70] However, the Court did not provide guidance concerning specific parameters in determining when and how the privilege might be waived. The only example of a situation in which the psychotherapist-patient privilege may be waived provided by the Supreme Court was one in which a serious threat of harm to the patient or others may be avoided only by the therapist's disclosing pertinent privileged communications.[71] Importantly, the Court did not address the mental-state-at-issue waiver addressed by Judge Alexander in *Sabree*, in her determination that the plaintiff did not put his mental state at issue, or as found in Massachusetts General Laws chapter 233, section 20B.

The Supreme Court's recognition of a federal common law

---

64.     *Id.* at 11-12.

65.     *See id.* at 12.

66.     *Id.* at 17.

67.     *Jaffee*, 518 U.S. at 17-18 (quoting Upjohn Co. v. United States, 449 U.S. 383, 393 (1981)).

68.     *Id.* at 5-6.

69.     *Id.* at 17.

70.     *See id.* at 15 n.14.

71.     *See id.* at 18 n.19.

psychotherapist-patient privilege in *Jaffee* rejected the use of a test balancing the individual's interest in protecting the privacy of his privileged mental health records against the interest in ensuring the discovery of all relevant evidence. However, in the aftermath of *Jaffee*, *Sabree*'s holding that a garden-variety claim of emotional distress alone is not sufficient to put a party's mental health at issue prevails. Therefore, a plaintiff making a garden-variety emotional distress claim would not automatically waive his protection from the psychotherapist-patient privilege in maintaining the confidentiality of his communications during mental health treatment. Rather, a federal court must first determine whether or not the plaintiff placed his mental state in controversy before allowing discovery of privileged mental health records.

### IV.  THE ECHO OF JUDGE ALEXANDER'S ANALYSIS IN *SABREE* HEARD IN THE FIRST CIRCUIT: *VANDERBILT v. TOWN OF CHILMARK*.

A significant District Court opinion by then-Chief Judge Tauro concerning the psychotherapist-patient privilege in the First Circuit followed Judge Alexander's decision in *Sabree* and recognition of the federal common law privilege by the Supreme Court in *Jaffee*. In *Vanderbilt v. Town of Chilmark*,[72] the plaintiff was an employee of the defendant town, claiming that she had been subject to discrimination because of her gender.[73] The plaintiff sued the town and town officials, alleging violations of both state and federal discrimination and retaliation laws.[74] The defendants sought to compel production of the plaintiff's mental health records, and to depose the plaintiff and any mental health professionals who had treated her.[75] The plaintiff filed a motion for a protective order, claiming that all information regarding the issues of her psychiatric care, counseling, and psychotherapy were privileged.[76] The defendants contended that by simply seeking damages for emotional distress, the plaintiff had placed her mental state at issue, thereby waiving the psychotherapist-patient privilege.[77]

While the District Court noted that it was unclear as to whether the plaintiff actually put her mental state at issue merely by claiming emotional distress damages, the court assumed, for the purposes of argument, that she

---

72.   174 F.R.D. 225 (D. Mass. 1997).

73.   *Id.* at 226.

74.   *See id.*

75.   *See id.*

76.   *See id.*

77.   *See id.* at 228.

had.[78] The court acknowledged the Supreme Court's statement in *Jaffee* that the psychotherapist-patient privilege could be waived by the patient.[79] A waiver could occur in several ways: (1) by the patient explicitly waiving it; (2) through disclosure of privileged material; or (3) by the plaintiff's use of the privileged material as evidence on her behalf.[80]

Even given these considerations, the court held that the plaintiff did not waive the privilege merely by placing her mental state at issue.[81] The court relied, in part, on the statement in *Jaffee* that "[i]f the purpose of the privilege is to be served, the participants in the confidential conversation 'must be able to predict with some degree of certainty whether particular discussions will be protected.'"[82] Noting that courts confronting the issue of the psychotherapist-patient privilege have reached very different conclusions as to when and how patients actually place their mental condition at issue,[83] the *Vanderbilt* court reasoned that under the mental-state-at-issue test, a patient in psychotherapy would not know with certainty that the communication would later be privileged.[84] Therefore, the court concluded that the uncertainty inherent in the mental-state-at-issue test would "eviscerate the effectiveness of the privilege" that the Supreme Court feared in *Jaffee*.[85]

Further, citing Judge Alexander's opinion in *Sabree*, the *Vanderbilt* court explicitly stated that merely putting one's mental or emotional state at issue does not waive the psychotherapist-patient privilege.[86] The court clarified that pleading emotional injury does not automatically waive the privilege.[87] Such pleading merely makes the plaintiff's communications with her psychotherapist potentially relevant, but this potential relevance does not lead to automatic waiver of the privilege.[88] The court stated that after *Jaffee*, the privilege for psychotherapist-patient communications does not depend on balancing the patient's interest in nondisclosure against the potential value of the communications. Instead, the privilege applies and disclosure cannot be compelled, even if the communications would be extremely useful to the finder of fact.

