# EXHIBIT 46

Justia › U.S. Law › Case Law › Federal Courts › District Courts › Texas › Northern District of Texas › 2003 › Rush v. National Bd. of Medical Examiners

# Rush v. National Bd. of Medical Examiners, 268 F. Supp. 2d 673 (N.D. Tex. 2003)

U.S. District Court for the Northern District of Texas - 268 F. Supp. 2d 673 (N.D. Tex. 2003)
June 20, 2003

268 F. Supp. 2d 673 (2003)

James Avery RUSH, IV Plaintiff,

v.

NATIONAL BOARD OF MEDICAL EXAMINERS, Defendant.

No. CIV.A.2:03-CV-140-J.

United States District Court, N.D. Texas, Amarillo Division.

June 20, 2003.

*674 Brad Alan Chapman, Mullin Hoard & Brown, Amarillo, TX, F John Mozola, Mullin Hoard & Brown, Amarillo, TX, for Plaintiff.

Thomas C Riney, Gibson Ochsner & Adkins, Amarillo, TX, for Defendant.

**OPINION AND ORDER**

MARY LOU ROBINSON, District Judge.

Plaintiff James Avery Rush, IV seeks a preliminary injunction requiring the National Board of Medical Examiners to allow him additional time to take the U.S. Medical Licensing Examination, Step I. Plaintiff claims that he is entitled to this reasonable accommodation in taking the Step I examination because he is an individual with a disability as defined by the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq.* Specifically, Plaintiff alleges that he has a

requested reasonable accommodation of twice or double the usual time in which to take the examination. The examination is scheduled for July 2, 2003.

On June 16 and 17, 2003, the Court conducted an evidentiary hearing on Plaintiffs request for a preliminary injunction. After consideration of the motion and the responses thereto, and the evidence and arguments offered at the two-day hearing, and the post-hearing submissions of the parties, the Court grants the preliminary injunction and makes the following findings of fact and conclusions of law.

**Plaintiff**

Plaintiff James Avery "Jave" Rush, IV has a disability, that is, a physical or mental impairment that substantially limits one or more of his major life activities of reading and learning. More specifically, Plaintiffs reading and visual processing skills are below average such that his ability to read and process written information is substantially limited and is below average in comparison to most people as well as persons of his age and educational level. Without accommodation this impairment, rather than other factors such as education or innate ability, substantially limits his ability to read, mentally process and comprehend written words, learn, and take time-limited tests.

Plaintiff, a second year medical student at Texas Tech University School of Medicine, experiences substantial difficulty completing testing tasks within prescribed time limits because of an inability to process written information as quickly as the majority of his peers. This inability to process information efficiently results in significantly reduced test scores on timed exams. Such reduced scores impair his chances of completing his medical education successfully.

Plaintiff is highly motivated. Before his admittance to medical school, he earned a MS in Math with honors from the University of Oklahoma and an MBA in medical services from Texas Tech University. Plaintiff has a history of formal and informal accommodations related to test taking at the middle school, high school, college, and graduate school levels. During high ***675** school he was given extra time to take some examinations, an informal accommodation granted for example to English AP students who wished to stay late after school to finish exams or in-class writing assignments. Math exams in college were not timed; students were allowed to take as much time as they needed to complete math exams. Examinations in his MBA program were designed to be successfully completed within one hour, but students were permitted to take up to three hours to complete an exam. Typically Plaintiff was the last student to complete his examinations.

After two attempts resulted in low scores, Plaintiff asked for and received a formal time accommodation (double time) on his third MCAT exam, a test required for admission into U.S. medical school. With this formal time accommodation Plaintiff was able for the first time to score

accommodation on exams during his medical school education.

At the end of his second year of medical school, Plaintiff requested from the Defendant and was refused a formal time accommodation (double time) to take Step I of the U.S. Medical Licensing Examination. Passage of the Step I exam is required for continuation of a medical school career and for admission into post-second year medical school programs, such as medical residency training and/or medical speciality programs. This suit was filed to achieve that time accommodation from the Defendant.

**USMLE Step I**

Defendant National Board of Medical Examiners (Board) is a non-profit organization chartered in 1915 to design national standards for medical licensing examinations. The Board has developed a medical licensing examination consisting of three separate parts, Steps I, II and III, which is now accepted by all fifty states. At issue in this case at this time is accommodation for the Step I exam.

