# David Ferleger, J.D.

413 Johnson Street, Suite 203
215-887-0123
david@ferleger.com
http://www.ferleger.com

## Profile

Experienced federal court appointed Special Master, and also Court Monitor.

Thirty-two years professional legal experience including constitutional law, civil rights, discrimination, employment, academic issues, higher education, special education, real estate, personal injury, malpractice, death cases, Americans with Disabilities Act, investments.

Extensive litigation experience including five arguments before Supreme Court of the United States; participation in additional cases in Supreme Court; litigation nationally before federal courts of appeals and federal district courts, and before state courts.

Negotiation, resolution, administration and oversight of complex class actions and individual cases, settlements and disputes with and between governments.

Written works include books, book chapters, magazine and newspaper articles, consultation reports, compliance findings and reports.

Advisory Board and counsel of Segs4Vets, a charity which provides Segways to wounded warriors permanently disabled in the wars in Iraq and Afghanistan, and more recently in the Vietnam war. Segs4Vets was presented the 2010 Spirit of Hope Award by the Office of the Secretary of Defense and the Secretary of the Army's Public Service Award for distinguished public service in providing outstanding support to our Nation's Veterans.

Experience as keynote and plenary speaker, lecturer, seminar leader, and consultant.

∞ ∞ ∞ ∞

"Mr. Ferleger is highly qualified. He is a seasoned attorney and author in the field of disability rights, disability class actions (having represented both state defendants and plaintiffs), and in serving the federal couroots in several cases as special master, court-appointed monitor, and guardian ad litem." United States District Court for the District of Minnesota, Order of July 17, 2012 (Hon. Donovan W. Frank),

"The Special Master [David Ferleger] is a skilled judicial adjunct who has served the Court with balance and with fairness to the parties." United States District Court for Connecticut, Order of June 24, 2003) (Hon. Ellen Bree Burns).  "As a special master serving this court for the past seven years, Mr. Ferleger's assistance has been invaluable, his attention to detail extraordinary, and his analysis careful and nuanced." (Reference letter, June 21, 2004) (Federal Judge).[1]

## Experience

### Independent Consultant and Monitor, Federal Court

Appointed by United States District Court for Minnesota as Court's Independent Consultant and Monitor in *Jensen v. Department of Human Services*, a systemic class action. 2012 to present. Responsibility to monitor compliance and make recommendations to court regarding complex decree with one hundred specific evaluation criteria.

### Technical Advisor,  Federal Court

Appointed by United States District Court for Minnesota as Court's Technical Advisor in a class action. 2013 to present. The suit is a challenge to state laws regarding commitment of sex offenders and to conditions for about 700 patients at the state's sex offender program.

### Technical Advisor for Implementation, Federal Court

After serving the United States District Court for the District of Maryland federal court as guardian ad litem to evaluate the reasonableness of a settlement for money damages and for systemic reform, provides continuing service to the court as technical advisor for implementation. *Demby v. Maryland Department of Health and Hygiene.*

---

[1] "The Special Master is discharged from his duties with the gratitude of the Court for his service.  * * * Special Master David Ferleger has effectively rendered a great public service in shepherding this process through to its conclusion.  He has submitted to the Court twenty-six periodic status reports, sixty-three numbered topic-specific reports, many special reports and recommendations to the parties, and numerous other analyses." Order Purging Defendants of Contempt and Ending Active Judicial Oversight, at 3 and 11 (March, 2006).

2011 to present. Responsibility to evaluate compliance reports and make recommendations to the parties and the court.

**Special Master, Federal Court**

United States District Court for the District of Connecticut, *United States v. State of Connecticut*. Special Master, 1997 – 2006. Judicial adjunct/official, presiding at evidentiary hearings, mediation and facilitation of agreements, and to render formal decision-making and recommendations to the court.

**Court-Appointed Monitor**

United States District Court for the Middle District of Florida, *Johnson v. Bradley*, 1989 - 1991. Judicial adjunct, mediation and facilitation of agreements, formal decision-making and recommendations to court.

**Legal Services and Consultant**

Complex and landmark litigation, individual representation in a variety of areas, governmental litigation, judicial adjuncts, settlement and negotiation, case analysis, monitoring of litigation, special education, civil rights litigation, class actions, appeals, damages, injuries, disability law and human service systems. Litigation experience including five arguments before Supreme Court of the United States; participation in additional cases in Supreme Court; litigation nationally before federal courts of appeals and federal district courts, and before state courts. (beginning 1972).

**Special Assistant Attorney General**

Commonwealth of Massachusetts. Acted as counsel to Governor and Department of Mental Retardation, Commonwealth of Massachusetts in *Ricci v. Greenblatt* (five complex class actions) and in state licensing/regulatory enforcement proceedings; probate court matters.  1991 - 1994. Consultant and counsel to Department of Mental Retardation.

**Advisory Board, Segs4Vets**

Member, Advisory Board, and counsel, Segs4Vets, a charity providing assessments and the motorized mobility vehicle Segway to wounded warriors permanently disabled

in the wars in Iraq and Afghanistan, and more recently in the Vietnam war. Segs4Vets was presented the 2010 Spirit of Hope Award by the Office of the Secretary of Defense and the Secretary of the Army's Public Service Award for distinguished public service in providing outstanding support to our Nation's Veterans. A member of Military Family and Veterans Service Organizations of America, Segs4Vets has been certified as one of the best charities in America by the Independent Charities of America, an honor accorded fewer than 2,000 of the more than one million public charities in the United States. Approx. 2005 to present.

**Business and Management**

Private investment management (equities and fixed income). 1992 – present.

Real estate investment and management. 1992 – present.

**Endowment Oversight**

Endowment Committee Chair, Oversight of endowment fund for Reconstructionist Rabbinical College, Wyncote, PA ((2002-2006)

**Teaching**

Adjunct Assistant Professor of Law, New York University Law School (1982 - 1990).

Research Fellow, Legal Services Corporation, Washington, D.C. (1979).

Lecturer, University of Pennsylvania Law School (multiple semesters).

Faculty, Temple University Student Development Program, Philadelphia, PA (1974).

Teaching, Temple University Student Development Program (1974).

University of Pennsylvania Law School, Supervisor at Agency for Clinical Program (1972-1973).

Temple University School of Social Administration, Supervisor at Agency for Field Work (1972-1973).

Rutgers University School of Law, Camden, New Jersey, Supervisor at Agency for Clinical Program (1973-1974, 1976-1977).

Bryn Mawr School of Social Work, Supervisor at Agency for Field Work (1974).

## Research and Projects

National Disability Rights Network, research and consultation, Children in Institutions (2005-2006).

Director, Access Project, Technical Assistance for Protection and Advocacy Systems on Access to Clients, Facilities and Records), for National Institute of Mental Health (1990 - 1992).

Research Fellow, Legal Services Corporation, Washington, D.C. (1979).

Health Law Project, Philadelphia, PA (1971).

*See* Publications section below for additional research and projects.

## Awards

David J. Vail National Advocacy Award, for Distinguished Service in Protecting the Rights and Dignity of Mental Disabled Americans (1983), presented by he Mental Health Association of Minnesota.

Allen S. Olmsted Award for Distinguished Service in the Cause of CIvil Liberties (1985), presented by Delaware County Chapter, American Civil Liberties Union.

## Education

Law School, University of Pennsylvania, J.D., 1972.

University of Pennsylvania, B.A., Sociology, 1969.

Pennsylvania State University, 1965-66

Central High School, Philadelphia, PA, 1965.

## Publications

### A. Publications on Special Masters

Ferleger, *Judicial Adjuncts in Disability Rights Litigation*, The Federal Lawyer (December, 2012).

