IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD KATZ | : | |
| | : | |
| Plaintiff | : | CIVIL ACTION |
| | : | NO. 3:15-cv-1187 |
| v. | : | |
| | : | |
| NATIONAL BOARD OF MEDICAL | : | (MARIANI, J.) |
| EXAMINERS, et al., | : | (SAPORITO, M.J.) |
| | : | |
| Defendants | : | |

**THE NATIONAL BOARD OF MEDICAL EXAMINERS AND THE
FEDERATION OF STATE MEDICAL BOARDS' REPLY MEMORANDUM
IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

The National Board of Medical Examiners and the Federation of State Medical Boards submit this reply to plaintiff Richard Katz's opposition to defendants' motion for summary judgment. Because the Court will consider only relevant and competent evidence, defendants will not burden the Court by addressing each of plaintiff's arguments or the 60 exhibits he filed with his opposition.[1] Rather, defendants focus their reply on explaining why the Court should reject each of plaintiff's arguments regarding the statute of limitations, none of which withstand scrutiny. Each of plaintiff's theories is addressed briefly below.

> **A.    The Court Should Reject Plaintiff's Assertion that Defendants Committed a "New Discriminatory Act" in April 2014, Triggering a New Limitations Period.**

In Section III.E. of his brief,[2] plaintiff asserts that he found out his diagnosis of bipolar disorder in March 2013, and contacted defendants on April 1, 2014, in an "Appeal," which was a letter requesting another attempt to take Step 1, notwithstanding that he had already exceeded the

---

[1] Defendants' failure to respond to any specific statement, argument or exhibit should not be construed as acquiescence or agreement with any point plaintiff makes in his opposition.

[2] Plaintiff did not number the pages of his brief, but the relevant section appears in Document 131, page 19 of 36.

six-attempt limit on taking any Step or Step component of the USMLE. Defendants denied plaintiff's request on April 17, 2014, explaining that exceptions to the six-attempt limit policy must be pursued through a state medical board. Plaintiff now asserts that the defendants' April 17, 2014, response was a "new discriminatory act" that started a two-year limitations period.

Plaintiff provides no authority for that assertion,[3] and indeed it makes no sense. By plaintiff's logic, an individual could have failed Step 1 of the USMLE 20 times before the USMLE adopted the six-attempt limit, could have had full awareness (as plaintiff admitted he did) of the implementation of the attempt limit when defendants announced it in 2011 and when it became effective in 2013, yet that individual could nevertheless come forward in 2016, or even later and say that he received a new diagnosis and wanted another attempt. Under plaintiff's theory, if the defendants said no, the statute of limitations would only then begin to run on a claim of discrimination. Such a situation makes no sense because the six-attempt limit would provide no finality, and an individual could repeatedly create new limitations periods whenever he had new medical or psychological information.

B. **The Court Should Not Apply Equitable Tolling to Plaintiff's Claims.**

Plaintiff argues that the Court should deem his claim or claims subject to equitable tolling based on supposed fraudulent concealment by the NBME in regard to the 2006 evaluation of his request for accommodations. Alternatively, he argues in favor of equitable tolling based upon mental incapacity. The Court should reject both arguments.

---

[3] In a separate part of his argument, plaintiff quotes one sentence from a letter from attorney, David Ferleger, who is a supposed authority, suggesting that the statute of limitations should start when defendants denied plaintiff's request regarding the six-attempt limit. Document 131, p. 24 of 36. Notably, although plaintiff says that Mr. Ferleger spent "considerable time" looking at plaintiff's case pro bono, he declined to take the case. He is on Exhibit 40 among the lawyers and firms that declined to represent plaintiff.

