## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD KATZ **Plaintiff** | : | |
| | : | |
| | : | |
| | : | |
| v. | : | **CIVIL ACTION** |
| | : | |
| NATIONAL BOARD OF MEDICAL EXAMINERS | : | NO. 3:15-cv-01187 |
| | : | |
| | : | **(MARIANI, J.)** |
| and | : | **(SAPORITO, M.J.)** |
| | : | |
| FEDERATION OF STATE MEDICAL BOARDS | : | |
| **Defendants** | | |

**THE PRO SE PLAINTIFF RICHARD KATZ RESPONDS TO THE DEFENDANTS NATIONAL BOARD OF MEDICAL EXAMINERS (NBME) AND THE FEDERATION OF STATE MEDICAL BOARDS' (FSMB) REPLY MEMORANDUM OPPOSING THEIR MOTION FOR SUMMARY JUDGMENT**

The pro se plaintiff Richard Katz submits his Reply to the defendants the National Board of Medical Examiners (NBME) and the Federation of State Medical Boards (FSMB) "Reply Memorandum" to plaintiffs' Opposition to Amended Summary Judgment.   The defendants fail as a matter of law to carry their initial, threshold burden for purposes of summary judgment under Fed. R. Civ. P. 56 based on the numerous procedural and substantive  deficiencies as enumerated below in the accompanying reply.

_____
Richard Katz
*pro se*
3364 Parker Lane
East Stroudsburg, PA 18301
Telephone: 570-517-9314

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

_____
RICHARD KATZ                          :
**Plaintiff**                             :
                                      :
                                      :
v.                                    :          **CIVIL ACTION**
                                      :
NATIONAL BOARD OF MEDICAL             :          NO. 3:15-cv-01187
EXAMINERS                             :
                                      :          **(MARIANI, J.)**
and                                   :          **(SAPORITO, M.J.)**
                                      :
FEDERATION OF STATE MEDICAL BOARDS  :
**Defendants**_____

## PRO SE PLAINTIFF RICHARD KATZ RESPONDS TO
## THE DEFENDANTS' NBME AND FSMB'S 'REPLY MEMORANDUM'

"Summary-judgment motions involve three different, and often interrelated, legal burdens – the burden of *persuasion*, the burden of *production*, and the burden of *proof*.  Effectively opposing summary-judgment motions requires an understanding of these burdens, because one of the best ways to beat the motion is to show that a burden *has not been met*."[1]

The Court need only review the generality of the defendants *boiler plate* responses to plaintiffs' 24 undisputed material facts (UMF) to determine that they have not met or overcome this burden.  The defendants responses are taglines, completely "devoid of any individualized factual analysis."[2]  Federal courts have long disfavored boilerplate objections.[3]

District courts often repeat the warning: "Boilerplate, generalized objections are inadequate and tantamount to not making any objection at all."[4]  The warning reflects the resounding sentiment that

---

1 Jeffrey Isaac Ehrlich heads the appellate practice group of Shernoff, Bidart & Darras, LLP in Claremont, California, and is certified as an appellate specialist by the State Bar's Committee on Legal Specialization.
2 Ceroni v. 4Front Engineered Solutions, Inc., 793 F. Supp. 2D 1268, 1278 (D. Colo. 2011).
3 St. Paul Reinsurance Co., 198 F.R.D. at 512 ("[F]ederal courts have routinely deemed [boilerplate objections] to be improper objections.").
4 Walker v. Lakewood Condo. Owners Ass'n, 186 F.R.D. 584, 587 (C.D. Cal. 1999) (citations omitted); accord Adelman v. Boy Scouts of Am., 276 F.R.D. 681, 688 (S.D. Fla. 2011) ("[J]udges in this district typically condemn

boilerplate objections are legally improper, regardless of their practical consequence.[5]

The defendants state:

"Because the Court will consider only relevant and *competent* evidence, defendants will not burden the Court by addressing each of plaintiff's arguments or the 60 exhibits he filed with his opposition."

