# Lisa Ling Reveals Surprise Diagnosis of ADD at Age 40

By **ABC News**
June 16, 2014 10:56 AM
ABC News Blogs





As a veteran reporter who now has her own TV show on OWN, Lisa Ling has covered everything from criminal informants to exorcism.

It was while filming an episode of "Our America With Lisa Ling" on the topic of Attention Deficit Hyperactivity Disorder (ADHD), however, that she made a personal discovery.

"My head is kind of spinning," Ling, 40, said after receiving a diagnosis of attention deficit disorder (ADD) herself while the cameras were rolling. "But I feel a little bit of relief because, for so long, I've been fighting it and I've been so frustrated with this inability to focus."

Ling, the mother of one young daughter, says on the show that she had long suspected something was not right.

"As a journalist, when I'm immersed in a story, then I feel like I can laser-focus. But if I'm not working, my mind goes in every direction but where it's supposed to go," Ling says. "I've been like that since I was a kid."

Ling's diagnosis of ADD at age 40 is unusual, experts say, compared to the average age of diagnosis at seven.

"ADD is more accepted now than 10 or 20 years ago," said Dr. Edward Hallowell, a psychiatrist and ADD/ADHD specialist, who does not treat Ling. "People don't think of ADD in adults."

"The diagnosis can dramatically change your life for the better," Hallowell said. "You can go from languishing to succeeding at the highest level."

In a statement, Ling says the diagnosis of ADD has given her "clarity."

"While the diagnosis confirmed what I had always expected, I don't feel inhibited," she said. "Rather, I feel I have more clarity."

"Our America With Lisa Ling" airs Thursday at 10 p.m. ET on OWN.

On Oct 22, 2015, at 5:52 PM, Julie Foster <jfoster@PILCOP.ORG> wrote:

Dear DRBA Members,

I received an application for legal services from a person who has a federal lawsuit pending before a magistrate. He was denied the accommodations he requested for medical board exams, and is also challenging the medical board's policy limiting the number of times a person can retake a test.

The case is currently in discovery, which closes on February 15, 2016 (experts reports due January 15, 2016).

If you are interested in the case or able to offer any assistance or recommendations, please contact Richard Katz at (570) 517-9314 or Cat2400@msn.com.

Thank you,

Julie Foster
Attorney
Public Interest Law Center
1709 Benjamin Franklin Parkway, Second Floor
Philadelphia, PA 19103
P: 267.546.1313
F: 215.627.3183

-----Original Message-----
From: Disability Rights Bar Association REDACTED  REDACTED On Behalf Of REDACTED
Sent: Friday, October 23, 2015 8:47 AM
To: REDACTED
Subject: Re: [DRBA] Seeking attorney for immediate representation in testing accommodations case

> A bunch of us are looking at this issue with a plan to litigate. However, I don't think we are ready to jump on one in process. But let me know if you are unable to find counsel for him, or if David can't take the case.

REDACTED

REDACTED
Managing Attorney
REDACTED
Office of Protection and Advocacy REDACTED



REDACTED

**From:** REDACTED
**Sent:** Thursday, October 22, 2015 6:17 PM
**To:**
**Cc:** REDACTED
**Subject:** Re: [DRBA] Seeking attorney for immediate representation in testing accommodations case

Don't know about the details of this case but several DRBA members are currently discussing different NBME issues (mainly denial of testing accommodations for ADHD). Can email more later tonight.

REDACTED

Sent from my iPhone

University of Iowa Carver College of Medicine                                   Medical Student Newspaper - 1
Volume Forty Five, Issue Two



# How to Win a Battle against the NBME

By Solomon Yilma

As some of you may be aware, I was involved in a 13-month long fight against the National Board of Medical Examiners (NBME) trying to get testing accommodations for USMLE step 2 after undergoing major brain surgery in January 2009.  The process involved submitting various documents such as neuropsychological testing results and letters/evaluations by various physicians.  In fact, over the 13 month period I submitted the initial request for accommodation followed by appeals that encompassed letters and/or evaluations from three neurologists, one psychiatrist, three separate neuropsychological testing results, letters from clinical faculty that had observed me during my clinical clerkships, my entire medical record since being diagnosed with a brain tumor, my entire medical school academic record and the recommendations of the Carver College of Medicine Accommodation Committee.

