# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

RICHARD KATZ,

      Plaintiff,

      v.

NATIONAL BOARD OF MEDICAL
EXAMINERS, et al.,

      Defendants.

CIVIL ACTION NO. 3:15-cv-01187

(MARIANI, J.)
(SAPORITO, M.J.)

## REPORT AND RECOMMENDATION

This is a *pro se* civil action. The plaintiff, Richard Katz, has asserted various federal and state-law claims against the defendants, the National Board of Medical Examiners ("NBME") and the Federation of State Medical Boards ("FSMB"), arising out his several unsuccessful attempts to pass the United States Medical Licensing Examination ("USMLE"), a multi-step standardized examination owned and administered by the NBME and FSMB, which is used to evaluate applicants for medical licensure in the United States and its territories. In particular, Katz claims that the defendants wrongfully denied a 2005/2006 request that they accommodate his cognitive disabilities and a 2014 request that they waive a "six-attempt limit" that precluded him from registering for further

attempts to pass Step 1 of the USMLE.

## I.   BACKGROUND

Katz graduated from medical school in 2004. He first sat for the USMLE Step 1 in March 2002. He sat for subsequent Step 1 exams in October 2002, September 2003, December 2004, and April 2005. Each time he failed to pass the exam. He sat for the USMLE Step 2 Clinical Knowledge exam in March 2005; he failed that test as well.

In July 2005, Katz registered for another iteration of the USMLE Step 2 Clinical Knowledge exam, but this time he submitted a formal request for test accommodations. On the form application, he marked boxes indicating that his request was based on the following mental health conditions: anxiety disorder; attention deficit hyperactivity disorder ("ADHD"); and mood disorder / depression.[1] He requested additional break time and additional time to complete the exam. Katz also submitted documentation in support of his request for test accommodations.

Katz spoke with NBME staff on several occasions over the following

---

[1] Katz was subsequently diagnosed with several other conditions, including: dysthymia; adjustment disorder with mixed anxiety and depressed mood; panic disorder without agoraphobia; and, ultimately, bipolar disorder.

months, seeking out and submitting additional documentation at the request of NBME. In February 2006, an NBME psychologist internally recommended denial of Katz's request for test accommodations. On March 13, 2006, NBME denied Katz's request for test accommodations.

Over the next several years, Katz made further attempts to pass parts of the exam, without accommodations. In September 2006, Katz sat for and failed the USMLE Step 2 Clinical Knowledge exam for a second time. In March 2007, he sat for and failed the USMLE Step 2 Clinical Skills exam. In November 2010, he sat for and failed the USMLE Step 2 Clinical Knowledge exam for a third time. In August 2011, he sat for and failed the USMLE Step 2 Clinical Skills exam for a second time.

In August 2011, the USMLE program introduced a new limit on the total number of times an examinee would be permitted to take the same exam component. Under this new policy, an examinee would be ineligible to register to take a step or step component if he or she had made six or more unsuccessful attempts to pass that step or step component, including incomplete attempts. Examinees who had not previously taken any exam component were subject to this six-attempt limit effective January 1, 2012. Examinees who had previously taken any step or step component of the

USMLE exam were subject to the six-attempt limit beginning January 1, 2013—effectively permitting these examinees a one-year grace period in which to complete exam components for which they would later become ineligible under the six-attempt limit policy.

After the adoption of this new six-attempt limit, Katz made further attempts to pass parts of the USMLE exam. In February 2012 and November 2012, he made his seventh and eighth unsuccessful attempts to pass the USMLE Step 1 exam. In January 2013, he made his third unsuccessful attempt to pass the USMLE Step 2 Clinical Skills exam. In November 2013, he made his ninth and final unsuccessful attempt to pass the USMLE Step 1 exam.[2] Katz did not request any test accommodations.

On March 9, 2013, Katz was admitted to Pocono Medical Center for suicidal ideation and increased paranoia.[3] Among other stressors he

---

[2] Katz sat for the exam in November 2013, but he registered for it in December 2012, before the six-attempt limit became effective for him and other examinees who had taken parts of the exam before January 1, 2012.

