## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **Richard Katz**<br>Plaintiff, *pro se*<br><br>v.<br><br>**National Board of Medical Examiners (NBME)**<br><br>And<br><br>**The Federation of State Medical Boards (FSMB)**<br>Defendants. | Civil Action No. **3:15-cv-01187**<br><br>**PLAINTIFF'S REPLY & OBJECTIONS TO THE NOVEMBER 30, 2016 MAGISTRATE'S REPORT AND RECOMMENDATION (R&R)**<br><br> (MARIANI, J.)<br> (SAPORITO, M.J.)<br><br><br>*(ORAL HEARING REQUESTED)* |
| | |
| | |

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b) the *pro se* Plaintiff Richard Katz objects to the Magistrate Judge's Report and Recommendation (R&R), entered November 30, 2016. Unfortunately, the Magistrate Judge has made recommendations unfavorable to the Plaintiff. The following objections address specific errors in the R & R. The objections are highlights that support Katz's submitted filings, this specific pleading will not discuss all of Plaintiff's pleadings as the District Court can independently and thoroughly examine those in their entirety.

## I. FACTS:

This case involves Richard Katz a medical school graduate with a history of mental illness who requires testing accommodations (extended time) for his United States Medical Licensing Exams (USMLE) due to processing speed issues. Katz brought action against the National Board of Medical Examiners (NBME) and the Federation of State Medical Boards (FSMB) on June 17, 2015 alleging violations of the Americans with Disabilities Act (ADA), the Rehabilitation Act,

1

asserting claims for breach of contract, negligent or intentional infliction of emotional distress (N/II ED), and other claims, arising out of the NBME and FSMB's failure to provide him with accommodations to take the USMLE.[1]

Katz has a medical history complicated by neurological problems (seizure disorder), psychiatric comorbidities including bipolar disorder, attention and anxiety problems, and panic with specific phobia associated with test-taking – (medical boards) (EXHIBIT A). Psychotropic medications and psychotherapy have been in effect since March of 2013 to stabilize these and other conditions exacerbated by the defendants' behavior. Katz proceeded *pro se* and in *forma pauperis* and moved for preliminary injunction to allow him to continue taking the USMLE, so he may continue with his medical career despite struggling with mental impairment.[2]

Richard Katz resides in East Stroudsburg, PA he graduated Medical School in 2004 and holds a Medical Degree. He has been in *limbo* since 2004 attempting to pass the USMLE multiple times, under *regular exam conditions.* Despite requests and submission of scientific evidence from his psychiatrists and psychologists to defendants no extended exam time or additional breaks have ever been granted to him. **Consequently he has been unable to mitigate his disabilities during previous attempts under regular exam conditions.** The repeated testing and subsequent failures eroded his self-esteem, financially depleted him and took a toll on his mental and overall health.

---

[1] The USMLE is a grueling one-day long examination divided into eight 60-minute blocks and administered in one 8-hour testing session. The examinee is bombarded by questions some over a paragraph long and given little over a minute per question to mentally process. USMLE two-step (also called double-jump) questions require several cognitive steps to arrive at a correct answer. Finding the correct answer requires examinee to formulate a proper diagnosis and then select the most appropriate pharmacologic treatment for example. Note that you get no credit for the intermediate step of diagnosis. The correct answer is found only by reasoning all the way through to the treatment.

If the examinee suffers from executive dysfunction and processing speed problems, as is the case with Katz, the examinee will not stand a chance under regular exam conditions. The clock will beat him. Extended exam time as explained by the ADA and DOJ needs to be granted in order to level the playing field (see Settlement Agreement between United States of America and National Board of Medical Examiners DJ# 20216181 as EXHIBIT 17)

[2] The point of temporary or preliminary relief is to maintain the parties in substantially the same condition when the final decree is issued as when the litigation began. Ibid. (citing Peters v. Public Service Corp. of NJ.132 N.J. Eg. 500 (E. & A. J 942») this consideration was not extended to plaintiff.

He ultimately ran out of mental resources and had a nervous breakdown in March of 2013 requiring a week-long hospitalization at Pocono Medical Center's Behavioral Health Unit.  The attending psychiatrist at Pocono Medical stated in her March 9, 2013 note; **Richard Katz "has thoughts of worthlessness, hopelessness, judgment is impaired."  "Insight is poor!" (EXHIBIT 59)**

This is a disability access complaint alleging that there are discriminatory policies in place at the NBME and FSMB together constituting the USMLE Organization.  Katz is an individual with documented mental disabilities. **This barrier denies full and equal access to in violation of title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181**.

