**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 17-1329
_____

RICHARD KATZ,
     Appellant

v.

NATIONAL BOARD OF MEDICAL EXAMINERS;
FEDERATION OF STATE MEDICAL BOARDS OF THE UNITED STATES INC
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 3-15-cv-01187)
District Judge: Honorable Robert D. Mariani
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 5, 2018

Before: GREENAWAY, JR., BIBAS and ROTH, Circuit Judges

(Opinion filed: September 25, 2018)
_____

OPINION[*]
_____

PER CURIAM

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Richard Katz appeals pro se from the District Court's grant of summary judgment in favor of the National Board of Medical Examiners ("NBME") and the Federation of State Medical Boards of the United States ("FSMB"). We will affirm.

Katz brought suit in the District Court in June 2015 against defendants NBME and FSMB arising out of his several unsuccessful attempts to pass a medical certification test, the United States Medical Licensing Examination ("USMLE"). Katz's second amended complaint brought federal claims under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12189, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. The complaint also sought to plead a cause of action for obstruction of justice by "misleading conduct" as defined at 18 U.S.C. § 1515(a)(3), and alleged various state-law causes of action.

The complaint alleged three main potential acts of discrimination. First, Katz alleged that NBME Disability Services discriminated against him in 2006 when it denied his request for accommodations to take two USMLE "Step 2" examinations. Katz had already failed the USMLE "Step 1" test four times, and had already failed one version of a USMLE "Step 2" test. Katz alleged that he provided documentation of his attention deficit hyperactivity disorder (ADHD), anxiety, and depression in order to justify extended testing time as a reasonable accommodation under the ADA. Katz alleged that the NBME's review of his request was a sham and that NBME had deceived him when it told him that "experts" in the field had been consulted to review his documentation. Katz later learned that a single psychologist had reviewed his file.

Second, Katz alleged that the adoption of a six-attempt limit for taking the USMLE "Step 1" exam discriminated against him. That policy was announced in 2011 and went into effect on January 1, 2013, for registrants, like Katz, who had already taken the USMLE "Step 1" exam at least once.

Third, Katz alleged that the denial of a 2014 request that the defendants waive the six-attempt limit for the USMLE "Step 1" exam discriminated against him. Katz failed the USMLE "Step 1" exam a seventh and eighth time in February 2012 and November 2012, respectively. He then registered for the exam a final time in December 2012, before the six-attempt limit took effect for previous test-takers like him. In March 2013, Katz was diagnosed with bipolar disorder. Katz then failed his ninth and final attempt at the USMLE "Step 1" exam in November 2013. He had not requested accommodations for that exam administration based on bipolar disorder or any other disability. Then, in April 2014, Katz wrote a letter requesting that the six-attempt limit be waived and that he be allowed to sit for the USMLE "Step 1" exam a tenth time with accommodations for his bipolar disorder. A USMLE official denied that request, informing Katz that only the state medical board could approve an additional attempt for an examinee.[1]

Following discovery and some motions practice, the defendants moved for summary judgment and the Magistrate Judge issued a report and recommendation on that motion. The Magistrate Judge first concluded that the attempt to bring criminal charges

---

[1] In March 2015, Katz wrote the Pennsylvania State Board of Medicine seeking such a waiver. The Board denied that request in a public hearing in May 2015. No discrimination arising out of the Board's action was alleged in this case.

3

was legally frivolous, and that a state-law breach of contract claim failed to state a claim upon which relief could be granted because there was no contract between the parties. The Magistrate Judge thus recommended dismissing those claims sua sponte. As for the remaining claims, the Magistrate Judge agreed with the defendants' argument that those claims were time-barred, and recommended that the District Court grant the defendants' summary judgment motion on that ground.

After briefing on Katz's objections to the Magistrate Judge's report and recommendation, the District Court dismissed the obstruction of justice and contract claims sua sponte, and granted summary judgment in favor of the defendants on the other claims due to Katz's failure to file those claims before the statute of limitations expired. As part of its analysis, the District Court also considered and rejected Katz's arguments in favor of equitable tolling.

