At Part_____ of the Middle District Court for the State of Pennsylvania, held in and for the County of Lackawanna, held at the Courthouse, 235 N Washington Ave, Scranton Pennsylvania, 18503, on the ____ day of May 2019

MIDDLE DISTRICT COURT OF THE STATE OF PENNSYLVANIA

Dr. RICHARD KATZ,

    Plaintiff,

v.

NATIONAL BOARD OF MEDICAL EXAMINERS (NBME) ET AL

    Defendants.

Case No. 3-15-cv-1187

Reply Brief

**PLAINTIFF'S RESPONSE TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S APPLICATION FOR AN ORDER TO SHOW CAUSE PERMITTING PLAINTIFF TO PROCEED UNDER A PSEUDONYM POST-HOC**

**I. Introduction**

The NBME et al not only discriminates against individuals with disabilities by employing unlicensed incompetent disability service evaluators, now they move to prevent food from being put on disabled individuals' tables.  On March 3rd, 2017 NBME et al stated (DKT# 210) EXHIBIT A:

> "The defendants, the National Board of Medical Examiners ("NBME") and the Federation of State Medical Boards ("FSMB"), take no position regarding Plaintiff Richard Katz's Motion for Order to Seal Records."

As it obviously benefitted NBME et al to seal the record to minimize their own publicity and to maintain their own anonymity, now they hypocritically submit an opposition for Dr. Katz to maintain anonymity. This is clear evidence of the malice and lack of integrity of the NBME et al organization and the reason why they remain on the United States Department of Justice's "radar."

Dr. Richard Katz is a pro se litigant who holds a medical degree NOT a Law Degree. At the onset of this case Dr. Katz did not know about filing as a pseudonym but did request to file under seal on 08/17/2015 (DKT # 28, 29) denied on 09/03/2015 DKT # 37). Dr. Katz filed motion for reconsideration to seal on 09/18/2015 (DKT # 47) denied on 01/29/2016 (DKT # 84) as he was vigilant about the ramifications of the above captioned lawsuit on societal stigma of mental illness and future livelihood. The information obtained for filing under seal came mainly from the Middle District Court Clerk's Office. Dr. Katz received no help with this case as he was denied counsel twice and proceeded pro se and in forma pauperis to fight for his civil rights.

In keeping with the concerns outlined in his brief Dr. Katz requested that the Third Circuit allow him to file under seal. This case was permitted to proceed through the Third Circuit Court on its merits. Accompanying his Appeal to the Third Circuit was Dr. Katz's motion to have the Third Circuit compel the Middle District Court to seal the record. This was denied as the Third Circuit panel reiterated verbatim the Middle District Court report and recommendation including motion to seal that was requested twice by Dr. Katz.

Whether an individual becomes a party to judicial proceeding involuntarily, as a criminal or civil defendant, or voluntarily, as a civil plaintiff seeking redress of an injury, the assistance of counsel will increase his chances for a favorable disposition. The Department of Justice Civil Rights Division could not assist Dr. Katz in this matter as the case was rendered a "Procedural" 'Statute

of Limitations" case and not a Civil Rights case per se.  NBME et al essentially got off on a technicality as their argument was based on statute of limitations and NOT civil rights.

Dr. Katz asserted to the Middle District Court and to the Third Circuit that the NBME denial of his April 1st, 2014 written Appeal where he discloses his March 2013 diagnosis of bipolar disorder resulted in an injury on April 17, 2014. Dr. Katz cited Kelly v. Burks, 415 F.3d 558, 561 (6th Cir. 2005) in his September 7th, 2017 reply brief to the Third Circuit as a legal precedent. **The Kelly precedent was not acknowledged by the Middle District or Third Circuit panel as they avoided the central thrust of his argument.**

The Third Circuit panel went cherry picking and adopted the Middle District Court's recommendation verbatim for prompt disposal of this case albeit with a stipulation that the panel's opinion does "not constitute binding precedent" (3rd Cir:17-1329 pg. 1 disposition 9/25/2018).