---

78.   *Vanderbilt*, 174 F.R.D. at 228 n.3.

79.   *Id.* at 228.

80.   *See id.*

81.   *See id.*

82.   *Id.* at 227 (quoting *Jaffee*, 116 U.S. at 18).

83.   *See id.* at 229.

84.   *See Vanderbilt*, 174 F.R.D. at 229.

85.   *Id.* at 229 (citing *Jaffee*, 518 U.S. at 17-18).

86.   *See id.* at 228; *see also id.* at 228 n. 3 (citing *Sabree*, 126 F.R.D. 422, 426 (D. Mass. 1989)).

87.   *See id.* at 229.

88.   *Id.*

*Vanderbilt* acknowledged Judge Alexander's analysis in *Sabree*,[89] decided prior to *Jaffee*, in which that court held that the plaintiff did not place his mental condition at issue by "[making] a 'garden-variety' claim of emotional distress, not a claim of psychic injury or psychiatric disorder resulting from the alleged discrimination."[90] In concluding, the court held that so long as the plaintiff did not call any person who had provided her with psychotherapy services as a witness, nor introduce evidence of the substance of any communication with such a person, the communication between the plaintiff and her psychotherapist would be privileged.[91] Therefore, the court allowed plaintiff's motion for a protective order and denied defendants' motion to compel discovery of plaintiff's mental health records, holding that plaintiff had not waived the psychotherapist-plaintiff privilege recognized by federal common law.[92]

## V.   COURTS THROUGHOUT THE FIRST CIRCUIT AND BEYOND CONTINUE TO APPLY JUDGE ALEXANDER'S ANALYSIS IN *SABREE* TO DISCOVERY ISSUES CONCERNING THE FEDERAL COMMON LAW PSYCHOTHERAPIST-PATIENT PRIVILEGE.

Upon the foundation of Judge Alexander's analysis of the interests underlying the recognition of a federal common law psychotherapist-patient privilege in *Sabree*, and the adoption of such a privilege by the United States Supreme Court in *Jaffee*, federal common law across the country continues to develop concerning the issue of waiver by a plaintiff placing his or her mental state in issue. The courts of the First Circuit often cite to and follow Judge Alexander's reasoning in making this determination.[93]

Courts have not only cited *Sabree* in their opinions concerning whether a privilege exists, but have also adopted the language and analysis of the opinion in determining whether a party has placed his mental state at issue.

---

89.    *Sabree*, 126 F.R.D. at 426.

90.    *Vanderbilt*, 174 F.R.D. at 228 n.3 (citing *Sabree*, 126 F.R.D. at 426 (D. Mass. 1989)).

91.    *Id.* at 230.

92.    *Id.*

93.    *See, e.g.*, Rankin v. Liberty Mutual Ins. Co., 1995 U.S.App. LEXIS 6150, *5 n.3 (1st Cir. 1995). This unpublished opinion of the First Circuit Court of Appeals applies *Sabree* to determine that, unlike *Sabree*, the plaintiff in *Rankin* did make a separate tort claim for emotional distress; therefore, the plaintiff's mental state was at issue. *See id.*; *see also* Deluca v. Gateways Inn, Inc., 166 F.R.D. 266, 267 (D. Mass. 1996) (citing *Sabree* as a First Circuit opinion that recognized a psychotherapist-patient privilege); Smith v. Alice Peck Day Mem'l Hosp., 148 F.R.D. 51, 54 (D.N.H. 1993) (looking to *Sabree* in applying a state privilege in a federal court).

For example, in *Sorenson v. H&R Block, Inc.*,[94] the District Court cited *Sabree* for the proposition that "Massachusetts courts have held that a plaintiff seeking damages for emotional distress does not thereby waive the privilege" merely by alleging emotional distress.[95] The *Sorenson* court proceeded to utilize Judge Alexander's language and analysis in distinguishing a "garden-variety" claim for emotional distress: "One of the rationales underlying this body of law is that alleging the garden variety of emotional distress and mental anguish does not require expert testimony while claims involving mental or psychological injury or psychic damage require the expert testimony of a mental health professional."[96] In addition to the First Circuit, Judge Alexander's analysis underlying the determination of whether a party's mental state is at issue, and therefore whether his mental health records should remain confidential and privileged has been referenced by nearly every other federal circuit.[97]

---

94.  197 F.R.D. 199 (D. Mass. 2000).