The United States Medical Licensing Examination, Step I (USMLE Step I), is a timed multiple-choice examination designed to test a person's mastery of the basic science underlying medicine and one's ability to utilize that knowledge. The Step I examination is not graded on a curve; it is a mastery test. Because it is a mastery test, in theory 100% of the persons taking the Step I examination could pass, or fail, each time the test is offered. With a mastery test, the test taker either knows the material and passes the exam, or he does not know the tested-for material and fails the exam. Time constraints for most individuals who take this test are not of major consequence because the majority of medical students possess the reading and processing efficiency needed to work through the test and the set of possible answers within the time constraints that are allowed. This is not true however for individuals with reading disabilities.

The Board has contracted with Prometrics, a national network of computer testing centers, to administer the USMLE Step I exam. As administered, the Step I exam consists of one eight-hour day, broken into seven one-hour blocks or segments plus a one-hour break. During each 60 minute block the examinee is required to read and answer 50 written questions. A typical question requires a person with at least average medical education, knowledge and training about 45 seconds to read with understanding plus additional time to either ascertain the correct answer or to determine that he does not know the correct answer. The ability to rapidly read *676 the English language, efficiently mentally process the medical test questions and the set of possible answers, and rapidly comprehend or understand the written test materials is essential to displaying one's mastery of the subjects tested by the examination.

The score a medical student achieves on the Step I examination is a major factor in determining

most prestigious and competitive medical speciality and medical student residency training programs. Students who do not display mastery by passing the Step I exam at the normal point in their medical school career, usually before the beginning of their third year, suffer a disadvantage in comparison to future residency and medical training options afforded other medical school students. Specifically, if a student does not pass the Step I exam before the beginning of his third year of medical school, he would normally need to drop out of school during his third year in order to study properly for the exam, thereby falling behind his peers. Students behind in their studies normally will not be offered the range and quality of residency or medical speciality options their peers will be offered. They will normally not be offered interviews for further study in the more competitive medical specialities, will not have the usual range of geographic or location (city and school) choices for remaining medical school programs which may be available, and will be delayed in completion of their medical training. There is no good way to remedy this injury. Timely Step I testing and passage is required.

A passing or superior score on the Step I exam does not mean that the medical student will get accepted to one of the more desirable medical school programs to which he applies. A superior score means that the student would more likely receive an admission interview for acceptance into such a program, which might or might not lead to admission into the more prestigious or competitive medical speciality programs.

The fact that a medical student received an ADA accommodation for his Step I examination, such as extra time to complete the exam, is noted on USMLE Step I test results by the statement that the test as taken was a non-standard or accommodated exam. This notation alerts those administering the admissions processes for medical school programs that the Step I exam was taken and/or scored under nonstandard conditions. During the admissions process the admissions personnel may inquire of the student or the Board about the fact that a non-standard exam had been taken by a medical student.

**Woodcock Johnson III**

Before granting a time accommodation on the USMLE, the Board of Medical Examiners requires a learning disorder diagnosis and a current (less than three years old) assessment of an applicant's leading disability. The Woodcock-Johnson III (WJ III) battery of tests is accepted by the Board for this assessment and a DSM-IV 315.00 diagnosis is what is required. The Board therefore informed Plaintiff that it required a current assessment report as well as. a current diagnosis of a learning disability before it would grant his request for a time accommodation on the Step I examination.

Pursuant to the Board's requirements, in May of 2003 Plaintiff was given the WJ III battery of tests by Dr. David R. Egerton of the Psychiatry Department at the Texas Tech School of Medicine. This

cognitive tasks, particularly when measured under time pressure to maintain focused attention. Decision speed is an aspect of cognitive efficiency and provides an index of a person's ability to make correct conceptual decisions quickly.

Decreasing the time needed to take a mastery test such as the USMLE by, for example, refusing a time accommodation for a person such as Plaintiff, is tantamount to increasing the difficulty of that test. By forcing an individual with a reading disability to adhere to prescribed time limits that do not allow him adequate time to process test information in effect makes the testing situation more difficult for him than for his peers. Another result of a lack of accommodation is that the exam does not test the person's mastery of the subject but instead tests the level of disability. Accommodating the needs of an individual with such a disability is a means of equalizing test demands and ensuring that he has a fair chance to display his mastery, or lack thereof, of the required medical materials.