Ferleger, *Special Master Rules: Federal Rule of Civil Procedure 53, The Role of Special Masters in the Judicial System*, 2004 Special Masters Conference: Transcript of Proceedings,  31 William Mitchell L. Rev. 1193 (2005).

Ferleger, *Masters in Disability Litigation & Amended Rule 53,* American Bar Association, 29 Mental & Physical Disability L. Rep. 157 (March/April 2005).

Ferleger, *Masters in Complex Litigation and Amended Rule 53*, Special Masters Conference 2004 Course Materials (Nat'l Arbitr. Forum ed., 2004) (unpublished).

*Monitoring Costs: Systemic Litigation Regarding Institutions and Community Services*, 12 Mental and Physical Disability Law Reporter 492 (November-December, 1988).

### A. Other Publications

Ferleger, Book Review, *The Limitations of the Law in Human Services,* The SRV Journal (July 2013).

Ferleger, *Planning for Access: Sidewalks and the ADA,* Planning and Environmental Law (July 5, 2012).

Ferleger, *Disabilities and the Law: The Evolution of Independence*, The Federal Lawyer (December 2010).

Ferleger, *The Constitutional Right to Community Services*, 26 Georgia State University Law Rev. 763 (2010).

Parallels in Time 1950-2005, Internet re-publication 2007 by Minnesota Governor's Council on Developmental Disabilities of "The Place of 'Choice'" Book chapter from Choice and Responsibility: Legal and Ethical Dilemmas in Services for Persons with Mental Disabilities (1994), http://www.mnddc.org/parallels2/pdf/index.html

*The Place of "Choice,"* in Choice and Responsibility: Legal and  Ethical Dilemmas in Services for People With Mental Disabilities  (New York, 1994) (book chapter).

*Community and Institutional Litigation: Filing, Settlement & Implementation* (Philadelphia, 1994) (book)

*Larum Ekki Ad Fara Yfir Gotu Ef Engin Er,* in Proskahjalp (August, 1988) (interview) (journal of the Iceland association for people with retardation).

*Advocate for the Disabled Wins One*, The American Lawyer (Jan./Feb., 1989) (interview/profile).

*A Report on the Wyoming State Training School, Lander, Wyoming* (1989) (prepared for the State of Wyoming facility).

Disability Law Litigation Manual (1989), for National Institute of Mental Health, Washington, D.C.

*Civil Rights Disability Practice: Expediting Institutional Mistreatment Litigation*, 12 Mental & Physical Disability Law Reporter 309 (1988).

*Children, the Constitution and the Law*, in The Media and Children's Issues (Children's Express Symposium II, 1987) (summary of presentation).

*Protection and Advocacy For People Who Are Labeled Mentally Ill, Volume I*, Mental Health Law Project for the National Association of Protection & Advocacy Systems (1987) (co-author of chapter on P&A statute; author of chapter on interviewing clients).

*Protection and Advocacy Systems For the Mentally Ill: Summary  of Issues in Mental Law With Bibliography* (March, 1987), for National Institute of Mental Health, Washington, D.C., Contract 86MO175153OD ADAMHA/NIMH.

*Protection and Advocacy Systems For the Mentally Ill: National Consultant Directory* (March, 1987), for National Institute of Mental Health, Washington, D.C., Contract 86MO175153OD ADAMHA/NIMH.

*Rights and Dignity: The Supreme Court, Congress and People With Disabilities After Pennhurst*, 5 W.New Eng.L.Rev. 327 (1983) (co-author).

*Anti-Institutionalization and the Supreme Court*, 14 Rutgers L.Rev. 595 (1983).

*The Promise of Lelsz v. Kavanagh*. Texas Legal Services Center Alert: (August, 1983).

*Establishing and Maintaining an Institutional Advocacy Program: Representing People With Handicaps*, Book of Materials (co-editor) (Legal Services Corporation: 1981).

Levine, et al., *Guardianship and Conservatorship in Massachusetts: An Attorney's Reference Manual* (1981), author of chapter on interviewing the client with mental disabilities.

*The Ethical and Practical Problems of Protective Services and Guardianship* (Nebraska Commission on Aging and Bi-Regional Older Americans Advocacy Center: 1981) (author of chapter on interviewing).

Interview, *Community Care For the Retarded*, Sunday Detroit Free Press, page 1, December 14, 1980.

*"The Right to Community Care for the Retarded,"* in Flynn & Nitsch, eds., *Normalization, Social Integration and Community Services* (1980).

*Anti-Institutionalization: The Promise of the Pennhurst Case*, 31 Stan.L.Rev. 717 (1979) (co-author).

*Commitment of Minors*, in *Conference Report,* The 2nd National Conference on The Legal Rights of the Mentally Disabled (Kansas Bar Association, Menninger Foundation) (1979).

*The Pennhurst Case: Equal Rights for the Retarded*, in The Philadelphia Inquirer, Review and Opinion Section, January 1, 1978, page 1.

*The Failure of Institutions for the Retarded: Pennhurst, A "Monumental Example of Unconstitutionality,* in Health Law Project Bulletin (March, 1978).

*The Rights of Mental Patients*, in Norback, ed., The Health Almanac (Van Nostrand Rheinhold).

*The Future of Institutions for Retarded Citizens: The Promise of the Pennhurst Case*, in *Mental Retardation and the Law* (Dept. of Health, Education and Welfare, President's Committee on Mental Retardation) (July, 1978).

*Alternative Practice in Public Interest Litigation*, in Course Materials, *Seminar on Public Interest Litigation: Expanded Private Practice and Attorney's Fees* (Pennsylvania Bar Institute: 1977).

*Commitment Rights of the Mentally Disabled,* in Course Materials, *Asserting the Rights of the Mentally and Physically Disabled* (Pennsylvania Bar Institute: 1970).

*Asylums, Parents & Kids: Commitment and the Constitution*, in Mental Disability Law (Practicing Law Institute and Mental Health Law Project: 1979).

*The Battle Over Children's Rights*, Psychology Today (July, 1977)

Interview, *Children in Trouble Part II: The Case of Bartley v. Kremens*, Children's Express (May, 1977).

*Parental Love and Care: The "Due Process" To Which Children Are Entitled*, 28 Hospital and Community Psychiatry 221 (1977).

*Kremens v. Bartley: The Right To Be Free,* 27 Hospital and Community Psychiatry 708 (1976).

*They Cry Out For Help: Few Will Listen to the Mental Patient,* Op-ed Page, Philadelphia Inquirer 7A (July 2, 1976).

*Testimony*, in *The Abuse and Misuse of Controlled Drugs in Institutions*, Hearings Before the Subcommittee to Investigate Juvenile Delinquency, Committee on the Judiciary, United States Senate, July 31, 1975, Volume II, pages 163-273 (U.S. Government Printing Office: 1977).

*In-Hospital Rights of Mental Patients*, in Bavaria, ed., *Legal Aspects of Mental Health Workshop* (Staff Development Program, Allentown State Hospital, NIMH Grant No. 03-T-000, 907-09) (1976).

*A Patients' Rights Organization: Advocacy and Collective Action By and For Inmates of Mental Institutions*, 8 Clearinghouse Review 597 (1975).

*Legal Challenges to the "Voluntary" Admission of Children to Mental Institutions, Volume II,  Preparing and Trying the Lawsuit: Anatomy of the Bartley Case*, co-author (Legal Services Corporation: 1976).

*Mental Patient Civil Liberties Project*, in Borman, ed., *Explorations in Self-help and Mutual Aid (Center for Urban Affairs*, Northwestern University: 1975 Corporation: 1976).

*Introductory Note, The Farview Papers* (Alliance for the Liberation of Mental Patients: 1977).