In a 2014 decision granting summary judgment to the defendant university on claims of sexual harassment and failure to accommodate disabilities, Judge Rambo of this Court summarized the principles surrounding equitable tolling:

> **Equitable tolling may be appropriate where: (1) the defendant has wrongfully deceived or misled the plaintiff in order to conceal the existence of a cause of action; (2) when the plaintiff in some extraordinary way has been prevented from asserting his rights; or (3) when the plaintiff has timely asserted his rights in the wrong forum.** *See Sullivan v. Doe,* Civ. No. 07–cv–2092, 2008 WL 4083176, *7 (E.D.Pa. Aug.28, 2008) (citing *Jones v. Morton,* 195 F.3d 153, 159 (3d Cir.1999)); *Meyer v. Riegel Prods. Corp.,* 720 F.2d 303, 307 (3d Cir.1983) (citing *School Dist. of Allentown v. Marshall,* 657 F.2d 16, 20 (3d Cir.1981)). **Generally, to invoke equitable tolling, the plaintiff must show that the defendant attempted to mislead him and that the plaintiff reasonably relied on the misrepresentation by neglecting to file a timely charge.** *See Jones v. Fitzgerald,* Civ. No. 14–cv–0412, 2014 WL 2938619, *1 (W.D.Pa. June 30, 2014) (citing *Hedges v. U.S.,* 404 F.3d 744, 751 (3d Cir.2005)). … The party seeking equitable tolling must demonstrate entitlement and establish that he acted with reasonable diligence throughout the period he seeks to toll. *See Harris v. Homecomings Fin. Servs. Inc.,* 377 F. App'x 240, 243 (3d Cir.2010) ("In order to equitably toll a statute of limitations, a plaintiff must establish, in pertinent part, that the defendant actively misled her about her claims or that some other extraordinary circumstance prevented her from pursuing her claims. Moreover, she must demonstrate that she diligently pursued her claims." (citations omitted)).

<u>King v. Mansfield University of Pennsylvania</u>, 2014 WL 3734551 (M.D.Pa. 2014), * 10, emphasis added.

### 1. Plaintiff Has Not Shown Entitlement to Equitable Tolling Based on Mental Incapacity.

In regard to mental incapacity, plaintiff argues that he "would not have been in a 'sound frame of mind' and cannot be deemed a 'reasonable person' until April of 2014," citing Exhibit 59. That exhibit, which plaintiff filed under seal, contains excerpts of medical records from when he was hospitalized for six days in 2013. The fact that plaintiff was hospitalized for six days in 2013, however, while no doubt a low point for him, provides no basis for the Court to

3

find him so mentally incapacitated that it should equitably toll the statute of limitations for a period of years.

A plaintiff raising equitable tolling based on mental incapacity must meet a demanding standard, and while plaintiff cited many cases – mostly from other circuits – noting that a court *can* apply equitable tolling based on mental incapacity, the only case he cited in which a court in this circuit actually found that mental incapacity might toll a statute of limitations was <u>Lake v. Arnold</u>, 232 F.3d 360 (3d Cir. 2000). In <u>Lake</u>*,* the mentally retarded plaintiff was permanently sterilized when she was 16 years old at the direction of her guardian father. Many years later Lake and her husband learned of the sterilization, leading her to sue her father, stepmother, the doctors who performed the surgery and the hospital (a state actor) under Section 1983. The district court found plaintiff's claims time barred, but the Court of Appeals remanded to determine if equitable tolling should apply to her claim. The Court cited the special circumstances of the case:

> If Elizabeth's allegations prove on remand to be true, we conclude that in this situation, where a guardian conspires to deprive a mentally incompetent person of her constitutional and civil rights, equitable tolling might be appropriate. Elizabeth would then be entitled to revive the two-year period that the Pennsylvania law provides for her to bring her claim. *See Oshiver,* 38 F.3d at 1389.
>
> We are not, in remanding this case to the District Court, holding that a mentally incompetent plaintiff would *never* be bound by state statute of limitations provisions in federal civil rights actions or, alternatively, that she would be evaluated by a more lenient subjective test. *Cf. Robinson,* 107 F.3d at 1022–23 (recognizing that a liberal interpretation of equitable tolling exception would swallow the rule). In fact, we have previously held that mental incompetence is not *per se* a reason to toll the statute of limitations in federal actions. *See e.g., Barren by Barren v. United States,* 839 F.2d 987 (3d Cir.1988) (rejecting mental incompetence as reason to toll statute of limitations under Federal Tort Claims Act). Where we have permitted equitable tolling for mental disability in the past, the plaintiff's mental incompetence motivated, to some degree, the injury that he sought to remedy. *See Eubanks v. Clarke,* 434 F.Supp. 1022 (E.D.Pa.1977) (deciding to equitably toll the Pennsylvania statute of limitations for a mentally