**Reply:** The arguments and 59 exhibits plaintiff "filed with his opposition" garners more *"competency"* than the defendants' NBME so-called "expert(s)" evaluator(s).

"Rather, defendants focus their reply on explaining why the Court should reject each of plaintiff's arguments regarding the statute of limitations, none of which withstand scrutiny."

**Reply:** Plaintiff's "statute of limitations arguments" are not "plaintiff's arguments" but rather 'principles of law.' **In federal cases, the "[t]ime requirements in lawsuits between private litigants are customarily subject to 'equitable tolling.'** [6] **Equitable doctrines were developed and expanded to protect litigants from any hidden unfairness not specifically addressed, or anticipated, by statute or precedent.** Inflexible rules, such as statutes of repose, are inconsistent with equity, which requires individual tailoring to accommodate specific situations.[7]

The Supreme Court explained:

"Equity eschews mechanical rules; it depends on flexibility. Equity has acted on the principle that "laches is not, like limitation, a mere matter of time; but principally a question of the inequity of permitting the claim to be enforced,-an inequity founded upon some change in the condition or relations of the property or the parties."[8]

**A. Plaintiff Controverts The Defendants' Argument That: "The Court Should Reject Plaintiff's Assertion that Defendants Committed a "New Discriminatory Act" in April 2014, Triggering a New Limitations Period."**

The defendants state:

---

boilerplate objections as legally inadequate or meaningless." (citations omitted) (internal quotation marks omitted)); Nissan N. Am., Inc. v. Johnson Elec. N. Am., Inc., No. 09-CV-11783, 2011 WL 669352, at *2 (E.D. Mich. Feb. 17, 2011) (refusing to consider "[b]oilerplate or generalized objections").

5 Duran v. Cisco Sys., Inc., 258 F.R.D. 375, 379–80 (C.D. Cal. 2009) ("Even if not waived, such unexplained and unsupported boilerplate objections are improper." (citations omitted)); Mancia v. Mayflower Textile Servs. Co., 253 F.R.D. 354, 358–59 (D. Md. 2008) ("[B]oilerplate objections . . . persist despite a litany of decisions from courts . . . that such objections are improper unless based on particularized facts." (citations omitted)); A. Farber & Partners, Inc. v. Garber, 234 F.R.D. 186, 188 (C.D.Cal. 2006) ("As an initial matter, general or boilerplate objections such as 'overly burdensome and harassing' are improper—especially when a party fails to submit any evidentiary declarations supporting such objections." (citations omitted)).

6 Irwin v. Department of Veterans Affairs, 498 U.S. 89, 95 (1990) (quoting Hallstrom v. Tillamook County, 493 U.S. 20, 27 (1989)). In fact, the court describes this custom as a "rebuttable presumption." that such time bars maybe equitably tolled. *Id.*

7. Christopher R. Leslie, Den of Inequity: The Case for Equitable Doctrines in Rule 10b-5 Cases, 81 Cal. L. Rev. 1587 (1993). Available at: http://scholarship.law.berkeley.edu/californialawreview/vol81/iss6/4

8 Holmberg v. Armbrecht, 327 U.S. 392, 396 (1946) (quoting Galliher v. Cadwell, 145 U.S. 368, 373 (1892)). Laches is the common law doctrine whereby a defendant is granted an equitable defense because the plaintiff has allowed an undue lapse of time in enforcing a right of action and has been negligent in failing to act.

**1.** In Section III.E. of his brief[9], plaintiff asserts that he found out his diagnosis of bipolar disorder in March 2013, and contacted defendants on April 1, 2014, in an "Appeal," which was a letter requesting another attempt to take Step 1, notwithstanding that he had already exceeded the six-attempt limit on taking any Step or Step component of the USMLE. Defendants denied plaintiff's request on April 17, 2014, explaining that exceptions to the six-attempt limit policy must be pursued through a state medical board. Plaintiff now asserts that the defendants' April 17, 2014, response was a "new discriminatory act" that started a two-year limitations period.