I am happy to say that in early November of 2010, I finally prevailed in the fight against the NBME after hiring an educational attorney who had previously argued cases against the NBME on behalf of medical students who were requesting testing accommodations for USMLE.  In addition to submitting an overwhelming amount of documentation with the appeal that finally prevailed, the attorney also wrote a seven page cover letter that outlined the relevant Americans with Disabilities Act (ADA) guidelines that the NBME is required to abide by and listed previous rulings that established precedent on how the guidelines are supposed to be interpreted.  The attorney gave the NBME only 1 week (instead of the customary 6 to 8 weeks they ask of applicants who file an appeal) to respond to his letter and demands.  It was all amazing!  It took just a few days for the NBME house counsel and their ADA compliance officer, who had been rejecting all of my previous appeals, to respond with a statement that they have agreed to all of the demands and will follow the recommendations of the Carver College of Medicine Accommodations Committee.

This was a major victory that happened almost too quickly against a group that is notorious for not conceding so readily.  The main differences between this appeal and previous appeals was the involvement of the attorney and the fact that my attorney submitted copies of the appeal directly to the NBME house counsel instead of submitting them only to their ADA compliance officer (like I had been doing while filing previous appeals).  That left me with the impression that I could have saved myself 13 months of hassle and delays if I had the foresight to hire an educational attorney right off the bat.

I guess the moral of this story is that you should always consult an attorney if you are requesting testing accommodations for USMLE under the current ADA guidelines because you will likely get the runaround if someone very familiar with the guidelines is not looking out for your interest.

> *This Issue:*
> 
> *Solomon Yilma*
> 
> *Poetry by Gregory Larrieux*
> 
> *Chelsy Kemmet*

## Re: Richard Katz ADA Complaint NBME



**Solomon Yilma MD**
2/18/2015
You

Richard,

Charles weiner has good instincts about the NBME since he has been dealing with them for a long time and ==knows all of their dirty tricks.== I retained him after my 2nd appeal.

As for the letter he wrote on my behalf, I am sorry but I can not send it to you since it contains lots of priviliged personal information about me, personal identifiers, confidential communications from my physicians about my medical condition, neuropsych testing results, imaging and prognosis information that are protected under HIPPA duidelines and ADA guidelines.

I hope that you understand my need for privacy as I am approaching the end of my residency.

==Solomon==
---------------------------------

-----------------------------------

On Wednesday, February 18, 2015, RICHARD KATZ <cat2400@msn.com> wrote:
Thanks for your prompt reply Solomon.  Yes I consulted Charles Weiner,            Can you send me the letter he sent NBME on your behalf I would like to read it.
Anything you can send me would be most appreciated.  I would be very grateful.

Best,

Richard

---

Date: Wed, 18 Feb 2015 08:01:08 -0600
Subject: Re: Richard Katz ADA Complaint NBME
From: yilma016@umn.edu
To: cat2400@msn.com

Hello Rachard,

I am dirry thst you had such a miserabke wcperience with the NBME, alrhough I can't say that I am surprised.

The attorney that I used was Charles Weiner located in PA, although I suspect that you May have already communicated with him. I was not aware that the NBME has a 6 attempts rule.  Eitherway, the trick that I learned when dealing with the NBME is to get an attorney involved as early as possible since the system is not fair and rigged against you.  The NBME has nothing but time on their hands and they will wait until you use up your appeals or run out of money or simply give up.

I hope that helps.

Solomon Yilma

On Wednesday, February 18, 2015, RICHARD KATZ <cat2400@msn.com> wrote:

> Dear Dr. Yilma:
>
> I hope this message finds you well. My name is Richard Katz I am a           Medical Graduate from St. Christopher Iba Mar Diop College of Medicine in Dakar Senegal. I graduated in 2005. I read the above attached article that you wrote in Vital Signs entitled "How to Win a Battle against the NBME" and found it most enlightening. I have been battling the NBME since graduating Medical School in 2005 with an ADA complaint. As you can see from the most recent correspondence below, I have been through local government, State Representatives and Senators all the way to the Justice Department in Washington DC.
>
> I recently consulted an Education Attorney in my home State of Pennsylvania and he reviewed the case. He is experienced dealing with the NBME in matters such as these. He explained to me that because of the *six attempt limit rule* instituted by the USMLE Organization in 2011 I have a new hurdle,
>
> At this point I am researching going against the NBME in district Court Pro Se. I was wondering if you would be able to give me the name of the Attorney you used when you battled NBME and if you can possibly call me at (570) 517-9314 when you have some time. I know you are a busy resident and I promise not to take much of your time. I would be most grateful!
>
> Best,
>
> Richard Katz