[3] Although Katz's medical records have been filed under seal, the Court may reveal as much "as is necessary to produce a reasoned opinion that can itself be reviewed." *See In re Ford Motor Co.*, 110 F.3d 954, 967 n.11 (3d Cir. 1997). While Katz's medical records—produced in discovery and filed as sealed exhibits in support of or opposition to the defendants' summary judgment motion—and the particulars of his medical and mental health treatment may be of marginal public interest, we find that public's

*(continued on next page)*

discussed with the attending psychiatrist, Katz discussed his unsuccessful efforts to pass his medical boards. In particular, he commented that "[i]f he fails again this time, this will be his last chance." (Doc. 195, at 6 (filed under seal)). On May 15, 2013, Katz was discharged with a diagnosis of bipolar disorder and a treatment plan, including medication and follow-up outpatient mental health treatment.

On April 1, 2014, Katz wrote an "appeal" letter seeking waiver of the six-attempt limit to permit him to sit for a tenth attempt to pass the USMLE Step 1 exam, with test accommodations appropriate to his diagnosis for bipolar disorder. On April 17, 2014, an official with the USMLE Secretariat wrote back in response, advising Katz that the only exception to the six-attempt limit outlined in the USMLE *Bulletin of*

_____

right of access to judicial records—both under the common law and under the First Amendment—militate in favor of disclosure with respect to our recitation of facts material to the disposition of this case on summary judgment. *See generally Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 165 (3d Cir. 1993); *Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 661–63 (3d Cir. 1991); *Bank of Am. Nat'l Trust & Sav. Ass'n v. Hotel Rittenhous Assocs.*, 800 F.2d 339, 343–44 (3d Cir. 1986). Moreover, the bare facts that Katz has been diagnosed with bipolar disorder and that he suffered a nervous breakdown that required his hospitalization in 2013 are already public knowledge, having been disclosed in Katz's unsealed pleadings and attachments. (*See, e.g.*, Doc. 1-2, at 1; Doc. 107, at 11).

*Information* was a provision that allowed examinees with six or more attempts at an exam component to have an additional attempt if so requested by a state medical board that is fully informed of the candidate's prior examination history.

On March 3, 2015–nearly a year later—Katz wrote a letter to the Pennsylvania State Board of Medicine seeking the Board's approval for a waiver of the six-attempt limit. The matter was presented to the Board at a public hearing on May 19, 2015, and denied by unanimous vote.

On June 17, 2015, Katz filed the original *pro se* complaint in this action. (Doc. 1). On August 12, 2015, he filed an amended complaint, also *pro se*. (Doc. 23). On May 3, 2016, with leave of court, Katz filed a second amended complaint, *pro se*. (Doc. 107). In his second amended complaint, Katz seeks declaratory and injunctive relief, as well as compensatory and punitive damages, for alleged discrimination by a licensing examination provider under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12189, and for alleged discrimination by the provider of a federally financed program or activity under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. *See generally Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–46 (3d Cir. 2013) (discussing a federal

court's obligation to liberally construe the filings of *pro se* litigants). Katz has also alleged obstruction of justice by "misleading conduct" in violation of 18 U.S.C. § 1515(a)(3), a federal criminal statute. In addition to these federal claims, Katz has asserted various state-law claims, including breach of contract, fraudulent or deceptive conduct in violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. §§ 201-1 *et seq.*, negligent and intentional infliction of emotional distress, tortious interference with prospective employment,[4] and fraudulent misrepresentation. Katz seeks compensatory damages based on "mental anguish," the "subver[sion] [of] his self-esteem and sense of self-worth," and degradation of his "overall health." (Doc. 107, at 11). In particular, Katz claims that the defendants' conduct caused him to suffer a nervous breakdown, which required his hospitalization for a week in March 2013, and "persistent and recurring severe abdominal pain due to emotional distress," which led to an emergency-room visit in August 2015 and ongoing treatment by a gastroenterologist. (*Id.*). He further claims

---

[4] The *pro se* second amended complaint has labeled this last cause of action "impairment of economic opportunity," which the Court has liberally construed as a claim of tortious interference with a prospective employment relationship.

that stress he attributes to the defendants' conduct exacerbated a pre-existing asthma condition and caused him to suffer "frequent headaches, high blood sugar approaching a pre-diabetic state, skin conditions for which he sees a [d]ermatologist monthly since 2013, depression, anxiety[,] and sleep disturbance." (*Id.*). Katz also seeks compensatory damages for lost income as a physician, contending that he has been unable to engage in the lucrative practice of medicine because the defendants' conduct has prevented him from obtaining his medical license. (*Id.*).

The defendants initially moved for summary judgment on May 2, 2016. (Doc. 105). Following the filing of Katz's second amended complaint, the defendants file an amended motion for summary judgment on July 11, 2016. (Doc. 126).This motion is fully briefed and ripe for decision.