In 2011 the USMLE Organization announced that they will place an exam limit to the number of times examinees can take to pass a step of the USMLE. The previous policy allowed examinees to take the exam as many times as they needed until passing. In creating this so-called "Six Attempt Limit Rule" the Defendants made NO concession in their policy development for people with documented mental disabilities under the ADA. This is an access violation that does not comply with accessibility regulations under Title III of the ADA. **This is in violation to the specifications promulgated by the Department of Justice (the "DOJ Standards") who have been conducting an independent investigation into the defendants' questionable compliance issues even predating Katz's November 28, 2014 DOJ complaint.  NBME and FSMB are subject to the requirements of Section 309 of the ADA of 1990, 42 U.S.C. § 12189, private entities that administer professional licensing examinations must offer examinations in a place and manner accessible to persons with disabilities.**

Katz sent an appeal to NBME Disability Services on April 1st 2014, requesting that they modify their "Six Attempt Limit Rule "as a reasonable accommodation under the ADA (see Doe v. Samuel Merritt University, 921 F. Supp. 2d. 958 (N.D. Cal. 2013) Preliminary Injunction granted allowing student with a disability to take a podiatric licensing examination unlimited times as an

accommodation to University's policy providing for a three-exam limit, see also  Bartlett v. NYSBLE, 970 F. Supp. at 1117).[3]  **The NBME denied this request.**

A second dispute exists in this case, Katz alleges discrimination by NBME Disability Services in 2006.  Katz requested exam accommodations of extended exam time and additional breaks for the USMLE during this period**.  It was recently learned during the limited discovery phase of this lawsuit that UNLICENSED evaluators working for NBME Disability Services determined that the scientific evidence submitted by Katz's caregivers did not demonstrate that he was substantially limited in a major life activity as compared to most people, so-as-to be disabled within the meaning of the ADA.**

The compliance officer for NBME at the time J. Abram Doane stated in his March 13, 2006 denial letter to Katz (EXHIBIT 16):

**"We consulted EXPERTS in the field of Learning Disability and Mental Disorders to assist us in reviewing the documentation."**

**But there were NO "EXPERTS," just one UNLICENSED, newly graduated Psy.D., named Catherine Farmer.**  Based on Catherine Farmer's Resume she was employed by NBME in various capacities from 1993 to 2016 and was far from an objective "external consultant"  (EXHIBIT 14).  The NBME leveraged themselves with an internally affiliated evaluator to get around ADA compliance issues and to control for incoming accommodation requests (EXHIBIT 36).

**The Defendants made a false statement to Katz and need to be held responsible for misleading him.  Katz would have initiated lawsuit in 2006 if this material fact was made**

---

[3] Bartlett v. NYSBLE, 970 F. Supp. at 1117 ("[I]n the modern era, where test-taking begins in the first grade and standardized tests are a regular and often life altering occurrence thereafter, both in school and at work, "**I find test-taking is within the ambit of 'major life activity" Judge Sotomayor) on remand from the Second Circuit Court of Appeals, ruled in favor of a bar exam applicant by holding that she was entitled to accommodations. The court held that the NYSBLE illegally discriminated against the plaintiff when it failed to accommodate her dyslexia on five separate and unsuccessful exam attempts.** The court found that the plaintiff was substantially limited in the major life activities of reading and working, **even though she had employed coping strategies to overcome some of her reading and processing problems.**

**known to him. However, the identity of the NBME evaluator is never revealed to the disability applicant. Katz supplied sufficient facts in his second amended complaint to support these claims that conceivably would constitute a specific violation of his constitutional rights.**

Katz alleges that material fact was concealed by defendants, as there were **NO EXPERTS** in the field of Learning Disability and Mental Disorders that assisted the NBME in reviewing his documentation in 2006. Katz sent a notarized request to NBME Disability Services on January 27, 2014 requesting his documentation from 2005-2006 when he applied to NBME Disability Services. On February 4th, 2014 Catherine Farmer the same **UNLICENSED** evaluator (now the NBME Compliance Officer) who denied Katz accommodations in 2006 replied by mail stating:

**"The NBME does not copy or return the comments of an examinee's disability file or send copies to examinees or third parties." (EXHIBIT 33)**

The constitutionality of ownership and control of patient records; reports or copies of records of disclosure of information may warrant further scrutiny by this Court**. This information was not made available to Katz until receiving Exhibits 4 and 5 from defendant's dated August 28, 2015.** Katz had submitted sufficient scientific evidence from his LICENSED psychiatrists and clinical psychologist caregivers to demonstrate that he is a person with a disability within the meaning of the ADA, and that he was entitled to reasonable testing accommodations to take his USMLE Exams in 2006 and in 2014.

## II. STANDARD OF REVIEW:

The Magistrate Judge makes only a recommendation to the Court. The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the Court. Mathews v. Weber, 423 U.S. 261, 270–71 (1976). Parties are permitted to make a written objection to the Magistrate Judge's proposed report and recommendations (R & R) within fourteen days after being served a copy of the R&R. 28 U.S.C. § 636(b)(1)(B). This Court is charged with conducting a *de novo* review of any portion of the R&R to which a specific objection is registered, and the Court may accept, reject, or modify the R&R's findings and recommendations in whole or in part. Id. Additionally, the Court may receive additional evidence or recommit the matter to the

Magistrate Judge with instructions. For the reasons enumerated below the pro se Plaintiff, Richard Katz objects to the magistrates' R & R.

## III.  ARGUMENT- LEGAL SCIENCE:

Plaintiff Richard Katz objects to the Magistrate's Report and Recommendation (R & R) for the following reasons:

1. The Magistrate's Report and Recommendation (R&R) is based on errors and omissions with misinterpretation of fact and consequently errors in application of significant case law.

2. The Magistrate interprets ADA laws contrary to the way that Congress intended.

3. The Magistrate failed to link the NBME's prior civil rights violations with the Justice Department's current investigation of the Defendants.

4. The Magistrate failed to properly recognize the Freedom of Information Act (FOIA) (5 U.S.C. § 552) (EXHIBIT B).  The Magistrate abused his discretion by not allowing Katz to complete FOIA dependent discovery and present more comprehensive evidence on the NBME/FSMB 'six attempt limit rule.'