This appeal followed. We have jurisdiction pursuant to 28 U.S.C. § 1291. "We review a district court's grant of summary judgment de novo, applying the same standard as the district court." S.H. ex rel. Durrell v. Lower Merion Sch. Dist., 729 F.3d 248, 256 (3d Cir. 2013). Summary judgment is appropriate when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

On appeal, Katz challenges the District Court's grant of summary judgment in favor of the defendants on his ADA and Section 504 claims, which are subject to Pennsylvania's two-year statute of limitations on personal injury actions. See Disabled in

Action of Pa. v. Se. Pa. Transp. Auth., 539 F.3d 199, 208 (3d Cir. 2008); cf. also Soignier v. Am. Bd. of Plastic Surgery, 92 F.3d 547, 551 n.3 (7th Cir. 1996) (same statute of limitations applies to claims brought under Title II or Title III of the ADA).  The District Court concluded that, for all of the acts of discrimination that Katz alleged, the statute of limitations had accrued, and then ran for at least two years, before he filed his suit in June 2015.  The District Court also concluded that there was no basis for tolling the statute of limitations.  We agree, substantially for the reasons set out in the District Court's dismissal order and in the Magistrate Judge's report and recommendation.

We may readily dispense with the discrimination claim based on events that occurred in 2006.  Katz received notice on March 13, 2006, that his request for accommodations on a USMLE "Step 2" exam was denied.  Katz took that exam on September 29, 2006, without the accommodations he had requested.  Any cause of action based on that alleged discrimination accrued when the request for accommodations was denied or, at the latest, when Katz took the exam absent those accommodations—not later, when Katz says he learned additional information about the process the USMLE administrators used to consider his request and the identity of the evaluator of his request. See Oshiver v. Levin, Fishbein, Sedran and Berman, 38 F.3d 1380, 1385-86, 1390-91 (3d Cir. 1994) (cause of action accrues when plaintiff knows or should know of the injury, but not necessarily when the plaintiff learns the legal cause of the injury).  The statute of limitations on any claim based on those circumstances expired in 2008, long before Katz filed suit in June 2015.

5

Equitable tolling could not save this claim.  Relevant to this case, equitable tolling may arise: "(1) where a defendant actively misleads a plaintiff with respect to her cause of action; [or] (2) where the plaintiff has been prevented from asserting her claim as a result of other extraordinary circumstances[.]"  Lake v. Arnold, 232 F.3d 360, 370 n.9 (3d Cir. 2000).  Katz first argued that the statute of limitations should have been equitably tolled because he was mentally incapacitated and therefore unable to submit his suit on time.  But although Katz was briefly hospitalized in 2013, that does not show that he was unable to attend to his claims in this case.  See Kach v. Hose, 589 F.3d 626, 645 (3d Cir. 2009) (only extreme mental incapacity, such as when a plaintiff was adjudicated incompetent or institutionalized, could equitably toll the statute of limitations).  As the District Court observed, Katz was able to complete medical school, register for the USMLE, and apply for jobs during the time period at issue in this case.  Katz did not point to facts sufficient to undermine the District Court's conclusion.

This is also not a case "where a defendant actively [misled] a plaintiff with respect to [his] cause of action."  Lake, 232 F.3d at 370 n.9.  Katz contended that the statute of limitations concerning the denial of his request for accommodations in 2006 was fraudulently concealed because of the allegedly deceptive statement that "experts" had reviewed his request, rather than a single outside evaluator.  As the District Court observed, however, even if that statement about expert review could have been considered deceptive—which is doubtful—Katz was on notice that he could have a potential discrimination suit as soon as his 2006 request for accommodations was denied,

6

or at least as soon as he took the USMLE "Step 2" exam without those accommodations. Katz could, and should, have sued within two years of that act of discrimination to preserve any discrimination claim arising out of the administration of the USMLE "Step 2" exam in 2006.

Katz's claims concerning events several years later, when the six-attempt limit for the USMLE "Step 1" exam began to apply to him on January 1, 2013, present a closer question. But ultimately, there was no error in the District Court's analysis of the statute of limitations for any discrimination claims arising out of that policy.

The record shows that Katz was aware of the six-attempt limit as of August 2011, when USMLE announced the new policy. That six-attempt limit became effective for test-takers in Katz's circumstances—i.e., those who had previously taken at least one USMLE step—on January 1, 2013. Katz was able to register for the USMLE "Step 1" exam three additional times between when the policy was adopted and when it went into effect; he failed each attempt to pass the test, however. Then, as of January 1, 2013, the defendants' policy barred Katz from registering again (that is, for a tenth time) for the USMLE "Step 1" exam. The statute of limitations for Katz to challenge that policy thus began to run no later than January 1, 2013, as it was at that point that the policy would have injured him. When Katz brought this action in June 2015, more than six months had already elapsed since the expiration of the two-year statute of limitations for any federal disability discrimination claims arising out of the six-attempt limit.