Dr. Katz's April 17, 2014 written appeal, where he documents his disabilities is in the same context to the denial of Kelly's 'name-clearing hearing'/ 'liberty interest hearing" appeal. The NBME replied to Dr. Katz's appeal with a denial on April 17, 2014 never acknowledging Katz's recent caregiver reports, or the changes to his diagnosis and treatment. The NBME refused to acknowledge that Dr. Katz even submitted an appeal referring to it as "your letter and supporting documents." (MDC: EXHIBIT 22 and 30). Consequently, by not acknowledging Dr. Katz's sensitive disclosure of his March 2013 bipolar diagnosis and failing to engage in an ADA "interactive process" there was "post-deprivation" and a subsequent "constitutional injury."

The Defendants state that "he (Katz) attempted to file a petition for certiorari with the United States Supreme Court, and he has accumulated a formidable record on the internet having litigated this case publicly."

Dr. Katz was well within his right to file these appeals and any "formidable record" was justified as Dr. Katz made considerable efforts every step of the way to seal the record. The writ Certiorari was filed out of time with the Supreme Court **(EXHIBIT B)** as he was under a doctor's care for the weeks prior to the due date. The Supreme Court would not allow him to file out-of-time even with a doctor's note. As for the formidable record on the internet the only active link regarding the above captioned case is from a monetized website called Leagle.com that Dr. Katz outlines in depth in his motion to show cause using a pseudonym "John Doe." The issue here is not the only the internet per se but rather the fact that many companies perform criminal and civil background checks on their candidates before extending an offer. Dr. Katz's mental health information as its exists is currently public record and has caused him economic and emotional injury.

**II. STATEMENT OF THE CASE**

This case involves as the Third Circuit panel phrased it, "a sham" (3rd Cir. opinion pg. 2 #3) by NBME Disability Services, deception and false misleading statements regarding so-called "EXPERTS" in the "fields of disability and mental disorders" in the 2006 denial of Dr. Katz's request for accommodations of his USMLE exams. It also involves the NBME implementation of a faulty 'six-attempt limit rule' for taking USMLE exams, itself a violation, under Title III of the ADA for people with disabilities (see Bartlett v. New York State Board of Law Examiners, No. 97-9162 (2nd Cir. Sept 14, 1998) see also Doe v. Samuel Merritt University 921 F. Supp. 2d 958 (N.D. Cal. 2013). Finally, this case involves the NBME denial of Dr. Katz's 2014 waiver of the "six-attempt limit", whereby the NBME ignored changes to Dr. Katz's medical diagnosis, instead derailing him to the Pennsylvania State Board of Medicine, who deemed his request "premature" because of this action in March of 2015. In June of 2015, Dr. Katz filed a pro se action against the NBME and FSMB parallel to an ongoing investigation by the United States Department of Justice Civil Rights Division

(Nabina Sinha, Trial Attorney). Section 504 of the Rehabilitation Act specifically prohibits discrimination against individuals with disabilities in programs receiving federal financial assistance. The NBME and FSMB are both recipients of Federal Financial Assistance, yet they discriminate against people with mental disabilities.

**III. Discussion**

The application of various multi-factor tests and the uneven weight given to the factors by different courts has resulted in varying outcomes on motions for anonymity in litigation involving mental illness.[1]  The dispositive issue in cases involving a plaintiff who wishes to proceed anonymously (because his private mental health information will be revealed in the course of litigation) is generally whether the case presents an exceptional circumstance.  The court in these cases considers whether the plaintiff has demonstrated an "exceptional" circumstance wherein her "substantial privacy right . . . outweighs the 'customary and constitutionally-embedded presumption of openness in judicial proceedings.'"[2]  Despite this established method of analysis, there are no standards for determining what makes a case "exceptional" or which privacy interests are "substantial" enough to outweigh the presumption of openness.[3]  Although the terms "exceptional circumstance" and "substantial privacy interest" are not clearly defined, there are both public and private interests that favor a more liberal and clearly defined rule on this

---

[1] See, e.g., Does I-IV v. City of Indianapolis, 1:06-cv-865-RLY-WTL, 2006 U.S. Dist. LEXIS 54877, at *7-8 (S.D. Ind. Aug. 7, 2006); N.Y. Blood Ctr., 213 F.R.D. at 112-13.
[2] Frank, 951 F.2d at 323 (citation omitted).
[3] See, e.g., Anon. v. Legal Servs. Corp. of P.R., 932 F. Supp. 49, 51 (D.P.R. 1996) (allowing plaintiff to proceed anonymously in case involving a treatable mental illness). But see Ind. Black Expo, Inc., 923 F. Supp. at 141 (denying plaintiff's petition to proceed anonymously even though his mental health history would be part of the litigation).