95.  *Id.* at 203.

96.  *Id.* at 204.

97.  *See, e.g.*, Bowen v. Parking Auth., 214 F.R.D. 188, 193 (D.N.J. 2003) (noting that plaintiff must allege more than a garden-variety emotional distress claim for mental state to be at issue); Nolan v. Int'l Bhd. of Teamsters Health & Welfare & Pension Funds, Local 705, 199 F.R.D. 272, 276 (N.D. Ill. 2001) (claiming emotional distress alone does not automatically place mental state at issue); Houghton v. M&F Fishing, Inc., 198 F.R.D. 666, 668 (S.D.Cal. 2001) (noting that simply alleging an emotional distress claim is not sufficient to place mental state in controversy); Stevenson v. Stanley Bostitch, Inc., 201 F.R.D. 551, 553 (N.D.Ga. 2001) (citing *Sabree* as included in the majority of courts recognizing that garden-variety emotional distress claims alone do not put a party's mental state at issue); Fritsch v. City of Chula Vista, 187 F.R.D. 614, 625 (S.D.Cal. 1999) (finding that garden-variety emotional distress claims alone do not put mental state in controversy); Fox v. Gates Corp., 179 F.R.D. 303, 307 (D. Colo. 1998) (noting that absent a separate claim for emotional distress, mental state is not automatically at issue); Thiessen v. GE Capital Corp., 178 F.R.D. 568, 571 (D. Kan. 1998) (finding that mental state was at issue as plaintiff alleged more than a garden-variety emotional distress claim); Burrell v. Crown Cent. Petroleum, 177 F.R.D. 376, 380 (E.D.Tex. 1997) (finding that defendant was not entitled to the production of plaintiffs' mental health records, merely on the basis that mental anguish was an element of plaintiffs' racial discrimination claims); Lahr v. Fulbright Jaworski, L.L.P., 164 F.R.D. 204, 210 (N.D.Tex. 1996) (distinguishing *Sabree* from the case before the district court in which plaintiff claimed intentional infliction of emotional distress as the court held that plaintiff's mental state was placed at issue); O'Quinn v. New York Univ. Med. Ctr., 163 F.R.D. 226, 228 (S.D.N.Y. 1995) (noting that absent an independent claim for emotional distress or an allegation of severe emotional distress, a party's mental state is not at issue); Curtis v. Express, Inc., 868 F. Supp. 467, 469 (N.D.N.Y. 1994) (holding that allegations of garden variety emotional distress do not put plaintiff's mental state at issue); Bridges v. Eastman Kodak Co., 850 F. Supp. 216, 222 (S.D.N.Y. 1994) (holding that an emotional distress claim alone is insufficient to put a party's mental state at issue, compelling a psychiatric examination); Hodges v. Keane, 145 F.R.D. 332, 335 (S.D.N.Y. 1993) (finding that plaintiff had affirmatively placed his mental state at issue); Fittano v.

### VI.  CONCLUSION

The confidentiality of the mental health records of a plaintiff alleging emotional distress damages in federal court has received greater protection following Judge Alexander's analysis of the interests underlying a federal court's recognition of the psychotherapist-patient privilege in *Sabree*. In addition, Judge Alexander's recognition that a garden-variety emotional distress claim alone does not put a party's mental state in controversy continues to afford protection to the privacy interests of plaintiffs not seeking damages for psychiatric trauma. Clearly, Judge Alexander's analysis in *Sabree* has widely influenced the scope of discovery of mental health records in the federal courts. The United States Supreme Court's subsequent recognition of a federal common law psychotherapist-patient privilege further solidified the privacy rights of plaintiffs in protecting the confidentiality of their mental health records from discovery.

As with all privacy rights, the safeguard of the psychotherapist-patient privilege is only as strong as the courts' willingness to find that a plaintiff has not waived his right to privacy by introducing his mental state in controversy. Further development of the matters determining a party's waiver by putting his mental state at issue will be forthcoming in the federal and state courts. Undoubtedly, Judge Alexander's reasoning and analysis in *Sabree* will continue to shape and influence federal and state courts in determining in each case whether the psychotherapist-patient privilege withstands.

---

Children's Advocacy Ctr., 1992 U.S. Dist. LEXIS 17909 (N.D. Ill. 1992) (explaining the rationale underlying the privilege is to encourage plaintiffs to seek treatment without the fear of disclosure of confidential communications).