Following the testing and clinical assessment of Plaintiff, Dr. Egerton made a DSM-IV clinical diagnosis of a reading disorder, that is, that Plaintiff is substantially limited in his ability to read and comprehend. It is undisputed that such a diagnosis means that such an individual requires extra time to read and comprehend written examinations and that an appropriate accommodation for a person with this reading disorder is to afford him extra time on written examinations requiring reading. No expert testifying at trial other than Dr. Egerton clinically examined or assessed Plaintiff for a learning disability.[1] The Court finds Dr. Egerton's report and diagnosis credible.

Any finding of fact constituting in whole or in part a conclusion of law will be deemed a conclusion of law. Any conclusion of law constituting in whole or in part a finding of fact will be deemed a finding of fact.

## Discussion and Analysis

A preliminary injunction is an extraordinary equitable remedy that may be granted only if a plaintiff establishes the following four elements:

(1) a substantial likelihood of success on the merits;

(2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is denied;

(3) that the threatened injury outweighs any damage that the injunction might cause defendants; and

(4) that the injunction will not disserve the public interest. *Sugar Busters LLC v. Brennan,* 177 F.3d 258, 265 (5th Cir. 1999). The decision to grant a preliminary injunction is to be treated as the

*v. City of Dallas, Tex.,* 905 F.2d 63, 65 (5th Cir.1990).

Mandatory preliminary relief which goes well beyond simply maintaining the status quo *pendente lite* is particularly disfavored and should not be issued unless the facts and law clearly favor the moving party. *Exhibitors Poster Exch, Inc. v. National Screen Serv. Corp.,* 441 F.2d 560, 561-62 (5th Cir.1971) (*per curiam*); *Miami Beach Federal Savings & Loan Ass'n v. Callander,* 256 F.2d 410, 415 (5th Cir. 1958). An indispensable prerequisite to issuance of a preliminary injunction is prevention of irreparable injury. *Van Arsdel v. Texas A&M University,* 628 F.2d 344, 346 (5th Cir.1980); *Harris v. Wilters,* 596 F.2d 678, 680 (5th Cir.1979); *Henry v. First National Bank of Clarksdale,* 595 F.2d 291, 302 (5th Cir.1979), *cert, denied sub nam.,* 444 U.S. 1074, 100 S. Ct. 1020, 62 L. Ed. 2d 756 (1980); *Lewis v. S.S. Baune,* 534 F.2d 1115, 1121 (5th Cir.1976). "Only in rare instances is the issuance of a mandatory preliminary injunction proper." *Harris v. Wilters,* 596 F.2d at 680.

Title II of the ADA prohibits discrimination by public entities, such as the National Board of Medical Examiners, on the basis of disability. 42 U.S.C. § 12132. Title III of the ADA requires, *inter alia,* entities offering licensing examinations to provide reasonable accommodations to disabled individuals. 42 U.S.C. § 12189. *See also* 29 C.F.R. § 1630.2(j) (3) (i) (extra time accommodations on timed examinations).

In order to find that Plaintiff has a reading disability, he must be substantially limited in reading in comparison to "most people." 28 C.F.R. Pt. 35, App. A § 35.104.

> "[A]n impairment is substantially limiting if it significantly restricts the duration, manner or condition under which an individual can perform a particular major life activity as compared to the average person in the general population's ability to perform that same major life activity ...."

29 C.F.R. Pt. 1630, App. A § 1630.2(j).

On the totality of evidence, including Plaintiffs current Woodcock-Johnson III test scores (required by the Defendant to document Plaintiff's diagnosis and disability) and his 1998 Wechsler Adult Intelligence Scale-III scores, Plaintiff has shown that he is an individual with a disability under the ADA because he is substantially limited in the major life activities of reading and learning when compared to most people.

The USMLE Step I examination involves and requires extensive reading, and scoring well and/or passage of the exam requires extensive subject-matter knowledge. Plaintiff has shown a sufficient causal connection between his reading impairment and his failures to score well, or as well as he might, on timelimited examinations requiring extensive reading. Plaintiff has shown that if he is

he reads with comprehension. Plaintiff will suffer irreparable injury if the requested injunction is denied.