*The Mental Patient Civil Liberties Project* in Glenn, ed., *Voices from the Asylum* (Harper: 1974).

*The Vanishing Welcome Mat: Legal Services and Organization in a Mental Hospital*, Uncommon Law (1974).

*Patients' Rights Manual,* in Glenn, ed., *Voices from the Asylum* (Harper: 1974).

*Loosing the Chains: In-Hospital Civil Liberties of Mental Patients*, 13 Santa Clara Lawyer 447 (1973).

*Delusion and Revolution*, Common Sense (1973).

*The Mental Patient Civil Liberties Project: A Model for Consumer Accountability in the Mental Hospital*, Rough Times (November, 1972).

## **Litigation** (partial listing)

*Artway v. Pallone*

672 F.2d 1168 93d Cir. 1982). U.S. Court of Appeals for the Third Circuit appointed David Ferleger in the case on due process and equal protection challenges to New Jersey sex offender commitment law. See also *Artway v. Pallone*, 676 F.2d 684 (1982).

*Baccus v. Parrish*

45 F.3d 958 (5th Cir. 1995). Represented intervening defendants in challenge to Texas state law providing for task force to recommend closing of state mental instituitions. Succeeded in obtaining ruling that claims were moot.

*Baldridge v. Clinton*

139 F.R.D. 119 (E.D. Ark. 1991). Litigation transferred to David Ferleger from original counsel.  Class decertified on findings that named representatives in original case no longer were typical of class members' claims, and that requirements of class action rule were not met with regard to commonality.

*Barbiero v. Supreme Court of Pennsylvania*

(E.D. Pa). Lawsuit by learning disabled law school graduate regarding accommodations request for Pennsylvania Bar Examination. Settled in favor of plaintiff.

*Behavior Research Institute v. Leonard*

(Bristol Country, Mass.). Represented Department of Mental Retardation, Commonwealth of Massachusetts, in litigation and in consultation concerning administrative action regarding a private facility for individuals with retardation and challenging behaviors.

*Buress v.  Beal*

(M.D. Pa). Civil rights lawsuit by inmate of institution for the criminally insane for forcible administration of penicillin. Settled in favor of plaintiff for monetary sum.

Campbell v. Adult Day Care of Lexington, Inc.

(2011, E.D. Ky). Wrongful death and survival action against community home provider and city police, for death in prone restraint of 21 year old with autism, and for lack of appropriate services.

*Carr v. School District of Philadelphia*

(E.D. Pa). Special education suit regarding reading needs of elementary school student. Settled in favor of plaintiff.

*Caruso v. Clark*

(E.D. Pa.). Suit regarding wrongful incarceration in institution.

Antoninetti v. Chipotle Mexican Grill, Inc.

131 S.Ct. 2113 (2011) (denying certiorari); 614 F.2d 971 (9th Cir. 2010). Decision finding violations of ADA regarding access for plaintiff with wheelchair to the experience promised by the restaurant chain. Represented plaintiff in Supreme Court to successfully oppose grant of certiorari.

*City of Philadelphia v. Commonwealth Department of Public Welfare*

564 A.2d 271, 128 Pa.Cmwlth 565 (1989). People with handicaps living at home and City sought preliminary injunction against Commonwealth to provide funding to continue or reinstate adequate nonresidential services for people with mental retardation. Held that Department of Public Welfare would be required to seek interim grant from General Assembly to fund nonresidential habilitation services for retarded persons in city, and city would be required to continue to provide such services.

*Cockerham v. Hughes*

(N.D. Tx. 1987). $85,000 award for beating in retardation institution and other mistreatment.

*Commonwealth Department of Public Welfare v. Kallinger*

580 A.2d 887, 134 (PaCmwlth. 415, 59 U.S.L.W. 2193 (1990), appeal dism'd as moot, 532 Pa. 292, 615 A.2d 730 (1992).  The Department of Public Welfare and a state hospital filed a request for special emergency relief seeking authorization for involuntary administration of necessary nutrition and medical treatment to a prisoner who wanted to starve himself to death. The prisoner was serving consecutive life sentences for murders and other sentences for other crimes. Held that the interest of the Commonwealth the duty to maintain the life of the prisoner.

*Commonwealth of Pennsylvania Dept. of Corrections v. Kallinger*

530 Pa. 269, 608 A.2d 494 (1992). On state officials' duties to prisoner in state penal system; Ferleger appointed guardian ad litem; decision affirms lower court).

*Commonwealth v. Sematis*

555 A.2d 1347, 382 Pa.Super. 569 (1989). On conviction of person for kidnapping and sentence of mandatory five-years due to use of firearm, held that commitment to

prison (rather than mental hospital) was mandated by the state statute, and that sentence was appropriate despite the defendant's mental illness and other factors.

*Cospito v. California*

(D.N.J.) (1982). Represented New Jersey Department of the Public Advocate in deposition proceedings in this case involving accreditation of psychiatric facilities by Joint Commission on Accreditation of Hospitals.

*Davenport v. St. Mary Hospital*

1988 WL 15199 (E.D. Pa., Feb. 23, 1988), 1988 U.S. Dist. Lexis 1332 (1988). Awarding attorney's fees and adjudicating rate in civil rights action. The underlying action involving a wrongful mental health commitment was earlier settled in favor of plaintiff.

*Downs v. Department of Public Welfare*

368 F.Supp. 454 (E.D. Pa. 1975). held that Thirteenth Amendment ban on involuntary servitude applies to mental institution peonage.  Same case at 65 F.R.D. 557 (E.D. Pa. 1974), held that sovereign immunity does not prelude award of attorney's fees from state funds.

*Falter v. Veteran Administration*

(D.N.J.). Represent the New Jersey Department of the Public Advocate and plaintiffs in deposition proceedings in this case involving inadequate treatment and violation of rights at a Veterans Administration Hospital.

*Feagley v. Waddill*

868 F.2d 1437 (5th Cir. 1989). In wrongful death action (drowning in swimming pool of resident of state retardation institution), District Court had denied state's motion for summary judgment and ordered case to trial.  Court of Appeals held that interlocutory order denying mental health officials' motion for summary judgment based on qualified immunity was not appealable, in that there were unresolved factual issues as to nature of defendants' conduct. Case later settled during trial.

*Fontroy v. Owens*

23 F.3d 63 (3rd Cir. 1994); 989 F.2d 486 (3d Cir. 1993) (district court affirmed), 114 S.Ct. 671, 510 U.S. 1033 (1994) (judgment vacated and remanded). Prisoners' rights suit.

Successfully sought and obtained decision by U.S. Supreme Court vacating Court of Appeals order. Suit involves prisoner exposure to asbestos in prison.

*Frame v. City of Arlington, Tx.*

657 F.3d 215 (5th Cir. 2011)( *en banc* ), 616 F.3d 476 (2010) and 575 F.3d 432 (2009), *cert. den*., 132 S.Ct. 1561) (2012).

(2012, N.D. Tx.). Landmark ADA settlement 2012 of suit to obtain accessible sidewalks in Arlington. Settlement includes "re-do" of sidewalks altered or newly constructed since 1992, a detailed policy on access, a process for resolving complaints/inquiries, and specific priorities for both the remedial construction and for future work. Supreme Court denied certiorari to review 8-7 decision in 5th Circuit Court of Appeals. Represented plaintiffs in the Supreme Court and on remand, and in fashioning and negotiating the settlement.

*Garwood v. Maguire*

(E.D. Pa.). In habeas corpus action, court held that judicial hearing, including opportunity to confront and cross-examine psychiatrist, is required prior to commitment; hospital records ordered expunged.