>incompetent plaintiff who was involuntarily committed for entire limitations period).
>
>* * * * *
>
>In sum, we are not equitably tolling Pennsylvania's statute of limitations solely because Elizabeth's mental incompetence prevented her from recognizing her injury when she was sterilized. Instead, as in *Eubanks,* we are tolling it due to the failure of the guardian system. The persons, who should have protected Elizabeth because of her retardation, instead harmed her by having her sterilized so that she could not procreate. If her allegations prove true on remand, Elizabeth's claims should proceed.

232 F.3d at 370-372.

The Court of Appeals later described the application of equitable tolling in Lake as "unique," Kach v. Hose, 589 F.3d 626 (3d Cir. 2009), rejecting the plaintiff's argument that her psychological problems merited equitable tolling of the statute of limitations on a Section 1983 claim:

>We agree with the District Court that *Lake* does not carry the day for Kach. *Lake* was *sui generis* in its application of federal tolling. While we certainly did, as Kach points out, permit equitable tolling on account of Elizabeth's mental disability, we did so because her mental disability "motivated, to some degree, the injury that [s]he sought to remedy." *Id.* at 371 (citation omitted).

589 F.3d at 644.

Plaintiff has presented nothing like the extreme situation that existed in Lake, in which the plaintiff was not only mentally retarded and incapable of understanding the nature of her injury when it occurred, but also demonstrated the added element of the defendants depriving her of her rights *because of* her mental disability. In contrast, plaintiff has acknowledged his full understanding of the six attempt limit at all relevant times, and the record shows that he took the exam again in 2013, his final eligible year. Exhibit 17, 26. Moreover, a separate exhibit that plaintiff submitted shows that he applied for numerous scientific and other jobs in 2011, 2012, 2013, 2014 and 2015 – presumably the same time for which he now requests equitable tolling of the statute of limitations based on alleged mental incapacity. Plaintiff's Exhibit 26.

For all these reasons, the Court should reject plaintiff's claim for equitable tolling based on mental incapacity.[4]

### 2. The Court Should Reject Plaintiff's Claim of Equitable Tolling Based on Defendants Allegedly Providing Misleading Information to Him.

Plaintiff also requests equitable tolling because, he claims, the defendants intentionally misled him, pointing to the letter from the NBME's Abram Doane in March 2006 that said the NBME consulted with "experts." Plaintiff argues that the use of the plural form (expert*s*) was incorrect, and argues that Catherine Farmer should not be considered an expert because she is not licensed as a psychologist and because she only received her Psy.D. degree in 2004. The Court should reject plaintiff's argument that defendants misled him.

Without belaboring the point, plaintiff can point to no regulation or other requirement that a person conducting a review of a request for accommodations must be a *licensed* medical or psychological professional, because there is no such requirement. While a psychologist must be licensed if she seeks to hold herself out to patients as a licensed professional, or to bill insurance companies for services, licensure is not required to review requests for accommodations within a university, testing agency or other such entity. A person with advanced training and years of

---

[4] Even the cases from other circuits that plaintiff cites show a difficult standard to meet. See Melendez Arroyo v. Cutler-Hammer, 273 F.3d 30,37 (1st Cir. 2001) (citing Nunnally v. MacCausland, 996 F.2d 1 (1st Cir. 1993), noting that equitable tolling is "available in principle but only if the plaintiff showed that the mental disability was so severe that the plaintiff was "[un]able to engage in rational thought and deliberate decision making sufficient to pursue [her] claim alone or through counsel"); Boos v. Runyon, 201 F.3d 178, 185 (2d Cir. 2000) ("…Boos offers no more than a statement that she suffers from "paranoia, panic attacks, and depression." While mental illnesses are as varied as physical illnesses, which is why our Circuit adheres to a case-specific approach, Boos's conclusory and vague claim, without a particularized description of how her condition adversely affected her capacity to function generally or in relationship to the pursuit of her rights, is manifestly insufficient to justify any further inquiry into tolling."); Miller v. Runyon, 77 F.3d 189, 191 (7th Cir. 1996) ("… mental illness tolls a statute of limitations only if the illness *in fact* prevents the sufferer from managing his affairs and thus from understanding his legal rights and acting upon them.")