**Reply:** An APPEAL was submitted to the defendants on April 1, 2014 describing in depth plaintiff's 2013 diagnosis. The APPEAL was accompanied by scientific evidence substantiating his claims. The defendants denied his APPEAL on April 17, 2014, *never acknowledging* his 2013 diagnosis of bipolar disorder, ignoring the scientific evidence. Plaintiff produced sufficient evidence in his opposition to the defendants "amended summary judgment" to substantiate that he was not mentally competent during the period in question.

Plaintiff was psychologically damaged by the defendants negligence, this resulted in repeated failures, mentally grueling redundant studying, multiple hits to his self-esteem, cascades of resulting problems, economic and otherwise, all a consequence of an UNLICENSED Disability Service (DS) who likely never successfully passed their own licensing boards.

The defendants' statement *"notwithstanding that he had already exceeded the six-attempt limit on taking any Step or Step component of the USMLE"* is confusing and misleading as worded, plaintiff only exceeded his attempt limit on USMLE Step 1. He still has attempts on all remaining USMLE Step exams under *regular exam conditions.* Plaintiff requires USMLE Step 1 to be licensed. The defendants instituted a 'six attempt limit' in 2012 that is procedurally faulty and discriminates against people with documented mental disabilities.

The Pennsylvania State Medical Board stated that plaintiff's request for a waiver is currently "PREMATURE" essentially *'passing the buck'* back to the defendants, the state board currently awaits the outcome of this lawsuit. The lack of acknowledgment of mental disabilities and a flawed procedural barrier to those with mental disabilities like the 'six attempt limit rule' constitutes a NEW discriminatory act on April 17, 2014 because there was a failure to make a reasonable adjustment to a policy with no explanation or justification to the disabled party. Plaintiff's' request to modify six attempt policy, is a reasonable accommodation under the ADA and does not substantially modify the USMLE's standards.

---

9 The defendants claim that Plaintiff did not number the pages of his July 15, 2016 memorandum, the CM/ECF software automatically places a "header" at the top of the page for each filed document. The header shows the case number, docket entry number, filed date, and **page numbers.**

**2.** The defendants state : "Plaintiff provides no authority for that assertion,[10] and indeed it makes no sense. By plaintiff's logic, an individual could have failed Step 1 of the USMLE 20 times before the USMLE adopted the six-attempt limit, could have had full awareness (as plaintiff admitted he did) of the implementation of the attempt limit when defendants announced it in 2011 and when it became effective in 2013, yet that individual could nevertheless come forward in 2016, or even later and say that he received a new diagnosis and wanted another attempt. Under plaintiff's theory, if the defendants said no, the statute of limitations would only then begin to run on a claim of discrimination. Such a situation makes no sense because the six-attempt limit would provide no finality, and an individual could repeatedly create new limitations periods whenever he had new medical or psychological information.

**Reply:** The above statement is vague, ambiguous, confusing and conclusory, it contains sub-parts, a compound, conjunctive, or disjunctive, it seeks the legal reasoning and theories of defendants contentions. The defendants state "Plaintiff provides no authority for that assertion" (that defendants' April 17, 2014, response was a "new discriminatory act"). **Conversely, the defendants "provide no authority" that it doesn't.** This is for the trier of fact to determine. In an ADA Title III district court case, Speciner v. Nationsbank, the court found that the requirements for barrier removal were ongoing and NOT time-barred.[11]

The defendants "new medical or psychological information argument' has no merit as this is hypothetical, and cases such as plaintiffs' need to be evaluated on a case by case basis. No two situations are alike as defendants themselves assert in their reply memorandum.

**B. The defendants state: "The Court Should Not Apply Equitable Tolling to Plaintiff's Claims."**

Stating: "Plaintiff argues that the Court should deem his claim or claims subject to equitable tolling based on supposed fraudulent concealment by the NBME in regard to the 2006 evaluation of his request for accommodations. Alternatively, he argues in favor of equitable tolling based upon mental incapacity. The Court should reject both arguments."