## II.  LEGAL STANDARDS

### A. Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A

dispute of material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must set forth specific facts, supported by the record, demonstrating that "the evidence presents a sufficient disagreement to require submission to the jury." *Anderson*, 477 U.S. at 251–52.

### B. *Sua Sponte* Dismissal Standard

Under 28 U.S.C. § 1915(e)(2), an *in forma pauperis* action may be dismissed *sua sponte* for frivolousness, for failure to state a claim, or for seeking monetary relief against an immune defendant "at any time,"

before or after service of process. *See* 28 U.S.C. § 1915(e)(2); *Walker v. Sec. Office of SCI Coal Twp.*, Civil No. 3:CV-08-1573, 2010 WL 1177338, at *4 (M.D. Pa. Mar. 25, 2010). This statute requires the Court to dismiss an *in forma pauperis* action if it is "frivolous" or "fails to state a claim on which relief may be granted." *See* 28 U.S.C. § 1915(e)(2)(B)(i); § 1915(e)(2)(B)(ii).

An action is "frivolous where it lacks an arguable basis in either law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *see also Thomas v. Barker*, 371 F. Supp. 2d 636, 639 (M.D. Pa. 2005). To determine whether it is frivolous, a court must assess a complaint "from an objective standpoint in order to determine whether the claim is based on an indisputably meritless legal theory or clearly baseless factual contention." *Deutsch v. United States*, 67 F.3d 1080, 1086 (3d Cir. 1995) (citing *Denton v. Hernandez*, 504 U.S. 25, 34 (1992)); *Thomas*, 371 F. Supp. 2d at 639. Factual allegations are "clearly baseless" if they are "fanciful," "fantastic," or "delusional." *See Denton*, 504 U.S. at 32–33. "[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Id.* at 33. A district court is further permitted, in its sound discretion, to dismiss a claim "if it

determines that the claim is of little or no weight, value, or importance, not worthy of serious consideration, or trivial." *Deutsch*, 67 F.3d at 1089.

"The legal standard for dismissing a complaint for failure to state a claim under § 1915(e)(2) is the same as that for dismissing a complaint pursuant to Fed. R. Civ. P. 12(b)(6)." *Brodzki v. Tribune Co.*, 481 Fed. App'x 705, 706 (3d Cir. 2012) (per curiam). Rule 12(b)(6), in turn, authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen, Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). Although the Court must accept the well-pleaded allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). In deciding a Rule 12(b)(6) motion, the Court may consider the facts alleged on the face of the

complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

## III.   DISCUSSION

### A. Criminal Obstruction of Justice

Katz claims that certain conduct by employees of the defendants constituted obstruction of justice, in violation 18 U.S.C. § 1515(a)(3), because these employees "intentionally conceal[ed] a material fact, and thereby creat[ed] a false, forged, altered, or otherwise lacking in authenticity [statement]." (Doc. 107, at 7–8). But § 1515 is a federal criminal statute that does not provide for a private cause of action or civil remedy. *Hopson v. Weinburg Attorney's at Law*, Civil Action No. 3:12CV-802-H, 2013 WL 557263, at *2 (W.D. Ky. Feb. 12, 2013); *Winston v. Riel*, No. 1:09-cv-223-SJM, 2010 WL 3505126, at *6 (W.D. Pa. Sept. 3, 2010). Accordingly, it is recommended that this claim be dismissed *sua sponte* as legally frivolous, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i).

### B. Breach of Contract

Katz claims that the defendants "breached [their] duty of good faith and fair dealing by wrongfully failing to assist him with his disability in 2005–2006 and again in 2014." In particular, Katz alleges that the

defendants failed to provide him with his requested test accommodations in 2006 and 2014, in violation of their duty of good faith and fair dealing. This contract claim, based solely on an alleged breach of the covenant of good faith and fair dealing without reference to any express contractual duty imposed upon the defendants, is meritless on its face. *See Diodato v. Wells Fargo Ins. Servs., USA, Inc.*, 44 F. Supp. 3d 541, 560 (M.D. Pa. 2014); *Hanaway v. Parkesburg Grp., LP*, 132 A.3d 461, 471–72 (Pa. Super. Ct. 2015). "[A] good faith and fair dealing claim 'must always be grounded in a specific provision of a contract' rather than some abstract or perceived social policy." *Diodato*, 44 F. Supp. 3d at 560. Here, the second amended complaint fails to allege any express terms of a contract between Katz and the defendants that imposed upon them a duty to provide him with the test accommodations he requested. Instead, this claim relies solely upon the broader social policies of state tort law and federal anti-discrimination statutes, which themselves sound in tort. *See Guenther v. Griffin Constr. Co.*, 161 F. Supp. 3d 665, 674 (W.D. Ark. 2016); *Donelson v. Providence Health & Serv.-Wash.*, 823 F. Supp. 2d 1179, 1191 (E.D. Wash. 2011). Accordingly, it is recommended that this claim be dismissed *sua sponte* for failure to state a claim on which relief may be granted, pursuant to 28