5. The sixth amendment to the United States Constitution expressly provides a right to counsel in criminal cases, but is **silent as to any similar right in civil cases.**[4]   The **Magistrate Judge made no concession to Katz in light of the fact that he suffers from mental illness in the appointment of counsel.**

6. Katz invokes equitable tolling but the Magistrate misinterprets these doctrines as a principles of law.  **Statute of limitations shall not bar a claim in cases where the plaintiff, despite use of due diligence, could not or did not discover the injury until after the expiration of the limitations period.**[5]

---

[4] The sixth amendment reads in pertinent part that -[iln all criminal prosecutions, the accused shall enjoy the right.., to have the assistance of counsel for his defence." U.S. Const. amend. VI.

[5] American Jurisprudence 2d Limitation of Actions § 174 (2007).

7.   The Magistrate Judge ignored Katz's **56d Affidavit that additional discovery is necessary in this case.** Katz has not had a fair chance to complete discovery (EXHIBIT C).

1.   **The Magistrate's Report and Recommendation (R&R) is based on errors, with omissions and misinterpretations of fact and consequently errors in application of significant case law.**

   i.   **Page 1 of R&R ¶ 1** – The Magistrate Judge discusses Katz's unsuccessful attempts on the USMLE but omits to the Court his history of mental illness and accommodation requests to NBME in his introduction. The Magistrate Judge employs the term "cognitive disabilities" Katz objects to this term as it minimizes his disabilities, not accounting for decrements in emotion-cognition and motivation-cognition.[6]

   ii.   **Page 2 of R&R ¶ 1** – The Magistrate Judge meticulously recites dates of Katz's USMLE failures but makes omissions **that these attempts were under regular exam conditions without any accommodations for his disabilities under ADA guidelines.**

   iii.   **Page 2 of R&R ¶ 2 – The Magistrate is in error with regard to accommodations requested in July of 2005. Plaintiff applied for accommodations for USMLE Step 2, Clinical Knowledge (CK) and Step 2 Clinical Skills (CS) and provided a detailed explanation of the issues he was experiencing with USMLE Step 1 (i.e. running out of time) due to his disabilities.**

      The Magistrate Judge states that Katz submitted "documentation in support of test accommodations" but neglects to state content of such documentation or what entity submitted it to NBME on his behalf. Katz's caregivers submitted scientific evidence, psychological reports from LICENSED Psychologists and reports from LICENSED Psychiatrists to NBME justifying his need for accommodations under the ADA program.

   iv.   **Page 3 of R&R ¶ 1-** Object to Magistrate Judge's averment;

---

[6] Relationships among cognition, emotion, and motivation: implications for intervention and neuroplasticity in psychopathology Laura D. Crocker, Wendy Heller, Stacie L. Warren, Aminda J. O'Hare, Zachary P. Infantolino, Gregory A. Miller Front Hum Neurosci. 2013; 7: 261. Published online 2013 Jun 11. doi: 10.3389/fnhum.2013.00261 PMCID: PMC3678097

"In February 2006, an NBME psychologist internally recommended denial of Katz's request for test accommodations." **NO LICENSED psychologist for the NBME ever evaluated Plaintiff's scientific evidence.** Only a newly graduated UNLICENSED Psy.D. with strong ties to the NBME organization. This individual, to date, holds only an EXPIRED Practical Nursing License (LPN). LPN's work under the direction of Registered Nurses (RN's).

v.  **Page 3 of R&R ¶ 2** – Object to Magistrate Judges' description of Katz's USMLE failures without mentioning that **accommodations were NOT in place under 42 U.S.C. Section 1983, Section 504 of the Rehabilitation Act of 1973 or Americans with Disabilities Act of 1990.**[7]

vi.  **Page 3 of R&R ¶ 3** – Object to Magistrate adopting the following statement from defendants, as if it were a legitimate accommodation under the ADA; "Examinees who had not previously taken any exam component were subject to this six-attempt limit effective January 1, 2012. Examinees who had previously taken any step or step component of the USMLE exam were subject to the six-attempt limit beginning January 1, 2013 effectively permitting these examinees a one-year grace period in which to complete exam components for which they would later become ineligible under the six-attempt limit policy."

vii.  **Page 4 of R&R ¶ 2** – Object to Magistrates' averment that Katz did not request accommodations after announcement of the 'Six Attempt Limit.' **Katz did not learn of his diagnosis of bipolar disorder until he was hospitalized at Pocono Medical Center in March of 2013. He was already registered for the USMLE prior to this hospitalization.** The attending psychiatrist at Pocono Medical stated in her March 9, 2013 note that Richard Katz; "has thoughts of worthlessness, hopelessness, **judgment is impaired." "Insight is poor!"  Plaintiff was not making rational decisions due to his disability as the newly instituted medication regimen took time to stabilize his symptoms.**[8]

---

[7] **Federal law 42 U.S.C. Section 1983** (Civil Action for the Deprivation of Rights) permits a plaintiff to receive a jury trial and to be awarded damages where state action is responsible for a violation of federal constitutional or statutory rights (see Thomas & Russo, 1995, pp. 10-15). **Section 504** stipulates that no otherwise qualified person due to disability may be denied the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance (29 U.S.C. § 794(a)) **Title III of Americans with Disabilities Act of 1990** prohibits entities that operate places of public accommodation from discriminating against persons with disabilities by denying them full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations they provide (42 U.S.C. § 12182(a)).