Katz appears to concede that point, but argues further that the April 2014 denial of his request for a waiver from that six-attempt limit—purportedly on the basis of a new medical diagnosis he received in March 2013—constituted a new act of discrimination. That argument fails, however. Under the circumstances of this case, the later denial of Katz's request to waive the six-attempt limit was an implementation of the earlier act of adopting the six-attempt-limit policy—i.e., merely an effect of that prior act—not a new act of discrimination on the basis of disability. See Del. State Coll. v. Ricks, 449 U.S. 250, 260-61 (1980); see also Soignier, 92 F.3d at 551 ("[D]iscovery of the original act of discrimination, *not* future confirmation of the injury or determination that the injury is unlawful, is when the statute of limitations begins to run.") (citing Ricks at 258). Nor was the enforcement of the six-attempt limit beginning on January 1, 2013, the kind of provisional or tentative decision that had not yet injured a potential plaintiff; it was itself the relevant act of discrimination. Cf. Colgan v. Fisher Sci. Co., 935 F.2d 1407, 1420 (3d Cir. 1991) (applying Ricks in the employment context to a tentative evaluation that led to a later dismissal; only the later dismissal triggered the accrual of the statute of limitations because the evaluation was not a final employment decision). Katz was injured as soon as he was precluded from further USMLE "Step 1" exam registrations. At that point, he had two years to sue to remedy the alleged harm against him.[2]

---

[2] Furthermore, under the new six-attempt-limit policy, if Katz wanted to register for the exam in excess of the limits imposed on him after December 2012, he could seek authorization from the state medical board for an exception from the six-attempt limit. Katz indeed sought such authorization but did not receive it. The existence of that

Katz also argues that even if he was injured as of January 1, 2013, his request for a waiver allowing him to register for a tenth attempt to take the USMLE "Step 1" exam presented a new set of circumstances to the USMLE administrators, and the denial of that waiver was an independent act of discrimination. But that argument disregards a point made persuasively by Seventh Circuit's reasoning in Soignier:

> [T]he denial of the surgeon's appeal merely confirmed the Board's earlier decisions that sufficient accommodations had already been made for his disabilities and that he would not be retested. Soignier engaged the Board's internal appeals process in an attempt to reverse the Board's decisions to offer limited accommodations at the November 1992 test and not to offer a sixth test. But "an employer's refusal to undo a discriminatory decision is not a fresh act of discrimination."

Soignier, 92 F.3d at 553 (quoting Graehling v. Village of Lombard, Ill., 58 F.3d 295, 297 (7th Cir. 1995)); see also Ricks, 449 U.S. at 261 (stating that an appeal "is a *remedy* for a prior decision, not an opportunity to *influence* that decision before it is made."). Here, too, in their denial of Katz's request for a waiver of the already-in-force six-attempt limit, the defendants refused to undo a previous decision that was alleged to be discriminatory, and did not commit a fresh act of discrimination.

One further point bears discussion: Katz does not quite put it this way, but one potential counterargument is that he had no reason to request a waiver of the six-attempt limit until he received his new medical diagnosis in March 2013. Notwithstanding Katz's earlier test-taking difficulties, one might reason, at that point he was a newly disabled

---

alternative waiver mechanism further belies Katz's contention that the defendants committed additional acts of discrimination after January 1, 2013.

9

person, and the six-attempt limit began to affect him adversely only then.  But even if that were the best way to characterize the significance of the new diagnosis, Katz still sued too late.  When Katz learned of his new medical diagnosis and its potential to exacerbate his difficulties with standardized tests like the USMLE "Step 1" exam, the enforcement of the six-attempt limit was injuring him, and he was necessarily aware of that injury.  On this theory, the statute of limitations for Katz's federal disability discrimination claim would have expired two years later, in March 2015, which is still before Katz brought this action in federal court.

Overall, then, the District Court did not err when it granted summary judgment in favor of the defendants on the ground that Katz's claims were time-barred.