issue.[4]  The public has an interest in protecting the privacy of litigants so that plaintiffs are not deterred from pursuing otherwise valid claims.[5]

Additionally, mental illness is still stigmatized in society, and revealing this sensitive information could have negative effects on a plaintiff's social and professional life, as well as on his continued mental well-being.[6]

The Fifth Circuit elaborated on its Stegall test in Doe v. Frank, clarifying that the "ultimate test . . . is whether the plaintiff has a substantial privacy right which outweighs the 'customary and constitutionally-embedded presumption of openness in judicial proceedings.'"[7] Further, the court concluded that the three factors laid out in Stegall were factors for a court to consider in making its determination.[8]

In EW v. N.Y. Blood Center, the court pulled from Stegall, Frank, and other[9] cases across jurisdictions to create a six-factor test to determine "whether a plaintiff's privacy right outweighs the public interest in open proceedings and any possible prejudice to the defendant." The six-factor test involved the[10] determinations of:

(1) whether the plaintiff is challenging governmental activity or an
individual's actions;
(2) whether the plaintiff's action requires disclosure of information of the
utmost intimacy;
(3) whether the action requires disclosure of the plaintiff's intention to
engage in illegal conduct;

---

[4] Doe v. Provident Life & Accident Ins. Co., 176 F.R.D. 464, 467 (E.D. Pa. 1997).
[5] Id.

[6] Id.
[7] Frank, 951 F.2d at 323 (quoting Stegall, 653 F.2d at 186).
[8] Id.
[9] 213 F.R.D. 108 (E.D.N.Y. 2003)
[10] Id. at 111 (citations omitted).

(4) whether identification would put the plaintiff at risk of suffering physical or mental injury;

(5) whether the defendant would be prejudiced by allowing the plaintiff to proceed anonymously; and

(6) the public interest in guaranteeing open access to proceedings without denying litigants access to the judicial system.[11]

Most recently, in Does I-IV v. City of Indianapolis,[12] the court adopted the "ultimate test" from Doe v. Frank—weighing the plaintiff's substantial privacy right against the presumption of open court proceedings—and adopted the six factor test from New York Blood Center to assess the balance of the two opposing interests.[13]

The series of tests used by courts over the past three decades and the policy underlying each of them—allowing plaintiffs to proceed anonymously when their privacy interests outweigh public interests—has worked fairly-well to protect certain groups of plaintiffs. For example, women seeking abortions, homosexuals, children, and rape victims are generally able to proceed[14] anonymously under the various tests discussed above. However, a large block of the population is not consistently protected under these analyses and should be. Plaintiffs suffering from mental illness—or who have mental health issues in their past which litigation will reveal—make up one group of individuals that are also entitled to protection.

---

[11] Id. (internal citations omitted).
[12] 1:06-cv-865-RLY-WTL, 2006 U.S. Dist. LEXIS 54877 (S.D. Ind. Aug. 7, 2006).
[13] Id. at *4.
[14] See, e.g., Dougherty, supra note 2, § 29

**IV. Conclusion**

For all the foregoing reasons, Dr. Katz respectfully requests that the Court grant his application to proceed under pseudonym post-hoc.

                                                                RESPECTFULLY SUBMITTED

                                                            __/s/ Richard Katz, M.D._____

                                                            Dr. Richard Katz

Dated: May 10, 2019                                  *Pro se*

**CERTIFICATE OF SERVICE**

I certify that the foregoing ORDER, AFFIRMATION, and MEMORANDUM is being filed electronically with the Clerk of Court on May 10, 2019 using the electronic case filing system, which will automatically send email notifications of such filing to registered parties.

Neil J. Hamburg

Michael E. Sacks

HAMBURG & GOLDEN, P.C.

1601 Market Street, Suite 3310

Philadelphia, PA 19103-1443

(215) 255-8590

Attorneys for Defendants,