With the requested reasonable accommodation of double time to take the Step I exam, Plaintiff will have time to either display his mastery of the subject matter, or show that he has rot sufficiently mastered the tested materials. In either event, granting the injunction will allow Plaintiff to be tested on his medical and science knowledge and not his disability.

***679** The threatened injury to Plaintiff outweighs any damage that granting the preliminary injunction might cause at this time to the Defendant or to the public.

The injunction will not disserve the public interest but will further the public interest in prohibiting discrimination by public entities, such as the National Board of Medical Examiners, on the basis of disability by fulfilling the ADA's requirement that entities offering licensing examinations provide reasonable accommodations to disabled individuals.

### Order

Defendant National Board of Medical Examiners is ordered to allow Plaintiff James Avery "Jave" Rush, IV double or twice the normal amount of time to take and complete the U.S. Medical Licensing Examination, Step I, on or about July 2, 2003. Since the examination cannot be completed in one day, Plaintiff is to be allowed to complete the examination over two days.

This preliminary injunction is binding upon the Defendant National Board of Medical Examiners, its officers, agents, servants, employees, and attorneys, and upon those persons administering the Step I examination who are under contract with the Board or in active concert or participation with them who receive actual notice of this Order by personal service or otherwise.

It is SO ORDERED.

### PRELIMINARY INJUNCTION ORDER

The National Board of Medical Examiners is hereby ORDERED to allow Plaintiff James Avery "Jave" Rush, IV double or twice the normal amount of time to take and complete the U.S. Medical Licensing Examination, Step I, on or about July 2, 2003. Since the examination cannot be completed in one day, Plaintiff is to be allowed to complete the examination over two days.

This preliminary injunction is binding upon the National Board of Medical Examiners, its officers, agents, servants, employees, and attorneys, and upon those persons administering the Step I

It is SO ORDERED.

**NOTES**

[1] At the hearing Defendant offered the testimony of Dawn Flanagan, Ph.D. for the evaluation of Plaintiff's disability. Dr. Flanagan is a professor of psychology but is not a clinical psychologist and had no personal contact with Plaintiff. Defendant also offered the affidavits of Joseph Bernier, Ph.D. and Samuel Ortiz, Ph.D. The Court conditionally admitted the affidavits subject to briefing on the question of their admissibility. Although those affiants were not subject to cross-examination and Plaintiff's attorneys were not afforded by defense counsel an opportunity to depose or question either affiant in advance of the hearing, the Court has nevertheless considered those affidavits because this is a mandatory preliminary injunction hearing.



Skip to content · Accessibility · Site Map · Log in · Contact Us

AHEAD is the premiere professional association committed to full participation of persons with disabilities in postsecondary education.

Search

| All About | Join | Meet | Learn | Members | Reach Out | Legal Database | Affiliates |

Home » Learn » Legal Resources

## Navigation

- All About
- Join
- Meet
- Learn
  - ALERT Archive
  - Civil Rights
  - Discussion Lists
  - Documentation Guidance
  - DSS Professionals
  - E-text
  - The Hub
  - International Portal
  - JPED
  - Legal Resources
  - Program Evaluation Tools
  - Publications for Sale
  - Resources
  - Students and Parents
  - Universal Design
  - Virtual Learning
  - On-Demand (ODM) Content
  - AHEAD Recordings
- Members
- Reach Out
- Legal Database
- Affiliates

### User login

Username or e-mail *

Password *

Create new account
Request new password

Log in

## Legal Resources

This topical arrangement of court and OCR citations is compiled from a number of sources and serves to illustrate various legal and policy issues in higher education.

### Additional Resources

- Office for Civil Rights

The information available at this website is not, nor is it intended to be, legal advice. For specific questions about the law or circumstances at your institution, please consult its attorney directly.