*Garwood v. Maguire, II*

(E.D. Pa.). In civil rights action, settlement for monetary sum and agreement that mental patients have free and ready access to telephones.

*Goldy v. Beal*

429 F.Supp. 640 (M.D. Pa. 1976). (Three-Judge Court); 91 F.R.D. 451 (E.D. Pa. 1981). Declaring unconstitutional state civil commitment statute as unconstitutionally vague. Held that civil rights action in federal court, rather than state court habeas corpus, is appropriate and that abstention is not proper in such a case.

*Griffith v. Ledbetter*

711 F.Supp. 1108 (N.D. Ga. 1989). Held that resident of mental health/retardation institution has due process right to have treatment decisions made by qualified professionals, and that, while there is no state-created right to community services, the patient did have a right to such training as could be reasonably devised to maintain the

basic self-care skills which he possessed at the time of his commitment to state custody.  Another opinion in case granted television stations access to videotape of restraint of client in state retardation institution.

*Halderman v. Pennhurst State School*

465 U.S. 89 (1984); 451 U.S. 1(1981); 673 F.2d 645 (3d Cir. 1982) (on remand); 612 F.2d 84 (3d Cir. 1979); 446 F.Supp. 1295 (E.D. Pa. 1977) (on liability and implementation order), 451 F.Supp. 233 (E.D. Pa. 1978). Landmark case in District Court holding that proper habilitation for the retarded cannot be provided in a large-scale long-term institution such as Pennhurst. Court ordered the replacement of the institution with community residences and services.  U.S. Supreme Court reversed federal statutory holding and, on remand, Court of Appeals found right to individualized community services to be developed by state and county. Argued for third time in United States Supreme Court on October 3, 1993, on reargument after 1982 argument. $1,200,00 in contempt fines at $10,000 per day are upheld by Court of Appeals is awaiting decision on granting of certiorari by United States Supreme Court. On March 28, 1994, the Commonwealth and Philadelphia Defendants were held in contempt for failing to provide adequate community services. In April, 1995, the Court ordered development of a community quality assurance system. Other citations in implementation of this case include: 855 F.Supp. 747 (E.D. Pa. 1994); 855 F.Supp. 733 (E.D. Pa. 1994); 154 F.R.D. 594 (E.D. Pa. 1994); 834 F.Supp. 757 (E.D. Pa. 1993); 784 F. Supp. (E.D.Pa. 1992); 1987 U.S. Dist. Lexis 11020 (1987); 610 F. Supp. 1221 (D.C. Pa. 1985); 97 F.R.D. 522 (D.C. Pa. 1983); 673 F.2d 645 (3d Cir. 1983); 566 F.Supp. 185 (E.D. Pa. 1983); 555 F.Supp. 835 (E.D. Pa. 1983); 555 F.Supp. 1144 (E.D. Pa. 1983); 707 F.2d 702 (3d Cir. 1983); 567 F. Supp. 1504 (D.C. Pa. 1983); 673 F.2d 647 (3d Cir. 1982); 673 F.2d 628 (3d Cir. 1982); 545 F.Supp. 410 (D.C. Pa. 1982); 555 F.Supp. 1142 (E.D. Pa. 1982); 835 F. Supp. 1138 (E.D. Pa. 1982); 559 F. Supp. 153 (E.D. Pa. 1982); 542 F. Supp. 619 (E. D. Pa. 1982); 536 F. Supp. 522 (E.D. Pa. 1982); 533 F. Supp. 668 (E.D. Pa. 1982); 533 F.Supp. 649 (E.D. Pa. 1982); 533 F. Supp. 641 (E.D. Pa. 1982); 533 F. Supp.661 (E.D. Pa. 1982); 526 F. Supp. 428 (E.D. Pa. 1981); 526 F. Supp. 423 (E.D. Pa. 1981); 526 F. Supp. 414 (E.D. Pa. 1981); 526 F. Supp. 409 (E.D. Pa. 1981); 533 F. Supp. 631 (E.D. Pa. 1981); 612 F.2d 84 (3d Cir. 1979); 612 F.2d 131 (3d Cir. 1979); 452 F. Supp. 867 (E.D. Pa. 1978); 451 F. Supp. 233 (E.D. Pa. 1978); 446 F. Supp. 1295 (E.D. Pa. 1978). *See also*, citations below.

*Halderman v. Pennhurst State School  and Hospital*

1995 WL 493277 (E.D. Pa. 1995); 899 F.Supp. 209 (E.D. Pa. 1995);725 F. Supp. 861 (E.D. Pa. 1989). Held that fee award for monitoring implementation of class action injunction is warranted. Also addresses rates and other fee issues.

*Halderman v. Pennhurst State School and Hospital*

49 F.3d 939 (3rd Cir. 1995); 901  F. 2d 311 (3d Cir. 1990). Six years after final settlement, on a motion for enforcement, Court of Appeals held that district court retained jurisdiction to enforce settlement, and that Commonwealth and counties were in substantial noncompliance with agreement with regard to placement obligations in the community.

*Robert Hartman Contempt Proceeding, Halderman v. Pennhurst State School and Hospital*

(E.D. Pa., July, 1987). On contempt and enforcement motion, family home placement ordered with monetary sum to  settle claim for compensatory fine.

*In re Gross*

382 A.2d 116, 476 Pa. 203 (Pa. 1978). Right to refuse treatment in mental institution.

*Institutionalized Juveniles v. Secretary of Public Welfare*

442 U.S. 640 (1979), vacating and remanding 459 F.Supp. 30 (E.D. Pa. 1978) (Three-Judge Court); 87 F.R.D. 463 (E.D. Pa. 1978); 568 F.Supp. 1020 (D.C. Pa. 1983); 758 F.2d 897 (3d Cir. 1985); 78 F.R.D. 413 (E.D. Pa. 1978). *Bartley v. Kremens*, 402 F.Supp. 1039 (E.D. Pa. 1975) (Three-Judge Court), vacated and remanded on other grounds, 431 U.S. 119 (1977). In these cases, argued two times in the United States Supreme Court, the high court ultimately decide that, although children committed to mental institutions do have constitutionally protected liberty interests, they do not have the right to a lawyer and a hearing before commitment as the lower court twice held. The Supreme Court did find that, on admission, children do have a right to a neutral fact-finder and that parent alone may not commit their children.

*Johnson v. Mayor and City Council of Baltimore*

472 U.S. 353 (1985). Amicus brief in Supreme Court for National Association for Rights Protection and Advocacy.  Challenge under Age Discrimination in Employment Act to city retirement system.

*Jones v. Kavanagh*

(E.D. Pa. 1982). $237,000 award in settlement of civil rights damage action for drowning of 18 year old in bathtub at Fort Worth State School.

*Katkow v. Rosen*

(Bucks City, Pa.). Award of several hundred thousand dollars in settlement of damage case for psychiatric sexual abuse.

Katz v. Nazereth Hospital and Mercy Health System

(E.D. Pa. 2012). Suit under Americans with Disabilities Act against hospital for failure to provide interpreters for deaf patients in emergency room.

*Lang v. Delaware Valley Mental Health*

469 A.2d 302, 322 Pa.Super. 600 (1983). Mental health case.

*Lelsz v. Kavanagh*

903 F.Supp. 1037 (N.D.Tex. 1995); 783 F.Supp. 286 (N.D.Tex. 1991); 824 F.2d 372 (5th Cir. 1987); 710 F.2d 702 (5th Cir. 1983); 98 F.R.D. 11 (E.D. Tx. 1982); 815 F.2d 1034 (5th Cir. 1987); 807 F.2d 1243 (5th Cir. 1987); 710 F.2d 1040 (5th Cir. 1983); 112 F.R.D. 367 (N.D. Tx. 1986); 629 F.Supp. 1487 (N.D. Tx. 1986); 673 F.Supp. 828 (N.D. Tx. 1987); 1987 U.S. Dist. Lexis 11055 (Nov. 24, 1987). Class action against three state institutions of people with retardation and state officials to secure end to institutional harm and abuse, and also to expand community services. Consent decrees in 1983 and 1987 award relief sought by plaintiffs; lawsuit now expanded to all thirteen state schools for people with retardation in Texas. The 1991 settlement required closure of two retardation institutions, community placement of over 1,000 state school residents and other relief.