experience reviewing psychological records and evaluating requests for accommodations certainly can be considered an expert for that purpose, and both Dr. Farmer and Mr. Doane fit that description. Moreover, while qualification to testify as an expert in court is not at issue here, both Dr. Farmer and Mr. Doane would qualify as experts under Federal Rule of Evidence 702, which looks not to licensure but to whether the individual is "qualified as an expert by knowledge, skill, experience, training, or education …"

Plaintiff suggests that Mr. Doane misled him to cover up a predetermined outcome to deny his request for accommodations,[5] but plaintiff misses a crucial point discussed in Dr. Farmer's affidavit: In 2005-2006, when plaintiff submitted his request for accommodations, the NBME granted approximately 75 percent of the requests it received. Given that fact, the notion that the NBME intentionally misled plaintiff to keep him from discovering who reviewed his request is absurd. In fact, the March 2006 denial of plaintiff's request for accommodations provided an accurate, detailed summary of the reasons for denial, none of which is affected by the disclosure in discovery that Dr. Farmer conducted the review. Accordingly, the Court should reject plaintiff's argument that defendants misled him through Mr. Doane's March 2006 letter.

Ruehl v. Viacom Inc., 500 F.3d 375 (3d Cir. 2007), cited by plaintiff, presented a far more compelling argument for equitable tolling based upon misleading information than plaintiff presents here, but the Court still found that equitable tolling did not apply. In Ruehl, the plaintiff showed that the defendant, Viacom, had misled him by getting him to sign a release that included claims under the age discrimination laws, yet the release itself failed to comply with the Older Workers Benefit Protection Act requirement to disclose demographic information about other

---

[5] Document 131, p. 13 of 36.

employees who simultaneously lost their jobs so the employee can determine whether he or she was part of a pattern of age discrimination.

Citing <u>Oshiver v. Levin, Fishbein, Sedran and Berman</u>, 38 F.3d 1380 (3d Cir. 1994), the Court cited two requirements for equitable tolling in employment cases:

> the equitable tolling doctrine may excuse the plaintiff's non-compliance with the statutory limitations provision at issue when it appears that (1) the defendant actively misled the plaintiff respecting the reason for the plaintiff's discharge, *and* (2) this deception *caused* the plaintiff's non-compliance with the limitations provision.

500 F.3d at 384.

Notwithstanding the strong connection between Viacom's invalid release, which led plaintiff to believe he had no basis to sue for age discrimination, and plaintiff's failure to sue within the statute of limitations, the Court said that the plaintiff "has not demonstrated extraordinary circumstances that would justify equitable tolling."  Id.

In contrast with <u>Ruehl</u>, the NBME provided no faulty information to plaintiff, and did nothing to lull him into foregoing rights.  Rather, the NBME provided accurate information to plaintiff in 2006 when it provided him with a summary of the basis for the denial of his request for accommodations.  Accordingly, the Court should reject plaintiff's claim for equitable tolling of the statute of limitations based on so-called misleading information.

    **C.**    **The Court Should Reject Plaintiff's Tortured Attempt to Invoke the Discovery Rule.**

In Section III.J. of his brief,[6] plaintiff argues that under the federal discovery rule, the statute of limitations for him to challenge the six-attempt limit did not start to run until April 17, 2014, because that is when the NBME denied him "access" to Step 1 following his April 1, 2014, request.  Plaintiff tries to analogize his situation in facing the six-attempt policy to a wheelchair-

---

[6] Document 131, p. 24 of 36.

bound individual for whom the statute of limitations does not begin to run on challenging a defective curb cut until he actually tries to use it, citing Voices for Independence v. Pennsylvania Department of Transportation, 2007 WL 2905887 (W.D.Pa. 2007).