**Reply:** The defendants are NOT practicing licensed psychologist(s) or psychiatrist(s) and are NOT qualified to make any such determinations on plaintiff's mental health status or mental incapacity.

---

10 The defendants state: "In a separate part of his argument, plaintiff quotes one sentence from a letter from attorney, **David Ferleger,** who is a supposed authority, suggesting that the statute of limitations should start when defendants denied plaintiff's request regarding the six-attempt limit. Document 131, p. 24 of 36. Notably, although plaintiff says that Mr. Ferleger spent "considerable time" looking at plaintiff's case pro bono, he declined to take the case. He is on Exhibit 40 among the lawyers and firms that declined to represent plaintiff."
**(1) Attorney David Ferleger** is a pioneer in civil rights law, he is also a court appointed "special master" he is far more accomplished in Civil Rights Law than the defendants. **(2) Attorney Ferleger was more than willing to take on plaintiff's case against the NBME & FSMB,** however he required **a $50K retainer** up front. Due to plaintiff's *forma pauperis* status this was NOT financially feasible. Attorney Ferleger was however kind enough to conduct a lengthy preliminary analysis of this case pro bono.
11 215 F. Supp. 2d 622, 634-35 (D. Md. 2002).

**1. The defendants claim: "Plaintiff Has Not Shown Entitlement to Equitable Tolling Based on Mental Incapacity."**

**Reply: The defendants provide "no authority"  for the above assertion as they are nonpracticing psychiatrists or psychologists, they hold no license, and are therefore not qualified  to make any such determination.**  The defendants go off on a tangent in their analysis of  plaintiff's precedent case of *Lake v. Arnold, 232 F.3d 360 (3d Cir. 2000).*  The defendants *'miss the forest for the trees'*  a pattern plaintiff has observed from the onset of this lawsuit.

They state:
Plaintiff has presented nothing like the extreme situation that existed in Lake, in which the plaintiff was not only **mentally retarded** and incapable of understanding the nature of her injury when it occurred, but also demonstrated the added element of the defendants depriving her of her rights because of her mental disability. **In contrast, plaintiff has acknowledged his full understanding of the six attempt limit at all relevant times, and the record shows that he took the exam again in 2013, his final eligible year. Exhibit 17, 26. Moreover, a separate exhibit that plaintiff submitted shows that he applied for numerous scientific and other jobs in 2011, 2012, 2013, 2014 and 2015 – presumably the same time for which he now requests equitable tolling of the statute of limitations based on alleged mental incapacity. Plaintiff's Exhibit 26.**

**Reply: Mental incapacity** is when someone cannot understand relevant information or **cannot appreciate what may happen as a result of decisions they make—or do not make—about their finances, health or personal care.**  One need NOT only be *mentally challenged[12]* to qualify.  They may qualify because they suffer from a mental illness.  The defendants attempt to minimize the damage that their clients have inflicted upon plaintiff.  As stated in his opposition to amended summary judgment:

"Katz suffers from bipolar disorder he experiences mood swings, there are highs and lows, **the highs are marked by unrealistically powerful, important, and an invincible, and "nothing can stop me reality."**  After diagnosis of bipolar disorder in March of 2013 he continued to experience highs as a new medication regimen was introduced to combat these symptoms (EXHIBIT 59). **The point is that Katz mentally would not have been in a "sound frame of mind" and can not be deemed a "reasonable person" until April of 2014 (EXHIBIT 59)."**

Again, the defendants *'miss the forest for the trees'* the above statement is actually quite telling if you look at it globally and attempt to understand the "big-picture" pathology of the bipolar cycle.  **Plaintiff, during periods of mania experiences elevated and *exalted mood*, believes he is invincible against the USMLE or anything else that stands in his way.**  During a phase of depression, plaintiff will have many of the symptoms of a major depressive episode.  He experiences despondent mood, a loss of energy, problems with concentration.  He requires mood stabilizers on a daily basis to combat these

---

12 The defendants use the term "mentally retarded" such labels are considered politically incorrect, hurtful and dehumanizing.

symptoms.  Does this reflect a profile of someone who was making rational and sound decisions during the period in question?