U.S.C. § 1915(e)(2)(B)(ii).

## C. Time-Barred Federal and State Claims

The defendants have moved for summary judgment on the ground that Katz's federal ADA and Rehabilitation Act claims and his state-law claims are barred by the statute of limitations.

Here, the defendants have met their burden of showing that Katz failed to commence this civil action before the applicable statutes of limitations had run. Katz has asserted federal civil rights claims under Title III of the ADA, 42 U.S.C. § 12189, and under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. He has also asserted various state-law claims, including common-law tort claims (negligent infliction of emotional distress, intentional infliction of emotional distress, tortious interference with prospective employment, and fraudulent misrepresentation) and a statutory claim under the Pennsylvania UTPCPL. The plaintiff's ADA and Rehabilitation Act claims are subject to a two-year statute of limitations. *See Disabled in Action of Pa. v. Se. Pa. Transp. Auth.*, 539 F.3d 199, 208 (3d Cir. 2008). His state-law tort claims are similarly subject to a two-year statute of limitations. *See* 42 Pa. Cons. Stat. Ann. § 5524. The applicable limitations period for UTPCPL claims is six years. *See* 42 Pa. Cons. Stat.

§ 5527; *Jacobs v. Halper*, 116 F. Supp. 3d 469, 479 (E.D. Pa. 2015).[5]

Katz's UTPCPL and common-law fraud claims are based solely on conduct alleged to have occurred in 2005 and 2006. Katz alleges that NBME officials misrepresented their professional qualifications in connection with their review and denial of his July 2005 request for test accommodations. All of the conduct alleged in support of Katz's UTPCPL and common-law fraud claims occurred nearly a decade before the filing of this action on June 17, 2015, well outside the applicable statutes of limitation.

With respect to Katz's other claims, each of which is subject to a two-year limitations period, the key conduct at issue likewise includes the review and denial of Katz's July 2005 request for test accommodations. After the March 2006 denial of his request, Katz registered for and took the USMLE Step 1 exam three more times without any further request for test accommodations. He also registered for and took the USMLE Step 2

---

[5] "Th[e] statute of limitations embodies the following three policies: (1) rights should be enforced without unreasonable delay; (2) after a certain period of time a defendant should have repose and should be spared from defending against a stale claim; and (3) it is wasteful to use judicial resources to decide stale claims on stale evidence." *Bosworth v. Plummer*, 510 F. Supp. 1027, 1029 (W.D. Pa. 1981).

Clinical Knowledge exam twice and the USMLE Step 2 Clinical Skills exam three times, all without any further request for test accommodations.

In addition, the six-attempt limit was adopted and implemented by the defendants in August 2011. Under this policy, Katz was precluded from registering for additional iterations of the USMLE Step 1 exam after December 31, 2012. After adoption of the six-attempt limit, Katz registered for and took the USMLE Step 1 exam three more times, all without any further request for test accommodations.

In March 2013, Katz was diagnosed for the first time with bipolar disorder. At the time, he was well aware of the six-attempt limit and the fact that it would preclude him from registering for any future administration of the USMLE Step 1 exam.[6] Eight months later, he sat for his ninth and final unsuccessful attempt to pass the USMLE Step 1 exam. He did not request any test accommodations.

All of these facts, including the specific nature of Katz's disability (bipolar disorder) and his knowledge that the six-attempt limit would

---

[6] As previously noted, Katz advised an attending psychiatrist while hospitalized that his upcoming attempt to pass the USMLE Step 1 exam would be his "last chance" to do so. (*See* Doc. 195, at 6 (filed under seal)).

preclude him from registering for any further iterations of the USMLE Step 1 exam, occurred more than two years prior to the filing of this action on June 17, 2015.