[8] Plaintiff, during periods of mania experiences elevated and exalted mood, believes he is invincible against the USMLE or anything else that stands in his way. During a phase of

viii.   **Page 4 of R&R ¶ 3 –** Object to Magistrate's averment; "Among other stressors he discussed with the attending psychiatrist, his unsuccessful efforts to pass his medical boards. In particular, he commented that "[i]f he fails again this time, this will be his last chance." (Doc. 195, at 6 (filed under seal)).  Richard Katz **was not the historian** regarding his unsuccessful attempts on the USMLE or the six attempt limit as a stressor to his mental impairment but rather **it was his wife** to the **attending psychiatrist at Pocono Medical Center**.  This is an assumption on the part of the Magistrate and should be stricken from the record.[9]

ix.   **Page 6 of R&R ¶ 2** Object to Magistrate adopting defendants' averment that; "On March 3, 2015–nearly a year later—Katz wrote a letter to the Pennsylvania State Board of Medicine seeking the Board's approval for a waiver of the six-attempt limit. The matter was presented to the Board at a public hearing on May 19, 2015, and denied by unanimous vote."

The Pennsylvania State Medical Board stated that plaintiff's request for a waiver is currently **"PREMATURE"** essentially 'passing the buck' back to the defendants, **the state board currently awaits the outcome of this lawsuit (EXHIBIT 23).**

x.   **Page 7 of R&R ¶ 1-** Object to Magistrate's averment that **"**Katz **claims** that the defendants' conduct **caused him** to suffer a nervous breakdown, which required his hospitalization for a week in March 2013, and "persistent and recurring severe abdominal pain due to emotional distress," which led to an emergency-room visit in August 2015 and ongoing treatment by a gastroenterologist. (Id.).  **He further claims that stress he attributes** to the defendants' conduct exacerbated a pre-existing asthma condition and caused him to suffer "frequent headaches, high blood sugar approaching a pre-diabetic state, skin conditions for which he sees a [d]ermatologist monthly since 2013, depression, anxiety[,] and sleep disturbance." (Id.).

---

depression, plaintiff will have many of the symptoms of a major depressive episode. He experiences despondent mood, a loss of energy, problems concentrating. He requires mood stabilizers on a daily basis to combat these symptoms.

[9] A "Catch-22" is a paradoxically winding law that traps people inside of it.  Joseph Heller coined the term in his 1961 novel Catch-22, which describes absurd bureaucratic constraints on soldiers in World War II**.  This term is introduced by the character Doc Daneeka, an army psychiatrist who invokes "Catch 22" to explain why any pilot requesting mental evaluation for insanity— hoping to be found not sane enough to fly and thereby escape dangerous missions— demonstrates his own sanity in making the request and thus cannot be declared insane."**  The Magistrate's assumption is no different. Joseph Heller, Catch 22 (Simon & Schuster, New York. 1996), p. 24

**The record and caregiver reports in the Court record/docket speaks for itself corroborated by medical doctors who state that these conditions have been exacerbated by stress. These are not Plaintiff's claims but rather the opinions of his treating physicians.**

xi.     Page 7 of R&R ¶ 1- Object to Magistrates' averment that; "Katz also seeks compensatory damages for lost income as a physician, contending that he has been unable to engage in the "**lucrative practice of medicine**" because the defendants' conduct has prevented him from obtaining his medical license. (Id.)."
**Plaintiff never made the statement "lucrative practice of medicine" this is an embellishment on the part of the Magistrate Judge. As Katz states in his previous motions 'medicine is more of a calling than it is a profession.' He certainly did not pursue medicine for the money as the Magistrate Judge suggests.**

xii.    Page 9 of R&R ¶ 3- Object to section B. Sua Sponte Dismissal Standard of Magistrate's R&R. Katz, as a pro se litigant, is entitled to some latitude. Bieros v. Nicola, 839 F.Supp. 332, 334 (E.D.Pa. 1993). The second amended complaint as written, states facts and submits evidence in black and white print that support the claim that conceivably would constitute a specific violation of Katz's constitutional rights. When initially assessing a complaint, the factual allegations must be weighed in favor of the plaintiff. Id. at 32 (citing Coppedge v. United States, 369 U.S. 438, 447 (1962)). **Here the Magistrate weighs in favor of the defendants and strategically omits material facts "[s]trategic omissions do not" change the real meaning of clauses or phrases, Swanson v. Bank of America, N.A., 563 F.3d 634, 636 (7th Cir. 2009).**

xiii.   Page 12 of R&R ¶ 2- Object to section III. DISCUSSION A. Criminal Obstruction of Justice: in Magistrate's R&R. As enumerated in reason six the Magistrate Judge made no concession to Katz's mental impairments with regard to appointment of counsel. This hindered his deposition and discovery efforts. The charge of Criminal Obstruction of Justice as well as the other state-charges warrant appropriate deposition and discovery of defendants although the evidence in the record justifies such claims in black and white print.