Moreover, the merits present a problem for Katz, too.  The defendants argued to the District Court, and again on appeal, that even if Katz had filed a timely claim under the ADA and the Rehabilitation Act with regard to the denial of his April 2014 appeal letter, he did not create a triable issue of fact as to whether, on the merits, the ADA or the Rehabilitation Act required them to waive the six-attempt limit as an accommodation of Katz's disability.  That argument is also persuasive and provides an additional basis to affirm the District Court's judgment.

Section 309 of Title III of the ADA provides that "[a]ny person that offers examinations or courses related to applications, licensing, certification, or credentialing for secondary or post-secondary education, professional, or trade purposes shall offer such examinations or courses in a place and manner accessible to persons with

10

disabilities or offer alternative accessible arrangements for such individuals." 42 U.S.C. § 12189; see also Doe v. Nat'l Bd. of Med. Examiners, 199 F.3d 146, 155 (3d Cir. 1999). We apply the same substantive standard to claims brought under the Rehabilitation Act and Title III of the ADA. Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ., 587 F.3d 176, 189 (3d Cir. 2009). Under regulations implementing § 12189, the USMLE "Step 1" exam must be administered in a way that "best ensures" that its results will accurately reflect a disabled examinee's aptitude rather than his disability. See 28 C.F.R. § 36.309(b)(1)(i). We defer to such regulations as reasonable interpretations of the statute. See Helen L. v. DiDario, 46 F.3d 325, 331-32 (3d Cir. 1995).

In another, unrelated suit against the NBME, we held as follows when considering how to apply the relevant regulations:

> The term "accessible" is not best understood to mean "exactly comparable." The notion of accessibility, or best ensuring that examination results accurately reflect "aptitude or achievement level," see 28 C.F.R. § 36.309(b)(1)(i), does not mandate that the NBME provide examinations to the disabled that yield technically equal results; it mandates changes to examinations—"alternative accessible arrangements," 42 U.S.C. § 12189— so that disabled people who are disadvantaged by certain features of standardized examinations may take the examinations without those features that disadvantage them.

Doe, 199 F.3d at 156. Here, Katz did not create a triable issue of fact on the question whether authorizing further attempts to take the USMLE "Step 1" exam—in addition to otherwise allowing accommodations on how the test was administered—was necessary to "best ensure" that the exam results reflected aptitude and not disability. Cf. Doe, 199 F.3d at 156 ("Department of Justice regulations interpreting section 309 . . . make no

11

explicit mention of the [challenged practice]."). For their part, the defendants produced detailed, uncontroverted evidence describing the basis for the six-attempt limit for the USMLE "Step 1" exam, and explaining why that new requirement was a reasonable policy. In particular, the six-attempt limit followed from a concern that allowing additional test attempts could enable a test-taker to pass the exam by chance even when otherwise lacking the aptitude to achieve a passing score. That justification is consistent with the requirement that a testing entity "best ensure" that exam results reflect aptitude and not disability. See Doe, 199 F.3d at 156.

Moreover, on any given attempt within that six-attempt limit, a test-taker was entitled to apply for reasonable accommodations concerning how that testing opportunity was administered and presented. That shows that the defendants' policies allowed for "changes to examinations … so that disabled people who are disadvantaged by certain features of standardized examinations may take the examinations without those features that disadvantage them"—as our interpretation of 28 C.F.R. § 36.309(b)(1)(i) and 42 U.S.C. § 12189 requires. See id. Katz did not request accommodations between when he learned of his diagnosis of bipolar disorder in March 2013, and when he took his final USMLE "Step 1" exam in November 2013. In addition, Katz did not show how the standard procedures for requesting accommodations were inadequate to address his disability, especially when he did not even avail himself of those procedures. Cf. Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 88-89 (2d Cir. 2004) (holding that the NCBE did not violate ADA or Rehabilitation Act when it followed its standard procedures for

12

considering accommodations and there was no evidence that those standard procedures were unreasonable or discriminatory), opinion corrected, 511 F.3d 238 (2d Cir. 2004). Thus, any of Katz's ADA and Rehabilitation Act claims based on enforcement of the six-attempt limit after January 2013 lacked merit.

\*   \*   \*

For the foregoing reasons, we will affirm the District Court's judgment. Katz's motion to compel the District Court to seal the record is denied. Appellees' motion to file Volume II of the Supplemental Appendix under seal is granted.