**Tennessee v. Lane**
U.S. Supreme Court
Decided May 17, 2004
Summary: Lane, who suffers from a mobility impairment, and other individuals brought this suit after Lane was arrested for failure to appear at a court hearing because he could not climb up the courthouse steps and refused to be carried. The suit was brought under Title II of the American's with Disabilities Act (ADA) which prohibits state and local governmental agencies from discrimination based on disability. Plaintiff's in this class action sought to enforce Title II's provisions requiring access to the state court system to be accessible to persons with disabilities. The Court held that the Eleventh Amendment, which permits states to avoid suits due to sovereign immunity, may not be applied to private suits brought under Title II against states for monetary damages in Federal courts to address the denial of access of persons with disabilities to state and local court systems.

**Parr v. Middle Tennessee State University**
U.S. Supreme Court
Decided May 24, 2004
Summary: Student with a disability alleged discriminatory conduct by the institution. The Sixth Circuit dismissed the suit, finding that plaintiff's claims under Title II of the ADA were barred by 11th Amendment immunity. Plaintiff petitioned the US Supreme Court for review. The Supreme Court granted certiorari, vacated the judgment and remanded the case to the United States Court of Appeals for the Sixth Circuit for further consideration in light of Tennessee v. Lane, above.

**Garrett v. University of Alabama at Birmingham Board of Trustees**
U.S. Court of Appeals, Eleventh Circuit
Decided September 11, 2003
Available at: http://caselaw.lp.findlaw.com/data2/circs/11th/0216078p.pdf
Summary: Plaintiffs sued their former employer, state agencies, for discrimination based on their disabilities in violation of Section 504. The state agencies file a motion for summary judgment, claiming that the Eleventh Amendment bars such suits for monetary damages under Section 504. The Eleventh circuit, reversing the district court's decision on remand from the Supreme Court, held that Congress had unambiguously conditioned the receipt of Federal funds on a waiver of Eleventh Amendment immunity to claims under Section 504.

**Pace v. Bogalusa City School Board**
U.S. Court of Appeals, Fifth Circuit
Decided March 24, 2003
Available at: http://caselaw.lp.findlaw.com/data2/circs/5th/0131026p.pdf
Summary: A disabled student brought a case seeking damages under Section 504, Title II of the ADA, and the IDEA. A three judge panel of the court held that the Eleventh Amendment bars suits against state defendants for monetary damages under 504, Title II and the IDEA. However, this matter will be reheard by the full panel of the Fifth Circuit.

**Rush v. National Board of Medical Examiners**
District Court of Texas, Northern District
Decided June 20, 2003
Summary: Plaintiff was a medical student with a learning disability who requested and was denied

double time in which to take the U.S. Medical Licensing Exam. The court found that Rush was an individual with a disability because he was substantially limited in the major life activities of reading and learning compared to most people. The court, critical of the Board's experts, granted an injunction requiring the NBME to provide Rush with the accommodations of double time for the exam, stating that without such accommodations the exam would test his disability and not his mastery of the subject matter.

### Spychalsky v. Sullivan
District Court of New York, Eastern District
Decided August 29, 2003
Summary: Plaintiff had a learning disability which affected specific aspects of his learning process such as reading speed, spelling, proofreading and number manipulation. Various psychological tests over the course of his academic career confirmed this diagnosis. While in law school, plaintiff received numerous accommodations but was not permitted to waive the required Tax class. Plaintiff filed suit under Section 504 claiming his disability limited the major life activities of learning, reading and speaking. The court found that plaintiff's identified impairments were too isolated and minor to support his claim that his disability substantially limited his ability to learn, read or speak and granted St. John's University's motion for summary judgment.

### Marlon v. Western New England College
District Court of Massachusetts
Decided December 9, 2003
Available at:     http://pacer.mad.uscourts.gov/dc/opinions/woodlock/pdf/marlon%20%20dec%2...
Summary: Plaintiff was admitted to law school and began receiving treatment for pain, anxiety and depression. Because her grades were below the school's academic standards, she was informed she was ineligible to continue her studies. She petitioned for reinstatement and retook her first year courses. During this time she was diagnosed with carpal tunnel syndrome and began receiving accommodations from the school. Again her grades were below the college's standard and again she petitioned for reinstatement but the college refused and plaintiff filed suit under Section 504, claiming the college discriminated against her based on her disability. The court analyzed three main impairments: pain, anxiety and depression. Because she had previously worked as a paralegal and could continue studies at another law school, the court found she was not substantially limited in the major life activity of working. The court also found she was not substantially limited in the major life activity of learning because her disability primarily affected only her ability to take long exams which was too narrow. Finally the court found that the fact that the college provided accommodations was not evidence that it regarded her as actually having a disability. The court did not address the limitations of her various impairments on the major life activities of reading and writing.