*Lelsz v. Kavanagh*

137 F.R.D. 646 (N.D. Tx. 1991). Held that Texas Assistant Attorney General would be removed from further participation in case as sanction for improper litigation conduct.

*Leon Lefkowitz by his parent and guardians, Saul & Eileen Lefkowitz  v. Bucks County Mental Health/Mental Retardation Administrator*

1985 WL 4105 (E.D. Pa., Dec. 4, 1985).  Individual community placement ordered for young man with retardation. Opinion at this citation denies attorney's fees.

*Lewis v. White*

1989 WL 54025 (E.D. Pa. May 16, 1989). In suit by person found Not Guilty by Reason of Insanity in criminal case and then civilly committed to state mental hospital, held that civil rights action is proper method for challenge to unnecessary institutionalization, inadequate treatment, and to statutory standard for confinement. Also addresses qualified immunity.

*Lewis v. White*

1990 WL 106591 (E.D. Pa., July 24, 1990). Award of attorney's fees and expenses; held that litigation had causal connection to relief secured.

*Lombard v. Eunice Kennedy Shriver Center for Mental Retardation, Inc.*

556 F. Supp. 677 (D. Ma. 1993). Damage suit for denial of care and inadequate medical services in state institution. Held that there is constitutional right to adequate medical care and state cannot delegate its obligations to private contractor.

*Lynch v. Sessions*

942 F.Supp. 1419 (M.D.Ala. 1996). Held that 1974 mental health involuntary commitment injunction which had been complied with would be vacated in light of new statutory procedures which complied with constitutional requirements.

*McDonald v. Eilers*

1988 WL 102649 (E.D. Pa., Sept, 30, 1988); 1988 WL 131360 (E.D. Pa., Dec. 7, 1988). 1988 U.S. Dist. Lexis 13800 (E.D. Pa. 1988) and 1988 U.S. Dist. Lexis 12942 (E.D. Pa. 1988); 1988 U.S. Dist. Lexis 11125. Lawsuit by survivors of man with retardation denied adequate treatment at state mental health institution and later killed by

automobile after wandering away from institution.  Complaint dismissed. Leave to file amended complaint granted.

*Meisel v. Kremens*

405 F. Supp. 1253 (E.D. Pa. 1975); 80 F.R.D. 419 (E.D. Pa. 1978).  First judicial declaration that statute permitting summary revocation of mental hospital parole is unconstitutional violation of due process. Also, held that Civil Rights Attorney Fees Award Act of 1976 applies to plaintiff's application for fees as he acted as "private attorney general" and was responsible for repeal of the statute involved.

*Mental Patient Civil Liberties Project v. Pennsylvania Department of Public Welfare, Hospital Staff Civil Rights Committee*

444 F.Supp. 981 (E.D.Pa. 1977) (plaintiffs entitled to attorneys fees). 541 F.2d 275 (3d Cir. 1976) (affirmed), judgment vacated by 430 U.S. 925, 97 S.Ct. 1542 (1977) (certiorari granted and judgment vacated in light of new federal attorneys fees statute). Consent decree guaranteeing rights of people in mental institutions to free speech, association, free choice of visitors, access to civil rights groups and attorneys and patients' rights manual. On application for attorney's fees, the U.S. Supreme Court granted certiorari and remanded for determination of applicability of Civil Rights Attorneys Fees Award Act of 1976.

*Musko v. McCandless*

1995 WL 580275 (E.D.  Pa. 1995);1995 WL 262520 (E.D. Pa. 1995). Denial of summary judgment on civil rights and American with Disabilities Act claims by person whom Township officials sought to exclude or banish from neighborhood on account of mental illness and eccentric behavior.

*Northern California Psychiatric Soc. v. City of Berkeley*

178 Cal.App.3d 90, 223 Cal.Rptr. 609 (Cal.App. 1 Dist.,1986). Defense of City of Berkeley ban on electroshock treatment. Represented intervenor-appellant Coalition to Stop Electroshock. Court struck down city restrictions on electroshock and upheld denial of intervention of Coalition.

*Pfeffer v. Com. Unemployment Compensation Bd. of Review*

382 A.2d 511, 33 Pa.Cmwlth. 601 (1978). Upheld denial of unemployment compensation to claimant.

*Philadelphia Police and Fire Association for Handicapped Children, Inc. v. City of Philadelphia*

699 F.Supp. 1106 (E.D. Pa. 1988) right to community services for people with retardation who are living at home. $6.8 million in service cutbacks was enjoined by the court.

*Philadelphia Police and Fire Association for Handicapped Children, Inc. v. City of Philadelphia*

874 F.2d 156 (3d Cir. 1989). In suit by mentally retarded persons living at home brought class action to challenge constitutionality of cuts in services, the District Court (699 F.Supp. 1106 (E.D. Pa. 1989) and 705 F.Supp. 1103 (E.D. Pa. 1989)), had invalidated denial of benefits for retarded persons living at home and required Pennsylvania to pay money to city. The Court of Appeals held that (1) appeal was not rendered moot by payment for services in fiscal year 1989, and (2) reduction or elimination of benefits for mentally retarded persons living at home did not violate equal protection or due process.

*Ricci v. Greenblatt; Ricci v. Okin*

823 F.Supp. 984 (D.Mass. 1993);1992 WL 163215 (D.Mass. 1992); 978 F.2d 764 (1st. Cir. 1992). Represented Governor of Massachusetts, Secretary of Administration and Finance, Secretary of Human Services, Commissioner of Mental Retardation, and other Defendants in five 20-year old class action cases in which consent decrees had been entered regarding services for people with retardation in Massachusetts. Began representation in 1991 for purpose of assisting Defendants in concluding the litigation and terminating judicial involvement in the retardation system. Cases were fully settled in 1993, with the court terminating its jurisdiction. Drafted approval statement of the Governor of Massachusetts delivered in court. Assisted in achieving resolution of final administrative issues.

*S.H. v. Edwards*

886 F.2d 292 (11th Cir. 1989). Co-counsel on amicus curiae  brief for multiple national organizations, led by Association for Retarded Citizens of the United States (National ARC) on constitutional right to community services for people with retardation .

*Savidge by  Savidge v. Fincannon*

836 F.2d 898 (5th Cir. 1988); 784 F.2d 186 (5th Cir. 1986); 768 F.2d 639 (5th Cir. 1985). Injury and resulting paralysis to person with retardation in state institution. Lawsuit for damages. Settled in excess of $500,000.

*Sharkey v. Kassab*

(E.D. Pa. 1975). Consent decree guaranteeing institutionalized mental patients opportunity for judicial hearing prior to revocation of driver's licenses.

*Silo v. Comm'r. of Pennsylvania Bureau of Correction*

380 F.Supp. 1340 (M.D. Pa. 1974). Held that state prisoner is not entitled, based on inadequacy of of law library, to have counsel appointed for him, with counsel paid by the state. Prison conditions. (Silo had requested David Ferleger to represent him; Mr. Ferleger declined at that point. Mr. Ferleger did represent Silo elsewhere).