Plaintiff's discovery rule argument fails because plaintiff was aware of the six-attempt limit when he saw an announcement on the USMLE website in 2011, on one of the occasions when he registered for Step 1. Exhibit 23, R. Katz depo., p. 216. Plaintiff registered for and took Step 1 additional times during the final year he could register because he knew he would be foreclosed. Exhibit 17, 26. Plaintiff's argument that he was first denied access because of the six-attempt limit in April 2014 twists the discovery rule beyond its limits. By plaintiff's logic, he could have waited five more years before requesting to take Step 1, and the "denial of access" at such time would start a new limitations period. The Court should reject such a tortured interpretation of the discovery rule.

      **D.    The Court Should Deny Plaintiff's Argument that His Lawsuit is Timely Under the Continuing Violation Doctrine.**

Plaintiff's final statute of limitations argument – the continuing violations doctrine – is unavailing. To the extent plaintiff tries to invoke the administrative settlement involving Frederick Romberg, or the supposed ongoing investigation by the Justice Department, the Court should reject such theory. Defendants stand by their statement in their initial brief that plaintiff's reference to the Romberg settlement is incomplete, misleading, and has no bearing whatsoever on plaintiff's case. So, too, with the supposed Justice Department investigation that plaintiff repeatedly refers to but of which there is no actual evidence of record.

Equally unavailing is plaintiff's attempt to link the denial of his request for accommodations in 2006 and the denial of his "Appeal" in 2014 (to waive the six-attempt limit) into a single, continuing violation. The two events are obviously distinct and separate events.

9

Even if they were "violations," which neither one was, they could not be a continuing violation.

### E. The Court Should Reject Plaintiff's Request for Additional Discovery.

In document 191, an affidavit that plaintiff submitted with his opposition to defendants' motion for summary judgment, plaintiff requests an additional period of discovery so that he can take the depositions of Catherine Farmer, Gerard Dillon and Abram Doane, among other things. The Court should reject plaintiff's request.

This is not a case where the plaintiff is being "railroaded" or the defendant has filed a motion for summary judgment before the parties engaged in discovery. Defendants identified Dr. Farmer, Dr. Dillon and Mr. Doane in their initial disclosures, and answered all of plaintiff's many iterations of interrogatories, requests for documents and requests for admission over a period of months. Plaintiff could have taken oral depositions or depositions by written interrogatories during the parties' lengthy discovery period, but failed to do so.

Moreover, plaintiff had a unique extra opportunity to request additional discovery following defendants' initial filing of their motion for summary judgment on May 2, 2016. On May 10, 2016, the Court ordered briefing on the summary judgment motion stayed, and gave defendants 60 days to conduct third party discovery. Plaintiff therefore had the benefit of seeing defendants' motion and memorandum of law, and could have requested leave to take discovery during the same 60-day period, but again plaintiff failed to do so.

For all these reasons, plaintiff has had ample opportunity to complete discovery, and the Court should deny his request for more time to take additional discovery.

**CONCLUSION**

For all the foregoing reasons, and those more fully set forth in the defendants' Amended Memorandum of Law, the Court should grant summary judgment on all counts.

**RESPECTFULLY SUBMITTED,**

/s/ Neil J. Hamburg
Neil J. Hamburg
Michael E. Sacks
HAMBURG & GOLDEN, P.C.
Pa. I.D. Nos. 32175, 39774
1601 Market Street, Suite 3310
Philadelphia, PA  19103-1443
(215) 255-8590
hamburgnj@hamburg-golden.com
sacksme@hamburg-golden.com

Attorneys for Defendants,
The National Board of Medical Examiners and the Federation of State Medical Boards of the United States

**CERTIFICATE OF SERVICE**

    I certify that the foregoing Reply Memorandum in Support of Defendants' Motion for Summary Judgment is being filed electronically with the Clerk of the Court on July 28, 2016, using the electronic case filing system, which will automatically send email notifications of such filing to registered parties. The motion is also being served by regular mail upon:

   Richard Katz
   3364 Parker Lane
   East Stroudsburg, PA  18301
   cat2400@msn.com

   *Pro se*

   /s/ Neil J. Hamburg
   Neil J. Hamburg