Plaintiff sporadically applied to jobs via the internet from 2011 through 2015 while contending with periodic bouts of cycling, mania and depression, **the high motivational periods are consistent with manic and hypomanic phase of bipolar disorder - grandiosity, expansiveness, racing thoughts, and gross overactivity.**

**The pressure of the make or break 'six attempt limit', coupled with years of unaccommodated attempts, failures and repeated mentally grueling studying eventually precipitated a psychotic break.** And yet the defendants state: "For all these reasons, the Court should reject plaintiff's claim for equitable tolling based on mental incapacity." [13]

### 2. The defendants State: "The Court Should Reject Plaintiff's Claim of Equitable Tolling Based on Defendants Allegedly Providing Misleading Information to Him."

"Plaintiff also requests equitable tolling because, **he claims, the defendants intentionally misled him**, pointing to the letter from the NBME's Abram Doane in March 2006 that said the NBME consulted with "experts." Plaintiff argues that the use of the plural form (experts) was incorrect, and argues that Catherine Farmer should not be considered an expert because she is not licensed as a psychologist and because she only received her Psy.D. degree in 2004. The Court should reject plaintiff's argument that defendants misled him."

They go on to say:

"Without belaboring the point, **plaintiff can point to no regulation or other requirement that a person conducting a review of a request for accommodations must be a licensed medical or psychological professional, because there is no such requirement.** While a psychologist must be licensed if she seeks to hold

---

13  The defendants provide a brief incomplete review of **only 4/15 - four out of fifteen cases** that plaintiff cites in Section G. *LEGAL PRECEDENT – Equitable Tolling And Mental Incapacity Cases* pg. 22/30 in his Opposition to Amended Summary Judgment  **What happened to the review of the other eleven cases cited? The defendants provide no review yet they state; "Even the cases from other circuits that plaintiff cites show a difficult standard to meet........"**
The defendants cite *Kach v. Hose, 589 F.3d 626 (3d Cir. 2009)*, and conveniently stop their quote at an opportune time .  If you continue reading the opinion of the UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT they state **"It is unclear what, if any, mental disability Kach is alleged to suffer from..."**  Kach v. Hose has no place in this discussion as plaintiff has a verified mental disability that is covered under the ADA.
**The defendants also provide a weak analysis of Ruehl v. Viacom** stating: "In contrast with Ruehl, the NBME provided no faulty information to plaintiff, and did nothing to lull him into foregoing rights...."  **THIS IS NOT TRUE!**
In Ruehl the district court denied Viacom's motion for summary judgment, **holding that the untimeliness could be excused by either the "single-filing" rule or the "equitable tolling doctrine."**  With respect to the doctrine of "equitable tolling," the district court accepted Ruehl's argument that the release that he had signed was invalid under the OWBPA, because WEC had not provided him with statutorily-specified demographic data as an attachment to his release. Id. At 9.  The court further held that the asserted technical deficiency in the release, standing alone, could permit Ruehl to benefit from equitable tolling. *Id.* At 10-11. **NCLC urged the Third Circuit to reverse the district court's application of the "single-filing" rule to permit an individual ADEA plaintiff to "piggyback" onto the EEOC charge of a putative class representative, even after conditionally certified classes have been decertified.**

herself out to patients as a licensed professional, or to bill insurance companies for services, **licensure is not required to review requests for accommodations within a university, testing agency or other such entity.** A person with advanced training and years of experience reviewing psychological records and evaluating requests for accommodations certainly can be considered an expert for that purpose, and both Dr. Farmer and Mr. Doane fit that description. Moreover, while qualification to testify as an expert in court is not at issue here, both Dr. Farmer and Mr. Doane would qualify as experts under Federal Rule of Evidence 702, which looks not to licensure but to whether the individual is "qualified as an expert by knowledge, skill, experience, training, or education ..."