In an effort to avoid the defendants' limitations defense, Katz has alleged that, on April 1, 2014—more than two-and-a-half years after the "six-attempt" limit policy was adopted; more than fifteen months after he registered for his "last chance" to sit for the USMLE Step 1 exam; and more than a year after having been diagnosed with bipolar disorder—he wrote an "appeal" letter seeking waiver of the six-attempt limit to permit him to register for a tenth attempt to pass the USMLE Step 1 exam, including a request for test accommodations appropriate to his diagnosis for bipolar disorder. On April 17, 2014, Katz's request for a waiver was denied by the USMLE Secretariat. Katz contends that this April 2014 denial constitutes discriminatory conduct within the two-year limitations period, and that the prior events remain actionable as part of a continuing course of discriminatory conduct by the defendants. *See generally Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001) ("[W]hen a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations

period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred.").

But a "continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation." *Id.* at 293. "[D]iscovery of the original act of discrimination, *not* future confirmation of the injury or determination that the injury is unlawful, is when the statute of limitations begins to run." *Soignier v. Am. Bd. of Plastic Surgery*, 92 F.3d 547, 551 (7th Cir. 1996) (emphasis in original). The defendants denied Katz's one and only timely request for test accommodations in March 2006. The six-attempt limit was later adopted in August 2011, and it went into effect with respect to Katz on January 1, 2013. Katz registered for his final attempt to pass the USMLE Step 1 exam in December 2012 with full knowledge that it would be his last opportunity to take the exam. He did not request any test accommodations for that last attempt, nor did he request a waiver of the six-attempt limit at that time. He was then diagnosed with bipolar disorder in March 2013, but he nevertheless failed to request any test accommodations at that time.

More than a year after his diagnosis, Katz wrote the defendants on April 1, 2014, to request a waiver of the six-attempt limit to permit him a

tenth chance to pass the USMLE Step 1 exam. On April 17, 2014, the defendants refused to grant that request. This action does not constitute a new, separate discriminatory act actionable under the ADA, the Rehabilitation Act, or state tort law. Rather, it is part of the harm that continued to flow to Katz as a result of the defendants' August 2011 adoption and implementation of the six-attempt limit. *See Soignier*, 92 F.3d at 552.[7]

Accordingly, it is recommended that the defendants' motion for summary judgment be granted with respect to the remainder of Katz's federal and state-law claims, on the ground that all of these claims are barred by the applicable statutes of limitations.

---

[7] "The focus of the continuing violations doctrine is on *affirmative acts* of the defendants." *Cowell*, 263 F.3d at 293 (emphasis added). Katz never requested test accommodations with respect to his last three attempts to pass the USMLE Step 1 exam after the six-attempt limit was adopted, leaving the adoption and implementation of the six-attempt limit policy as the most recent affirmative and allegedly discriminatory act by the defendants. Had Katz requested accommodations based on his bipolar disorder diagnosis—or his earlier misdiagnoses, for that matter—and the defendants refused to provide the requested accommodations, a different result may have been dictated by the operative facts. *See, e.g., Soignier*, 92 F.3d at 552 (limitations period began to run upon administration of exam for which test accommodations were requested and refused).

## IV.   RECOMMENDATION

For the foregoing reasons, it is recommended that:

1.    The plaintiff's obstruction of justice claim be **DISMISSED** *sua sponte* as legally frivolous, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i);

2.    The plaintiff's breach of contract claim be **DISMISSED** *sua sponte* for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii);

3.    The defendants' motion for summary judgment (Doc. 105; Doc. 126) be **GRANTED** with respect to all of the remaining claims;

4.    The Clerk be directed to enter **JUDGMENT** in favor of the defendants and against the plaintiff; and

5.    The Clerk be directed to **CLOSE** this case.


Dated: November 30, 2016                **_s/ Joseph F. Saporito, Jr._**
                                        JOSEPH F. SAPORITO, JR.
                                        United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

RICHARD KATZ,

      Plaintiff,         |    CIVIL ACTION NO. 3:15-cv-01187

      v.            |    (MARIANI, J.)
                     |    (SAPORITO, M.J.)

NATIONAL BOARD OF MEDICAL
EXAMINERS, et al.,

      Defendants.

## NOTICE

NOTICE IS HEREBY GIVEN that the undersigned has entered the foregoing Report and Recommendation dated November 30, 2016. Any party may obtain a review of the Report and Recommendation pursuant to Local Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or

recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Dated: November 30, 2016          **_s/ Joseph F. Saporito, Jr_**.
JOSEPH F. SAPORITO, JR.
United States Magistrate Judge