xiv.    Pages 12 to 14 of R&R - Object to section B - Breach of Contract in Magistrate's R &R. The Magistrate states; "Accordingly, it is recommended that this claim be dismissed sua sponte for failure to state a claim on which relief may be granted, pursuant to 28 Case U.S.C. § 1915(e)(2)(B)(ii)." Considering Katz is mentally disabled, is not an attorney and has no legal background he should be permitted to amend his second amended complaint to further justify this state-law claim as he

does in his Memorandum In Support of Plaintiff's Opposition To Amended Summary Judgment (pgs. 28-29).[10]

xv.   **Pages 14 to 19 of R&R -** Object to section C. Time-Barred Federal and State Claims of Magistrate's R&R**. The Magistrate erroneously adopts the defendants precedent case; Disabled in Action of Pa. v. Se. Pa. Transp. Auth., 539 F.3d 199, 208 (3d Cir. 2008) which actually works in Katz's favor.[11]**

In summary:

(**1**) Katz was misled and lulled by Defendants' denial of accommodations in 2006 preventing him from asserting his due process rights until diagnosed with bipolar disorder in 2013;

(**2**) The pattern remained obscured in the face of diligence in seeking to identify it; **he was unable to obtain vital information bearing on the existence of his claim until the discovery phase of this lawsuit."** Katz contends with mental illness and was adjusting to a new psychotropic medication regimen

(**3**) The continuing violation exception aggregates a series of wrongs and applies a single limitations period beginning after the commission of the **last wrong suffered** ("Six Attempt Limit" (2014) + ADA violations in 2006).

(**4**) **The delayed discovery exception postpones accrual of the limitations period until** the plaintiff discovers the cause of action. By defendants submission of documents during discovery Katz was better able to examine what took place in 2005-2006.

(**5**) **To obtain equitable tolling, a plaintiff must show that the failure to file was a result of mental illness that rendered him incapable of "rational thought or deliberate decision making,"** Meléndez-Arroyo, 273 F.3d at 37, Katz was not diagnosed with bipolar disorder until 2013. He was lacking in insight and judgment he cannot be deemed a "reasonable person" until April of 2014 (EXHIBIT 59).

2.   **The Magistrate interprets ADA laws contrary to the way that Congress intended.**

The ADA, like many federal civil rights statutes, does NOT contain a specific statute of limitations. Applying a time bar in a case where the plaintiff had no opportunity to raise

---

[11] On August 19, 2008, the United States Court of Appeals for the Third Circuit (Judge Michael D. Fisher; Judge Thomas M. Hardiman, Judge Walter King Stapleton) reversed the District Court and remanded the case. Disabled in Action of Pa. v. Southeastern Pa. Transp. Auth., 539 F.3d 199 (3rd Cir. 2008). **The Third Circuit (Judges Fisher, Hardiman, Stapleton) held that the accrual date of a discrimination claim depends on when the discrimination occurred and that discrimination did not occur until the construction was completed. Therefore, DIA's claims were not barred by the statute of limitations.**

his claim within the time period may be unfair.[12] Moreover, applying a strict time bar under a statute designed to bring equality of opportunity to a traditionally underrepresented Group may not deter discrimination and undermine the remedial purposes of the civil rights law.[13]

The ADA was meant to level the playing field for people with disabilities. Congress intended individuals, like the plaintiff to be protected by the law. High Stakes testing agencies like NBME have chosen to interpret the ADA in a way other than Congress intended. They have interpreted it to severely limit who is covered by the ADA totally disregarding the spirit and intent of the ADA and scientific evidence pointing to the absolute need for accommodations for people with disabilities.

Pursuant to the ADAAA, Katz would be entitled to the accommodations of extended time on the USMLE Step 1. In amending the ADA in 2008, Congress mandated that the Equal Employment Opportunity Commission (EEOC) issue regulations restoring the broad scope of the ADA as Congress originally intended. 42 U.S.C. §12010 (b)(6). The promulgated EEOC regulations provide in pertinent part: "[t]he primary purpose of the ADAAA is to make it easier for people with disabilities to obtain protection under the ADA. Consistent with the Amendments Act's purpose of reinstating a broad scope of protection under the ADA, the definition of "disability" in this part shall be construed broadly in favor of expansive coverage to the maximum extent permitted…" 29 C.F.R §1630.1(c)(4).

Prior to the ADAAA, the NBME and similar testing entities had a penchant for denying accommodations for students in higher education on the basis that they were not diagnosed at an earlier age or that they performed well academically. In passing the ADAAA, Congress targeted these testing entities noting in the

Congressional Record:

Historically, certain individuals with learning disabilities seeking accommodations in higher education – including high stakes exams-have seen their access to testing accommodations severely undercut by testing companies not willing to consider and support that learning disabilities are neurologically based, lifelong disabilities that may

---

[12] Ochoa & Wistrich, supra note 43, at 475-76.

[13] Hill, E. & Blanck, P. (2009). Future of Disability Rights: Part Three—Statutes of Limitations in Americans with Disabilities Act, "Design and Construct" Cases, Syracuse Law Review, 60, 125-159.

exist in students with high academic achievement because the individual has been able to cope and mitigate the negative impact while simultaneously being substantially limited in one or more life activities.