### Fraser v. Goodale
U.S. Court of Appeals, Ninth Circuit
Decided September 8, 2003
Available at:     http://caselaw.lp.findlaw.com/data2/circs/9th/0136018p.pdf
Summary: Plaintiff, a Type I insulin-dependant diabetic, was reprimanded at work for eating at her desk. She then requested permission to eat, which was refused and, after passing out, filed a complaint with her supervisor's supervisor. Four months later she was fired and filed suit alleging discrimination, wrongful discharge and retaliation. The district court granted the employer summary judgment holding that plaintiff did not present a genuine issue of material fact as to whether she was disabled under the ADA. On appeal the court addressed only whether Fraser had an impairment that substantially limited a major life activity. The Ninth Circuit found that, in Fraser's case, diabetes is a physical impairment which substantially limits the major life activity of eating but that her form of diabetes did not affect her ability to care for herself, think and/or communicate. The court refused to take into account the food Fraser might have eaten or the medications Fraser might have administered to herself, as mitigating measures, because the employer refused to let her employ these potential measures in the workplace.

### Labrecque v. Sodexho USA, Inc.
District Court of Massachusetts
Decided October 17, 2003
Available at:     http://pacer.mad.uscourts.gov/dc/opinions/ponsor/pdf/labrecque-mo.pdf
Summary: Plaintiff was diagnosed with fibromyalgia which made sitting and/or standing for long periods of time extremely painful. When her employer promoted to supervisor/cashier her schedule changed and she was required to work 12-13 hour shifts. Plaintiff informed her employer she could not work these shifts but that she could work 8 hour shifts. The court concluded that plaintiff's fibromyalgia substantially limited her major life activities of sitting and standing. Though the complainant failed to show up for work when her accommodations were denied, the court did not find that she had voluntarily resigned.

### Powell v. National Board of Medical Examiners
U.S. Court of Appeals, Second Circuit
Decided April 7, 2004
Available at:     http://caselaw.lp.findlaw.com/data2/circs/2nd/029385p.pdf

Summary: Learning disabled student sued the NBME and the University of Connecticut after she failed the Step 1 Medical Licensing Exam three times and was dismissed from medical school. Plaintiff requested a waiver of the Step 1 Exam requirement from UConn which they refused and was subsequently denied accommodations of extended time on the exam by the NBME. The Second Circuit held that Powell failed to show that, even if she was disabled, she was otherwise qualified to continue to be a medical student at UConn; noting that she had a background of educational difficulty and an average to low-average IQ. The court also held that there was no proof UConn discriminated because they had provided extensive accommodations to plaintiff but were not required to offer accommodations that fundamentally altered the nature of the service, program or activity. Finally, the court found that based on the limited evidence submitted, the NBME followed its standard procedure in denying Powell's request for accommodations.

**Raytheon Co. v. Hernandez (on remand as Hernandez v. Hughes Missile Systems Co.)**
U.S. Court of Appeals, Ninth Circuit
Decided March 23, 2004
Available at:       http://caselaw.lp.findlaw.com/data2/circs/9th/0115512p.pdf
Summary: The Ninth Circuit was asked to decide whether there was sufficient evidence to conclude that Raytheon refused to rehire Hernandez based on the fact that he was an alcoholic rather than based on company policy not to rehire employees who had been discharged for workplace misconduct. The court found there was a genuine issue of material fact as to the reason behind the decision not to rehire Hernandez and reversed summary judgment in favor of Raytheon and sent the case back to the district court for jury trial..

**Carten v. Kent State University**
U.S. Court of Appeals, Sixth Circuit
Decided February 25, 2002
Available at: http://caselaw.lp.findlaw.com/scripts/getcase.pl?court=6th&navby=case&no...
Summary: Plaintiff began graduate school at KSU and was dismissed a year later for poor academic performance. Plaintiff then filed suit against KSU alleging that they refused to accommodate him and dismissed him based on a learning disability. Carten accepted admission to the graduate program on a conditional basis and never made any request for accommodations. KSU's psychologist who evaluated Carten stated that the evaluation indicated that he did not have a learning disability. Carten received language, speech and hearing therapy in high school but no learning disability services. The Sixth Circuit, granting KSU summary judgment, held that the university was not required to provide accommodations for a student's alleged learning disability absent any evidence that he was found to have a disability or that he even requested accommodations.