*Smith v. Wendell*

390 F.Supp. 260 (E.D. Pa. 1975). Denial of medical care to mental institution inmate raises proper civil rights claim, the court held. Also, that two-year statute of limitation applies to claims of improper detention in mental hospital, rather than one-year limitation.

*Souder v. McGuire*

516 F.2d 820 (3d Cir. 1975). Counsel for amicus curiae. Held that, where prisoner in state hospital for the criminally insane raises substantial questions concerning the constitutionality of criminal commitment statute, lower court erred in refusing the petitioner *in forma pauperis* status. The lower court should have appointed counsel for the prisoner.

*Souder v. McGuire*

423 F.Supp. 830 (M.D. Pa. 1976). Held that mental patient's claim for damages for forced medication stated cause of action under U.S. Constitution's protection from

cruel and unusual punishment under Eighth Amendment, and that court would hear as pendent claim charge of assault and battery for forced medication.

*Sudol v. Philadelphia Psychiatric Center (Philadelphia Common Pleas Ct.)*

Suit for damages against staff and inpatient facility for sexual assault on patient.

*Thomas v. Vincent*

(D. Tx. 1990). Death in retardation institution while being restrained. Settled for confidential sum of money.

*United States ex rel. McGough v. Hewitt*

528 F.2d 339 (3d Cir. 1975). Held that, where judge in state criminal trial has reason to believe that defendant may be incompetent to stand trial, judge must hold hearing, despite agreement of defense attorney and district attorney that person is competent to proceed.

*United States ex rel. Souder v. Watson*

413 F.Supp. 711 (M.D. Pa. 1976). Declaring unconstitutional state law permitting transfer of prisoners to mental hospitals without mandatory notice, counsel and hearing.

*United States. v. Wagner*

1996 WL 148536 (N.D. Tex. 1996); 1995 WL 841924 (N.D. Tex. 1995); 930 F. Supp. 1148 (N.D. Tex. 1996; 940 F.Supp. 972 (N.D. Tex. 1996). Lawsuit challenging discrimination against a group home for people with disabilities by a neighborhood association. Represented private plaintiffs (neighbors who sought to sell home to be a group home for children) alongside the United States Justice Department which jointly litigated the case.

*Vecchione v. Wolgemuth*

426 F.Supp. 1297 (E.D. Pa. 1977) (Three-Judge Court), affirmed, 558 F.2d 150 (3d Cir. 1977), opinion upholding settlement, 80 F.R.D. 32 (E.D. Pa. 1978); 481 F.Supp. 776 (E.D. Pa. 1979). Certiorari was denied by the U.S. Supreme Court of the Circuit Court decision. In this complex litigation, state required repayment of $9,100,000 in mental patients' funds taken in violation of a 1974 court order. A settlement was ultimately

approved establishing a new system for control and management of patients' funds in state facilities.

*W. v. Wapner* (Phila. Common Pleas Ct.)

Damages to infant as result or Malpractice in birth, resulting in severe physical handicaps and retardation in child. Settlement includes total payout of approximately $15 million.

*Walton v. Cipriano (Bucks Cty. Common Pleas Ct.)*

Wrongful sexual intimacy by psychologist with patient. Settled for sum of money.

*Wong v. Bucks County, Pennsylvania*

(E.D. Pa., Feb. 8, 1982). Held that alien with retardation has constitutional right not to be discriminate against in provision of services, right to adequate services.

*Wyatt v. King*

773 F.Supp. 1508 (N.D. Ala. 1991) (originally Wyatt v. Stickney). Held that: (1) mentally ill patients in involuntarily committed to state institutions had constitutionally protected liberty interest in their release when their condition no longer satisfied requirements for initial civil commitment, and (2) due process required at minimum that such patients receive postcommitment enjoined except in accordance with judgment. Represented intervenors, class members, as consultant and co-counsel to state-designated protection and advocacy system. 811 F.Supp. 1533 (M.D.AL 1993); 803 F.Supp. 377 (M.D.AL 1992); 793 F.Supp. 1058 (M.D. AL 1992); 781 F.Supp. 750 (M.D.AL 1991).

*Wyatt v. Poundstone*

169 F.R.D. 155 (M.D. Ala. 1995); 941 F.Supp. 1100 (M.D. Ala. 1996); 892 F.Supp. 1410 (M.D. Ala. 1995). See above.

*Wyatt v. Rogers*

92 F.3d 1074 (11th Cir. 1996); 942 F.Supp. 518 (M.D. Ala. 1996) (later citations omitted). Represented plaintiff-intervenors in suit regardingconditions at Thomasville Adult Adjustment Center, and regarding constitutionality of state law.

*Baldridge by Stockley v. Clinton*

139 F.R.D. 119 (E.D.Ark. 1991). Class action decision in institutional case. Class decertified.

## Consultation

National Disability Rights Network, Washington, D.C.

New Jersey Protection & Advocacy, Inc.

Georgia Advocacy Organization, Atlanta, Ga.

Commonwealth of Massachusetts: Office of the Governor, Department of Mental Retardation and Executive Office of Human Services.

State of Wyoming, Bureau of Charities and Reform, Wyoming State Training School

Supreme Court of West Virginia, Juvenile Justice Committee

National Institute of Mental Health

Alabama Disabilities Advocacy Program, University of Alabama Law School

State of New Jersey, Department of the Public Advocate

North Central Texas Legal Services, Inc., Dallas, TX

Texas Association for Retarded Citizens

Association for Retarded Citizens of Florida (ARC/FL), Tallahassee, FL

Washoe Association for Retarded Citizens, Inc., Reno, NV

Coalition To Stop Electroshock, Berkeley, CA

Developmental Disabilities Advocacy Network, Harrisburg, PA

Advocates for Basic Legal Equality, Inc., Toledo, OH

National Conference on Establishing and Maintaining an Institutional Advocacy Program: Representing People with Handicaps, San Francisco, CA and Washington, D.C.

Partial listing.

## PROFESSIONAL ORGANIZATIONS

### National Association of Special Masters
Founding Board of Directors 2004-present

**National Association for Rights Protection and Advocacy**
Elected Board Member 1972 - 1991.  Elected President, 2 terms.

**American Association on Intellectual and Developmental Disabilities (formerly, American Association on Mental Retardation)**
Member starting 1988

**Foundation for Dignity**
Founder and President. 1985-1990.

**Foundation for Justice**
Board Member, 1989-1994.

**The Association for the Severely Handicapped (TASH)**
Member starting 1994

## SPEAKING

xx

Address, *"Special Masters in Complex Litigation: Amended Rule 53,"* National Association of Special Masters (St. Paul, MN 2004)

United Nations Presentation, *"Evolutions in Advocacy 1960-1994,"* United Nations Conference, "Beyond Normalization Toward One Society For All,"  (Reykjavik, Iceland 1994).

Address, *"Community Services Litigation: Filing, Settlement & Implementation*,"  Real Rights • Real Reform -- 13th Annual Conference, National Association for Rights Protection and Advocacy (San Diego, CA 1994).

Plenary Address, *"The Place of 'Choice,'"* Conference: Choice and Responsibility: Legal and Ethical Dilemmas in Services for  Persons With Mental Disabilities, New York Commission on Quality of Care for the Mentally Disabled (Albany, NY 1994).

Address, *"The Place of 'Choice.'"* Association of Special Masters and Court Monitors (Atlanta, GA 1994).

Seminar Lecturer, *"The Americans With Disabilities Act and Medical Treatment,"* Physical Medicine & Rehabilitation, Residency Training Program,

The Graduate Hospital & University of Pennsylvania School of Medicine (Philadelphia, PA 1994).

Address, *"Reflections from Court Masters,"* The ARC (Formerly Association for Retarded Citizens of the United States) National Convention (Providence, RI 1993).