**Reply:** Considering the matter of Katz v. NBME and FSMB is about medical licensure the above statement is a gross oxymoron no matter how the defendants attempt to justify or repackage it.  Plaintiff can not hang a shingle and practice as a physician without appropriate licensure even though he holds a medical degree.   How can unlicensed evaluators go against the disability applicants' medical professionals that had to at least meet a minimum competency standard of licensure?  After all isn't that what the USMLE is all about?  This is completely asinine!  Plaintiff states in his second amended complaint: **"In the United States, both the Psy.D. and Ph.D. are the only two doctorate degrees that are eligible to sit for the Examination for Professional Practice of Psychology (EPPP).  This is the national licensing exam and successful completion is required in order to obtain a license to practice psychology.   Schaffer and colleagues (2012) found that students trained in Ph.D. programs passed the EPPP at higher rates (82%) than students trained in Psy.D. programs (69%)."[14]**  It should be noted that the NBME DS "EXPERT(S)" are unlicensed Psy.D.'s.  Are they not practicing psychology without a license by making determinations on disability applicants' files?

The defendants have disability applicants' futures and livelihoods in the palms of their hands they should be held to a higher standard.   Should there not be some regulation or quality assurance accompanying such an important role?  Regrettably, this is all *'kept under wraps'* by the defendants, the disability applicant is never made privy to this very important material fact.

Rule 702 has been amended in response to Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), and to the many cases applying Daubert, including Kumho Tire Co. v. Carmichael, 119 S.Ct. 1167 (1999). **In Daubert the Court charged trial judges with the responsibility of acting as gatekeepers to exclude unreliable expert testimony, and the Court in Kumho clarified that this gatekeeper function applies to all expert testimony, not just testimony based in science.** See also

---

14 Schaffer, Jack B.; Rodolfa, Emil; Owen, Jesse; Lipkins, Robert; Webb, Carol; Horn, Jacqueline (February 2012). "The Examination for Professional Practice in Psychology: New data–practical implications". Training and Education in Professional Psychology 6 (1): 1–7. Doi:10.1037/a0026823.  Please note* At the time of drafting and submitting his 'second amended complaint' plaintiff was not yet aware that the NBME DS "EXPERT(S)" are UNLICENSED in their respective fields.  Plaintiff took a leap of faith and only recently checked the NBME DS EXPERT(S) credentials with the PA Dept. of State.

Kumho, 119 S.Ct. at 1178 (citing the Committee Note to the proposed amendment to Rule 702, which had been released for public comment before the date of the Kumho decision). **The amendment affirms the trial court's role as gatekeeper and provides some general standards that the trial court must use to assess the reliability and helpfulness of proffered expert testimony.** Consistently with Kumho, the Rule as amended provides that all types of expert testimony present questions of admissibility for the trial court in deciding whether the evidence is reliable and helpful. Consequently, the admissibility of all expert testimony is governed by the principles of Rule 104(a). Under that Rule, the proponent has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence. See Bourjaily v. United States, 483 U.S. 171 (1987).[15]

Plaintiff respectfully defers to this Court as *"gatekeeper"* to evaluate the "UNLICENSED 'EXPERT' ARGUMENT." Hopefully the Court will veer on the side of Rush in *Rush v. NBME*, where a second-year medical student with reading and visual processing skills impairments requested and was denied extended time on USMLE Step 1. **THE COURT, CRITICAL OF THE BOARD'S (NBME) "EXPERTS"**, granted an injunction requiring the NBME to provide Rush with the accommodations of double time for the exam, stating that without such accommodations the exam would test his disability and not his mastery of the subject matter.

The language of the ADAAA and its regulatory guidance is clear, the defendants are mandated to give deference to plaintiffs' evaluators and their recommendations to provide accommodations. The guidelines to the regulations promulgated by the ADA, provide that testing entities should accept without further inquiry, "documentation provided by a qualified professional who has made an individualized assessment of an applicant, that supports the need for modifications, accommodations or aid requested."

The ADAAA and its regulatory guidance explains that "reports from experts who have personal familiarity with candidates should take precedence over those from, for example reviewers from testing agencies (Farmer) who never personally met the candidate (Katz) or conducted the requisite assessments for diagnosis and treatment.