2 Cong.Rec. 8296 (Sept. 17, 2008).

Pursuant to the ADAAA and it regulatory guidance, the NBME is mandated to give considerable deference to Katz's evaluators and their recommendation to provide accommodations. The guidelines to the regulations promulgated under the ADA, provide that testing entities should accept without further inquiry, "documentation provided by a qualified professional who has made an individualized assessment of an applicant that supports the need for the modifications, accommodation, or aid requested." See 28 C.F.R. pt. 36, app. A, at 795. The guidance further explains that, "[r]eports from experts who have personal familiarity with the candidates should take precedence over those from, for example, reviewers for testing agencies, who have never personally met the candidate or conducted the requisite assessments for diagnosis and treatment." 28 C.F.R. pt. 36, app. A, at 796 (emphasis added). Accordingly, NBME is precluded from second-guessing and rejecting Plaintiffs' evaluators' recommendations.

3.  **The Magistrate failed to link the defendant's prior civil rights violations with the Justice Department's current investigation of the Defendants.**

NBME is currently under investigation by the Department of Justice Civil Rights Division, Katz is not the only complainant, there are several others. The Defendants entered into a two-year settlement agreement with Justice **DJ# 20216-181** granting Frederick Romberg, a Yale Medical School student with dyslexia, the accommodations of double the standard testing time and a separate testing area to take the USMLE. This agreement took effect on February of 2011 it was over February of 2013. When it ended the defendants reverted back to their discriminatory behavior, as testament to this and other existing lawsuits against them. The agreement was for all individuals with disabilities, not just Romberg. Katz's case is not much different than Fredrick Romberg's. Romberg's disability is dyslexia, Katz's disability is bipolar disorder, anxiety, attention problems and specific phobia associated with test-taking (medical boards) (EXHIBIT 27). Romberg was offered relief

under Title III and provided with accommodations as the NBME preferred to enter into settlement agreement then defend themselves against Justice in Court**.**  Katz deserves the same courtesy.

**4.  The Magistrate failed to properly recognize the Freedom of Information Act (FOIA) (5 U.S.C. § 552).**  The Magistrate abused his discretion by not allowing plaintiff to complete FOIA dependent discovery and present more comprehensive evidence on the defendants 'six attempt limit rule.'  This might have given the court a chance to decide the case using a standard that favored plaintiffs' position.

**5.  The sixth amendment to the United States Constitution expressly provides a right to counsel in criminal cases, but is silent as to any similar right in civil cases.    The Magistrate Judge made no concession to Plaintiff in light of the fact that he suffers from mental illness.**

The failure of the courts to recognize a right to counsel of an indigent in a civil action has led to considerable controversy.[14]  Plaintiff requested counsel twice because of the complexities of this case and was denied both times by the Magistrate Judge.  As a result this case can be chalked up to a David and Goliath contest.  Appointment of counsel is essential here to satisfy due process.

The Seventh Circuit held that when a district court is confronted with a motion for appointment of counsel under 28 U.S.C. § 1915(e)(1), it must make two inquiries: 1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so, and if so, 2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?   In this case, only the second question is at issue.  That question, regarding competency, intertwines a two-fold inquiry as to the difficulty of the case weighed against the plaintiff's litigation capabilities, and an examination of such capabilities in light of the challenges specific to the case.

**6.  The plaintiff invokes equitable tolling but the Magistrate misinterprets these doctrines as a principle of law.**  Statute of limitations shall not bar a claim in cases where

---

[14] Alan Jay Stein, The Indigent's "Right" to Counsel in Civil Cases, 43 Fordham L. Rev. 989 (1975). Available at: http://ir.lawnet.fordham.edu/flr/vol43/iss6/4

the plaintiff, despite use of due diligence, could not or did not discover the injury until after the expiration of the limitations period.[15]

"Under equitable tolling, plaintiff may sue after the statutory time period for filing a complaint has expired if they have been prevented from filing in a timely manner due to sufficiently inequitable circumstances." Seitzinger v. Reading Hosp. & Med. Ctr., 165 F.3d 236, 240 (3d Cir. 1999).

The United States Court of Appeals for the Third Circuit has stated that "there are three principal, though not exclusive, situations in which equitable tolling may be appropriate: (1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum  (see Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1387 (3d Cir. 1994). Further, the equitable tolling doctrine may excuse the plaintiff's non-compliance with the statutory limitations provision at issue when it appears that (1) the defendant actively misled the plaintiff respecting the reason for the plaintiff's discharge, and (2) this deception caused the plaintiff's non-compliance with the limitations provision. Id. "In addition, 'equitable tolling requires the plaintiff to demonstrate that he or she could not, by the exercise of reasonable diligence, have discovered essential information bearing on his or her claim.' " Ruehl v. Viacom, Inc., 500 F.3d 375, 384 (3d Cir. 2007) (quoting In re Mushroom Transp. Co., 382 F.3d 325, 339 (3d Cir. 2004)).

In Wallace v. Kerestes, et al., in The United States District Court for the Eastern District of Pennsylvania, Marilyn Heffley, U.S.M.J. stated:

"Upon consideration of the above factors, the Court has determined that appointment of counsel is warranted for further evaluation of Wallace's claims. **In particular, Wallace has argued that he is entitled to equitable tolling of the habeas corpus statute of limitations because the "psychotropic medications...received from the time of [his] arrest ha[ve] affected [his] ability to reason and function normally" and represent**

---

[15]  American Jurisprudence 2d Limitation of Actions § 174 (2007).