**Rothberg v. Law School Admission Council, Inc.**
District Court of Colorado
Decided February 4, 2004
Summary: Learning disabled plaintiff with a lengthy history of disability diagnosis and accommodations was denied extended time accommodations on the LSAT. She was initially denied extended time because she had not completed the Nelson Denny Reading test. She took that test and her score was consistent with earlier evaluations that he needed extended time on the LSAT. She was again denied the accommodation because the LSAC evaluator relied on the fact that plaintiff was able to perform in the average or low-average range on the SAT and LSAT without accommodations and that her deficiencies in written expression and mathematical ability would not impact her performance on the LSAT. The court further found the LSAC's proffered expert witness not to be credible on the issue of establishing plaintiff's disability. The court granted plaintiff a preliminary injunction compelling the LSAC to grant her extended time. The court held that Rothberg was substantially limited in the major life activities of learning and reading. The court rejected LSAC's argument that she did not need accommodations based on her average SAT and LSAT performance because the court found plaintiff only actually completed 1/3 of the exam without accommodations and then randomly filled in answers to questions she could not read and that this compensatory technique does not support a finding that she is not disabled. The court found the argument of the LSAC unpersuasive because it determined that without extra-time the LSAT would be measuring the plaintiff's disability rather than her knowledge.

**Chaffin v. Kansas State Fair Board**
U.S. Court of Appeals, Tenth Circuit
Decided October 28, 2003
Available at: http://caselaw.lp.findlaw.com/cgi-bin/getcase.pl?court=10th&navby=case&n...
Summary: Plaintiffs, all wheelchair users, sued the State Fair because the wheelchair section of the Fair's Grandstand did not provide adequate viewing, the wheelchair section was also too crowded and made restrooms inaccessible, the parking lots were inaccessible in that they were far away and full of potholes, and all restrooms were inaccessible because there were no unisex restrooms for disabled patrons who relied on a spouse for assistance. The court said the ADA requires more than mere physical access and that all patrons are entitled to the benefits of the fair. The court further stated that the individual elements that were not physically accessible added up to wholesale exclusion of persons with disabilities and that the State Fair, when viewed in its entirety is not readily accessible to individuals with disabilities.

**Stewmon v. Regal Cinemas, Inc.**
U.S. Court of Appeals, Ninth Circuit
Decided August 13, 2003
Available at:     http://caselaw.lp.findlaw.com/data2/circs/9th/0135554p.pdf
Summary: Plaintiff, a wheelchair user, sued the movie theater under the ADA alleging that the wheelchair accessible seating, which was in some instances 11 feet away from the screen discriminated against disabled patrons by forcing them to view movies in uncomfortable and awkward seats. The court found for the plaintiff. The Supreme Court, on advice of the US Justice Department decided not to hear an appeal of this matter. However, DOJ has stated that it will look at the general question of stadia theater seating requirements..

**Lentini v. California Center for the Arts, Escondido**
U.S. Court of Appeals, Ninth Circuit
Decided May 27, 2004
Available at:     http://caselaw.lp.findlaw.com/data2/circs/9th/0156612p.pdf
Summary: Quadriplegic plaintiff sued the concert hall owner and staff under the ADA after she was denied admission with a service animal. The Ninth Circuit court held that modifications of the concert hall's policies to permit a service animal that may have made disruptive noises at past performances, if such behavior would have been acceptable if engaged in by humans, was necessary and reasonable under the ADA. The court also held that modifications of policies did not fundamentally alter services that the concert hall provided.

**AHEAD**
107 Commerce Centre Drive, Suite 204
Huntersville, NC 28078 USA
voice: 704.947.7779 • fax: 704.948.7779

© 2004 – 2016 AHEAD, All rights reserved. • Privacy • Terms of Use • Report Site Problem
Accessible Web Design by Joe Dolson