Seminar Lecturer, *"Mental Health and the Law: Treatment Rights,"* Medical Educational Services, Inc. (King of Prussia, PA 1993).

Plenary Address, *"The State of the Law: Rights of People With Disabilities,"* 10th Annual Conference, National Public Welfare Association (San Antonio, TX 1993).

Address, *"The Texas Case: Lelsz v. Kavanagh,"* 10th Annual Conference, National Public Welfare Association (San Antonio, TX, 1993).

Address, *"Evaluating and Proving Damages in Litigation Challenging the Quality of Care of Persons with Disabilities,"* Sixteenth Annual Conference, The National Association of Protection and Advocacy Systems (NAPAS) (Washington, D,C., 1993).

Address, *"Community Services in the Courtroom,"* American Association on Mental Retardation (AAMR), 117th Annual Meeting (Washington, D.C. 1993)

Address, *"People Living in the Community: What Rights do They Have and How Can They be Enforced?"* National Association for Rights Protection and Advocacy 11th Annual Conference (Kansas City, MO 1992)

Address, *"The Right to Treatment ,The Right to Refuse Treatment, and The Right To Choose,"* A Conference on the Clinical and Legal Issues Relating to Psychotropic Medication and Alternative Treatments, University of Alabama, School of Law (Tuscaloosa, AL 1990).

Address, *"Creating Community Alternatives Through Litigation, Advocacy Challenges in the 90's,"* 13th Annual Conference of the National Association of Protection and Advocacy Systems (NAPAS) (Beheads, MD, 1990).

Address, *"Challenging Established Doctrines: The Impact of Cultural and Societal Forces on Mental Health,"* The American Orthopsychiatric Association, Inc., 67th Annual Meeting (Miami Beach, FL 1990)

Address, *"Damage Actions on Behalf of People With Disabilities: A Morning With David Ferleger,"* Maryland Trial Lawyers Association, and Maryland Disability Law Center (Baltimore 1991).

Address, "Damage Actions: A Controversial Newcomer in the Abuse and Neglect Prevention Arsenal," National Symposium on Abuse/Neglect Prevention and Intervention (New York 1991).

Address, *"Litigating Difference,"* Law and the Community, Association for American Law Schools (AALS), Annual Meeting (Washington, D.C. 1991).

Address, *"The Right to Community Placement and Services, Advocacy Challenges in the 90's,"* 12th Annual Conference of the National Association of Protection and Advocacy Systems (1989).

Address, *"Access Issues,"* PAMI Coordinators Meeting, National Institute of Mental Health and National Association of Protection and Advocacy Systems (1990).

Welcoming Address, Damages Litigation, Rights of People With Disabilities Dismantling Barriers to Justice, New York University School of Law (1989).

Address, *"Role of Litigation as a Quality Assurance Mechanism,"* American Association on Mental Retardation, 1989 Annual Meeting, Chicago (1989).

Address, *"Back to Court in Pennhurst: Enforcement of Court Decrees in the Community,"*  American Association on Mental Retardation, 1989 Annual Meeting, Chicago (1989).

Address, *"Enforceable Rights in Community Services: New Thought and Theories,"* National Association for Rights Protection & Advocacy (NARPA), 1988 Rights Conference (Portland, OR 1988).

Address, *"Lawsuits for Damages: Strategies for Victory,"* National Association for Rights Protection & Advocacy (NARPA), 1988 Rights Conference (Portland, OR 1988).

Address, *"Personal Injury and Damage Actions,"* National Association of Protection & Advocacy Systems (NAPAS), 1988 Annual Conference (Bethesda, MD 1988).

Address, *"The Philadelphia Police and Fire Association for Handicapped Children v. City of Philadelphia,"* Board of Directors, Charles R. Drew Community Mental Health/ Mental Retardation Center (Philadelphia, PA 1988).

Keynote Speech, Mississippi Protection & Advocacy System, Inc. Annual Conference (Jackson, MI 1988).

Keynote Speech, Advocacy Resource Conference, West Virginia Department of Health and Mental Health Association in West Virginia (Morgantown, WV 1988).

Keynote Speech,  *"Civil Rights Seminar in Mental Health and Disability Law,"* Wyoming State Bar and Protection & Advocacy System, Inc. (Laramie, WY 1988).

Address, "*Rights in Treatment; Competency: Client Choice v. Substituted Judgment -- Who Knows Best, Considerations in Legal Restraints & Guardianship Proceedings,"* Civil Rights Seminar in Mental Health and Disability Law,

Wyoming State Bar and Protection & Advocacy System, Inc. (Laramie, WY 1988).

Negotiation Workshop, Advocacy Resource Conference, West Virginia Department of Health and Mental Health Association in West Virginia (Morgantown, WV 1988).

Address, *"Rights of People With Disabilities,"* Wyoming Law School (Laramie, WY 1988).

Conference Organizer, Co-Sponsor and Presenter, Damages Action Conference (Washington, D.C. 1988) (with Mental Health Law Project & Center for Public Representation).

Address, *"Litigation Practice Book -- Report on Technical Assistance Project,"* National Association of Protection & Advocacy Systems, Inc. and NIMH PAMI Coordinators Meeting (Orlando, FL 1987).

Address, *"Children, the Constitution and the Law."* Children's Express,  A Symposium on the Media and Children's Issues (New York, NY 1987).

Luncheon Speaker, State Convention, Association for Retarded Citizens, Maryland (Baltimore, MD 1987).

Keynote Speech, Virginia Department of Mental Health and Mental Retardation Seventh Annual Human Rights Seminar (Charlottesville, VA 1986).

Address, Families Unite for Mental Health (Oreland, PA 1986).

Address, Great Lakes Regional NRA Conference, Rehabilitation Values . . . Tradition, Vision, Commitment (St. Paul, MN 1985).

Address, Mental Health Consumer Rights Advocacy Conference (Wyomissing, PA 1985).

Address, Families Unite for Mental Health (Springfield, PA 1985).

Address, *"Informed Consent to Treatment: Juveniles and the Mentally Disabled,"* Conference on Current Issues in Law and Psychiatry (sponsored by N.Y. Supreme Court Appellate Division, First Dept., and committees of the Association of the Bar of the City of New York) (New York 1983).

Address, *"Legal Issues and the Disturbed Adolescent,"* Eastern State School and Hospital Conference on Building a Total Treatment Framework for the Disturbed Adolescent (Trevose, PA 1983).

Panel, *"Solo and Small Firm Practice,"* Second Annual Public Interest Law Conference, New Approaches to Law in the Public Interest, University of Pennsylvania (panel discussion) (Philadelphia, PA 1983).

Guest of Honor and Speaker, Reception following special performance of *Nuts*, a play by Tom Topor, produced by The Philadelphia Company (Philadelphia, PA  1982).

Address, "Recent Litigation and Expanding Community Services," 1982 Mental Health Rights Conference, National Association for Rights Protection and Advocacy (Detroit, MI 1982).

Address, *"Alternative Approaches to Public Interest Law Practice and Funding,"* Conference on the Future of Public Interest Law and Practice, University of Pennsylvania (panel discussion) (Philadelphia, PA 1982).

Address, *"The History and Present Reality of Institutions and Implementation Strategies for Institutional Problems,"* National Conferences on Establishing and Maintaining An Institutional Advocacy Program: Representing People With Handicaps (San Francisco, CA and Washington, D.C., 1981).

Address, Public Interest Law Conference, University of Pennsylvania Law School (Philadelphia, PA 1981).

Television, *"Free Speech for Nazis?"* Panel at WCAU-TV presented by Jewish Community Relations Council (1981).