The defendants state:

Plaintiff suggests that Mr. Doane misled him to cover up a predetermined outcome to deny his request for accommodations, **but plaintiff misses a crucial point discussed in Dr. Farmer's affidavit: In 2005-2006, when plaintiff submitted his request for accommodations, the NBME granted approximately 75 percent of the requests it received. Given that fact, the notion that the NBME intentionally misled plaintiff to keep him from discovering who reviewed his request is absurd.** In fact, the March 2006 denial of plaintiff's request for accommodations provided an accurate, detailed summary of the reasons for denial, none of which is affected by the disclosure in discovery that Dr. Farmer conducted the review. **Accordingly, the Court should reject**

---

15  https://www.law.cornell.edu/rules/fre/rule_702

**plaintiff's argument that defendants misled him through Mr. Doane's March 2006 letter.**

**Reply:** Plaintiff was provided NO reliable hard statistical evidence or report from 2006 by defendants during discovery to substantiate that 75% of DS applicants were granted accommodations in 2006.  Plaintiff like the Rush Court has no faith in the NBME so-called "experts" or their affidavits.

Taking for granted that the above unsubstantiated statement is true, even if half of the 25% of applicants who were denied accommodations in 2006 were subject to discrimination, that would still be 12.5%, still a high margin of individuals who never get an opportunity to pursue their dreams of becoming a licensed practicing physician, though they may have qualified under the ADA.  The defendants make 'mountains out of molehills' stating that plaintiff  "misses a critical point", the defendants received hundreds of pages of documentation during their 60 day extended discovery period and utilized nearly none of it in their amended summary judgment motion.  This alone is testament that too many issues of disputed facts exist in this case for the Court to grant summary judgment to defendants.   **In lieu of defendants utilizing the hundreds of pages of evidence obtained they now resort to touting their own evidence.**

**Prior to the ADAAA, the NBME and** other similar testing entities had a penchant for denying accommodations for students in higher **education on the basis that they were not diagnosed at an earlier age or that they performed well** academically. In passing the ADAAA, Congress targeted these testing entities noting in the

**Congressional Record:**
Historically, certain individuals with learning disabilities seeking accommodations in higher education – including high stakes exams-have seen their access to testing accommodations severely undercut by testing companies not willing to consider and support that learning disabilities are neurologically based, lifelong disabilities that may exist in students with high academic achievement because the individual has been able to cope and mitigate the negative impact while simultaneously being substantially limited in one or more life activities. 2 Cong.Rec. 8296 (Sept. 17, 2008).


Based on countless hours of research by this pro se plaintiff, there is no question that NBME Disability Services discriminates against individuals who have been diagnosed with learning disabilities and mental disorders *at a later age* (Exhibit 1 pgs 4-10).  Medicine is not an exact science, disorders sometimes manifest at a later age often missed by parents and physicians during the arly years.  They may also elude school systems as the child finds ways to cope and *compensate* (Exhibit 1 pgs 1-3).

The defendants state:

"Notwithstanding the strong connection between Viacom's invalid release, which led plaintiff to believe he had no basis to sue for age discrimination, and plaintiff's failure to sue within the statute of limitations, the Court said that the plaintiff "has not demonstrated extraordinary circumstances that would justify equitable tolling." Id. In contrast with Ruehl, **the NBME provided no faulty information to plaintiff, and did nothing to lull him into foregoing rights. Rather, the NBME provided accurate information to plaintiff in 2006 when it provided him with a summary of the basis for the denial of his request for accommodations. Accordingly, the Court should reject plaintiff's claim for equitable tolling of the statute of limitations based on so-called**

misleading information."

Plaintiff discusses the above statement in depth in his second amended complaint and his opposition to summary judgment and does not feel the need to reiterate what has already been stated ad nauseam. The defendants can say that the '*sky is green' and 'pigs can fly'* it doesn't mean that the Court should believe them.