"**extraordinary circumstances**" **that prohibited him from making timely filings with the court. 1 Pet'r's Traverse (Doc. No. 12) at 9-10.**

Given the nature of the allegations presented in Wallace's habeas petition, the need for additional factual investigation concerning Wallace's mental condition during the 2001 to 2013 time period, and the limitations suggested by Wallace's mental impairments that could potentially undermine his ability to pursue such an investigation without counsel's assistance, appointment of counsel is warranted for further evaluation of Wallace's claims **see Griffin v. Stickman, No. 04-cv-0975, 2004 U.S. Dist. LEXIS 16186, at \*19, 2004 WL 1821142 (E.D. Pa. Aug. 11, 2004) (internal citations omitted); see also Graham v. Kyler, No. 01-cv-1997, 2002 U.S. Dist. LEXIS 26639, at \*10-11, 2002 WL 32149019 (E.D. Pa. Oct. 31, 2002) (explaining that whether mental impairment affected a petitioner's ability to timely file a habeas petition "must be premised on the totality of the petitioner's circumstances" including his or her ability to "understand basic legal concepts, combined with his diagnosed psychiatric disorder").**

In David S. FORBES; v. R. Alan EAGLESON U.S. District Court for the Eastern District of Pennsylvania - 19 F. Supp. 2d 352 (E.D. Pa. 1998). The Forbes court observed that the "discovery rule inquiries focus on when the plaintiff uncovered the existence of an injury; equitable tolling analyses query when the plaintiff became aware of the facts underlying their claim. **This distinction is crucial here, when plaintiffs seek not to toll the claims accrual date based on a late discovery of a latent injury but rather to toll the already-running limitations period based on defendants' purported misrepresentations.**"

In RAMADAN, on her own behalf and on behalf of all others similarly situated, Appellant v. THE CHASE MANHATTAN CORPORATION; Hyundai Motor Finance Co. On Appeal From The United States District Court For The District Of New Jersey, D.C. Civ. No. 96-03791) Susanne H. Ramadan brought a federal claim under the Truth in Lending Act, 15 U.S.C. §§ 1601 et seq., and pendent state law claims against Chase Manhattan Corp. and Hyundai Motor Finance Co. alleging that she was given false financing disclosures when she purchased an automobile. The district court granted defendants'

motion to dismiss for lack of subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1 ). We will reverse.

In sum, based on the structure and purpose of TILA, we hold that the statute of limitations contained in § 1640(e) is not jurisdictional and is therefore subject to equitable tolling. Accordingly, we will reverse the district court's order and remand the cause to the district court.

**Plaintiffs argue fraudulent concealment equitably tolls the limitations period for warranty claims, as it does for their other claims. Pls.' Opp'n 27 n.23 (citing In re Ford Motor Co. E-350 Van Prods. Liab. Litig., No. 03-4558, 2008 WL 4126264, at *18-19 (D.N.J. Sept. 2, 2008), and Connaught Labs., Inc. v. Lewis, 557 A.2d 40, 43-44 (Pa. Cmmw. Ct. 1989)).**

In Charles William PEARSON, Jr., Plaintiff v. Carolyn W. COLVIN, Acting Commissioner of Social Security Administration, Defendant. Third Circuit › Pennsylvania › Pennsylvania Middle District Court:

"**At the outset, we note that Pearson appears to have labored under a recognized mental and emotional disability, a major depressive disorder, which may have affected his ability to address these matters in a timely fashion. Such disability-based equitable tolling has long been recognized by the courts in the past in situations where a claimant's mental impairments have impeded his ability to meet the limitations period prescribed by statute. See Canales v. Sullivan, 936 F.2d 755, 758 (2d Cir.) on reh'g, 947 F.2d 45 (2d Cir.1991) citing Young v. Bowen, 858 F.2d 951 (4th Cir.1988); Torres v. Secretary, 475 F.2d 466 (1st Cir.1973); Hines v. Bowen, 671 F.Supp. 10 (D.N.J.1987); Brittingham v. Schweiker, 558 F.Supp. 60 (E.D.Pa.1983); Kapp v. Schweiker, 556 F.Supp. 16 (N.D.Cal.1981).**

**Pearson's mental health and indigency, coupled with the last-minute logistical obstacles encountered by Pearson and his counsel, permit such equitable tolling, particularly when this case is viewed against the backdrop of the plaintiff's otherwise apparently diligent pursuit of this claim over time.**

In Judith CUNNINGHAM, et al., Plaintiffs, v. M & T BANK CORP., et al., Defendants. Appeal from the United States District Court for the Middle District of Pennsylvania (D.C. Civil Action No. 1-12-cv-01238) District Judge: Honorable Christopher C. Conner:

**Indeed, the court is cognizant and has previously recognized that the equitable tolling doctrine is two-pronged, inquiring into both plaintiffs' and defendants' conduct, see Cetel v. Kirwan Fin. Grp., Inc., 460 F.3d 494, 509 (3d Cir.2006) (court must consider whether "the defendant actively misled the plaintiff" and ask if "the plaintiff's ignorance is not attributable to her lack of reasonable diligence in attempting to uncover the relevant facts"), and that the two elements in complex cases such as this may often become entangled. For that reason, the court does not impose such a narrow limitation on equitable tolling discovery.**

7. **The Magistrate Judge ignored Plaintiff's 56d Affidavit that additional discovery is necessary in this case.**

Plaintiff has not had a fair chance to complete discovery, "The purpose of Rule 56(f) is to prevent 'railroading' the non-moving party through a premature motion for summary judgment before the non-moving party has had the opportunity to make full discovery see Dickens v. Whole Foods Mkt. Group, Inc., 2003 WL 21486821, at *2 n. 5 (D.D.C. 2003) (citing Celotex Corp., 477 U.S. At 326).