Address, *"Post-Partum Pennhurst: Rights to Treatment and Habilation in Least Restrictive Settings,"* Institutional Law Training, Pennsylvania and Legal Services Center (Harrisburg, PA 1981).

Address, *"Rights, Wrongs, and the Cost of Freedom: A New Ideology for Advocacy?,"* Conference on Legal Rights of the Disabled Citizen (Louisville, KY 1981).

Address, Third Annual Symposium on Mental Health and the Law, University of Richmond, T.C. Williams School of Law (1980).

Address, Governor's Advocacy Council for Persons With Disabilities, Public Interest Conference: Focus on Community Alternatives  (Charlotte, NC 1980).

Address, *"Advocacy for the Legal Interests of Children,"* National Association of Counsel for Children (Colorado Springs, CO 1980).

Dinner Speaker, Annual Dinner, Mental Health Association of Lackawanna County (Scranton, PA 1980).

Address, American Association on Mental Deficiency, Mississippi, Annual Meeting (Jackson, MI 1980).

Convenor, Organizer and Lecturer, Rural Lawyer Training, Developmental Disabilities Advocacy Network, Conference of the Rural Lawyer Training Project (with Penelope A. Boyd, Esquire) (Butler and Lamar, PA 1980).

Address, *"Advocacy: Asserting the Rights of the Mentally Disabled,"*  Lackawanna, Susquehanna, Wayne counties MH/MR Program, Allied Service for the Handicapped, Lackawanna Association for Retarded Citizens and Mental  Health Association of Lackawanna County (Dunmore, PA 1980).

Address, *"Whose Hands Are Tied? Physical Restraints, Minors and the Law,"* American Academy of Child Psychiatry, Annual Convention (Atlanta, GA 1979).

Course Planner and Seminar Lecturer,  Pennsylvania Bar Institute, Seminar on Asserting the Rights of the Mentally Disabled (Philadelphia, PA 1979) (Course Planner and Major Speaker).

Address, Practicing Law Institute, Legal Rights of the Mentally Handicapped (Denver and New York (1979-1980).

Keynote Speaker, National Public Law Training Center, Current Concerns in Public Sector Law (Washington, D.C., 1979).

Address, Ohio Association for Retarded Citizens, Annual Convention (Toledo, OH 1979).

Address, *"Asylums, Parents and Kids The Right to Be Free,"* Kings College (Wilkes-Barre, PA 1978).

Address, American Association of Law Liberties, Annual Convention (Washington, D.C. 1981).

Address, *"Children's Rights: Past and Present,"* University of Kansas (Lawrence, KS 1978).

Address, Western Psychiatric Institute and Clinic (Pittsburgh, PA 1978).

Plenary Speaker, Massachusetts Association for Retarded Citizens, 23d Annual Convention (Eastham, MA 1978).

Address, Washington State Association for Retarded Citizens, Annual Convention (Ocean Shores, WA 1978).

Address, 2d National Conference on the Legal Rights of the Mentally Disabled, The Kansas Bar Association, The Menninger Foundation (Topeka, KS 1978).

Address, American Association on Mental Deficiency, Annual Convention (New Orleans, LA 1977).

Seminar Lecturer, Pennsylvania Bar Institute, Seminar on Public Interest Litigation: Expanded Private Practice and Attorney's Fees (Philadelphia, PA 1977).

Address, Annual Devereux Foundation Institute on Therapeutic Education (West Chester, PA 1977).

Address, Columbia University Teacher's College National Conference on Children's Rights (New York, NY 1976).

Address, Pennsylvania Rehabilitation Association Annual Meeting (1975).

Address, Self-Help Exploratory Workshop (Chicago, IL 1974).

Address, National Legal Aid and Defender Association Annual Meeting (1974).

Address, American Psychological Association Annual Conference (1974).

Address, National Association of Social Workers Southern Regional Conference (1974).

Address, State of Maine, Department of Mental Health and Corrections, and Bowdoin College, Conference on Mental Health Law (1974).

Address, National Association of Social Workers Annual Conference (1972).

*"Legal Issues and the Disturbed Adolescent,"* The Social Service Department of Eastern State School and Hospital (Trevose, PA 1983).

Television news magazine and other television appearances omitted.

## Citations to David Ferleger's Work in Judicial Decisions and Articles

*In re Welding Rod Products Liability Litigation*, 2004 WL 3711622, N.D.Ohio (Nov. 10, 2004).

*Scott v. Plante*, 532 F.2d 939 (3d Cir. 1978).

*Society for Good Will to Retarded Children, Inc. v. Cuomo*, 103 F.R.D. 169 (S.D. N.Y. 1984)

*In re Hop*, 171 Cal.Rptr., 721, 623 P.2d 282, 29 (CA. 1981).

*Levine v. State Dept. of Institutions and Agencies*, 418 A.2d 229, 84 N.J. 234 (N.J. 1980).

*In re  K.K.B.*, 609 P2d 747  (OK 1980).

Christian, *Normalization as a Goal: The Americans with Disabilities Act and Individuals with Mental Retardation*, 73 Tex. L. Rev. 409 (1994).

Eastman, *Speaking Truth to Power: The Language of Civil Rights Litigators*, 104 Yale L.J. 763 (1995).

Halpern,  *Introduction: Symposium Mentally Retarded People and the Law*, 31 Stan. L. Rev. 545 (1979).

Herr, *Special Education Law and Children with Reading and Other Disabilities*, 28 J.L. & Educ. 337 (1999).

Koocher, *Different Lenses: Psycho-Legal Perspectives on Children's Rights*, 16 Nova L. Rev. 711 (1992).

Minow, *When Difference has its Home: Group Homes for the Mentally Retarded, Equal Protection and Legal Treatment of Difference*, 22 Harv. C.R.-C.L. L. Rev. 111 (1987).

Perlin, *"For the Misdemeanor Outlaw:" The Impact of the ADA on the Institutionalization of Criminal Defendants with Mental Disabilities*, 52 Ala. L. Rev. 193 (2000).

Perlin, *"I Ain't Gonna Work on Magie's Farm No More:" Institutional Seggregation, Community Treatment, the ADA, and the Promise of Olmstead,* 17 T.M. Cooley L. Rev. 53 (2000).

Perlin, *"Make Promises by the Hour:" Sex, Drugs, the ADA, and Psychiatric Hospitalization,* 46 DePaul L. Rev. 947 (1997).

Perlin, *"Their Promises of Paradise:" Will Olmstead V. L.C. Resuscitate the Constitutional "Least Restrictive Alternative" Principle I in Mental Disablity Law?,* 37 Hous. L. Rev. 999 (2000).

Perlin, *"There's no Success Like Failure / and Failure's no Success at all:" Exposing the Pretextuality of Kansas v. Hendricks,* 92 NW. U. L. Rev. 1247 (1998).

Perlin, Gould & Dorfman, *Therapeutic Jurisprudence and the Civil Rights of Institutionalized Mentally Disabled Persons: Hopeless Oxymoron or Path to Redemption?,* 1 Psychol. Pub. Pol'y & L. 80 (1995).

Perlin, *The ADA and Persons with Mental Disabilities: Can Sanist Attitudes be Undone?,* 8 J.L. & Health 15 (1993-94).

Poston, *Developments in Federal Disability Discrimination Law: An Emerging Resolution to the Section 504 Damages Issue,* 1992/1993 Ann. Surv. Am. L. 419 (1994).

Rosenberg, *Developmental Disability Law: A Look Into the Future,* 31 Stan. L. Rev. 817 (1979).

Sangree, *Control of Childbearing by HIV-Positive Women: Some Responses to Emerging Legal Policies,* 1 Buff. L. Rev. 309 (1993).

End