**C. The defendants state: "The Court Should Reject Plaintiff's Tortured Attempt to Invoke the Discovery Rule."**

**Reply:**

**Plaintiff invokes the "Discovery Rule" "competently" in his opposition to the defendants "amended summary judgment." The only "torture" that has ensued here has been the psychological torture inflicted by the defendants to plaintiff due to their negligence, destroying plaintiff's self-image, regression and depersonalization that has required years of psychotherapy and pharmacological treatment in an effort to recover.**

**The defendants state:**
"Plaintiff's discovery rule argument fails because plaintiff was aware of the six-attempt limit when he saw an announcement on the USMLE website in 2011, on one of the occasions when he registered for Step 1. Exhibit 23, R. Katz depo., p. 216. Plaintiff registered for and took Step 1 additional times during the final year he could register because he knew he would be foreclosed. Exhibit 17, 26. Plaintiff's argument that he was first denied access because of the six-attempt limit in April 2014 twists the discovery rule beyond its limits. By plaintiff's logic, he could have waited five more years before requesting to take Step 1, and the "denial of access" at such time would start a new limitations period. The Court should reject such a tortured interpretation of the discovery rule."

**Reply: Again, the defendants *'miss the forest for the trees'* as outlined below.**

1. Plaintiff, during periods of mania experiences elevated and exalted mood, believes he is invincible against the USMLE or anything else that stands in his way. During periods of depression he experiences despondent mood, a loss of energy, and problems with concentration. The stress of studying under the impending 'make or break' 'six attempt limit rule' applied to his UMLE Step I exam and precipitated a psychotic break, subsequently he has required ongoing psychotherapy and has been taking mood stabilizers to combat these symptoms since his inpatient hospitalization in March of 2013.

2. As plaintiff states in his opposition to amended summary judgment' in *HIP v. Port Authority of New York and New Jersey*, the court, in a Title II transportation case, considered whether a claim for an alteration completed more than two years before the lawsuit was barred by the statute of limitations. **The court concluded that the discrimination was continuing and the cause of action was not complete until the plaintiffs were excluded by the inaccessible**

element.  In other words, their injury did not arise until they either attempted to access <u>or</u> were deterred from accessing, the facility.  If the party was deterred <u>or </u>attempted to enter the inaccessible element  "five years later" the discovery rule would still apply.


**D. The defendants state: "The Court Should Deny Plaintiff's Argument that His Lawsuit is Timely Under the Continuing Violation Doctrines"**

 **Reply:**  Plaintiff stands by his Continuing Violation arguments as presented in his opposition to summary judgment and believes his arguments are far more compelling than the arguments presented by defendants' in their reply memorandum.   The defendants use the word "unavailing" a lot but offer no sound counter argument, respectively.


**E. The defendants state: "The Court Should Reject Plaintiff's Request for Additional  Discovery."**

 **Reply:**  Plaintiff's 56d affidavit for additional discovery speaks for itself, making a more compelling argument than the defendants' reply memorandum.


**CONCLUSION**

For all the reasons stated herein, and those more fully set forth in plaintiffs' Opposition to Amended Summary Judgment, the Court should deny summary judgment as this is a case for trial on all counts of the second amended complaint the arguments made by defendants notwithstanding.


                         **RESPECTFULLY SUBMITTED,**


                         _____
                         Richard Katz
                         *pro se*
                         3364 Parker Lane
                         East Stroudsburg, PA 18301
                         Telephone: 570-517-9314

## CERTIFICATE OF SERVICE

I certify that the foregoing Reply To Defendants' Reply Memorandum, is being filed electronically with the Clerk of Court on August 2, 2016 using the electronic case filing system, which will automatically send email notifications of such filing to registered parties.

**Neil J. Hamburg**
Michael E. Sacks
HAMBURG & GOLDEN, P.C.
1601 Market Street, Suite 3310
Philadelphia, PA 19103-1443
(215) 255-8590
Attorneys for Defendants,

_____
Richard Katz
*pro se*
3364 Parker Lane
East Stroudsburg, PA 18301
Telephone: 570-517-9314