IV.     **SUMMARY OF ARGUMENT:**

The Magistrate Judges' Report and Recommendation is based on errors, omissions and misinterpretations of fact and consequently errors in application of the law. Significantly, these errors have led to a premature recommendation that summary judgment should be granted to the Defendants with complete disregard for Plaintiff's ongoing Freedom of Information Act (FOIA) (5 U.S.C. § 552) request and his 56d Affidavit for additional discovery. The Magistrate hindered Plaintiff's discovery efforts by not appointing Counsel. Moreover, factual evaluations accompanied by testimony and evidence are determinations for a jury to determine the validity and credibility. Therefore, the right thing for the District Court to do is to reject the Magistrate's R&R on all counts.

18

V.   **ISSUES PRESENTED:**

1.  **Does Katz's claims meet any of the three principals in which equitable tolling may be appropriate as outlined by The United States Court of Appeals for the Third Circuit?**

    **(1) Where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action;**
    **(2) Where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or**
    **(3) Where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum (see Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1387 (3d Cir. 1994).**

    Plaintiff's suggested answer: **yes.**

2.  **Does the equitable tolling doctrine excuse statutory limitations provision at issue in this case considering:**

    **(1) the defendant actively misled the plaintiff respecting the reason for the plaintiff's discharge, and**
    **(2) this deception caused the plaintiff's non-compliance with the limitations provision.**

    Plaintiff's suggested answer: **yes.**

3.  **Does Katz satisfy the 'equitable tolling requirement to demonstrate that he could not, by the exercise of reasonable diligence, have discovered essential information bearing on his claim (see Ruehl v. Viacom, Inc., 500 F.3d 375, 384 (3d Cir. 2007) (quoting In re Mushroom Transp. Co., 382 F.3d 325, 339 (3d Cir. 2004))?**

    Plaintiff's suggested answer: **yes.**

4.  **Did Katz's mental impairment affect his ability to timely file including his ability to "understand basic legal concepts before and while adjusting to psychotropic medications that addressed his bipolar disorder?**

    Plaintiff's suggested answer: **yes.**

19

5. **Does Katz meet the criteria for the [delayed] discovery rule, whereby the statute of limitations begins to run when Katz suspected that [his] injury was caused by wrongdoing, that NBME had done something wrong to [him] "(Jolly v. Eli Lilly & Co. (1988) 44 Cal.3d 1103, 1110)?**

   Plaintiff's suggested answer: **yes.**

6. **Did the Magistrate Judge abuse his discretion by recommending that the District Court dismiss Katz's complaint without affording Katz leave to amend (see Dennis SHARKEY, Plaintiff–Appellant, v. Eral O'NEAL; Silva Foster; D. Graham; Charles Sydney, Defendants–Appellees United States Court of Appeals, Ninth Circuit, No. 11–15619 Decided: February 10, 2015)?[16]**

   Plaintiff's suggested answer: **yes.**

7. **On September 25, 2008 Congress enacted the ADA Amendments Act of 2008 ("ADAAA") Pub. L. No. 110-325, 122 Stat. 3553.   This act revised the definition of "disability" for both the ADA and the Rehabilitation Act.  See id. § 4, 122 Stat. at 3555; id. § 7, 122 Stat. at 3558 (redefining a person with a disability for Rehabilitation Act purposes in terms of the revised definition of disability for the amended ADA). See Jones v R.R. Donnelley & Sons.**

   **According to this argument, the ADAAA principally was enacted to overrule court decisions, including the U.S. Supreme Court decisions in Sutton v. United Airlines, Inc. and Toyota Manufacturing, Kentucky, Inc. v. Williams.**

   **Should the ADAAA therefore be applied retroactively in this case?**

   Plaintiff's suggested answer: **yes**

---

[16] Dennis Sharkey appeals from an order of the district court dismissing as time-barred his claims under Title II of the Americans with Disabilities Act (ADA), Title VII of the Civil Rights Act, and various provisions of the Constitution pursuant to 42 U.S.C. § 1983. ….we hold that the district court abused its discretion in dismissing the complaint with prejudice without affording Sharkey leave to amend.  Before STEPHEN REINHARDT and PAULJ. WATFORD, Circuit Judges, and ROBERT S. LASNIK, District Judge

## CERTIFICATE OF SERVICE

I certify that the foregoing Objection to Magistrate Judges' Response and Recommendations and Exhibits, is being filed electronically with the Clerk of Court on December 19, 2016 using the electronic case filing system, which will automatically send email notifications of such filing to registered parties.

**Michael E. Sacks**
HAMBURG & GOLDEN, P.C.
1601 Market Street, Suite 3310
Philadelphia, PA 19103-1443
(215) 255-8590
sacksme@hamburg-golden.com
Attorneys for Defendants,

RESPECTFULLY SUBMITTED,

_____

**Richard Katz**
3364 Parker Lane
East Stroudsburg, PA 18301
*Pro se*